**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 25-12226 |
| | : | |
| CTL-AEROSPACE, INC. | : | Chapter 11 |
| | : | |
| DEBTOR-IN-POSSESSION. | : | Judge Beth A. Buchanan |
| | : | |

**EMERGENCY MOTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION FOR AN INTERIM ORDER UNDER 11 U.S.C. §§ 105(a), 361, 362 AND 363, FEDERAL BANKRUPTCY RULES 2002, 4001 AND 9014, AND LOCAL RULE 4001-2: (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING AND APPROVING THE FORM AND METHOD OF NOTICE OF FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

**NOW COMES** the above-captioned debtor and debtor-in-possession CTL-Aerospace, Inc. (the "Debtor") and hereby respectfully moves (the "Motion") this Court for the entry of an order pursuant to the provisions of 11 U.S.C. §§ 105, 361, and 363 Federal Rules of Bankruptcy Procedure 2002, 4001, 6004 and 9014 and Local Bankruptcy Rules 4001-1, 4001-2 and 6004-1 granting the following relief:

**FRBP 4001 REQUIREMENT: CONCISE STATEMENT OF RELIEF REQUESTED**

1.  As required by FRBP 4001, Debtor summarizes and states as follows:

    a.  The name of the entity with a secured interest in the cash collateral is the Wells Fargo.

    b.  The Cash Collateral will be used to fund the Debtor's ongoing operation pursuant to the Cash Collateral Budget attached to the proposed Order.

    c.  The Order will be temporary for 30 days from the date of the entry of the Order and may be continued thereafter until breached by the Debtor or until a plan is confirmed.

    d.  The Debtor proposes to provide adequate protection to Wells Fargo through (i) providing replacement liens (as further described in Paragraph 5 of the Order)

upon all categories and property of the Debtor, now existing and hereafter acquired, upon which Wells Fargo held prepetition security interests or liens and all proceeds, rents, or other income thereof (with modification of the automatic stay to the extent necessary for such replacement liens to be established per paragraph 8 of the Order), (ii) restricted use of the Cash Collateral in reference to the Cash Collateral Budget attached to the Order and as further identified in paragraph 4 of the Order, and (iii) the equity cushion between the value of the Debtor's assets subject to Wells Fargo's liens and the extent of the debt owed to Wells Fargo.

e.      The proposed Oder provides for stipulations by the Debtor as to the position of Wells Fargo and waiver of Chapter 5 Claims against Wells Fargo by the Debtor in paragraphs G(i) and G(ii), which are subject to reservation to object or challenge such stipulations by third-parties within a challenge period set to expire 75 days after the entry of the proposed interim order (or 60 days after appointment of any creditor's committee), as provided for in paragraph 6.

f.      Events of Default and Remedies upon Default are outlined in paragraphs 9 and 10 of the Order

## JURISDICTION AND VENUE AND BASIS FOR RELIEF

2.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The subject matter of this Motion is a core proceeding pursuant to 27 U.S.C. § 157(b). Sections 105 and 507 of title 11 of the Bankruptcy Code and Rule 2002 of the Federal Rules of Bankruptcy Procedure provide the grounds for the relief sought herein.

## BACKGROUND

3.      On the date of the filing of this motion (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107(a), 1108 and 1184 of the Bankruptcy Code, the Debtor is operating its business and managing its affairs as a debtor-in-possession. No examiner or statutory committee has been appointed in this case.

## RELIEF REQUESTED

4.      The bankruptcy code prohibits the use by the Debtor of cash collateral (as defined in 11 U.S.C. § 363(a)) after the filing of the bankruptcy case unless each entity with an interest in cash

collateral either consents or this Court authorizes such use.  Section 363(e) of the Bankruptcy Code requires a debtor to provide adequate protection of the interests of non-debtors in cash collateral.  The focus of this requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the bankruptcy case.

5.      In this case, the Debtor's cash collateral consists of its accounts receivable, to the extent such assets are property of the bankruptcy estate,[1] and very little cash on deposit with Huntington National Bank.  The accounts receivable and funds on deposit at Huntington Bank are the known assets of the Debtor that meet the definition of cash collateral in 11 U.S.C. § 363(a) and are hereinafter referred to as "Cash Collateral."

6.      It is imperative that the Debtor obtain authority to use its Cash Collateral in order to continue funding its necessary business expenses and to fund the costs associated with the administration of the Case. The Debtor has attached a proposed interim order (the "Order", a copy of which is attached hereto as Exhibit "A") and an interim cash collateral budget (the "Cash Collateral Budget", a copy of which is attached as Schedule 1 to the Order).

7.      The Debtor commenced this case with the goal of restructuring its secured and unsecured debt or, in the alternative, selling the operations at the highest possible values, in such a manner that provides maximum return to the creditor constituents. To accomplish this goal, however, the Debtor will require the use of its Cash Collateral, which is subject only to liens in favor of Wells Fargo Bank, National Association ("Wells Fargo")[2].

---

[1] The Debtor has an ongoing factoring relationship with MUFG Union Bank, N.A. ("MUFG") whereby MUFG will purchase certain receivables owed by General Electric Company, to which Wells Fargo consented.  Any receivables purchased by MUFG are immediately taken off of the Debtor's books as an outstanding account receivable and, upon information and belief, the relationship with MUFG is a true purchase of receivables (rather than a secured loan).  As such, any receivables previously sold to MUFG are excluded from the Debtor's books, not available to the Debtor, not subject to any collateralized position of Wells Fargo, and not property of the bankruptcy estate.

[2] While MUFG and other creditors have filed UCC financing statements, MUFG does not claim any interest in any accounts receivable other than what it has purchased and a search of the Ohio Secretary of State filings demonstrates that all other liens have been terminated or, in the alternative, relate only to specific equipment (financed through leases).

COOLIDGE WALL CO., L.P.A.

8.      In addition to having lien rights as to the cash collateral of the Debtor, Wells Fargo also has a security interest in the Debtor's goods, equipment, inventory, general intangibles and other assets. Attached as Exhibit A to the *Declaration of Scott Crislip In Support of Chapter 11 Petition and First Day* Motions ("First Day Declaration"), which is being filed contemporaneously herewith, is a true and accurate copy of the Security Agreement whereby the Debtor pledged its Cash Collateral and other collateral to Wells Fargo.  All loans made by Wells Fargo to the Debtor are secured by the collateral identified in the Security Agreement, which incudes nearly all assets of the Debtor (subject to very few exclusions, identified as "Excluded Property" defined on page 2 of Exhibit A to the First Day Declaration).  Wells Fargo perfected its security interest in the assets of the Debtor by filing a UCC Financing Statement in the form attached as Exhibit B to the First Day Declaration.

9.      Wells Fargo made advances on loans through a term loan position and a revolving loan position.  As of the Petition Date, according to the detail available to the Debtor from Wells Fargo, Wells Fargo is owed approximately **$15,136,810**, made up of approximately $3.7 Million on the term loan position and $11.3 Million on the revolving loan position.

10.      The value of the collateral by which Wells Fargo's loans are secured, assuming ongoing operations of the Debtor, is summarized as follows:

| Asset Description | Estimated Value |
|---|---|
| Equipment | $5,131,000 [3] |
| Inventory (including finished goods, raw materials, WIP, and aged inventory) | $14,050,000[4] |
| **Value of Equipment plus Inventory** | **$19,181,000** |

---

[3] This is Orderly Liquidation Value determined pursuant to an appraisal of the Debtors' equipment with an effective date of June 26, 2025.

[4] This value was derived from an appraisal of the Debtors' inventory with an effective date of May 31, 2025, assuming the value of the inventory classes with conversion (i.e. with the inventory in process and raw materials being completed into finished goods).  As identified in the First Day Declaration, Scott Crislip believes the value of the inventory has remained relatively stable since the effective date of May 31, 2025.

COOLIDGE WALL CO., L.P.A.

| Cash Collateral, consisting of collectible accounts receivable (exclusive of $1,233,700 in potentially uncollectible accounts) | $5,786,700 |
|---|---|
| **Total Value Equipment Inventory, and Cash Collateral** | **$24,967,700** |

As such, assuming the Debtor is permitted to use cash collateral and permitted to continue to operate, Wells Fargo is over-secured and the risk to Wells Fargo from the Debtor's use of the cash collateral is extremely limited. No other creditor has liens on the cash collateral of the Debtor and, as such, no other creditor is entitled to adequate protection for the Debtor's use of the cash collateral.

11.     In order to preserve the Debtor's ongoing viability as a going-concern entity, and to avoid immediate and irreparable harm, the Debtor requests interim and final permission for the post-petition use of cash collateral, as requested herein. This relief is necessary for the Debtor to maintain business relationships and confidence with vendors, suppliers, and customers, to satisfy other working capital and operational needs, to meet accrued and ongoing obligations to employees, and to maintain employee morale. Without the use of this Cash Collateral, the Debtor would be required to terminate all business operations immediately, which would, in turn, result in the loss of employees' jobs, cause the loss of going concern value, and potentially increase the liabilities of the Debtor (to include potential WARN Act liability).

12.     Wells Fargo will undoubtedly take the position that all of the Debtor's assets, including its Cash Collateral are its collateral. Absent immediate access to the requested relief, the Debtor would be forced to cease operations immediately, which would cause significant harm to creditors, employees, and other parties-in-interest. Such a sudden shut down would destroy the ability of the Debtor to conduct a going concern sale of its assets or to develop a standalone plan for payment of creditors.

13.     As adequate protection for the interests of Wells Fargo in the Cash Collateral, the interim proposed Order provides replacement liens (the "Adequate Protection Liens") upon all categories and property of the Debtor, now existing and hereafter acquired, upon which Wells Fargo held prepetition security interests or liens and all proceeds, rents, or other income thereof (collectively, the "Adequate Protection Collateral"), effective upon the Petition Date and without the necessity of the execution or filing by the Debtor or Wells Fargo of security agreements, pledge agreements, financing statements, or otherwise. The Adequate Protection Liens shall not prime, however, any pre-existing liens with priority over Wells Fargo's prepetition liens (none known). The Adequate Protection Liens will secure any diminution in value of Wells Fargo's collateral, whether by use, sale, lease, depreciation, depletion, disposition, or otherwise (a "Diminution in Value").

14.     In addition to the Adequate Protection Liens on the Adequate Protection Collateral, Wells Fargo is protected by an equity cushion, which is expected to increase through the operations of the Debtor post-petition.   Further, the Debtor proposes to restrain its use of Cash Collateral by adherence to the Cash Collateral Budget, within the requirements further outlined in the Order attached hereto as Exhibit "A."

## **BASIS FOR RELIEF**

15.     The Debtor believes that Wells Fargo will assert that the debts owed to it are secured by enforceable first priority liens and security interests in substantially all of Debtor's assets, including but not limited to the Cash Collateral. Therefore, the Debtor requests authority to use only that Cash Collateral which the Debtor requires for business operations and thereby avoid immediate and irreparable harm to the estate and its creditors.

16.     By this Motion, the Debtor requests authority to use the Cash Collateral on terms set forth in the Order. The Debtor's use of the Cash Collateral, including the Debtor's agreement to provide Adequate Protection Liens and other assurances as adequate protection in connection with such use, is

authorized pursuant to § 363(c) of the Bankruptcy Code. Section 363(c) of the Bankruptcy Code provides as follows: (a) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204 or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

17.     As of the Petition Date, Wells Fargo has not consented to the use of Cash Collateral; however, the Debtor needs immediate authority to use the Cash Collateral to fund ongoing business operations. The Debtor intends to provide sufficient adequate protection to Wells Fargo as more fully set forth herein and in the proposed Order to permit the use of the Cash Collateral.

18.     The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis. *See In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D. N.Y. 1996); *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Adequate protection can be provided in a number of ways (see, e.g., 11 U.S.C. § 361), with a focus being to protect a secured creditor from diminution in the value of its interest in the collateral during the period of use. S*ee In re 495 Cent. Park Ave. Corp*., 136 B.R. 636, 631 (Bankr. S.D.N.Y. 1992) (purpose of adequate protection is "to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization"); *In re Beker Indus. Corp*., 58 B.R. 725, 736 (Bankr S.D.N.Y. 1986).

19.     In the event the Debtor is not permitted to use Cash Collateral, it will be unable to pay its necessary obligations to conduct business operations and its employees will be severely impacted. In short, the failure to utilize Cash Collateral will result in the immediate and irreparable harm to the Debtor.

## THE INTERIM ORDER SHOULD BE ENTERED

20.     Bankruptcy Rules 4001 (b) and (c) provide that a final hearing on a Motion to Use Cash Collateral pursuant to Section 363 of the Bankruptcy Code may not be commenced earlier than fifteen (15) days after the service of such Motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the Motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.

21.     The Debtor requires the immediate use of Cash Collateral to pay present operating expenses, including wages, and to pay vendors to ensure a continued supply of goods essential to the Debtor's continued viability. Thus, the use of the Cash Collateral is necessary to avoid immediate and irreparable damage to the Debtor's estate, and the Debtor states that interim relief pursuant to Bankruptcy Rule 4001 is appropriate.

22.     Therefore, the Debtor requests that the Court schedule and conduct an interim hearing to consider entry of the proposed Interim Order (a) authorizing the Debtor to utilize the Cash Collateral as provided in the proposed Interim Order, and (b) granting the adequate protection as provided in the proposed Interim Order.

23.     This relief will enable the Debtor to operate their business in the ordinary course and avoid immediate and irreparable harm and prejudice to its estate and all parties in interest, pending the Final Hearing.

24.     This relief will enable the Debtor to operate its business in the ordinary course and avoid immediate and irreparable harm and prejudice to its estate and all parties in interest, pending the Final Hearing.

## WAIVER OF REQUIREMENT TO FILE MEMORANDUM

25.     The Debtor states that this Motion does not present any novel issues of law requiring briefing and that the Motion adequately describes the issues presented. Therefore, the Debtor requests

that the Court waive the requirement pursuant to Local Rule 9013-1 (a) for a memorandum in support of this Motion.

## **NO PRIOR REQUEST**

26.     No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, for the various reasons set forth in this Motion, the Debtor states that cause exists for the Motion to be granted.  Attached as Exhibit B is the LBR Form 4001-2.

|  | Respectfully submitted, |
|---|---|
| CTL-Aerospace Inc. | COOLIDGE WALL CO., L.P.A. |
| */s/ Scott Crislip* | */s/ Patricia J. Friesinger* |
| _____ | _____ |
| Scott Crislip, President | Patricia J. Friesinger (0072807) |
|  | 33 West First Street, Suite 600 |
|  | Dayton, Ohio 45402 |
|  | Tel: 937/223-8177  Fax: 937/223-6705 |
|  | E-Mail: friesinger@coollaw.com |
|  |  |
|  | *Proposed Counsel for Debtor and Debtor-In-Possession CTL-Aerospace, Inc.* |

021640\00100\4939-1952-1638.1

4939-1952-1638, v. 1

**Exhibit A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. ------- |
| | : | |
| CTL-AEROSPACE, INC. | : | Chapter 11 |
| | : | |
| DEBTOR-IN-POSSESSION. | : | Judge Beth A. Buchanan |
| | : | |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105(a), 361, 362 AND 363, FEDERAL
BANKRUPTCY RULES 2002, 4001 AND 9014, AND LOCAL RULE 4001-2:
(I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL; (II)
GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE
AUTOMATIC STAY; (IV) SCHEDULING AND APPROVING THE FORM
AND METHOD OF NOTICE OF FINAL HEARING; AND (V) GRANTING
RELATED RELIEF**

THIS MATTER came before the Court for hearing on _____ (the "Interim Hearing") on the *Emergency Motion Of The Debtor And Debtor-In-Possession For An Interim Order Under 11 U.S.C. §§ 105(A), 361, 362 And 363, Federal Bankruptcy Rules 2002, 4001 And 9014, And Local Rule 4001-2: (I) Authorizing Debtor To Use Cash Collateral; (II) Granting Adequate Protection; (III) Modifying The Automatic Stay; (IV) Scheduling And Approving The*

1

*Form And Method Of Notice Of Final Hearing; And (V) Granting Related Relief* (the "Motion"),

filed by the debtor and debtor-in-possession, CTL-Aerospace, Inc. (the "Debtor") in the above-

captioned chapter 11 case (the "Case"); the Debtor having filed a voluntary petition under

Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), on September 8, 2025 (the

"Petition Date"), and having requested in the Motion entry of interim and final orders:

(1) authorizing and approving, pursuant to section 363 of the Bankruptcy Code, the

Debtor's use of Cash Collateral (as defined herein) of the Wells Fargo Bank, National

Association ("Wells Fargo");

(2) granting the Wells Fargo (as defined herein) (a) adequate protection, including,

without limitation, adequate protection against the diminution in the value or amount of

the Pre-Petition Collateral (as defined herein), (b) Adequate Protection Liens (as defined

herein) on Adequate Protection Collateral (as defined herein); and

(3) granting any further and related relief as the Court deems just and equitable.

Upon the record of the Case and the record of the Interim Hearing, good and sufficient

cause appearing therefor, and it appearing to be in the best interests of the Debtor's estate

and creditors;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON AN INTERIM BASIS FOR PURPOSES OF ENTERING
THIS INTERIM ORDER:**

A. On the Petition Date, the Debtor filed a voluntary petition under chapter 11 of the

Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio (the

"Bankruptcy Court").  The Debtor is continuing in the management and possession of its business

and properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy

Code.

B.  Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (G), (K), (M) and (O).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C.  Sufficient and adequate notice of the Motion has been provided under the urgent circumstances present and based upon the notice sent to the Interim Noticed Parties (defined below), pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by section 363(b) of the Bankruptcy Code, and no further notice or, or interim or preliminary hearing on, the Motion or this Interim Order is necessary or required.

D.  The use of Cash Collateral (as defined herein) is granted, only upon the terms and conditions contained in this Interim Order.

E.  It is in the best interests of the Debtor's creditors and the estate that it be allowed to continue its operations under the terms and conditions set forth herein.

F.  Notice of the relief south by the Motion, and the Interim Hearing with respect thereto, pursuant to Bankruptcy Rules 2002 and 4001(b) and (d) and Bankruptcy Code Section 102(1), as required by Bankruptcy Code section 363(b) has been given to the following parties in interest: the U.S. Trustee, all secured creditors and the creditors holding the twenty (20) largest unsecured claims against the Debtor's estate (collectively, the "Interim Noticed Parties").

G.  Without prejudice to the rights of parties in interest as set forth in paragraph 6 below, the Debtor admits, stipulates, acknowledges and agrees that (collectively, Paragraphs G(i) and G(ii) hereof shall be referred to as the "Debtor's Stipulations"):

(i)     <u>The Senior Secured Indebtedness</u>.  Prior to the commencement of the Case,

3

Debtor's largest creditor and first priority secured creditor was the Wells Fargo Bank, National Association ("Wells Fargo"). Debtor's obligations to Wells Fargo ("Senior Secured Obligations") total approximately $15,136.810 (according to the balance details available to the Debtor as of the Petition Date, hereinafter the "Debt Amount") made up of approximately $3.7 Million on the term loan position and $11.3 Million on the revolving loan position. The Senior Secured Obligations are evidenced by certain loan documents (the "Senior Secured Loan Documents") and secured by substantially all of the Debtor's assets, including the cash collateral owned by the Debtor within the meaning of 11 U.S.C. § 363(a) (the "Cash Collateral"). The loans evidenced by the Senior Secured Loan Documents are in default. The foregoing Debt Amount, together with, all interest, fees, costs and expenses (including, but not limited to, attorneys' fees and expenses), and other charges, amounts and costs owing, accrued, accruing or chargeable in respect thereof, of any kind or nature, whether existing or contingent, payable to or for the benefit of any person or entity, pursuant to any of the foregoing agreements, instruments or documents, is herein referred to as the "Senior Secured Indebtedness." Debtor's obligations owing to the Wells Fargo under the Senior Secured Loan Documents, including the Senior Secured Indebtedness, are secured by security interests created under the Senior Secured Loan Documents (the "Pre-Petition Senior Liens") in essentially all assets of Debtor (collectively, the "Pre-Petition Collateral").

(ii)   <u>Validity and Priority of Pre-Petition Senior Liens and Senior Secured Indebtedness, Release, Waiver or Limitation of Chapter 5 Claims</u>. (a) the Senior Secured Indebtedness, in amounts unknown, but believe to be in excess of $15 Million, constitute legal, valid, binding and non-avoidable obligations of the Debtor that, except for the stay of enforcement arising from section 362 of the Bankruptcy Code, are enforceable in accordance with the terms of the Senior Secured Loan Documents, (b) the Senior Secured Indebtedness is over-secured and, as such,

entitled to post-petition interest and (c) the Debtor and its estate have no claims under chapter 5 of the Bankruptcy Code, against the Wells Fargo and/or the agents, attorneys, advisors, professionals, officers, directors or employees.

H.  The Debtor represents as follows:

(i)        that without the use of Cash Collateral proposed by the Motion, the Debtor will not have the funds necessary to pay trade vendors, wages and benefits, suppliers, overhead and other expenses necessary for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and properties.  The Debtor has requested that pursuant to this Interim Order and the budget attached hereto as Schedule 1 (the "Budget"), that Wells Fargo make available to the Debtor Cash Collateral, to be used by the Debtor solely for the purposes set forth in the Budget.  The ability of the Debtor to continue its business under Chapter 11 of the Bankruptcy Code depends upon the Debtor utilizing the Cash Collateral.  Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's business, the management and preservation of its assets and properties, and is in the best interests of the Debtor, its estate and creditors;

(ii)        that the terms and conditions contained in this Interim Order governing the use of Cash Collateral are in the best interests of the Debtor, its estate and creditors;

(iii)        that the Budget is a good faith estimate of the actual payments of expenses on post-petition claims necessary to be paid during the period for which the Budget covers (the "Budget Period") to continue the operations of the Debtor and preserve and maintain the value of the Debtor's assets and properties; and

(iv)        that the relief requested by the Motion is necessary to avoid immediate and irreparable harm to its estate.

I.    Good, adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion, and the immediate entry of this Interim Order, and such entry is necessary to prevent irreparable harm to the Debtor's estate.  To the extent any objections were made to the relief sought in the motion and entry of this Interim Order (and not withdrawn prior to the entry of this Interim Order) such objections are hereby overruled.

J.    There has not been an examiner or trustee appointed in this case. In the future, the Budget may provide for a carve-out for proposed counsel to the Debtor to be held in trust against fees that may be approved in the future.  Such funds subject to any such carve out provision shall remain property of the bankruptcy estate until fees are authorized and such funds are approved for payment.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.    <u>Motion Granted</u>.  The Motion is GRANTED on an interim basis as set forth herein.

2.    <u>Authorization to Use Cash Collateral</u>.  The Debtor is hereby authorized to use Cash Collateral, in accordance with the terms and conditions of this Interim Order.

3.    <u>DIP Account</u>.  The Debtor shall transfer all its cash to a Debtor-in-Possession bank account or otherwise have its existing account, pursuant to separate order, approved as a Debtor-in-Possession account (the "Cash Collateral Account") and shall immediately deposit all cash received by it into the Cash Collateral Account.

4.    <u>Budget Limitations on Cash Collateral Usage</u>.  All Cash Collateral must be used strictly in accordance with the terms of the Budget.  The Debtor shall not, without prior written consent of the Wells Fargo, use Cash Collateral in excess of 10% of the aggregate amount identified in the Budget for the  total of operating expenses for the Budget Period unless the sales exceed such 10% of the projected sales for the applicable period and then Debtor can use the Cash Collateral

6

proportionally.  Any extension or other modification of the Budget shall be subject to the prior written approval of the Wells Fargo, which shall not be unreasonably withheld.  The Debtor is not authorized to use any Cash Collateral to pay any type of expense not included in the Budget.

5.  <u>Wells Fargo's Adequate Protection Liens</u>.  Pursuant to Bankruptcy Code 362 and 363(e) as adequate protection against the diminution in value of the Cash Collateral, the Debtor is hereby authorized to grant to the Wells Fargo, and upon entry of this Interim Order shall be deemed hereby to have granted to the Wells Fargo, valid, binding, enforceable replacement liens (the "Adequate Protection Liens") upon all categories and property of the Debtor, now existing and hereafter acquired, upon which Wells Fargo held prepetition security interests or liens and all proceeds, rents, or other income thereof (collectively, the "Adequate Protection Collateral"), which shall be in first position except to the extent provided for in relation to any Debtor-In-Possession financing, which may be approved by separate order of this Court.

6.  <u>Reservation of Certain Third-Party Rights and Bar of Challenges and Claims</u>.  Nothing in this Interim Order shall prejudice the rights of any party in interest other than the Debtor to object to or challenge the Debtor's Stipulations; *provided however*, that unless such other party in interest obtains proper standing and commences a contested matter or adversary proceeding raising such objection or challenge, including without limitation any claim against the Wells Fargo in the nature of a setoff, counterclaim or defense to the Senior Secured Indebtedness under sections 506, 544, 547, 548, 550 and/or 552 of the Bankruptcy Code or by way of suit against Wells Fargo) within 75 days after the entry of this Interim Order or, for any creditor's committee, at least 60 days from the entry of the appointment of the creditor's committee (the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no contested matter or adversary proceeding is commenced during the Challenge Period shall be referred to as

7

the "Challenge Period Termination Date"), then, upon the Challenge Period Termination Date, any and all such challenges and objections by any party shall be deemed to be forever waived, barred and discharged and the Debtor's Stipulations shall be binding on all persons, entities, creditors, interest holders and parties in the Case or any Successor Case, and upon the Challenge Termination Period the Senior Secured Indebtedness shall be deemed to be fully and finally allowed under the Bankruptcy Code for all purposes in connection with this Case and any Successor Case.  Only those parties in interest that have properly and with requisite standing initiated an adversary proceeding or contested matter challenging the Debtor's Stipulations prior to the Challenge Period Termination Date shall be permitted to prosecute such adversary proceeding or contested matter.

7.  <u>Maintenance, Insurance; Government Charges</u>.  Except as otherwise provided herein, the Debtor shall maintain the Adequate Protection Collateral and ensure the proper maintenance of the Adequate Protection Collateral, including, as necessary, through incurrence and payment of expenses set forth in the Budget.  The Debtor, at its expense, shall (a) continue to at all times keep the Adequate Protection Collateral fully insured against all loss, peril and hazard, and (b) pay any and all post-petition taxes, assessments and governmental charges with respect to the Adequate Protection Collateral, whether or not the Debtor is obligated to do so under the Senior Secured Loan Documents, and will provide the Wells Fargo with proof thereof upon written demand and will give the Wells Fargo access to its records in this regard.

8.  <u>Modification of Automatic Stay</u>.  The automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit (a) the Debtor to grant the Adequate Protection Liens as adequate protection to the Wells Fargo, and (b) the Debtor to create, and the Wells Fargo to perfect, any and all liens and security interests granted to it hereunder; *provided, however,* that Wells Fargo shall not be required to file UCC financing statements or other instruments with any

8

other filing authority to perfect any lien or security interest granted by this Interim Order or take any other action to perfect such liens and security interests, and such liens and security interests are deemed perfected; *provided however*, that if Wells Fargo shall, in its sole discretion, elects for any reason to file, record or serve any financing statements or other document with respect to such liens and security interests, the Debtor shall execute the same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date required to implement the priority of such liens and security interests as provided in this Interim Order.

9.    Events of Default.    The occurrence of any one or more of the following events shall constitute a "Termination Event" under this Interim Order:

(a)    the Case is either dismissed or converted to a case under chapter 7 of the Bankruptcy Code;

(b)    an examiner with expanded powers is appointed in the Case;

(c)    the Debtor ceases operation of its business or takes any material action for the purposes of effecting such cessation without the prior written consent of the Wells Fargo or inclusion of such action in a confirmed plan;

(d)    this Interim Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall materially and adversely affect the rights of Wells Fargo hereunder;

(e)    the Debtor's failure to comply with or perform the terms and provisions of this Interim Order in strict adherence to the time period set forth herein or using Cash Collateral other than in accordance with the provisions of the Budget and this Interim Order;

(f)     any sale or other disposition of Adequate Protection Collateral is undertaken outside of the ordinary course of business, unless approved by this Court;

(g)     the automatic stay of Bankruptcy Code section 362 is lifted so as to allow a party other than the Wells Fargo to proceed against any material asset of the Debtor.

10. _Remedies following Default_.  Upon the occurrence of a Termination Event and the giving of the Remedies Notice (as defined below):

(a)     The Debtor's authorization to use Cash Collateral shall terminate; and

(b)     The Debtor shall immediately segregate all Cash Collateral, and shall not be permitted to use Cash Collateral unless Wells Fargo shall have given its prior written consent or the Court shall have entered an order, after a hearing upon notice to the Wells Fargo, authorizing such use.

11. _No Limitation on Wells Fargo_.  Nothing contained herein shall be construed as a waiver of any rights, remedies, claims or objections that the Wells Fargo may have under the Senior Secured Loan Documents, the Bankruptcy Code, or applicable law, including the Wells Fargo's right to object to the entry of the Final Order or any further interim order on any ground or to seek modification of this Interim Order and the Cash Collateral used hereunder.

12. _Reporting Obligations_.  Without limiting the Debtor's reporting obligations under the Senior Secured Loan Documents, the Debtor:

(a)     shall deliver to the Wells Fargo, no later than twenty-one (21) calendar days after the end of each month a copy of the Debtor's monthly operating report for such month as filed with the Court and with the office of the U.S. Trustee;

(b)     shall deliver to the Wells Fargo, within five (5) calendar days of the Debtors receipt

10

thereof, copies of all audited financial statements or other similar financial statements which reflect the Debtor's assets and liabilities and results of operations; and

(c)      shall permit representatives, agents and/or employees of the Wells Fargo to visit, inspect and have access to the Debtor's premises and books and records upon five (5) Business Days' notice, and shall cooperate and consult with, and provide to such representatives, agents and/or employees any and all non-privileged information in the Debtor's custody or control regarding the operation of the Debtor's businesses, and the Wells Fargo shall have the right to inspect, audit, examine, check, make copies or extracts from all such information, including the books, accounts, checks, orders, invoices, bills of lading, correspondence and other records of the Debtor and the Debtor shall make all of the same available to the Wells Fargo and its representatives for such purposes.

13.  Books and Records.  The Debtor is directed to keep its books and records of original entry current and updated, so that all business activity is posted to them in the ordinary course of the Debtor's business.

14.  Good Faith.  Pursuant to, and to the extent of, the provisions of Bankruptcy Code section 364(e), the validity of the Adequate Protection Claims and the validity and priority of the liens and security interests authorized or granted by this Interim Order shall be binding on the Debtor, its estate and their successors and assigns even if this Interim Order is reversed or modified on appeal.

15.  Payment of Professional Fees.  Notwithstanding any other provision of this Interim Order, payment of professional fees from Cash Collateral pursuant to the Budget or otherwise shall be subject to the Bankruptcy fee application process.  Retained professionals shall make such applications in accordance with any separate order establishing procedures for monthly and interim compensation and reimbursement of fees for professionals, or as otherwise required by applicable

law or rules.  Payment of compensation to Debtor's counsel may only be made to the extent ordered by the Court upon ruling on the Debtor's counsels' fee applications.

16. <u>Additional Documents</u>.  The Debtor is hereby authorized to do and perform all acts and to make, execute and deliver all instrument sand documents which may be required or necessary for the performance of its obligations hereunder.

17. <u>Immediate Effect</u>.  As permitted by Bankruptcy Rule 6004(h), the Court hereby orders that this Interim Order shall become effective immediately.

18. <u>Survival After Confirmation, Conversion or Dismissal</u>.  The provisions of this Interim Order and any actions taken pursuant thereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting this Case from chapter 11 to chapter 7 of the Bankruptcy Code; *provided, further*, that the terms and provisions of this Interim Order, as well as the liens and security interests granted hereunder, shall continue in this Case or any Successor Case and such liens and security interests and the Adequate Protection Claim shall maintain their priority as provided by this Interim Order.

19. <u>No Limitation or Modification of Order</u>.  Nothing in this Interim Order shall limit Wells Fargo's right to seek modification of this Interim Order.

20. <u>No Prejudice of Rights Against Third Parties</u>.  Nothing in this Interim Order shall in any way prejudice or compromise any rights that Wells Fargo may have against parties other than the Debtor.

21. <u>Effect on Third Parties</u>.  The provisions of this Interim Order shall be binding on all third parties provided that any other secured party may be provided adequate protection for its interests in the Pre-Petition Collateral, if any, which adequate protection shall not contradict or otherwise interfere with the terms of this Interim Order.

22. <u>Service of the Order</u>.  Within three (3) Business Days after the entry of this Interim Order, the Debtor shall serve a copy on (a) the Office of the U.S. Trustee; (b) counsel to any Committee, if any; (c) the creditors holding the 20 largest unsecured claims against the Debtor's estate; and (d) all secured creditors and any counsel thereto.

23. <u>Binding Effect</u>.  The provisions of this Interim Order shall be binding upon and inure to the benefit of Wells Fargo, the Debtor, the Debtor's estate and their respective successors and assigns (including any trustee appointed as a representative of the Debtor's estate or in any Successor Case).

24. <u>Controlling Effect</u>.  To the extent that any provision of this interim Order conflicts with any provision of any of the Senior Secured Loan Documents, which shall remain in full force and effect, this Interim Order is deemed to control and shall supersede the conflicting provision(s).

25. <u>Further Limitations on the Debtor</u>.  The Debtor will not do any of the following things without prior order of this Court:

(a)    Increase the wages of any insiders of the Debtor above the current rate paid such employees nor substantially enlarge the number of employees from the Debtor's historical number;

(b)    Incur any obligation or liability in excess of amounts provided in the Budget, whether with regarding to services to be provided to the Debtor, materials, inventory, supplies or equipment to be purchased by the Debtor, or otherwise.

(c)    Pay an amounts owing on any claim arising prior to the Petition Date, other than as may be otherwise provided for in an order of the Court.

26. The Court will conduct a further hearing on the Motion on _____, 2025 at _____, as necessary, absent the submission of an agreed order.  At that further hearing or by agreed order,

13

the Court may modify the provisions of this Order as provided for herein.  In the event this Interim

Order is extended, all of the provisions hereof shall remain in full force and effect, except to the

extent otherwise provided for in an order of the Court extending this Interim Order.

**IT IS SO ORDERED.**


Copies to: Default List

|  | Week ending 9/13/25 | Week ending 9/20/25 | Week ending 9/27/25 | Week ending 10/4/25 |
|---|---|---|---|---|
| **Beginning cash** | 0 | 1,012,000 | 1,164,000 | 957,000 |
| **Cash receipts:** | | | | |
| Accounts Receivable - Domestic | 576,000 | 699,000 | 705,000 | 821,000 |
| Accounts Receivable - Export | 806,000 | 6,000 | 14,000 | 14,000 |
| GE Labor and Material support | 725,000 | 0 | 0 | 0 |
| Other reciepts | 0 | 0 | 0 | 0 |
| **Cash disbursements:** | | | | |
| Payroll and Payroll taxes | (725,000) | 0 | (380,000) | (245,000) |
| Inventory vendor payments | (50,000) | (315,000) | (315,000) | (315,000) |
| Employee Benefits | (60,000) | (143,000) | (106,000) | (72,000) |
| Rent | (164,000) | 0 | 0 | (164,000) |
| Utilities | (8,000) | 0 | (75,000) | 0 |
| Insurance | (8,000) | (45,000) | 0 | 0 |
| Leases and computer | (30,000) | 0 | 0 | 0 |
| Other | (50,000) | (50,000) | (50,000) | (50,000) |
| **Ending cash** | 1,012,000 | 1,164,000 | 957,000 | 946,000 |

## LBR Form 4001–2

**Cash Collateral / Postpetition Financing Provisions**

The Debtor, through a separately filed motion, agreed order or stipulation has requested the approval of the use of cash collateral, or postpetition financing, or both. Attached to the motion as Exhibit <u>A</u> is a true and correct copy of the agreement for use of cash collateral or postpetition financing (the "Agreement"), which contains the following provisions:

| Page No. | Line No. (If Applicable) | Description of Provision |
|---|---|---|
| ✓_____ | ¶5 | **(A)** Provisions providing for adequate protection or priority for a claim that arose before the commencement of the case, including: |
| ☐_____ | N/A | **(i)** Cross-collateralization clauses (i.e., clauses that secure the repayment of prepetition debt with postpetition assets in which the secured creditor would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law); or |
| ☐_____ | N/A | **(ii)** Roll-up clauses (i.e., clauses that provide for the use of property of the estate or the proceeds of a postpetition loan to make cash payments on prepetition debt). |
| ☐_____ | N/A | **(B)** Provisions or findings of fact that release, waive, or limit any claim or other cause of action belonging to the estate or the trustee, including but not limited to: |
| ☐_____ | N/A | **(i)** the release, waiver, or limitation of claims or other causes of action against any secured creditor without first giving parties in interest at least 75 days from the entry of the order and the creditors' committee, if appointed, at least 60 days from the date of its appointment to investigate such matters.; |
| ☐_____ | N/A | **(ii)** the release, waiver, or limitation of claims or other causes of action against any secured creditor for alleged prepetition torts or breaches of contract; |
| ✓_____ | ¶G | **(iii)** the waiver of avoidance actions under the Code; or |
| ☐_____ | N/A | **(iv)** any modification of the statute of limitations or other deadline to commence an action. |
| ☐_____ | N/A | **(C)** Provisions or findings of fact that determine the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim. |
| ☐_____ | N/A | **(D)** Provisions that grant a lien on property of the estate that is not otherwise subject to a lien, grant a junior lien on property of the estate that is subject to a lien, or create a lien senior or equal to any existing lien without the consent of that lienholder. |
| ☐_____ | N/A | **(E)** Provisions that release, waive, or limit any right under § 506(c) of the Code. |

☐ _____ N/A

**(F)** Provisions that grant a lien on any claim or causes of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) of the Code.

☐ _____ N/A

**(G)** Provisions that provide disparate treatment with regard to professional fee carveouts for the professionals retained by a creditors' committee from that provided for the professionals retained by the debtor.

☐ _____ N/A

**(H)** Provisions that prime administrative expenses of the kind specified in §§ 503(b) or 507(a) of the Code.

☐ _____ N/A

**(I)** Provisions that waive or modify any entity's authority or right to file a plan or seek an extension of time in which the debtor has the exclusive right to file a plan or otherwise operate to divest the debtor of any discretion in the administration of the estate or limit access to the court to seek any relief under other applicable provisions of law.

☐ _____ N/A

**(J)** Provisions that establish deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or entry of a confirmation order.

☐ _____ N/A

**(K)** Provisions providing for the indemnification of any entity.

☑ _____ ¶8

**(L)** Provisions waiving or modifying provisions of the Code or applicable rules relating to the automatic stay.

☑ _____ ¶8

**(M)** Provisions that waive or modify the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien.

☐ _____ N/A

**(N)** Provisions that waive or modify the debtor's right to move for a court order pursuant to § 363(c)(2)(B) of the Code authorizing the use of cash collateral or § 364 of the Code to obtain credit.

☐ _____ N/A

**(O)** Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order.

☐ _____ N/A

**(P)** Findings of fact on matters extraneous to the approval process.

☐ _____ N/A

**(Q)** Provisions that bar the debtor from future bankruptcy filings.