UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | : | Case No. 25-12226 |
| | : | |
| CTL-AEROSPACE, INC., | : | Chapter 11 |
| | : | |
| DEBTOR-IN-POSSESSION. | : | Judge Beth A. Buchanan |
| | : | |

**EMERGENCY MOTION OF DEBTOR, CTL-AEROSPACE, INC. FOR: (A) INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING; (B) SCHEDULING A FINAL HEARING ON THE MOTION PURSUANT TO BANKRUPTCY RULE 4001, AND (C) GRANTING RELATED RELIEF**

**("DIP FINANCING MOTION")**

CTL-Aerospace, Inc. (the "Debtor"), as debtor and debtor-in-possession in the above-captioned chapter 11 case, hereby moves this Court pursuant to sections 105(a), 364, 503(b) and 507 of title 11 of the United States Code,  11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-3 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Ohio (the "Local Rules"):  (i) for an interim order (the "Interim Order") (a) approving and authorizing, on an interim basis, the Debtor to obtain post-petition debtor-in-possession financing from its existing pre-petition secured lender, Wells Fargo Bank, National Association (the "DIP Lender" or "Wells Fargo") (the "DIP Loan"); (b) authorizing the Debtor to execute and deliver loan documents that conform with the terms outlined in Exhibit A attached hereto, including such other documents agreements, filings and instruments required by DIP Lender in its discretion in connection with such debtor-in-possession financing (collectively, the "Loan Documents"); and (c) approving, on an interim basis, the terms and conditions of the DIP Loan, including, but not limited to, authorizing the Debtor to borrow under the DIP Loan an initial amount of up to $725,000 as such funds were identified in the Cash Collateral Budget attached to

1

the *Emergency Motion Of The Debtor And Debtor-In-Possession For An Interim Order Under 11 U.S.C. §§ 105(A), 361, 362 And 363, Federal Bankruptcy Rules 2002, 4001 And 9014, And Local Rule 4001-2: (I) Authorizing Debtor To Use Cash Collateral; (II) Granting Adequate Protection; (III) Modifying The Automatic Stay; (IV) Scheduling And Approving The Form And Method Of Notice Of Final Hearing; And (V) Granting Related Relief* [Doc. 5] filed herein on September 8, 2025 (the "Cash Collateral Motion") and further, pending a final hearing on this Motion, authorizing the additional borrowing and terms outlined in Exhibit A and any interim or final Order on this Motion (ii) to schedule a final hearing (the "Final Hearing") on this Motion after expiration of the fourteen (14) day period required by Bankruptcy Rule 4001; (iii) to approve the form and manner and notice of the Final Hearing to consider entry of a final order granting the relief sought herein on a permanent basis; (iv) for an order approving, on a final basis after the Final Hearing (the "Final Order"), the terms and conditions of the DIP Loan as outlined in Exhibit A hereto; and (v) to grant such other and further relief as the Court deems just and proper.

In support of this Motion, the Debtor attaches and incorporates herein the following memorandum.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>CTL-Aerospace Inc.</td><td>COOLIDGE WALL CO., L.P.A.</td></tr>
<tr><td>*/s/ Scott Crislip*</td><td>*/s/ Patricia J. Friesinger*</td></tr>
<tr><td>_____<br>Scott Crislip, President</td><td>_____<br>Patricia J. Friesinger (0072807)<br>33 West First Street, Suite 600<br>Dayton, Ohio 45402<br>Tel: 937/223-8177  Fax: 937/223-6705<br>E-Mail: friesinger@coollaw.com</td></tr>
<tr><td></td><td>*Proposed Counsel for Debtor and Debtor-In-Possession CTL-Aerospace, Inc.*</td></tr>
</table>

## MEMORANDUM IN SUPPORT

## I.     BACKGROUND

1.      On September 8, 2025 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition under chapter 11 of the Bankruptcy Code.

2.      The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157(b)(1) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue of is case is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The Debtor is a company with its location in Butler County, Ohio.

4.      The Debtor is in possession of its property and operating and managing its business as a debtor-in-possession pursuant to section 1184 of the Bankruptcy Code.

## II.     REQUESTED RELIEF

### A.     The Existing Loans
### And Need For Debtor-In-Possession Financing

1.      As identified with greater specificity in the Cash Collateral Motion and the *Declaration of Scott Crislip In Support of Chapter 11 Petition and First Day Motions* filed herein on September 8, 2025 [Doc. 9] (the "First Day Declaration"), the DIP Lender is a secured creditor with liens as to the Debtor's Cash Collateral (as defined in the Cash Collateral Motion) and other assets of the Debtor.  Prior to the Petition Date, the Debtor's access to cash has been restricted to the point that the Debtor was unable to ensure the ability to fund the Debtor's payroll and operating expenses.  As such, the Debtor had arranged a loan from General Electric Company, dba GE Aerospace ("GE"), a customer of the Debtor, that was intended to cover the Debtor's next payroll cycle and to provide operating capital needed for the Debtor's ongoing operations.  The management of the Debtor did not realize that post-petition financing required approval of this Court and the Debtor's proposed counsel did not realize that the funds to come in were to be

characterized as a loan (rather than ordinary course customer deposits or payments). Attached as Exhibit A to the Cash Collateral Motion is a draft interim order, which included a Cash Collateral Budget attached thereto as Schedule 1.  Schedule 1 assumed access to $725,000 from the GE, which funds are necessary due to the timing concerns of payments from accounts receivable as compared to the funding deadlines for timely payroll payments.  For example, while the Debtor was hopeful that by close of business on September 9, 2025, it would receive $777,000 from a large customer, that customer only actually delivered approximately $525,000.  As such, without the funds the Debtor expected to receive from GE, the Debtor will be unable to fund its first payroll cycle, which funds will be taken by its payroll processing company on September 10, 2025. Therefore, the Debtor's need for interim approval of the DIP Loan is clear.

2.      The Debtor is in the process of re-working 13-week forecasts with required changes due to the economic reality of the bankruptcy case filing.  The Debtor's prior forecasts had anticipated receipt of the DIP Loan to provide for ongoing operations through November 7, 2025. Now with the Debtor's filing of this bankruptcy case, the expenses are anticipated to be similar, but pushed out into different categories of expenses (i.e. CRO expenses replaced with other professional expenses).

3.      Since the discovery of the miscommunication as to the GE financing, the Debtor, through proposed counsel, engaged in discussions with GE and the DIP Lender to determine a path forward to cover operational expenses.  Post-Petition, GE was only willing to make loans on a secured basis – a position opposed by Well Fargo.  Wells Fargo has agreed to serve as the DIP

Lender and, as such, will not be in a position to share its collateral or having its collateral position primed.

5.       The reasons supporting the Debtor's need to incur the DIP Loan under the terms set forth on Exhibit A are compelling.   The DIP Loan is critical for the Debtor's successful reorganization and is essential to fund the operations during the pendency of this bankruptcy case. On an interim basis, the Debtor appears to be unable to fund its first post-petition payroll without access to the amounts provided for in the proposed Interim Order.  While the Budget anticipates collections to sustain the expenses of the Debtor for the first four weeks post-petition without any proceeds from the DIP Loan, the Debtor must fund payroll starting on Wednesday and it does not appear that the collections of accounts receivable are being made as quickly as would be needed to provide the funding.  Without access to the DIP Loan, the Debtor anticipates that it will be unable to fund its payroll, which will be disastrous to the future of the Debtor.  As such, the Debtor's need to receive up to $725,000 from the DIP Loan on an interim/urgent basis is essential to provide the Debtor the ability to pay its employees and further to meet its operational expenses. Further, the future funding under the DIP Loan is anticipated to be necessary as the Debtor fleshes out its forecast further into the future.  The DIP Loan will provide necessary stability to alleviate concerns of its customers and continue progress on projects to avoid unnecessary erosion of the business.  The Debtor's budget demonstrates the need to borrow on an interim basis and the Debtor will file a supplemental budget to support the use of the additional borrowing under the DIP Loan (after entry of a final order approving same).

6.       The proceeds of the DIP Loan will only be drawn to the extent needed and will be used by Debtor to fund business expenses that exceed the Debtor's revenues or to smooth over any mis-matches between collections on accounts receivable and cash needs to fund necessary

operations, in a manner consistent with the Budget.  The DIP Loan will provide the Debtor with

financing necessary to the preservation of the value of the bankruptcy estate and to successfully

consummating its reorganization or maintain business viability through a potential sale process.

### B.      Description Of The
### Debtor-In-Possession Financing

7.      By this Motion, the Debtor proposes to enter into the DIP Loan with DIP Lender.

The material terms of the DIP Loan are outlined in Exhibit A, attached hereto.  If this Motion is

approved and the other conditions precedent are satisfied, the Debtor and the DIP Lender expect

to enter into Loan Documents with the same terms and conditions as set forth in Exhibit A.

8.      The principal terms of the DIP Loan are relatively straight-forward.  In summary,

the DIP Loan will provide the Debtor with up to $725,000 on an interim basis and on a final basis

in accordance with Exhibit A hereto, necessary for business operations, in accordance with the

existing budget and subject to an anticipated (updated) longer term budget.  The DIP Loan will

require repayment as outlined in Exhibit A.  The DIP Loan will be secured by the existing (and

replacement) liens along with the pre-petition loans of Wells Fargo.

### C.      Approval Of The DIP Financing
### Is Warranted Under The Circumstances

10.      The Debtor submits that ample justification exists for the approval of the proposed

DIP Loan under § 364(b) of the Bankruptcy Code.  The Debtor believes that its ability to enter into

the DIP Loan is critical to the success of this case.  Without the DIP Loan borrowing sought on an

interim basis, the Debtor may be unable to fund its first post-petition payroll.  Further, without the

DIP Loan borrowing on a longer-term basis, the Debtor may be unable to fund the expenses of this

bankruptcy case and unable to preserve the value of its business as a going concern pending

reorganization or sale in this case.

### D.       The Necessary Showings Under § 364

9.        Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit other than in the ordinary course of business and (c) obtaining credit with a specialized priority or with security.  The DIP Loan proposed herein is further financing to be supplied by the Debtor's secured lender, now as a DIP Lender.   Section 11 U.S.C. § 364(c) permits the Debtor to incur debt on the terms outlined in Exhibit A "after notice and a hearing."[1]

### E.       Application of the Business Judgment Standard

10.       "Although section 364(b) does not contain an express condition, as section 364(c) does, that credit not be available on better terms, it is likely not a sound exercise of a trustee's or debtor in possession's business judgment to obtain . . . credit outside of the ordinary course of business on terms that are less favorable than other terms that have been offered in the case, and the court should deny authorization in that instance[2]."  The Debtor, in the exercise of its prudent business judgment and consistent with its fiduciary duties, has concluded that the terms of the DIP Loan are fair and reasonable under the circumstances.  The Debtor believed that it would receive financing from GE on unsecured terms.  Post-petition, GE was unwilling to proceed with a post-petition loan on that basis.  As such, under the circumstances, Wells Fargo is the only willing lender and able to make the loan needed by the Debtor in this case on the timeline as needed by the Debtor.  Under the circumstances of this case, the loan offered by the DIP Lender is the only loan and, as such, the best loan available to the Debtor.

---

[1] To the extent the terms in Exhibit A are deemed to provide a priming lien of Wells Fargo's position against Wells Fargo, the provisions of 11 U.S.C. § 364(d) are likewise met, since Wells Fargo's offer to loan is the only loan made available or communicated to the Debtor.
[2] 3 Collier on Bankruptcy P 364.03 (16th 2025)

**F.      Need For Interim Financing Pending The Final Hearing
And Terms Of Such Interim Financing**

11.      Pursuant to Bankruptcy Rule 4001(c)(2), a minimum of fourteen (14) days' notice

is required before a Final Hearing on this Motion may commence.  However, such Rule provides

that the Court "may conduct a preliminary hearing before such fourteen (14) day period expires,

but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate

and irreparable harm to the estate pending a final hearing." Fed.R. Bankr. P. 4001(c)(2).

12.      As noted above, it is critical to the success of this chapter 11 case that the Debtor

be able to obtain debtor-in-possession financing.  Based on the status of the Debtor's business, it

is critical that the Debtor be permitted to enter into the DIP Loan and to draw funds thereon sooner

than the fourteen (14) days' notice required under Bankruptcy Rule 4001 for a Final Hearing on

this Motion.   Accordingly, Debtor seeks interim approval of this Motion as permitted by

Bankruptcy Rule 4001 to borrow up to $725,000.  This amount would only be borrowed if and

only to the extent necessary to cover delays in collection of accounts receivable, in accordance

with the Cash Collateral Budget.  The Debtor believes that it will suffer immediate and irreparable

harm in the absence of an Interim Order and approval of interim borrowings under the DIP Loan.

In the absence of this post-petition financing, the Debtor's attempts to reorganize would be

immediately and irreparably jeopardized.

**G.      Notice With Respect To Interim Financing Order**

13.      The Debtor believes that the terms and conditions of the DIP Loan represent the

most favorable option for post-petition financing, and that the DIP Loan is necessary, appropriate,

and essential to avoid immediate and irreparable harm to the Debtor, its estate, and its creditors.

The Debtor respectfully requests that, pending a Final Hearing on this Motion, the terms and

provisions outlined in Exhibit A hereto be implemented and approved on an emergency interim basis, to the extent of authorizing the Debtor to borrow up to $725,000.

14.     Accordingly, given the exigencies of the situation and the Debtor's immediate need for the DIP Loan, the notice provided herein is sufficient and appropriate under the circumstances of this case.  The Debtor will provide written notice to Wells Fargo (its only secured creditor), the 20 largest unsecured creditors of the Debtor, the Office of the United States Trustee, and the DIP Lender.  Based upon the service completed on September 8, 2025, the Debtor believes it has good email addresses for all such parties and will provide urgent service immediately after the filing of this Motion.  Further, the Debtor, through proposed counsel, has discussed the subject matter of this Motion with Wells Fargo and counsel for the U.S. Trustee's Office in advance of the filing of this Motion.

### H.      Notice And Service With Respect To Final Order

15.     Pursuant to Bankruptcy Rule 4001, the Debtor respectfully requests that the Court set a date for a Final Hearing after expiration of the fourteen (14) day period required by Bankruptcy Rule 4001.  The Debtor will serve a notice of such Final Hearing on this Motion, together with a copy of the Interim Order, upon all creditors and parties in interest, as soon as practicable after entry of the Interim Order, by regular U.S. mail, postage prepaid.  The Debtor asks the Court to find that such notice is sufficient and appropriate under the circumstances.  The Debtor also asks the Court to set a deadline for filing objections to entry of the Final Order.

### I.      Compliance With F.R.B.P. 4001 and L.B.R. 4001-3

16.     The summary of terms required by F.R.B.P. 4001 and L.B.R. 4001-2(a)(2) [made applicable hereto by L.B.R. 4001-3(a)] is set forth in Part II.B, *supra*. and in the Introductory Statement at the beginning of this Motion.

17.     The checklist required by L.B.R. 4001-2(a)(3) [made applicable hereto by L.B.R. 4001-3(a)] is attached hereto as Exhibit C.

### J.     No Previous Requests

18.     No previous motion or other requests for relief sought in this Motion have been made to this or any other court.

### K.     Final Hearing

19.     If no written objections are filed by a party in interest, the Debtor requests that the Interim Order be deemed a Final Order for all purposes.  If, however, a Final Hearing is necessary, the Debtor requests that a Final Hearing on this Motion be scheduled at the earliest date permitted under Bankruptcy Rule 4001(c).

### III.     CONCLUSION

**WHEREFORE**, the Debtor requests that the Court (i) issue the Interim Order substantially in the form annexed hereto as **Exhibit B**; (ii) after the Final Hearing, issue the Final Order, substantially in the form to be filed with the Court; and (iii) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

CTL-Aerospace Inc.                          COOLIDGE WALL CO., L.P.A.

*/s/ Scott Crislip* **by P. Friesinger per email authority received 9/9/2025**          */s/ Patricia J. Friesinger*
_____          _____
Scott Crislip, President                          Patricia J. Friesinger (0072807)
                                           33 West First Street, Suite 600
                                           Dayton, Ohio 45402
                                           Tel: 937/223-8177  Fax: 937/223-6705
                                           E-Mail: friesinger@coollaw.com

                                           *Proposed Counsel for Debtor and Debtor-In-Possession CTL-Aerospace, Inc.*

**4939-0696-7399, V. 2**

**Exhibit A**

## I.    ADDITIONAL TERMS OF POSTPETITION DEBT

1.    <u>Agreement to Make Advances</u>.

     **a.**    **Maximum Commitment.** The maximum principal amount of the Postpetition Loans is Seven Hundred, Twenty-Five Thousand Dollars ($725,000) (the "<u>Maximum Commitment</u>").

     **b.**    **Borrowing Procedures**. On the date hereof, subject to the Postpetition Advance Requirements being met, Postpetition Lender will advance to Debtor an amount equal to the amount by which Debtor's payroll obligations due and payable the week ending September 12, 2025 exceeds the amount of cash on hand available to the Debtor based on the Budget.

     Debtor may receive one (1) additional advance of Postpetition Debt (the "<u>Second Postpetition Advance</u>") in an amount equal to the lesser of (1) the difference between the Maximum Commitment and the total principal amount of Postpetition Debt then outstanding and (ii) the cash shortfall shown in the Budget for the week ending September 19, 2025. The Second Postpetition Advance will be made no earlier than September 15, 2025 and no later than September 17, 2025; *provided that* there will be no obligation to make the Second Postpetition Advance if the Postpetition Advance Requirements are not satisfied. For the avoidance of doubt, nothing herein requires Postpetition Lender to advance any Postpetition Debt in excess of the Maximum Commitment.

     **c.**    **Postpetition Advance Requirements**. Any advancement of Postpetition Debt is subject to the following conditions precedent being satisfied, as determined in Postpetition Lender's reasonable determination:

          **i.**    Borrower has submitted to Postpetition Lender, at least one (1) Business Day in advance for the Second Postpetition Advance, a written Notice of Borrowing representing, with appropriate support, that the Postpetition Advance Requirements have been satisfied.

          **ii.**    The conditions set forth in Section 3.2(a) of the Prepetition Domestic Credit Agreement are satisfied; *provided that* the (i) existence of the Existing Defaults will not prevent

satisfaction of Section 3.2(a)(ii) and (ii) satisfaction of Section 3.2(a)(iv) will not be required.

    **iii.**    The Financing Order will be in full force and effect and not subject to any challenge or pending appeal.

    **iv.**    **No Event of Default exists under this Agreement or the Financing Order and no event or** condition which with notice, or passage of time, or both, would constitute an Event of Default, exists.

    **v.**    **Debtor has provided Postpetition Lender with evidence satisfactory to Postpetition Lender in its reasonable discretion that the proceeds of any Postpetition Debt will be used in accordance with the Budget and Budget Compliance Covenants.**

2.    <u>Cash Management Requirements</u>. After the Petition Date and subject to the terms and conditions of the Financing Order, Debtor will continue to comply with the cash management and dominion covenants of the Prepetition Credit Agreements as in effect on the Petition Date; *provided that* consistent with the Financing Order, prior to the Termination Date, Postpetition Lender will not automatically apply funds held in any bank account to the outstanding Postpetition Debt.

3.    <u>Interest Rate</u>. Postpetition Debt will incur interest as if it were a "Base Rate Loan" under the Prepetition Domestic Credit Agreement, without giving effect to the Default Rate. For the avoidance of doubt, following an Event of Default under this Agreement or the Financing Order, interest on the Postpetition Debt will accrue at the Default Rate.

4.    <u>Maturity Date</u>. The Maturity Date of the Postpetition Loan is September 19, 2025.

5.    <u>Financial Covenant Holiday</u>. From the period beginning on the Petition Date and until the Maturity Date hereunder, Debtor will not be required to comply with the financial covenants set forth in Article VII of the Prepetition Domestic Credit Agreement.

**EXHIBIT B**
**[THIS DOCUMENT REMAINS SUBJECT TO REVIEW BY WELLS FARGO, THE DEBTOR,
AND THE U.S. TRUSTEE'S OFFICE]**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 25-12226 |
| | : | |
| CTL-AEROSPACE, INC. | : | Chapter 11 |
| | : | |
| DEBTOR-IN-POSSESSION. | : | Judge Beth A. Buchanan |
| | : | |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105(a), 361, 362 AND 363, FEDERAL
BANKRUPTCY RULES 2002, 4001 AND 9014, AND LOCAL RULE 4001-2:
(I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL; (II)
GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE
AUTOMATIC STAY; (IV) SCHEDULING AND APPROVING THE FORM
AND METHOD OF NOTICE OF FINAL HEARING; AND (V) GRANTING
RELATED RELIEF**

_____

THIS MATTER came before the Court for hearing on September 10, 2025 at 10:00 a.m.

(the "Interim Hearing") on the *Emergency Motion Of The Debtor And Debtor-In-Possession For*

*An Interim Order Under 11 U.S.C. §§ 105(A), 361, 362 And 363, Federal Bankruptcy Rules*

*2002, 4001 And 9014, And Local Rule 4001-2: (I) Authorizing Debtor To Use Cash Collateral;*

1

*(II) Granting Adequate Protection; (III) Modifying The Automatic Stay; (IV) Scheduling And*

*Approving The Form And Method Of Notice Of Final Hearing; And (V) Granting Related Relief*

(the "Motion"), filed by the debtor and debtor-in-possession, CTL-Aerospace, Inc. (the

"Debtor") in the above-captioned chapter 11 case (the "Case"); the Debtor having filed a

voluntary petition under Chapter 11 of Title 11, United States Code, on September 8, 2025 (the

"Petition Date"), and having requested in the Motion entry of interim and final orders:

(1) authorizing and approving, pursuant to section 363 of the Bankruptcy Code, the

Debtor's use of Cash Collateral (as defined herein)[1] of Wells Fargo Bank, National

Association ("Prepetition Lender");

(2) granting the Wells Fargo (as defined herein) (a) adequate protection, including,

without limitation, adequate protection against the diminution in the value or amount of

the Prepetition Collateral (as defined herein), (b) Replacement Liens (as defined herein) on

Postpetition Collateral (as defined herein); and

(3) granting any further and related relief as the Court deems just and equitable.

Upon the record of the Case and the record of the Interim Hearing, good and sufficient

cause appearing therefor, and it appearing to be in the best interests of the Debtor's estate

and creditors;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND**

**CONCLUSIONS OF LAW ON AN INTERIM BASIS FOR PURPOSES OF ENTERING**

**THIS INTERIM ORDER:**

A. On the Petition Date, the Debtor filed a voluntary petition under chapter 11 of the

---

[1]    Capitalized terms used herein but not otherwise defined have the meanings given to them on Exhibit A.

27487804 v2

Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio (the "Bankruptcy Court"). The Debtor is continuing in the management and possession of its business and properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (G), (K), (M) and (O). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C. Sufficient and adequate notice of the Motion has been provided under the urgent circumstances present and based upon the notice sent to the Interim Noticed Parties (defined below), pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by section 363(b) of the Bankruptcy Code, and no further notice or, or interim or preliminary hearing on, the Motion or this Interim Order is necessary or required.

D. The use of Cash Collateral (as defined herein) is granted, only upon the terms and conditions contained in this Interim Order.

E. It is in the best interests of the Debtor's creditors and the estate that it be allowed to continue its operations under the terms and conditions set forth herein.

F. Notice of the relief sought by the Motion, and the Interim Hearing with respect thereto, pursuant to Bankruptcy Rules 2002 and 4001(b) and (d) and Bankruptcy Code Section 102(1), as required by Bankruptcy Code section 363(b) has been given to the following parties in interest: the U.S. Trustee, all secured creditors and the creditors holding the twenty (20) largest unsecured claims against the Debtor's estate (collectively, the "Interim Noticed Parties").

G. Subject to the rights of parties in interest as set forth in paragraph 6 below, the Debtor has admitted, stipulated and agreed:

3

27487804 v2

(i)      The Senior Secured Indebtedness.    The Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship among Debtor and Prepetition Lender.

(ii)      The Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents;

(iii)      As of the Petition Date, Debtor is liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed secured claim in an amount not less than $14,972,218.24 (composed of (a) $6,120,127.36 on account of Domestic Revolving Loans under the Prepetition Domestic Credit Agreement; (b) $5,098,339.56 on account of EXIM Revolving Loans under the Prepetition EXIM Credit Agreement; (c) $3,333,333.32 on account of the Term Loan under the Prepetition Domestic Credit Agreement; and (d) $420,418.00 on account of the Equipment Purchase Loan under the Prepetition Credit Agreement), exclusive of accrued and accruing Allowable 506(b) Amounts;

(iv)      No offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise;

(v)      the Prepetition Liens are Priority Liens, subject only to Permitted Priority Liens, and secure payment of all of the Prepetition Debt;

(vi)      Debtor does not have, and hereby releases, and is forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Documents, the Prepetition Liens, the Prepetition Debt or otherwise, against the Prepetition Lender and its affiliates, subsidiaries, agents, officers, directors, employees, professionals, advisors,

4

predecessors in interest, successors and assigns.

H.  The Debtor represents as follows:

(i)      that without the use of Cash Collateral proposed by the Motion, the Debtor will not have the funds necessary to pay trade vendors, wages and benefits, suppliers, overhead and other expenses necessary for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and properties.  The Debtor has requested that pursuant to this Interim Order and the budget attached hereto as Schedule 1 (the "Budget"), that Prepetition Lender make available to the Debtor Cash Collateral, to be used by the Debtor solely for the purposes set forth in the Budget.  The ability of the Debtor to continue its business under Chapter 11 of the Bankruptcy Code depends upon the Debtor utilizing the Cash Collateral.  Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's business, the management and preservation of its assets and properties, and is in the best interests of the Debtor, its estate and creditors;

(ii)      that the terms and conditions contained in this Interim Order governing the use of Cash Collateral are in the best interests of the Debtor, its estate and creditors;

(iii)      that the Budget is a good faith estimate of the actual payments of expenses on postpetition claims necessary to be paid during the period for which the Budget covers (the "Budget Period") to continue the operations of the Debtor and preserve and maintain the value of the Debtor's assets and properties; and

(iv)      that the relief requested by the Motion is necessary to avoid immediate and irreparable harm to its estate.

I.  Good, adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion, and the immediate entry of this Interim Order, and such entry is necessary

5

to prevent irreparable harm to the Debtor's estate.  To the extent any objections were made to the relief sought in the motion and entry of this Interim Order (and not withdrawn prior to the entry of this Interim Order) such objections are hereby overruled.

J.   Prepetition Lender has consented to the terms of this Interim Order and is entitled to adequate protection as set forth herein pursuant to Bankruptcy Code §§ 361, 362, 363 and 364 for any diminution in the value of such interests in the Prepetition Collateral from and after the Petition Date.

K.  The terms of the Postpetition Debt have been negotiated at arm's length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

L.   The terms and conditions of the Postpetition Documents are fair and reasonable, the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.

M.  The Debtor is unable to procure financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code, without the grant of the Postpetition Liens described herein.  The Debtor has been unable to procure the necessary financing on terms more favorable than the financing offered by the Postpetition Lender pursuant to the Postpetition Documents and this Interim Order.

N.  Under the circumstances of this Case, this Order is a fair and reasonable response to Debtor's request for Lenders' consent to the use of Cash Collateral and provision of Postpetition Debt, and the entry of this Order is in the best interest of Debtor's estate and its creditors.

27487804 v2

O.  There has not been an examiner or trustee appointed in this case. In the future, the Budget may provide for a carve-out for proposed counsel to the Debtor for fees that may be approved in the future.  Funds subject to any such carve out provision shall remain property of the bankruptcy estate until fees are authorized by Court order and such funds are actually paid to the approved professionals.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.  <u>Motion Granted</u>.  The Motion is GRANTED on an interim basis as set forth herein.

2.  <u>Authorization to Use Cash Collateral</u>.  The Debtor is hereby authorized to use Cash Collateral, (a) solely in accordance with and pursuant to the terms and provisions of this Order; and (b) only to the extent required to pay those expenses enumerated in the Budget as and when such expenses become due and payable (without any prepayments of expenses). Prior to the Termination Date, the Debtor may not use or seek to use Cash Collateral other than pursuant to the terms of this Order.

a.  *Cash Collateral in Prepetition Lenders' Possession*. The Lenders are authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or control which constitute Aggregate Collateral or proceeds thereof and deposit such funds in the collection account as Cash Collateral in accordance with Paragraph 3 of this Order.

3.  <u>DIP Account</u>.  The Debtor shall have its existing bank accounts and cash management system, pursuant to separate order, approved as a Debtor-in-Possession accounts and shall immediately deposit all cash received by it into its existing collection account with Prepetition Lender and will direct all customers to deposit all payments into the existing collection account.

7

4.   <u>Budget Limitations on Cash Collateral Usage</u>.  All Cash Collateral must be used strictly in accordance with the terms of the Budget and the Budget Compliance Covenants.  The Debtor shall not, without prior written consent of Lenders, use Cash Collateral in any manner in breach of or inconsistent with the Budget Compliance Covenants.  Any extension or other modification of the Budget shall be subject to the prior written approval of Prepetition Lender and Postpetition Lender.  The Debtor is not authorized to use any Cash Collateral to pay any type of expense not included in the Budget.

5.   <u>Adequate Protection of Prepetition Lender</u>. Prepetition Lender has consented to the terms of this Order and is entitled to adequate protection as set forth herein and to the extent required under Bankruptcy Code §§ 361, 362, 363 or 364 (including for any diminution in the value of such interests in the Prepetition Collateral from and after the Petition Date).

a.   *Priority of Prepetition Liens/Allowance of Prepetition Lender's Claim*. Subject only to the terms of Paragraph 6 of this Order: (1) the Prepetition Liens shall constitute Priority Liens, subject only to the Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligations of Debtor, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (4) Prepetition Lender's claims with respect to the Prepetition Debt shall for all purposes constitute an allowed secured claim within the meaning of Bankruptcy Code § 506 in an amount not less than $14,972,218.24, exclusive of accrued and accruing Allowable 506(b) Amounts.

b.   *Replacement Liens*. Prepetition Lender is hereby granted the Replacement Liens as adequate protection and security for any diminution in the value of the Prepetition

27487804 v2

Collateral. The Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtor or Prepetition Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall be subject only to the Prepetition Debt and Permitted Priority Liens; and (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case. Notwithstanding the foregoing, Debtor is authorized to and shall execute and deliver to Prepetition Lender such financing statements, mortgages, instruments and other documents as Prepetition Lender may reasonably request from time to time in respect of the Replacement Liens.

c.      *Allowed Bankruptcy Code § 507(b) Claim*. If and to the extent the adequate protection of the interests of Prepetition Lender in the Prepetition Collateral granted pursuant to this Order proves insufficient, Prepetition Lender shall have an allowed claim under Bankruptcy Code § 507(b) in the amount of any such insufficiency (the "Prepetition Lender 507(b) Claim"), with priority over: (1) all costs and expenses of administration of the Case that are incurred under any provision of the Bankruptcy Code; and (2) the claims of any other party in interest under Bankruptcy Code § 507(b). If and to the extent that Prepetition Lender asserts a claim under Bankruptcy Code § 507(b), Prepetition Lender shall file notice of such claim with the Court, serve all parties on this Case's electronic service list, and specify the amount of such claim. Objections to the amount of such Bankruptcy Code § 507(b) claim must be filed within twenty-one (21) days thereafter, and the Court shall determine any disputes not resolved by agreement among the parties.

d.      *Compliance with Budget and Variance Reporting*. The Debtors will comply with the Budget Compliance Covenants and Variance Reporting Covenants.

e.      *Engagement of Financial Advisor*. No later than September 12, 2025,

9

27487804 v2

Debtor will file a motion seeking approval of the employment of a financial advisor (*nunc pro tunc* to the application date) reasonably acceptable to Lenders on terms reasonably acceptable to Lenders (an "<u>Acceptable Financial Advisor</u>"). No later than October 10, 2025, Debtor will obtain an order approving engagement of an Acceptable Financial Advisor and will continue to retain an Acceptable Financial Advisor during the pendency of this Case.

      6.  <u>Authorization To Incur Postpetition Debt</u>.

      a.  *Postpetition Documents*. Debtor is hereby authorized and has agreed to: (1) execute the Postpetition Documents, including all documents that Postpetition Lender finds reasonably necessary to implement the transactions contemplated by this Order; and (2) perform its obligations under and comply with all of the terms and provisions of the Postpetition Documents and this Order. Upon execution and delivery thereof, the Postpetition Documents shall constitute valid and binding obligations of Debtor enforceable in accordance with their terms. To the extent there exists any conflict among the terms of the Motion, the Postpetition Documents, and this Order, this Order shall govern and control.

      b.  *Permitted Uses of Postpetition Debt*. Debtor is authorized and has agreed to incur Postpetition Debt prior to the Maturity Date of September 19, 2025 solely: (1) in accordance with the terms and provisions of this Order, (2) to the extent required to pay those expenses enumerated in the Budget, as and when such expenses become due and payable, and (3) to the extent the amount of Cash Collateral available to be used by Debtor in accordance with this Order is insufficient (other than on account of an Event of Default) to enable Debtor to pay expenses in the Budget that are due and payable. If Postpetition Lender advances monies to Debtor and Debtor uses such monies other than in accordance with the terms or provisions of this Order, such advances shall be considered Postpetition Debt for purposes of this Order.

27487804 v2

c.      *Highlighted Terms of Postpetition Debt*. Without limiting the foregoing, the following terms of the Postpetition Debt are specifically approved:

i.    Maximum Amount of Postpetition Loans. The maximum principal amount of the multi-draw term postpetition loan is $725,000.

ii.   Permitted Draws of Postpetition Loan. Debtor is permitted up to two (2) draws of Postpetition Loans.

iii.  Postpetition Letters of Credit. No letters of credit may be issued under or in connection with the Postpetition Agreement.

iv.   Interest. Postpetition Loans shall bear interest at a per annum rate equal to the Base Rate (as defined in the Prepetition Domestic Credit Agreement) plus, following an Event of Default, two percent (2.0%).

v.    Postpetition Debt Fees. There are no fees associated with the Postpetition Loan.

vi.   Maturity. The Postpetition Debt shall mature and be due and payable in full by Debtor on September 19, 2025, which date may be extended by Postpetition Lender in its sole and absolute discretion.

d.      *Superpriority Administrative Expense Status; Postpetition Liens*. The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Case that are incurred under any provision of the Code. In addition, Postpetition Lender is hereby granted the Postpetition Liens to secure the Postpetition Debt. The Postpetition Liens: (1) are in addition to the Prepetition Liens; (2) pursuant to Code §§ 364(c)(2), (c)(3) and (d), are Priority Liens (subject only to

11

27487804 v2

Permitted Priority Liens, the Prepetition Liens and Replacement Liens) without any further action by Debtor or Postpetition Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall not be subject to any security interest or lien which is avoided and preserved under Code § 551; (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case; (5) shall not be subject to Code § 510(c); and (6) upon approval of the Final Order, shall not be subject to any landlord's lien, bailee's rights, right of distraint or levy, security interest or other interest that any landlord, bailee, warehousemen or landlord's mortgagee may have in the Aggregate Collateral located on such leased premises. Notwithstanding the foregoing, Debtor shall execute and deliver to Postpetition Lender such financing statements, mortgages, instruments and other documents as Postpetition Lender may reasonably request from time to time, and any such documents filed by Postpetition Lender shall be deemed filed as of the Petition Date. Further, Prepetition Lender shall serve as agent for Postpetition Lender for purposes of perfecting Postpetition Lender's security interest in any Postpetition Collateral that requires perfection by possession or control, and all Prepetition Third Party Documents shall be deemed to be for the benefit of Postpetition Lender without further action by any party or order of court.

e.      *Prohibition Against Additional Debt*. Other than the Postpetition Debt, Debtor will not incur or seek to incur debt secured by a lien, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364: (1) Prepetition Lender and Postpetition Lender have both consented to such order; (2) at the time such an order is entered, there is no Aggregate Debt outstanding, and no obligation of Postpetition Lender to extend Postpetition Debt exists; or (3) such credit or debt is first used to pay the Aggregate Debt in full in cash.

12

27487804 v2

7.      <u>Reservation of Certain Third-Party Rights and Bar of Challenges and Claims</u>.  The
stipulations and representations contained in this Order, including, without limitation, in Paragraph
G, shall be binding on all parties in interest in this Case, unless and solely to the extent that (i) the
Debtor receives notice of a potential Challenge during the Investigation Period from any Challenge
Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed
Challenge.

a.      *Challenge Procedure*. During the Investigation Period, a Challenge Party
shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party
identifies a good faith basis to assert a Challenge, it must notify the Debtor during the Investigation
Period of its demand that the Debtor initiate an action or adversary proceeding relating thereto and
from the date that the Debtor is so notified, the Debtor shall have five (5) business days to notify
the Challenge Party of whether the Debtor intends to initiate such action and ten (10) business days
to initiate such action. If the Debtor notifies such Challenge Party that the Debtor does not intend
to initiate an action or adversary proceeding, or the Debtor fails to timely initiate its own action,
the Challenge Party shall have ten (10) business days from the receipt of such notice to initiate an
action or adversary proceeding. Nothing herein shall be deemed to grant standing in favor of any
Challenge Party absent further order of this Court, and nothing herein authorizes an adversary
proceeding to be brought on a motion. The Debtor, if timely notified of a potential Challenge, shall
retain authority to settle or compromise such Challenge in the exercise of its business judgment
(subject to court approval), whether or not a Challenge is brought by a Challenge Party.

b.      *Bar of Challenges and Claims*. If the Debtor does not receive notice of a
potential Challenge during the Investigation Period (or such later date as agreed in writing by
Prepetition Lender in its sole and absolute discretion or for cause shown by an order of this Court),

without further order of the Court, as of the end of the Investigation Period, (1) the claims, liens and security interests of the Prepetition Lender described herein shall be deemed to be allowed for all purposes in this Case and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, (2) the Debtor and its estate shall be deemed to have waived, released and discharged Prepetition Lender and its officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Debt, the Prepetition Liens, the Prepetition Documents or otherwise, and (3) the other stipulations in Paragraph G of this Order shall be deemed final and binding on all parties in interest in this Case for all purposes.

8.    <u>Right to Credit Bid</u>. In connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Bankruptcy Code § 363, Bankruptcy Code § 1129 or otherwise, pursuant to Bankruptcy Code § 363(k), Lenders shall have the right to use the Aggregate Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral.

9.    <u>Waiver of Right to Return/Consent to Setoff</u>. Debtor hereby waives its rights: (a) to return any of the Aggregate Collateral pursuant to Bankruptcy Code § 546(h); (b) to consent to any order permitting any claims pursuant to Bankruptcy Code § 503(b)(9); and (c) to consent to setoff pursuant to Bankruptcy Code § 553.

10.    <u>Indemnification</u>. Debtor shall indemnify and hold harmless Prepetition Lender in accordance with the Prepetition Credit Agreements, as applicable. None of such indemnification obligations shall be dischargeable or deemed unenforceable against a liquidating trust established,

14

under a plan of reorganization proposed by Debtor, without Prepetition Lender's prior written consent.

11.     No Marshaling. Prepetition Lender and Postpetition Lender shall not be subject to the doctrine of marshaling. The Aggregate Collateral will not be subject to the doctrine of marshaling.

12.     Maintenance, Insurance; Government Charges.   Except as otherwise provided herein, the Debtor shall maintain the Aggregate Collateral and ensure the proper maintenance of the Aggregate Collateral, including, as necessary, through incurrence and payment of expenses set forth in the Budget.  The Debtor, at its expense, shall (a) continue to at all times keep the Aggregate Collateral fully insured against all loss, peril and hazard, and (b) pay any and all post-petition taxes, assessments and governmental charges with respect to the Aggregate Collateral, whether or not the Debtor is obligated to do so under the Prepetition Loan Documents, and will provide Lenders with proof thereof upon written demand and will give Lenders access to its records in this regard.  Lenders will be listed as a lender loss payee or additional insured (as applicable) on all such insurance.

13.     Modification of Automatic Stay.  The automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit (a) the Debtor to grant the Replacement Liens as adequate protection to Prepetition Lender, and (b) the Debtor to create, and Lenders to perfect, any and all liens and security interests granted to Lenders hereunder; *provided, however,* that Lenders shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect any lien or security interest granted by this Interim Order or take any other action to perfect such liens and security interests, and such liens and security interests are hereby deemed properly perfected; *provided however*, that if any Lender shall, in its sole discretion, elect

15

for any reason to file, record or serve any financing statements or other document with respect to such liens and security interests, the Debtor shall execute the same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date required to implement the priority of such liens and security interests as provided in this Interim Order.

14.     <u>Prepetition Control Agreements</u>. All "Control Agreements" (as defined in the Prepetition Credit Agreements) in effect as of the Petition Date shall remain in full force and effect, notwithstanding the entry of any subsequent orders amending this Order.

15.     <u>No Surcharge</u>. In the exercise of its business judgment and in consideration for Lenders' consent to the use of Cash Collateral and provision of financing in accordance with this Order, Debtor (for itself and any Trustee) agrees that effective upon entry of the Final Order, there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by Lenders. Further, Debtor represents that the Budget contains all expenses that are reasonable and necessary for the operation of its businesses and the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes all items potentially chargeable to Lenders under Code § 506(c). Therefore, effective (i) upon entry of this Order, the Debtor (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), any "equities of the case" arguments, objections, or claims, and other rights under the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against the Lenders or the Aggregate Collateral, to the extent on account of or related to any fees and expenses incurred during the Budget Period that are not in the Budget, and (ii) upon entry of the Final Order, the Debtor (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action

27487804 v2

under Code § 506(c), any "equities of the case" arguments, objections, or claims, and other rights under the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against the Lenders or the Aggregate Collateral on any basis. In reliance on the foregoing, Lenders have consented to this Interim Order.

16.     <u>Events of Default</u>.  The occurrence of any one or more of the following events shall constitute a "Termination Event" under this Interim Order:

(a)     Debtor fails to comply with the Budget Compliance Covenants, Variance Reporting Covenants or the requirement to retain a financial advisor on the timelines set forth herein;

(b)     Debtor materially breaches any covenant in the Prepetition Credit Agreements related to the preservation of its corporate identity or assets and such failure continues for five (5) Business Days following notice from Postpetition Lender;

(c)     Debtor materially breaches the Postpetition Documents or fails to repay the Postpetition Debt in full in cash on the Maturity Date.

(d)     the Case is either dismissed or converted to a case under chapter 7 of the Bankruptcy Code;

(e)     an examiner with expanded powers is appointed in the Case;

(f)     the Debtor ceases operation of its business or takes any action for the purposes of effecting such cessation without the prior written consent of Lenders or inclusion of such action in a confirmed plan;

(g)     this Interim Order is reversed, vacated, stayed, amended, supplemented or

17

otherwise modified in a manner which shall materially and adversely affect the rights of Lenders hereunder;

(h)      the Debtor's failure to comply with or perform the terms and provisions of this Interim Order in strict adherence to the time period set forth herein or using Cash Collateral other than in accordance with the provisions of the Budget and this Interim Order;

(i)      any sale or other disposition of Aggregate Collateral is undertaken outside of the ordinary course of business, unless approved by this Court;

(j)      the automatic stay of Bankruptcy Code section 362 is lifted so as to allow a party other than Lenders to proceed against any material asset of the Debtor;

(k)      Debtor, without Lenders' prior consent, files a motion to incur debt secured by a lien with priority equal to or superior to the Postpetition Liens or Replacement Liens or which is given superpriority administrative expense status under Bankruptcy Code § 364(c);

(l)      Debtor files a motion to conduct a Bankruptcy Code § 363 sale of all or part of the Aggregate Collateral on terms unacceptable to Lenders;

(m)      any representation or warranty made by Debtor in any certificate, report or financial statement delivered to any Lender in connection with this Order proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading);

(n)      a Final Order is not entered into within twenty-one (21) days of the date of this Order;

(o)      the Debtor closes a sale of substantially all of the assets of the Debtor;

(p)      the Debtor proposes a chapter 11 plan that does not contemplate the

18

27487804 v2

repayment of the prepetition claim of Prepetition Lender in full in cash on the effective date of such plan; or

(q)     the Debtor files any motion seeking approval of any financing arrangement or lien with priority over the Prepetition Liens.

17.     <u>Remedies following Default</u>.  Upon the occurrence of a Termination Event and the giving of written notice (which may be given via email to counsel for Debtor) by any Lender:

(a)     The Debtor's authorization to use Cash Collateral shall terminate;

(b)     The Debtor shall immediately segregate all Cash Collateral and shall not be permitted to use Cash Collateral unless Lenders shall have given its prior written consent or the Court shall have entered an order, after a hearing upon notice to Lenders, authorizing such use;

(c)     Effective upon entry of a Final Order, on the third (3rd) business day after the Termination Date, at Lenders' election without further order of the Court: (1) Prepetition Lender shall have automatic and immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to it under the Prepetition Documents and applicable nonbankruptcy law; and (2) at any Lender's election, Debtor shall surrender the Aggregate Collateral to designees of such Lender and otherwise cooperate with Lenders in the exercise of their rights and remedies under the Prepetition Documents, Postpetition Documents, and applicable nonbankruptcy law, including, without limitation, by filing a motion to retain one or more agents to sell, lease or otherwise dispose of the Aggregate Collateral upon the request and subject to terms and conditions acceptable to Lenders. Notwithstanding the foregoing, during such three (3) business day period following the Termination Date, Debtor may seek an order of this Court determining that any Event of Default alleged to have given rise to the

19

Termination Date did not occur; *provided*, however, that during such three (3) business day period, Lenders shall have no obligation to consent to Cash Collateral use during such period.

18.      <u>No Limitation on Lenders</u>.  Nothing contained herein shall be construed as a waiver of any rights, remedies, claims or objections that Lenders may have under the Prepetition Documents, Postpetition Documents, the Bankruptcy Code, or applicable law, including any Lender's right to object to the entry of the Final Order or any further interim order on any ground or to seek modification of this Interim Order and the Cash Collateral used hereunder.

19.      <u>Reporting Obligations</u>.  Without limiting the Debtor's reporting obligations under the Prepetition Documents, the Debtor:

(a)      shall deliver to Lenders, no later than twenty-one (21) calendar days after the end of each month, a copy of the Debtor's monthly operating report for such month as filed with the Court and with the office of the U.S. Trustee (and such reports will be timely filed);

(b)      shall deliver to Lenders, within five (5) calendar days of the Debtors receipt thereof, copies of all audited financial statements or other similar financial statements which reflect the Debtor's assets and liabilities and results of operations; and

(c)      shall deliver to Lenders the Variance Reports contemplated by the Variance Reporting Covenants when required in the definition of Variance Reporting Covenants.

20.      <u>Books and Records</u>.  The Debtor is directed to keep its books and records of original entry current and updated, so that all business activity is posted to them in the ordinary course of the Debtor's business.

21.      <u>Good Faith</u>.  Pursuant to, and to the extent of, the provisions of Bankruptcy Code section 364(e), the validity of the Prepetition Lender 507(b) Claim and the validity and priority of

27487804 v2

the liens and security interests authorized or granted by this Interim Order shall be binding on the Debtor, its estate and their successors and assigns even if this Interim Order is reversed or modified on appeal.

22. <u>Payment of Professional Fees</u>. Notwithstanding any other provision of this Interim Order, payment of professional fees from Cash Collateral shall be subject to the Bankruptcy fee application process and the Budget. Retained professionals shall make such applications in accordance with any separate order establishing procedures for monthly and interim compensation and reimbursement of fees for professionals, or as otherwise required by applicable law or rules. Payment of compensation to Debtor's counsel may only be made to the extent ordered by the Court upon ruling on the Debtor's counsels' fee applications.

23. <u>Additional Documents</u>. The Debtor is hereby authorized to do and perform all acts and to make, execute and deliver all instrument sand documents which may be required or necessary for the performance of its obligations hereunder.

24. <u>Immediate Effect</u>. As permitted by Bankruptcy Rule 6004(h), the Court hereby orders that this Interim Order shall become effective immediately.

25. <u>Survival After Confirmation, Conversion or Dismissal</u>. The provisions of this Interim Order and any actions taken pursuant thereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting this Case from chapter 11 to chapter 7 of the Bankruptcy Code; *provided, further*, that the terms and provisions of this Interim Order, as well as the liens and security interests granted hereunder, shall continue in this Case or any successor case and such liens and security interests and the Prepetition Lender 507(b) Claim shall maintain their priority as provided by this Interim Order.

26. <u>No Limitation or Modification of Order</u>. Nothing in this Interim Order shall limit

21

any Lender's right to seek modification of this Interim Order.

27.     No Prejudice of Rights Against Third Parties.  Nothing in this Interim Order shall in any way prejudice or compromise any rights that any Lender may have against parties other than the Debtor, and the Prepetition Third Party Documents will remain in full force and effect with the same validity as existed immediately prior to the Petition Date.

28.     Effect on Third Parties.  The provisions of this Interim Order shall be binding on all third parties *provided* that any other secured party may seek adequate protection for its interests in any assets of the Debtor, if any, which adequate protection shall not contradict or otherwise interfere with the terms of this Interim Order.

29.     Service of the Order.  Within three (3) Business Days after the entry of this Interim Order, the Debtor shall serve a copy on (a) the Office of the U.S. Trustee; (b) counsel to any Committee, if any; (c) the creditors holding the 20 largest unsecured claims against the Debtor's estate; and (d) all secured creditors and any counsel thereto.

30.     Binding Effect.  The provisions of this Interim Order shall be binding upon and inure to the benefit of Lenders, the Debtor, the Debtor's estate and their respective successors and assigns (including any trustee appointed as a representative of the Debtor's estate or in any successor case).

31.     Controlling Effect.  To the extent that any provision of this Interim Order conflicts with any provision of any of the Prepetition Documents, this Interim Order is deemed to control and shall supersede the conflicting provision(s).  Except as modified herein and subject to the other provisions of this Order and the Bankruptcy Code, the Prepetition Documents shall remain in full force and effect with respect to the Prepetition Debt and the obligations of Debtor to provide financial      information      to      Lenders      and      to      maintain      its      property

27487804 v2

(but, for the avoidance of doubt, all commitments of Senior Lender to fund any loans or credits to Debtor have terminated). Without limiting the obligations of the Debtor or the rights of Prepetition Lender under the Prepetition Documents or Postpetition Lender under the Postpetition Documents, the Debtor agrees that Lenders and their representatives, investment advisors, professionals, consultants or designees may at any time and with reasonable notice to the Debtor, at the sole cost and expense of the Debtor, have access to (a) any of the premises that the Debtor directly or indirectly owns, leases or otherwise has a right to occupy or use, (b) all assets and properties of Debtor located on any such premises, including, without limitation, all books and records related to accounts or inventory or any other Aggregate Collateral and (c) any employee, officer, director, representative and consultant of the Debtor and any other Person employed or retained by the Debtor except to the extent access to information in such Person's possession would compromise the Debtor's attorney-client privilege.

32.    <u>Further Limitations on the Debtor</u>.  The Debtor will not do any of the following things without prior order of this Court:

(a)    Increase the wages of any insiders of the Debtor above the current rate paid such employees nor substantially enlarge the number of employees from the Debtor's historical number;

(b)    Incur any obligation or liability in excess of amounts provided in the Budget, whether with regarding to services to be provided to the Debtor, materials, inventory, supplies or equipment to be purchased by the Debtor, or otherwise.

(c)    Pay an amounts owing on any claim arising prior to the Petition Date, other than as may be otherwise provided for in an order of the Court.

33.    The Court will conduct a further hearing on the Motion on _____, 2025 at _____,

27487804 v2

as necessary, absent the submission of an agreed order.  At that further hearing or by agreed order, the Court may modify the provisions of this Order as provided for herein. **PARTIES ARE HEREBY PUT ON NOTICE THAT LENDERS WILL SEEK ADDITIONAL PROTECTIONS IN THE FINAL ORDER AS SET FORTH IN THE DEFINITION OF FINAL ORDER ATTACHED HERETO AS EXHIBIT A**. In the event this Interim Order is extended, all of the provisions hereof shall remain in full force and effect, except to the extent otherwise provided for in an order of the Court extending this Interim Order.

**IT IS SO ORDERED.**


Copies to: Default List

## EXHIBIT A

## DEFINED TERMS

1.      ***Aggregate Collateral***. Collectively, the Prepetition Collateral and the Postpetition Collateral.

2.      ***Aggregate Debt***. Collectively, the Prepetition Debt and the Postpetition Debt.

3.      ***Allowable 506(b) Amounts***. To the extent allowable under Bankruptcy Code § 506(b), interest at the default rate of interest as set forth in Section 2.5(a) of the Prepetition Domestic Credit Agreement and Section 2.5 of the Prepetition EXIM Credit Agreement, all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), and all costs and expenses at any time incurred by Prepetition Lender in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (b) the representation of Prepetition Lender in the Case, including in defending any Challenge.

4.      ***Bankruptcy Code***. The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended, and any successor statute. Unless otherwise indicated, all statutory section references in this Order are to the Bankruptcy Code.

5.      ***Budget***. The budget attached to this Order as Exhibit B, as amended, modified or supplemented from time to time, as may be agreed to by Lenders.

6.      ***Budget Performance Covenants***. Debtor will not permit (i) aggregate disbursements, measured on a cumulative basis on a line-item and an aggregate basis, to exceed 110% of the forecasted expenditures set forth in the Budget for any [two-week] period; (ii) aggregate cash receipts (excluding proceeds of any postpetition financing), measured on a cumulative basis to be less than 85% of the forecasted cash receipts set forth in the Budget for any [two-week] period; or (iii) aggregate actual sales measured on a cumulative basis to be less than 85% of the forecasted sales set forth in the Budget for any two week period.

7.      ***Case***. The chapter 11 case or any superseding chapter 7 case of the Debtor.

8.      ***Cash Collateral***. All "cash collateral," as that term is defined in Bankruptcy Code § 363(a) that is property of the Debtor and in which Prepetition Lender has an interest, all deposits subject to setoff rights in favor of Prepetition Lender, and all cash arising from the collection or other conversion to cash of the Prepetition Collateral, including, without limitation, from the ordinary course sale of inventory and the collection of accounts receivable and all sales of Aggregate Collateral outside of the ordinary course of business.

9.      ***Challenge***. A claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition Debt, the Prepetition Liens or any other claims or causes of action against Prepetition Lender, which any Committee or another party-in-interest may bring, in accordance with Paragraph 6 of this Order.

27487804 v2

10.     ***Challenge Party***. Any Committee, any Trustee, or a party-in-interest with the requisite standing.

11.     ***Committee***. Any official creditors' committee appointed to represent unsecured creditors in the Case pursuant to Bankruptcy Code § 1102.

12.     ***Final Hearing***. The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

13.     ***Final Order***. A final order entered on the Motion that authorizes Debtor to use Cash Collateral at or in connection with the Final Hearing, in form and substance acceptable to Lenders. For the avoidance of doubt, the Lenders will seek provisions in the Final Order providing for (i) payment of Allowable 506(c) Amounts to Senior Lender upon negative notice; (ii) Replacement Liens and Postpetition Liens on avoidance actions and so-called "chapter 5" causes of action; (iii) a waiver of 506(c) surcharge rights against Lenders and the Aggregate Collateral; and (iv) milestones relating to a sale or refinancing process reasonably acceptable to Lenders to cause the repayment in full in cash of the Prepetition Debt and Postpetition Debt.

14.     ***Investigation Period***. The period from date of this Order until the date that seventy-five (75) days after the date of this Order; *provided that* the Investigation Period for (i) any Committee will be automatically extended to be sixty (60) days after the date that a Committee is formed and (ii) for any Trustee, to the extent the Investigation Period has not already ended prior to the appointment of such Trustee, will be sixty (60) days after the appointment of such Trustee (it being agreed that, if no Trustee has been appointed within seventy-five (75) days after the date of this Order, the Challenge provisions will be binding upon any such Trustee).

15.     ***Lenders***. Prepetition Lender and Postpetition Lender collectively (and each, a "Lender").

16.     ***Permitted Priority Liens***. Collectively, liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Petition Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Petition Date.

17.     ***Postpetition Agreement***. That certain Postpetition Agreement, by and between Debtor and Postpetition Lender, as amended, modified, or supplemented from time to time consistent with this Interim Order.

18.     ***Postpetition Collateral***. All of the real and personal property of Debtor of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (including, subject to entry of the Final Order, claims and proceeds under Bankruptcy Code §§ 544, 547, 548, 549, 550 and 553), all leaseholds, all commercial torts, all other "Collateral" (as that term is defined in the Prepetition Credit Agreements), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

26

19.    ***Postpetition Charges***. Interest at the applicable rate of interest under the Postpetition Agreement and all fees, costs, and expenses provided for in the Postpetition Agreement, including those incurred by Postpetition Lender in connection with the Postpetition Debt (regardless of whether any such fees, costs, interest and other charges are included in the Budget).

20.    ***Postpetition Debt***. All indebtedness or obligations of Debtor to Postpetition Lender incurred on or after the Petition Date pursuant to this Interim Order or otherwise, including, without limitation, all Obligations (as defined in the Postpetition Agreement).

21.    ***Postpetition Documents***. The Postpetition Agreement and any "Loan Documents" (as that term is defined in the Postpetition Agreement).

22.    ***Postpetition Liens***. Priority Liens in the Aggregate Collateral, subject only to Permitted Priority Liens, Replacement Liens, and Prepetition Liens.

23.    ***Prepetition Collateral***. All of the "Collateral" (as that term is defined in the Prepetition Credit Agreements existing as of the Petition Date, and all proceeds, rents, issues, profits and products thereof.

24.    ***Prepetition Credit Agreements***. (i) that certain Credit Agreement, dated as of May 4, 2023 (such agreement as amended, restated or otherwise modified, the "Prepetition Domestic Credit Agreement"), by and among Debtor, CTL-Aerospace Nevada, Inc. ("Guarantor") and Prepetition Lender; and (ii) that certain EXIM Guaranteed Credit Agreement, dated as of May 4, 2023 (such agreement as amended, restated or otherwise modified, the "Prepetition EXIM Credit Agreement,"), by and among Borrower, Guarantor and Prepetition Lender.

25.    ***Prepetition Debt***. (a) All indebtedness or obligations under the Prepetition Documents as of the Petition Date, including all "Obligations" (as defined in the Prepetition Credit Agreements), and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Documents, plus (b) all Allowable 506(b) Amounts.

26.    ***Prepetition Documents***. The Prepetition Credit Agreements and the "Loan Documents" (as that term is defined in each Prepetition Credit Agreement).

27.    ***Prepetition Liens***. Prepetition Lender's asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Priority Liens.

28.    ***Prepetition Third Party Documents***. Collectively, Debtor's deposit account control agreements, leases, licenses, landlord agreements, warehouse agreements, bailment agreements, insurance policies, contracts or other similar agreements in which Prepetition Lender has an interest.

29.    ***Priority Liens***. Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Bankruptcy Code, any agreement, or applicable nonbankruptcy law.

27

30.     ***Replacement Liens***. Priority Liens in the Postpetition Collateral granted to Prepetition Lender pursuant to this Order.

31.     ***Trustee***. Any trustee appointed or elected in the Case or any chapter 7 trustee appointed in any successor case.

32.     ***Variance Reporting Covenants***. No later than the Tuesday of every week, Debtor will submit to Lenders (1) an updated cash-flow forecast in form and substance acceptable to Lenders (and, upon Lenders' approval of such forecast, which may be withheld in Lenders' sole and absolute discretion, such updated forecast will become the approved Budget); (2) a Borrowing Base Certificate that includes a narrative regarding any material changes from the previous week; (3) a reconciliation of all receipts collected, liabilities incurred, and liabilities paid in the immediately preceding week against the Budget, which reconciliation will include supporting documentation for all such receipts, liabilities, and payments and demonstration of compliance or non-compliance with the Budget Compliance Covenants; and (4) variance reports that include a narrative explaining any material, negative variances from the Budget related to receipts collected, liabilities incurred, and expenses paid and calculations showing compliance with the permitted variances described below (the reporting described in subparts (1) through (4) above, the "Variance Report"). Each submission of a Variance Report will be signed by an authorized officer of the Debtor, and such signature will be deemed a representation and warranty by such officer and the Debtor that the Variance Report is complete, true, and accurate and that any updated cash-flow forecast was prepared in good faith and contains a full and complete itemization by category of all costs, expenses, and fees of the Debtor that (i) the Debtor and such officer reasonably expect to pay or reasonably anticipate becoming obligated to pay during the applicable time period and (ii) are reasonable and necessary for the operation of the Debtor's businesses and the preservation of the Aggregate Collateral through the period for which the forecast runs.

27487804 v2