**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 25-12226 |
| | ) | |
| CTL-AEROSPACE, INC., | ) | Chapter 11 |
| | ) | |
| | ) | Judge Beth A. Buchanan |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I)
AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION CLAIMS OF
(A) CRITICAL VENDORS AND (B) 503(B)(9) CLAIMANTS, AND (II) GRANTING
RELATED RELIEF**

CTL-Aerospace, Inc. (the "Debtor") in their above-captioned chapter 11 case (the "Case")

respectfully states as follows in support of this motion:

**Relief Requested**

1.      The Debtor seeks entry of interim and final orders, substantially in the form

attached hereto as **Exhibit A** and **Exhibit B**, that provide that (a) upon receiving prior written

consent from Wells Fargo Bank, National Association ("Wells Fargo") (which consent shall be in

its sole and absolute discretion), authorizing the Debtor to pay in the ordinary course of business

certain prepetition claims held by certain (i) Critical Vendors and (ii) 503(b)(9) Claimants (each

as defined herein, and collectively, the "Trade Claimants"), in an aggregate amount not to exceed

$400,000.00 on an interim basis and in an amount to be determined on a final basis, and (b)

granting related relief.  In addition, the Debtor requests that the Court schedule a final hearing with

respect to the relief requested herein on September 30, 2025, at 10:00 a.m. (prevailing Eastern

Time).

1

## Jurisdiction

2.      The United States Bankruptcy Court for the Southern District of Ohio (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order 30-2* from the United States Bankruptcy Court for the Southern District of Ohio, dated October 10, 2019 (the "General Order").  The Debtor confirms their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 362, 363, 503(b), 541, 1107, and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, Rule 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Ohio (the "Local Rules"), and the General Order.

## Background

5.      On September 8, 2025 (the "Petition Date"), the Debtor commenced this Case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a), 1108 and 1184 of the Bankruptcy Code, the Debtor is operating its business and managing its affairs as a debtor-in-possession.  No examiner or statutory committee has been appointed in this Case.

6.      The facts and circumstances supporting this motion are set forth in the *Declaration of Scott Crislip in Support of Chapter 11 Petition and First Day Motions* [Docket No. 9].

**The Debtor's Trade Claimants**

7.       In the ordinary course of business, the Debtor operates as a build-to-print shop. The Debtor's ability to manufacture in a timely manner is critically important to their financial performance and depends on their prompt and continuous receipt of a wide range of goods and services.  Given the highly specialized nature of the supplies and materials used in the Debtor's business, the Debtor relies on specific suppliers to provide the Debtor with goods and services necessary for the Debtor's business to function properly.  For example, the Debtor has various sole source suppliers that provide the Debtor with raw material – if such materials do not adhere to certain specifications, the Debtor is unable to properly service their customers. Accordingly, there are only a certain number of suppliers that can service the Debtor's supply and business maintenance needs.

8.       Since the Petition Date, certain suppliers, particularly those suppliers that are not a party to an executory contract, have refused to continue their business relationship with the Debtor until certain prepetition claims are satisfied.  Absent the ability to compel their performance, certain of these suppliers may possess the ability to halt the Debtor's production. The Debtor is continuing to educate its suppliers about this Case and the differentiation of prepetition and postpetition claims, but the freefall nature of the Debtor's plight into bankruptcy, coupled with confusion and fear from suppliers, has had a deleterious impact on the Debtor in certain instances.

9.       Given the realities facing the Debtor, and the importance of the Debtor's suppliers to the Debtor's business enterprise, the Debtor determined that it was necessary and prudent to identify the suppliers that are most important to the Debtor's go-forward operations.  After a thorough review across all suppliers and continuing potential alternative suppliers, the Debtor determined, in the exercise of their business judgment, that goods and services provided by the Trade

Claimants, and the ability to pay a portion of the Trade Claims, are necessary at this critical juncture to the success of this Case, avoid irreparable harm to the Debtor's business, preserve the value of the Debtor's estate, and remain a going-concern.

10. Given the importance of the Debtor's suppliers to the Debtor's business enterprise, the Debtor determined that it was necessary and prudent to identify the suppliers that are most important to the Debtor's go-forward operations. The Debtor determined, in the exercise of their business judgment, that goods and services provided by the Trade Claimants, and the ability to pay a portion of the Trade Claims, are necessary at this critical juncture to the success of this Case, avoid irreparable harm to the Debtor's business, preserve the value of the Debtor's estate, and remain a going-concern.

11. By this motion, the Debtor seeks authority to pay, after receiving prior written consent from Wells Fargo, and based on the Debtor's reasonable business judgment, subject to the terms of the interim and final orders, up to approximately $400,000.00 of certain prepetition Trade Claims (as defined below) on an interim basis, and up to an amount to be determined on account of certain prepetition Trade Claims on a final basis.

**I.     Critical Vendors.**

12. Certain of the Debtor's vendors (collectively, the "Critical Vendors," and their claims, the "Critical Vendor Claims") provide goods and services that are necessary to the Debtor's business operations. Many of the Critical Vendors are sole-source or limited-source suppliers or service providers or provide a material economic or operational advantage when compared to other available vendors and service providers.

13. To identify the Critical Vendors, the Debtor, with the assistance of their advisors, customers, and Wells Fargo, shall review their books and records, consult operations management and purchasing personnel, review contracts and related agreements, and analyze

applicable laws, regulations, and historical practices. The Debtor only intends to make payments contemplated herein to the extent that the Debtor believes a Critical Vendor's failure to do business with the Debtor could significantly disrupt the Debtor's operations and cause material harm to the Debtor's business, goodwill, and market share and that treatment as a Critical Vendor is reasonably necessary to avoid such disruption. Specifically, in identifying the Critical Vendors, the Debtor shall examine each of their vendor or service provider relationships with the following five general criteria in mind: (a) whether a particular vendor is a sole-source or limited-source supplier or service provider of the quality and quantity required by the Debtor in a particular market; (b) whether the Debtor would be unable to obtain comparable products or services from alternative sources on a cost-effective basis within a reasonable timeframe; (c) whether a vendor is able or likely to refuse providing essential products or services to the Debtor if their prepetition balances are not paid; (d) whether an agreement or contract exists by which the Debtor could compel the vendor to continue performing on prepetition terms; and (e) whether the Debtor's inventory levels or service coverage is sufficient to meet customer demands while an alternative vendor is located. In addition, the Debtor and their advisors shall examine the health of each vendor relationship, their familiarity with the chapter 11 process, and the extent to which each vendor's prepetition claims could be satisfied elsewhere in the chapter 11 process.

14. In summary, the Debtor's selection process will balance the need to ensure that this Case does not disrupt their operations, adversely affect their market share, or injure their customer relationships, with the need to limit the expenditure of estate resources. To that end, the Debtor will undertake a lengthy process to ensure that the Critical Vendors are vital to the Debtor's ongoing operations. Paying targeted Critical Vendor Claims renders a benefit to the Debtor's

estate both monetarily and operationally by preserving liquidity and enabling the Debtor to operate smoothly during the Case.

15.     The Debtor's Critical Vendors comprise the following categories: (a) Materials Suppliers and Service Providers; (b) Propane and Gas Suppliers; (c) Repair and Maintenance Service Providers; and (d) Miscellaneous Critical Suppliers.  Each category is discussed below.

### A.     Materials Suppliers and Service Providers.

16.     In the ordinary course of business, the Debtor relies on certain suppliers for materials and related services that enable the Debtor to maintain manufacturing operations.  For example, the Debtor relies on OV services (*i.e.*, coating services) for parts the Debtor delivers to their customers.  Indeed, many of the Debtor's materials suppliers are local or regionally based and are one of the only available options to satisfy the Debtor's needs.  These materials are critical to ongoing operations to maintain the Debtor as a going-concern.  There is no assurance that the Debtor would be able to obtain alternative materials suppliers without disrupting essential operations.  Without a steady stream of materials, the Debtor will not be able to operate.  It is therefore critical that the Debtor have the authority to pay their materials vendors to continue these essential relationships.

### B.     Propane and Gas Providers.

17.     To conduct their day-to-day business, the Debtor requires a continuous and reliable supply of propane and gas to operate its equipment and machinery.  If the Debtor is unable to make payments to certain vendors who supply propane and gas, the Debtor's operations will be severely disrupted while the Debtor attempts to locate adequate replacement vendors.  Failing to pay these vendors would therefore significantly harm the Debtor's operations, employees, and creditors, and compromise their restructuring efforts.

C.      **Repair and Maintenance Service Providers.**

18.      The Debtor relies on a number of key service providers for the repair and maintenance of equipment, infrastructure, and facilities.  Although the Debtor performs routine maintenance and repair work during the ordinary course of business, the Debtor relies on specialized service providers for the repair and maintenance of certain specialized equipment.  The Debtor's current repair and maintenance service providers offer high-quality services that the Debtor is unable to replicate from other providers.  Therefore, preserving the Debtor's access to these service providers is critically important to the Debtor's ongoing operations.

D.      **Miscellaneous Critical Suppliers.**

19.      To the extent not categorized in this motion, and for the avoidance of doubt, as the Debtor continues operating postpetition, certain suppliers and service providers (*e.g.*, IT logistics service providers) may be identified as Miscellaneous Critical Suppliers.  Given the necessity to obtain Wells Fargo's previous written consent before paying a Critical Supplier, and to preserve the Debtor's optionality to ensure the going-concern of its manufacturing facility, Miscellaneous Critical Suppliers will serve as a reasonable and controlled backstop to avoid needless amendments and hearings concerning the relief requested herein.

II.      **503(b)(9) Claimants.**

20.      The Debtor has received certain goods or materials from various vendors (the "503(b)(9) Claimants," and their claims, the "503(b)(9) Claims," and together with the Critical Vendor Claims, the "Trade Claims") within the 20-day period before the Petition Date.  Many of the Debtor's relationships with the 503(b)(9) Claimants are not governed by long-term contracts.  Rather, the Debtor often obtain supplies on an order-by-order basis.  As a result, the 503(b)(9) Claimants may refuse to supply new orders or could reduce existing trade credit without payment of their prepetition claims.  The Debtor also believes certain 503(b)(9) Claimants could reduce the

Debtor's existing trade credit—or demand payment in cash-on-delivery—further exacerbating the Debtor's limited liquidity.  The Debtor believes that as of the Petition Date, they owe several million dollars on account of goods delivered within the 20 days prior to the Petition Date, the value of which may be entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code.  The Debtor believes that given (a) the ultimate administrative expense priority nature of these claims and (b) the vital role that many, if not all, of these vendors will likely have in the Debtor's successful restructuring, it is in the best interest of their estate to have authority to pay these claims (or a portion thereof) at the commencement of the Case.  Accordingly, the Debtor requests authority to pay certain 503(b)(9) Claims on both an interim and final basis.

**III.      Narrowly Tailored Relief.**

21.     The relief requested herein is narrowly tailored to facilitate the Debtor's restructuring efforts.  By contrast, the Debtor will suffer irreparable harm if essential goods and services are not provided by the Trade Claimants.  Moreover, the Debtor believes that there is a material risk that the Trade Claimants will refuse to perform postpetition if their prepetition claims are not paid.  Although the Debtor has historically negotiated favorable terms with its vendors, certain Trade Claimants may refuse to continue working with the Debtor in the absence of payment on the Trade Claims.

22.     While the Debtor typically enjoys good working relationships with the Trade Claimants, there are a limited number of vendors or service providers who can supply the Debtor with a quantity and quality of goods and services to meet their operational needs.  This provides such Trade Claimants with considerable bargaining power in the event of non-payment by the Debtor.  At a critical time in this Case, the loss of the Trade Claimants would significantly impair the Debtor's ability to maximize the value of their estate for the benefit of all stakeholders.

23.     By this motion, the Debtor seeks authority to set a fixed dollar amount of interim relief that can be used to satisfy Trade Claimants across any of the aforementioned categories.  This structure is necessary as the Debtor's analysis of the Trade Claims and their go-forward relationship with the Trade Claimants remains an active, ongoing process.  Allowing the Debtor to utilize an aggregate pool of funds to satisfy Trade Claims on an interim basis, in lieu of set dollar amounts for each category, allows the Debtor to continually analyze their business needs during the early days of this Case and as negotiations with Trade Claimants progress.  For these reasons, it is critical that the Debtor be authorized to utilize their reasonable business judgment to allocate funds where necessary to ensure a smooth landing into chapter 11 and prevent their manufacturing facility from being disrupted.

24.     The Debtor, with the assistance of their advisors, customers, and Wells Fargo, will continue to evaluate all Trade Claimants on an ongoing basis with the goal of ultimately determining an appropriate final allocation between each category of Trade Claimants.  The Debtor has every intention of using the relief requested herein to recoup working capital, prevent disruption in their supply chain, and maximize earnings, which will benefit all of the Debtor's stakeholders.

## IV.     Trade Terms Conditions.

25.     Subject to the Court's approval and Wells Fargo's prior written consent, the Debtor intends to pay the Trade Claims only to the extent necessary to avoid disruption of the Debtor's supply chain and to preserve their operations on a go-forward basis.  To that end, in return for paying the Trade Claims either in full or in part, the Debtor proposes that they be authorized to require that the Trade Claimants provide the Debtor with favorable trade terms for the postpetition procurement of goods and services from such Trade Claimants.  Specifically, the Debtor seeks authorization to condition payment of Trade Claims upon each Trade Claimant's agreement to

continue—or recommence—supplying products or services to the Debtor in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtor as those in place during the twelve months prior to the Petition Date, or as otherwise agreed by the Debtor in their reasonable business judgment with the consent of Wells Fargo (the "Customary Trade Terms"). The Debtor therefore seeks authorization to require certain Trade Claimants to enter into a contractual agreement evidencing such Customary Trade Terms, the form of which is attached hereto as **Exhibit C** (the "Customary Trade Terms Agreement").

26. More specifically, the Debtor may condition the payment of Trade Claims upon such Trade Claimant's agreement to continue supplying goods or service on Customary Trade Terms for the duration of this Case. Such Customary Trade Terms, once agreed to and accepted by a Trade Claimant, shall be a legally binding contractual arrangement between the parties governing the commercial arrangement. In addition, the Debtor requests that if any party accepts payment pursuant to the relief requested by this motion and thereafter does not continue to provide goods or services on Customary Trade Terms, then: (a) such payment may be deemed to be an improper postpetition transfer on account of a prepetition claim, and, therefore, immediately recoverable by the Debtor in cash upon written request; (b) upon recovery by the Debtor, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtor to such party, the Debtor may elect to recharacterize and apply any payment made pursuant to the relief requested by this motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtor such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

27.     Additionally, the Debtor does not seek authorization to honor prepetition

obligations arising under contract, except where the Debtor determines, in their business judgment,

such Trade Claimant may be capable of terminating its contract notwithstanding section 362(a) of

the Bankruptcy Code or may otherwise inflict immediate and irreparable harm on the Debtor by

their refusal to comply with their contractual obligations.

**Basis for Relief**

**I.      The Bankruptcy Code Permits the Court to Authorize the Debtor To Pay Trade
Claims Where Such Payments Are Necessary to Protect and Preserve the Estate.**

28.     Courts have recognized that it is appropriate to authorize the payment of

prepetition obligations where necessary to protect and preserve the estate, including an operating

business's going-concern value. *See, e.g.*, *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023

(Bankr. S.D. Ohio 1991); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999);

*In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98

B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.*

*(In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983).   In so doing, these courts

acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy

Code support the payment of prepetition claims.

29.     Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after

notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course

of business, property of the estate."  11 U.S.C. § 363(b)(1).  A court may authorize non-ordinary

course transactions using property of the estate pursuant to section 363(b) "when a sound business

purpose dictates such action." *Stephens Indus. Inc. v. McClung*, 789 F. 2d 386, 390 (6th Cir. 1986)

(approving a sale of assets pursuant to section 363(b)).  Courts have authorized payment of certain

prepetition claims pursuant to section 363(b) where there is a sound business purpose for doing

so.  *See, e.g., In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *James A. Phillips*, 29 B.R. at 397 (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); *Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages).

30.    Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses.  *See Eagle-Picher Indus.*, 124 B.R. at 1023 (authorizing payment of prepetition indebtedness where the "payment is necessary to avert a serious threat to the Chapter 11"); *Just for Feet*, 242 B.R. at 825−26.  Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See, e.g., Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("A general practice has developed however, where bankruptcy courts permit the payment of certain pre-petition claims pursuant to 11 U.S.C. §105, where the debtor will be unable to reorganize without payment.").  A bankruptcy court's use of its equitable powers to "authorize the

payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.[1]

31.     The relief requested herein is appropriate and warranted under the circumstances. The authority to pay certain Trade Claims in the initial days of this Case without disrupting their operations will maintain the integrity of the Debtor's supply chain, facilitate the sale of inventory and the Debtor's accounts receivable collection, and allow the Debtor to efficiently administer this Case. The payment of the Trade Claims will help the Debtor ensure that they receive the goods and services necessary for their business operations to continue in a safe and efficient manner. Accordingly, the Debtor respectfully submits that the Court enter an order authorizing the Debtor to pay the Trade Claims in the ordinary course of business.

**V.     The Debtor Should Be Authorized to Pay Claims Entitled to Administrative Expense Priority Pursuant to Section 503(b)(9) of the Bankruptcy Code.**

32.     Section 503(b)(9) provides administrative expense priority for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business." These claims must be paid in full for the Debtor to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A). Consequently, payment now only provides such parties with what they would be entitled to receive under a chapter 11 plan. Conversely, all creditors will benefit from the improved transition of the Debtor's operations into bankruptcy.

---

[1] Moreover, the General Order expressly contemplates this relief. General Order, Ex. A, at 9 (a motion to pay critical vendors may be filed as a first day motion).

33.     The Bankruptcy Code does not prohibit a debtor from paying such claims prior to confirmation.  As administrative claims incurred in the ordinary course of business, the Debtor believes they may pay such claims in accordance with their business judgment pursuant to section 363(c)(1) of the Bankruptcy Code.  *See, e.g.*, *In re Arts Dairy, LLC*, 414 B.R. 219, 221 (Bankr. N.D. Ohio 2009) (recognizing in the instance of section 503(b)(9) claims, that administrative claims arising from ordinary course of business payments will be paid when due, and not when the debtor's plan becomes effective); *In re Dura Auto. Sys. Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Oct. 31, 2006) Hr'g Tr. 49:21–23 ("I think arguably the [D]ebtor could pay its 503(b)(9) claimants without court approval.").  The timing of such payments also lies squarely within the Court's discretion.  *See In re Plastech Engineered Products, Inc.*, 394 B.R. 147 (Bankr. E.D. Mich. Sept. 16, 2008) (citing *In re Global Home Prods., LLC*, 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006)) (recognizing as well-settled case law that the timing of the payment of an administrative expense claim is left to the discretion of the court); *Arts Dairy, LLC*, 414 B.R. at 221 (same).

34.     The Debtor's ongoing ability to obtain goods as provided herein is key to their survival and necessary to preserve the value of their estate.  Absent payment of the 503(b)(9) Claims early in this Case—which merely accelerates the timing of payment and not the ultimate treatment of such claims under a chapter 11 plan—the Debtor could be denied access to the goods and services necessary to maintain the Debtor's business operations.  Failure to honor these claims in the ordinary course of business may also cause the Debtor's vendor base to withhold support for the Debtor during the chapter 11 process.  These vendors could accelerate or eliminate favorable trade terms.  Such costs and distractions could impair the Debtor's ability to stabilize their operations at this critical juncture to the detriment of all stakeholders.

35.     Indeed, courts in this circuit and in other jurisdictions have regularly authorized the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business. *See, e.g.*, *In re FirstEnergy Solutions Corp.*, No. 18-50757 (AMK) (Bankr. N.D. Ohio May 8, 2018) (authorizing payment of claims arising under section 503(b)(9)); *In re SCI Direct, LLC*, No. 17-61735 (RK) (Bankr. N.D. Ohio Aug. 30, 2017) (same); *see also In re Mission Coal Company, LLC*, No. 18-04177 (TOM) (Bankr. N.D. Ala. Nov. 21, 2018) (same); *In re Armstrong Energy, Inc.*, No. 17-47541-659 (KSS) (Bankr. E.D. Mo. Dec. 1, 2017) (same); *In re Arch Coal, Inc.*, No. 16-40120-705 (CER) (Bankr. E.D. Mo. Jan. 13, 2016) (same).

## VI.     The Debtor Should Be Authorized to Pay Critical Vendor Claims.

50.     Allowing the Debtor to pay Critical Vendor Claims pursuant to sections 363(b) and 105(a) of the Bankruptcy Code is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999). As described above, the Debtor requires a steady stream of products and services from their Critical Vendors to ensure continued operations. The Debtor's failure to pay some of the Critical Vendor Claims as set forth herein could harm the Debtor's ability to obtain necessary supplies or services, prevent the Debtor from preserving favorable trade terms, and increase the likelihood for significant disruptions to the Debtor's operations. This failure could, in turn, jeopardize numerous customer relationships and significantly impair the value of the Debtor's business. For these reasons, the Debtor believes the relief requested herein is necessary to preserve the value of their estate for the benefit of all stakeholders in this Case and should be granted.

51.     Indeed, reflecting the recognition that payment of prepetition claims of certain critical vendors, in fact, is both critical to a debtor's ability to preserve going-concerns and

maximize creditor recovery—thereby increasing prospects for a successful reorganization—courts in this jurisdiction and others routinely authorize payment of prepetition claims for critical vendors under sections 363(b) and 105(a) of the Bankruptcy Code.  *See, e.g.*, *In re Milacron Inc.*, No. 09-111235 (JVA) (Bankr. S.D. Ohio Mar. 11, 2009) (authorizing payments up to $13 million on an emergency basis to pay critical vendors); *see also In re FirstEnergy Solutions Corp.*, No. 18-50757 (AMK) (Bankr. N.D. Ohio May 8, 2018) (authorizing up to $54 million in critical vendor payments); *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Apr. 22, 2019) (authorizing payments of up to $80 million in prepetition claims to critical vendors); *In re ATD Corporation*, No. 18-12221 (KJC) (Bankr. D. Del. Oct. 24, 2018) (authorizing up to $239.7 million in critical vendor payments); *In re Alpha Natural Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Sept. 3, 2015) (order authorizing debtors to pay up to $44.5 million in critical vendor claims).

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

58.      Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, the Debtor believes an immediate transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtor's operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of this Case would severely disrupt the Debtor's operations at this important juncture.  For the reasons discussed herein, the relief requested is necessary for the Debtor to operate their business in the ordinary course and preserve the ongoing value of the Debtor's operations and maximize the value of their estate for the benefit of all stakeholders.  Accordingly, the Debtor submits that they have satisfied the "immediate and

irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

<div align="center">

**Waiver Bankruptcy Rule 6004(a) and 6004(h)**

</div>

59.   To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

<div align="center">

**Motion Practice**

</div>

60.   This motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this motion.  Accordingly, the Debtor submits that this motion satisfies Local Rule 9013-1(a).

<div align="center">

**Reservation of Rights**

</div>

61.   Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's, or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor that any liens

(contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's or any other party in interest's rights to subsequently dispute such claim.

### Notice

62.     The Debtor has provided notice of this motion to the following parties or their respective counsel: (a) the U.S. Trustee for the Southern District of Ohio; (b) the Debtor's twenty (20) largest unsecured creditors as reflected on the Debtor's petition; and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

### No Prior Request

63.     No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtor respectfully requests entry of interim and final orders, substantially in the form attached hereto as Exhibit A and Exhibit B, respectively, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

September 12, 2025

Respectfully submitted,

COOLIDGE WALL CO., L.P.A.

*/s/ Patricia J. Friesinger*
Patricia J. Friesinger (0072807)
Briana C. Breault (0099773)
33 West First Street, Suite 600
Dayton, Ohio 45402
Tel: 937/223-8177
Fax: 937/223-6705
E-Mail:  friesinger@coollaw.com
          breault@coollaw.com

*Proposed Counsel for Debtor and Debtor-In-Possession CTL-Aerospace, Inc.*

## Exhibit A

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-12226 |
| | ) | |
| CTL-AEROSPACE, INC., | ) | Chapter 11 |
| | ) | |
| | ) | Judge Beth A. Buchanan |
| Debtor. | ) | |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN
PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) 503(B)(9)
CLAIMANTS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the above-captioned debtor and debtor in possession
(the "Debtor") for entry of an interim order (this "Interim Order") (a) authorizing the Debtor to
pay, after receiving prior written consent from Wells Fargo Bank, National Association ("Wells
Fargo") (which consent shall be in its sole and absolute discretion), in the ordinary course of
business Trade Claims in an amount not to exceed $400,000.00 on an interim basis, (b) granting
related relief, and (d) scheduling a final hearing to consider approval of the Motion on a final basis,

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order 30-2* from the United States Bankruptcy Court for the Southern District of Ohio, dated October 10, 2019, and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, their creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth in this Interim Order.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on September 30, 2025, at 10:00 a.m. (prevailing Eastern Time). Any objections or responses to entry of a final order granting the relief requested in the Motion shall be filed on or before September 26, 2025, at 4:00 p.m. (prevailing Eastern Time).

3.      After receiving Wells Fargo's prior written consent, the Debtor is authorized, but not directed, to pay the Trade Claims in the ordinary course of business and consistent with their prepetition practices in an aggregate amount not to exceed $400,000.00 on an interim basis. Wells

Fargo may withhold, delay, or condition any consent contemplated by this Interim Order in its sole and absolute discretion, which may be exercised on a Trade Claim-by-Trade Claim basis.

4.      The Debtor is authorized to require that, as a condition to receiving any payments under this Interim Order, a payee continue to supply goods or services to the Debtor in accordance with the Customary Trade Terms. If a payee, after receiving a payment under this Interim Order, ceases to provide the Customary Trade Terms, then the Debtor may deem such payment to apply instead to any postpetition amount that may be owing to such payee or treat such payment as an avoidable postpetition transfer of property. If the Debtor applies any payment to a postpetition amount under this paragraph, this shall reduce the amounts authorized under this Interim Order for Trade Claims on a dollar-for-dollar basis. Any party that accepts payment from the Debtor on account of a Trade Claim shall be deemed to have agreed to the terms and provisions of this Interim Order.

5.      Nothing in this Interim Order authorizes the Debtor to accelerate any payments owing by it that are not otherwise due prior to the date of the Final Hearing.

6.      Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as

to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

7.     The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this Case with respect to prepetition amounts owed in connection with the relief granted herein.

8.     Notwithstanding the relief granted in this Interim Order, any payment made or to be made by the Debtor pursuant to the authority granted herein shall be subject to and in compliance with the *Interim Order Under 11 U.S.C. §§ 105(a), 361, 362 and 363, Federal Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2: (I) Authorizing Debtor to Obtain Post-Petition Financing; (II) Authorizing Debtor to Use Cash Collateral; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling and Approving the Form and Method of Notice of Final Hearing; and (VI) Granting Related Relief* [Docket No. 26]  (the "DIP Order").  To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

9.     For the avoidance of doubt, nothing herein will obligate Wells Fargo to advance any funds in excess of the $725,000 commitment set forth in the DIP Order or to advance funds in a manner inconsistent with the terms of the DIP Order or the Postpetition Agreement (as defined in the DIP Order).  Through its consent to the entry of this Interim Order, Wells Fargo has not

agreed, and will not be deemed to have agreed, to modify the DIP Order, the Postpetition Agreement, or the Budget (as defined in the DIP Order) in any manner to facilitate the payments contemplated hereby, and any agreement to such modifications is subject to Wells Fargo's approval in its sole and absolute discretion.

10.     The Debtor shall provide counsel to GE Aerospace, Wells Fargo, counsel to any statutory committee, and the U.S. Trustee with a weekly report on the status of payments made pursuant to this Interim Order.

11.     Nothing in this Interim Order authorizes the Debtor to accelerate any payments owing by the Debtor that are not otherwise due prior to the date of the Final Hearing.

12.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

13.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

15.     The Debtor is authorized to take all reasonable actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

16.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

SO ORDERED.

**<u>Exhibit B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 25-12226 |
|  | ) |  |
| CTL-AEROSPACE, INC., | ) | Chapter 11 |
|  | ) |  |
|  | ) | Judge Beth A. Buchanan |
| Debtor. | ) |  |
|  | ) |  |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN
PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) 503(B)(9)
CLAIMANTS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the above-captioned debtor and debtor in possession

(collectively, the "Debtor") for entry of an final order (this "Final Order") (a) authorizing the

Debtor to pay, after receiving prior written consent from Wells Fargo Bank, National Association

("Wells Fargo") (which consent shall be in its sole and absolute discretion), in the ordinary course

of business Trade Claims in an amount not to exceed $_____ on an final basis, and (b) granting

related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order* 30-2 from the United States

Bankruptcy Court for the Southern District of Ohio, dated October 10, 2019, and this Court having

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, their creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth in this Final Order.

2.      After receiving Wells Fargo's prior written consent, the Debtor is authorized, but not directed, to pay in the ordinary course of business and consistent with their prepetition practices: (a) the Critical Vendor Claims in an aggregate amount not to exceed $_____; and (b) the 503(b)(9) Claims in an aggregate amount not to exceed $_____; *provided* that the Debtor may reallocate such aggregate payment caps with respect to the Trade Claims on an as-needed basis with the prior written consent of Wells Fargo.  Wells Fargo may withhold, delay, or condition any consent contemplated by this Final Order in its sole and absolute discretion, which may be exercised on a Trade Claim-by-Trade Claim basis.

3.      The Debtor is authorized to require that, as a condition to receiving any payments under this Final Order, a payee continue to supply goods or services to the Debtor in accordance

2

with the Customary Trade Terms.  If a payee, after receiving a payment under this Interim Order, ceases to provide the Customary Trade Terms, then the Debtor may deem such payment to apply instead to any postpetition amount that may be owing to such payee or treat such payment as an avoidable postpetition transfer of property.  If the Debtor applies any payment to a postpetition amount, this shall reduce the amounts authorized under this Final Order for Critical Vendor Claims and 503(b)(9) Claims, as applicable, on a dollar-for-dollar basis.  Any party that accepts payment from the Debtor on account of a Trade Claim shall be deemed to have agreed to the terms and provisions of this Final Order.

4.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens

3

5.      For the avoidance of doubt, nothing herein will obligate Wells Fargo to advance any funds in excess of the $725,000 commitment set forth in the DIP Order or to advance funds in a manner inconsistent with the terms of the DIP Order or the Postpetition Agreement (as defined in the DIP Order).  Through its consent to the entry of this Final Order, Wells Fargo has not agreed, and will not be deemed to have agreed, to modify the DIP Order, the Postpetition Agreement, or the Budget (as defined in the DIP Order) in any manner to facilitate the payments contemplated hereby, and any agreement to such modifications is subject to Wells Fargo's approval in its sole and absolute discretion

6.      The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this Case with respect to prepetition amounts owed in connection with the relief granted herein.

7.      Notwithstanding the relief granted in this Final Order, any payment made or to be made by the Debtor pursuant to the authority granted herein shall be subject to and in compliance with the *Interim Order Under 11 U.S.C. §§ 105(a), 361, 362 and 363, Federal Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2: (I) Authorizing Debtor to Obtain Post-Petition Financing; (II) Authorizing Debtor to Use Cash Collateral; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling and Approving the Form and Method of Notice of Final Hearing; and (VI) Granting Related Relief* [Docket No. 26]  (the "DIP Order").  To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

8.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

9.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

10.     The Debtor is authorized to take all reasonable actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

11.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

SO ORDERED.

## Exhibit C

**Form of Customary Trade Terms Agreement**

[_____], 2025

To: [_____]

Dear Valued Vendor:

CTL-Aerospace, Inc. (the "Debtor") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Ohio (the "Bankruptcy Court") on September 8, 2025 (the "Petition Date"). The Debtor has requested authorization to pay the prepetition claims of certain parties (collectively, the "Vendors") in light of the importance of the products and services provided by such Vendors. On September [__], 2025, the Bankruptcy Court entered an order (the "Order") authorizing the Debtor, under certain conditions, to pay the prepetition claims of the Vendors pursuant to the terms of the Order. A copy of the Order is attached as **Exhibit A**.

Postpetition expenses may be entitled to administrative expense priority and can be paid in the ordinary course as provided in the Bankruptcy Code.

To receive payment on prepetition claims, each Vendor must agree to continue to supply goods and/or services to the Debtor based on the "Customary Trade Terms" which are defined as: (a) normal and customary trade terms, practices, and programs at least as favorable as those in effect between such Vendor and the Debtor within twelve months of the Petition Date, including, but not limited to, credit limits, pricing, cash discounts, timing of payments, and allowances or (b) such other trade terms that would be common in the industry and are acceptable to the Debtor in their sole business judgment.

For purposes of administration of this vendor payment program as authorized by the Bankruptcy Court (the "Vendor Payment Program"), the Debtor and you agree as follows:

1.     The estimated balance of the prepetition trade debt is $[●] consisting of $[●] incurred within 20 days of Petition Date (the "503(b)(9) Claim") and $[●] incurred more than 20 days before the Petition Date (net of any setoffs, credit, or discounts) (the "Vendor Claim");

2.     The Debtor will provisionally pay you [●]% of your Vendor Claim as provided in this agreement and itemized in **Exhibit 1** attached hereto;

3.     You will provide open credit terms consistent with the Customary Trade Terms and you agree to fully service, and, if applicable, immediately recommence supply and goods and services to, the Debtor as requested pursuant to the terms set forth herein;

4.     In consideration for payment of a portion of your Vendor Claim, you agree not to file or otherwise assert against the Debtor, their assets, or any other person or entity (or any of their respective assets or property whether real or personal), any lien (regardless of the statute or other legal authorization upon which such lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to you by the Debtor arising from

1

agreements entered into prior to the Petition Date.  Furthermore, if you have taken steps to file or assert such a lien prior to entering into this Agreement, you agree to take the necessary steps to remove such lien as soon as possible;

5.     You agree not to terminate any contract with the Debtor pursuant to sections 556, 560, or 561 of the Bankruptcy Code; and

6.     You agree that you will not require a lump sum payment upon confirmation of a plan in these chapter 11 cases on account of any administrative expense priority claim that you may assert, but instead agree that such claims will be paid in the ordinary course of business after confirmation of a plan under applicable Customary Trade Terms, if the plan provides for the ongoing operations of the Debtor.

Any payment of your Vendor Claim in the manner set forth in the Order may only occur upon execution of this agreement by a duly authorized representative of your company and the return of an executed version of this agreement to the Debtor.  Your execution of this agreement and return of the same to the Debtor constitutes an agreement by you and the Debtor:

1.     to the Customary Trade Terms and, subject to the reservations contained in the Order, to the amount of the Vendor Claim set forth above;

2.     that, for a period of no less than one year from the Petition Date, you will continue to supply the Debtor with goods pursuant to the Customary Trade Terms, and that the Debtor will pay for such goods in accordance with the Customary Trade Terms;

3.     that you have reviewed the terms and provisions of the Order and this agreement, and that you consent to be bound by such terms;

4.     that you have the requisite power and authorization to execute and deliver this agreement and to perform your obligations hereunder;

5.     that you will not separately seek payment for reclamation and similar claims outside the terms of the Order unless this agreement is terminated; and

6.     that if this agreement or any document relating to or constituting a part of this agreement terminates, or you later refuse to continue to supply goods to the Debtor on Customary Trade Terms, any payments received by you on account of your Vendor Claim will be deemed to have been in payment of then outstanding postpetition obligations owed to you and that you will immediately repay to the Debtor any payments made to you on account of your Vendor Claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or otherwise.

2

The Debtor and you also hereby agree that any dispute with respect to this agreement, any document relating to or constituting a part of this agreement, the Order, and/or your receipt of payments for your Vendor Claim shall be determined by the Bankruptcy Court.

If you have any questions about this agreement or our financial restructuring, do not hesitate to call [_____] at [_____].

<div style="margin-left:50%">

Sincerely,
[Debtor]
By: _____
Title: _____
Date: _____

</div>

Agreed and Accepted by:
[Name of Vendor]
By: _____
Title: _____
Dated: _____

3

**Exhibit 1**

| Vendor Name | Total Unsecured Prepetition Amount | Settlement Amount |
|---|---|---|
| [●] | $[●] | $[●] |