**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**



Beth A. Buchanan
United States Bankruptcy Judge

**Dated: September 30, 2025**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 25-12226 |
| | : | |
| CTL-AEROSPACE, INC. | : | Chapter 11 |
| | : | |
| DEBTOR-IN-POSSESSION. | : | Judge Beth A. Buchanan |
| | : | |

**FINAL ORDER UNDER 11 U.S.C. §§ 105(a), 361, 362 AND 363, FEDERAL BANKRUPTCY RULES 2002, 4001 AND 9014, AND LOCAL RULE 4001-2: (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING; (II) AUTHORIZING DEBTOR TO USE CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION; (IV) MODIFYING THE AUTOMATIC STAY; (V) SCHEDULING AND APPROVING THE FORM AND METHOD OF NOTICE OF FINAL HEARING; AND (VI) GRANTING RELATED RELIEF [DOC. 5 AND 18]**

THIS MATTER came before the Court for hearing on September 30, 2025 at 10:00 a.m.

(the "Final Hearing") on the *Emergency Motion Of The Debtor, CTL Aerospace, Inc. for: (A)*

*Interim and Final Orders Authorizing Debtor to Obtain Post-petition Financing; (B) Schedule a*

*Final Hearing on the Motion Pursuant to Bankruptcy Rule 4001, and (C) Granting Related Relief*

(the "Motion"), filed by the debtor and debtor-in-possession, CTL-Aerospace, Inc. (the

1

"Debtor") in the above-captioned chapter 11 case (the "Case"); the Debtor having filed a voluntary petition under Chapter 11 of Title 11, United States Code, on September 8, 2025 (the "Petition Date"), and having requested in the Motion entry of interim and final orders:

(1) authorizing and approving, pursuant to section 363 of the Bankruptcy Code, the Debtor's use of Cash Collateral (as defined herein)[1] of Wells Fargo Bank, National Association ("Prepetition Lender");

(2) granting the Wells Fargo (as defined herein) (a) adequate protection, including, without limitation, adequate protection against the diminution in the value or amount of the Prepetition Collateral (as defined herein), (b) Replacement Liens (as defined herein) on Postpetition Collateral (as defined herein); and

(3) granting any further and related relief as the Court deems just and equitable.

Upon the record of the Case and the record of the Final Hearing, good and sufficient cause appearing therefor, and it appearing to be in the best interests of the Debtor's estate and creditors;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW ON A FINAL BASIS FOR PURPOSES OF ENTERING THIS FINAL ORDER:**

A. On the Petition Date, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio (the "Bankruptcy Court").  The Debtor is continuing in the management and possession of its business and properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy

---

[1]    Capitalized terms used herein but not otherwise defined have the meanings given to them on Exhibit A.

Code.

B.  Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (G), (K), (M) and (O).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C.  Sufficient and adequate notice of the Motion has been provided under the circumstances present and based upon (I) the notice sent to the Interim Noticed Parties (defined below), pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by section 363(b) of the Bankruptcy Code, and (ii) the notice of that certain *Interim Order Under 11 U.S.C. §§ 105(a), 361, 362 and 363, Federal Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2; (I) Authorizing Debtor to Obtain Post-Petition Financing; (II) Authorizing Debtor to Use Cash Collateral; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling and Approving the Form and Method of Notice of Final Hearing; and (VI) Granting Related Relief*, entered on September 10, 2025 [D.I. 26] (the "Interim Financing Order") sent in accordance with Paragraph 28 of the Interim Financing Order, no further notice or, or interim or preliminary hearing on, the Motion or this Final Order is necessary or required.

D.  The use of Cash Collateral (as defined herein) is granted, only upon the terms and conditions contained in this Final Order.

E.  It is in the best interests of the Debtor's creditors and the estate that it be allowed to continue its operations under the terms and conditions set forth herein.

F.  Notice of the relief sought by the Motion, and the Final Hearing with respect thereto, pursuant to Bankruptcy Rules 2002 and 4001(b) and (d) and Bankruptcy Code Section 102(1), as required by Bankruptcy Code section 363(b) has been given to the following parties in interest:

the U.S. Trustee, all secured creditors and the creditors holding the twenty (20) largest unsecured claims against the Debtor's estate (collectively, the "Interim Noticed Parties").

G.  Subject to the rights of parties in interest as set forth in paragraph 7 below, the Debtor has admitted, stipulated and agreed:

(i)    The Senior Secured Indebtedness.  The Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship among Debtor and Prepetition Lender.

(ii)    The Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents;

(iii)    As of the Petition Date, Debtor is liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed secured claim in an amount not less than $14,972,218.24 (composed of (a) $6,120,127.36 on account of Domestic Revolving Loans under the Prepetition Domestic Credit Agreement; (b) $5,098,339.56 on account of EXIM Revolving Loans under the Prepetition EXIM Credit Agreement; (c) $3,333,333.32 on account of the Term Loan under the Prepetition Domestic Credit Agreement; and (d) $420,418.00 on account of the Equipment Purchase Loan under the Prepetition Credit Agreement), exclusive of accrued and accruing Allowable 506(b) Amounts;

(iv)    No offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise;

(v)    The Prepetition Liens are Priority Liens, subject only to Permitted Priority Liens, and secure payment of all of the Prepetition Debt;

(vi)     Debtor is not aware of, and hereby releases, any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Documents, the Prepetition Liens, the Prepetition Debt or otherwise, against the Prepetition Lender and its affiliates, subsidiaries, agents, officers, directors, employees, professionals, advisors, predecessors in interest, successors and assigns. In the event a chapter 11 trustee is appointed or this Case is converted to a Case under chapter 7 of the Bankruptcy Code prior to the conclusion of the Investigation Period, then, consistent with Paragraph 7 of this Final Order, if sufficient evidence exists to support chapter 5 claims against Prepetition Lender, any actual or constructive release or waiver of the Debtor's or its estate's chapter 5 claims against Prepetition Lender will not prevent such trustee from pursuing a chapter 5 claim against Prepetition Lender in accordance with Paragraph 7.

H.  The Debtor represents as follows:

(i)     that without the use of Cash Collateral proposed by the Motion, the Debtor will not have the funds necessary to pay trade vendors, wages and benefits, suppliers, overhead and other expenses necessary for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and properties.  The Debtor has requested that pursuant to this Final Order and the budget attached hereto as Schedule 1 (the "Budget"), that Prepetition Lender make available to the Debtor Cash Collateral, to be used by the Debtor solely for the purposes set forth in the Budget.  The ability of the Debtor to continue its business under Chapter 11 of the Bankruptcy Code depends upon the Debtor utilizing the Cash Collateral.  Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's business, the management and preservation of its assets and properties, and is in the best interests of the Debtor, its estate and creditors;

(ii)     that the terms and conditions contained in this Final Order governing the use of

Cash Collateral are in the best interests of the Debtor, its estate and creditors;

(iii)    that the Budget is a good faith estimate of the actual payments of expenses on postpetition claims necessary to be paid during the period for which the Budget covers (the "Budget Period") to continue the operations of the Debtor and preserve and maintain the value of the Debtor's assets and properties; and

(iv)    that the relief requested by the Motion is necessary to avoid immediate and irreparable harm to its estate.

I.   Good, adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion, and the immediate entry of this Final Order, and such entry is necessary to prevent irreparable harm to the Debtor's estate.  To the extent any objections were made to the relief sought in the motion and entry of this Final Order (and not withdrawn prior to the entry of this Final Order) such objections are hereby overruled.

J.   Prepetition Lender has consented to the terms of this Final Order and is entitled to adequate protection as set forth herein pursuant to Bankruptcy Code §§ 361, 362, 363 and 364 for any diminution in the value of such interests in the Prepetition Collateral from and after the Petition Date.

K.   The terms of the Postpetition Debt have been negotiated at arm's length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

L.   The terms and conditions of the Postpetition Documents are fair and reasonable, the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.

M.  The Debtor is unable to procure financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code, without the grant of the Postpetition Liens described herein.  The Debtor has been unable to procure the necessary financing on terms more favorable than the financing offered by the Postpetition Lender pursuant to the Postpetition Documents and this Final Order.

N.  Under the circumstances of this Case, this Order is a fair and reasonable response to Debtor's request for Lenders' consent to the use of Cash Collateral and provision of Postpetition Debt, and the entry of this Order is in the best interest of Debtor's estate and its creditors.

O.  There has not been an examiner or trustee appointed in this case. In the future, the Budget may provide for a carve-out for proposed counsel to the Debtor for fees that may be approved in the future.  Funds subject to any such carve out provision shall remain property of the bankruptcy estate until fees are authorized by Court order and such funds are actually paid to the approved professionals.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      <u>Motion Granted</u>.  The Motion is GRANTED on a final basis as set forth herein.

2.      <u>Authorization to Use Cash Collateral</u>.  The Debtor is hereby authorized to use Cash Collateral, (a) solely in accordance with and pursuant to the terms and provisions of this Order; and (b) only to the extent required to pay those expenses enumerated in the Budget as and when such expenses become due and payable (without any prepayments of expenses). Prior to the Termination Date, the Debtor may not use or seek to use Cash Collateral other than pursuant to the terms of this Order.

a.      *Cash Collateral in Lenders' Possession.* The Lenders are authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or control which constitute Aggregate Collateral or proceeds thereof and deposit such funds in the collection account as Cash Collateral in accordance with Paragraph 3 of this Order.

3.      <u>DIP Account</u>.   The Debtor shall have its existing bank accounts and cash management system, pursuant to separate order, approved as a Debtor-in-Possession accounts and shall immediately deposit all cash received by it into its existing collection account with Prepetition Lender and will direct all customers to deposit all payments into the existing collection account.

4.      <u>Budget Limitations on Cash Collateral Usage</u>.  All Cash Collateral must be used strictly in accordance with the terms of the Budget and the Budget Compliance Covenants.  The Debtor shall not, without prior written consent of Lenders, use Cash Collateral in any manner in breach of or inconsistent with the Budget Compliance Covenants.  Any extension or other modification of the Budget shall be subject to the prior written approval of Prepetition Lender and Postpetition Lender.  The Debtor is not authorized to use any Cash Collateral to pay any type of expense not included in the Budget.

5.      <u>Adequate Protection of Prepetition Lender</u>. Prepetition Lender has consented to the terms of this Order and is entitled to adequate protection as set forth herein and to the extent required under Bankruptcy Code §§ 361, 362, 363 or 364 (including for any diminution in the value of such interests in the Prepetition Collateral from and after the Petition Date).

a.      *Priority of Prepetition Liens/Allowance of Prepetition Lender's Claim.* Subject only to the terms of Paragraph 7 of this Order: (1) the Prepetition Liens shall constitute

Priority Liens, subject only to the Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligations of Debtor, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (4) Prepetition Lender's claims with respect to the Prepetition Debt shall for all purposes constitute an allowed secured claim within the meaning of Bankruptcy Code § 506 in an amount not less than $14,972,218.24, exclusive of accrued and accruing Allowable 506(b) Amounts.

b.      *Replacement Liens*. Prepetition Lender is hereby granted the Replacement Liens as adequate protection and security for any diminution in the value of the Prepetition Collateral. The Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtor or Prepetition Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall be subject only to the Prepetition Debt and Permitted Priority Liens; and (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case. Notwithstanding the foregoing, Debtor is authorized to and shall execute and deliver to Prepetition Lender such financing statements, mortgages, instruments and other documents as Prepetition Lender may reasonably request from time to time in respect of the Replacement Liens.

c.      *Allowed Bankruptcy Code § 507(b) Claim*. If and to the extent the adequate protection of the interests of Prepetition Lender in the Prepetition Collateral granted pursuant to this Order proves insufficient, Prepetition Lender shall have an allowed claim under Bankruptcy Code § 507(b) in the amount of any such insufficiency (the "Prepetition Lender 507(b) Claim"),

9

with priority over: (1) all costs and expenses of administration of the Case that are incurred under any provision of the Bankruptcy Code; and (2) the claims of any other party in interest under Bankruptcy Code § 507(b). If and to the extent that Prepetition Lender asserts a claim under Bankruptcy Code § 507(b), Prepetition Lender shall file notice of such claim with the Court, serve all parties on this Case's electronic service list, and specify the amount of such claim. Objections to the amount of such Bankruptcy Code § 507(b) claim must be filed within twenty-one (21) days thereafter, and the Court shall determine any disputes not resolved by agreement among the parties.

d.     *Compliance with Budget and Variance Reporting*. The Debtors will comply with the Budget Compliance Covenants and Variance Reporting Covenants.

e.     *Engagement of Financial Advisor*. No later than October 17, 2025, Debtor will obtain an order approving engagement of a financial advisor (*nunc pro tunc* to the application date) reasonably acceptable to Lenders on terms reasonably acceptable to Lenders (an "Acceptable Financial Advisor") and will continue to retain an Acceptable Financial Advisor during the pendency of this Case.

f.     *Sale Process Covenants*. The Debtors will comply with the Sale Process Covenants, including all milestones and deadlines (time being of the essence).

6.     Authorization To Incur Postpetition Debt.

a.     *Postpetition Documents*. Debtor is hereby authorized and has agreed to: (1) execute the Postpetition Documents, including all documents that Postpetition Lender finds reasonably necessary to implement the transactions contemplated by this Order; and (2) perform its obligations under and comply with all of the terms and provisions of the Postpetition Documents and this Order. Upon execution and delivery thereof, the Postpetition Documents shall constitute valid and binding obligations of Debtor enforceable in accordance with their terms. To the extent

there exists any conflict among the terms of the Motion, the Postpetition Documents, and this Order, this Order shall govern and control.

b.      *Permitted Uses of Postpetition Debt*. Debtor is authorized and has agreed to incur Postpetition Debt prior to the Maturity Date of September 26, 2025 solely: (1) in accordance with the terms and provisions of this Order, (2) to the extent required to pay those expenses enumerated in the Budget, as and when such expenses become due and payable, and (3) to the extent the amount of Cash Collateral available to be used by Debtor in accordance with this Order is insufficient (other than on account of an Event of Default) to enable Debtor to pay expenses in the Budget that are due and payable. If Postpetition Lender advances monies to Debtor and Debtor uses such monies other than in accordance with the terms or provisions of this Order, such advances shall be considered Postpetition Debt for purposes of this Order.

c.      *Highlighted Terms of Postpetition Debt*. Without limiting the foregoing, the following terms of the Postpetition Debt are specifically approved:

i.  Maximum Amount of Postpetition Loans. The maximum principal amount of the multi-draw term postpetition loan is $725,000.

ii.  Permitted Draws of Postpetition Loan. Debtor is permitted up to two (2) draws of Postpetition Loans.

iii.  Postpetition Letters of Credit. No letters of credit may be issued under or in connection with the Postpetition Agreement.

iv.  Interest. Postpetition Loans shall bear interest at a per annum rate equal to the Base Rate (as defined in the Prepetition Domestic Credit Agreement) plus, following an Event of Default, two percent (2.0%).

     v.   Postpetition Debt Fees. There are no fees associated with the Postpetition Loan.

    vi.   Maturity. The Postpetition Debt shall mature and be due and payable in full by Debtor on October 3, 2025, which date may be extended by Postpetition Lender in its sole and absolute discretion.

    d.   *Superpriority Administrative Expense Status; Postpetition Liens*. The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Case that are incurred under any provision of the Code. In addition, Postpetition Lender is hereby granted the Postpetition Liens to secure the Postpetition Debt. The Postpetition Liens: (1) are in addition to the Prepetition Liens; (2) pursuant to Code §§ 364(c)(2), (c)(3) and (d), are Priority Liens (subject only to Permitted Priority Liens, the Prepetition Liens and Replacement Liens) without any further action by Debtor or Postpetition Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall not be subject to any security interest or lien which is avoided and preserved under Code § 551; (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case; (5) shall not be subject to Code § 510(c); and (6) upon approval of the Final Order, shall not be subject to any landlord's lien, bailee's rights, right of distraint or levy, security interest or other interest that any landlord, bailee, warehousemen or landlord's mortgagee may have in the Aggregate Collateral located on such leased premises. Notwithstanding the foregoing, Debtor shall execute and deliver to Postpetition Lender such financing statements, mortgages, instruments and other documents as Postpetition Lender may reasonably request from time to time, and any such documents filed by Postpetition Lender shall be deemed filed as of the Petition Date. Further,

Prepetition Lender shall serve as agent for Postpetition Lender for purposes of perfecting Postpetition Lender's security interest in any Postpetition Collateral that requires perfection by possession or control, and all Prepetition Third Party Documents shall be deemed to be for the benefit of Postpetition Lender without further action by any party or order of court.

       e.     *Prohibition Against Additional Debt*. Other than the Postpetition Debt, Debtor will not incur or seek to incur debt secured by a lien, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364: (1) Prepetition Lender and Postpetition Lender have both consented to such order; (2) at the time such an order is entered, there is no Aggregate Debt outstanding, and no obligation of Postpetition Lender to extend Postpetition Debt exists; or (3) such credit or debt is first used to pay the Aggregate Debt in full in cash.

       7.    <u>Reservation of Certain Third-Party Rights and Bar of Challenges and Claims</u>.  The stipulations and representations contained in this Order, including, without limitation, in Paragraph G, shall be binding on all parties in interest in this Case, unless and solely to the extent that (i) the Debtor receives notice of a potential Challenge during the Investigation Period from any Challenge Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

       a.     *Challenge Procedure*. During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a good faith basis to assert a Challenge, it must notify the Debtor during the Investigation Period of its demand that the Debtor initiate an action or adversary proceeding relating thereto and from the date that the Debtor is so notified, the Debtor shall have five (5) business days to notify the Challenge Party of whether the Debtor intends to initiate such action and ten (10) business days

to initiate such action. If the Debtor notifies such Challenge Party that the Debtor does not intend to initiate an action or adversary proceeding, or the Debtor fails to timely initiate its own action, the Challenge Party shall have ten (10) business days from the receipt of such notice to initiate an action or adversary proceeding. Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court, and nothing herein authorizes an adversary proceeding to be brought on a motion. The Debtor, if timely notified of a potential Challenge, shall retain authority to settle or compromise such Challenge in the exercise of its business judgment (subject to court approval), whether or not a Challenge is brought by a Challenge Party.

b.     *Bar of Challenges and Claims*. If the Debtor does not receive notice of a potential Challenge during the Investigation Period (or such later date as agreed in writing by Prepetition Lender in its sole and absolute discretion or for cause shown by an order of this Court), without further order of the Court, as of the end of the Investigation Period, (1) the claims, liens and security interests of the Prepetition Lender described herein shall be deemed to be allowed for all purposes in this Case and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, (2) the Debtor and its estate shall be deemed to have waived, released and discharged Prepetition Lender and its officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Debt, the Prepetition Liens, the Prepetition Documents or otherwise, and (3) the other stipulations in Paragraph G of this Order shall be deemed final and binding on all parties in interest in this Case for all purposes.

8.     <u>Right to Credit Bid</u>. In connection with the sale or other disposition of all or any

portion of the Aggregate Collateral, whether under Bankruptcy Code § 363, Bankruptcy Code § 1129 or otherwise, pursuant to Bankruptcy Code § 363(k), Lenders shall have the right to use the Aggregate Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral.

9.      Allowable 506(b) Amounts and Postpetition Charges. All Allowable 506(b) Amounts and Postpetition Charges shall be promptly paid by Debtor in accordance with the Prepetition Documents and the Postpetition Agreement, without need for filing an application with the Court for approval or payment, subject to the following terms of this Paragraph 9. Prior to such payment, summary detail of the applicable professional fees and expenses shall be provided to the Fee Notice Parties. Such detail may contain redactions necessary to protect, and the provision of such information shall not constitute a waiver of, any attorney-client privilege or any benefits of the attorney work product doctrine. If no objection to the reasonableness of such fees and expenses is made in writing by the Fee Notice Parties within seven (7) days, then, without further order of or application to the Court, such fees and expenses shall be promptly paid by the Debtor. If an objection as to the reasonableness of such fees and expenses is made by any of the Fee Notice Parties within such seven (7) day period, then the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtor.

10.      Waiver of Right to Return/Consent to Setoff. Debtor hereby waives its rights: (a) to return any of the Aggregate Collateral pursuant to Bankruptcy Code § 546(h); (b) to consent to any order permitting any claims pursuant to Bankruptcy Code § 503(b)(9); and (c) to consent to setoff pursuant to Bankruptcy Code § 553.

11.      Indemnification. Debtor shall indemnify and hold harmless Prepetition Lender in

15

accordance with the Prepetition Credit Agreements, as applicable. None of such indemnification obligations shall be dischargeable or deemed unenforceable against a liquidating trust established, under a plan of reorganization proposed by Debtor, without Prepetition Lender's prior written consent.

12.      <u>No Marshaling</u>. Prepetition Lender and Postpetition Lender shall not be subject to the doctrine of marshaling. The Aggregate Collateral will not be subject to the doctrine of marshaling.

13.      <u>Maintenance, Insurance; Government Charges</u>.   Except as otherwise provided herein, the Debtor shall maintain the Aggregate Collateral and ensure the proper maintenance of the Aggregate Collateral, including, as necessary, through incurrence and payment of expenses set forth in the Budget.  The Debtor, at its expense, shall (a) continue to at all times keep the Aggregate Collateral fully insured against all loss, peril and hazard, and (b) pay any and all post-petition taxes, assessments and governmental charges with respect to the Aggregate Collateral, whether or not the Debtor is obligated to do so under the Prepetition Loan Documents, and will provide Lenders with proof thereof upon written demand and will give Lenders access to its records in this regard.  Lenders will be listed as a lender loss payee or additional insured (as applicable) on all such insurance.

14.      <u>Modification of Automatic Stay</u>.  The automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit (a) the Debtor to grant the Replacement Liens as adequate protection to Prepetition Lender, and (b) the Debtor to create, and Lenders to perfect, any and all liens and security interests granted to Lenders hereunder; *provided, however,* that Lenders shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect any lien or security interest granted by this Final Order or take any other action

to perfect such liens and security interests, and such liens and security interests are hereby deemed properly perfected; *provided however*, that if any Lender shall, in its sole discretion, elect for any reason to file, record or serve any financing statements or other document with respect to such liens and security interests, the Debtor shall execute the same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date required to implement the priority of such liens and security interests as provided in this Final Order.

15.   <u>Prepetition Control Agreements</u>. All "Control Agreements" (as defined in the Prepetition Credit Agreements) in effect as of the Petition Date shall remain in full force and effect, notwithstanding the entry of any subsequent orders amending this Order.

16.   <u>Events of Default</u>.  The occurrence of any one or more of the following events shall constitute a "Termination Event" under this Final Order:

(a)   Debtor fails to comply with the Budget Compliance Covenants, Variance Reporting Covenants, the Sale Process Covenants (including, for the avoidance of doubt, the failure to strictly comply with any milestone or deadline set forth therein), the terms, deadlines, or milestones set forth in the Sale Procedures Order once entered (time being of the essence) or the requirement to retain a financial advisor on the timelines set forth herein;

(b)   Debtor materially breaches any covenant in the Prepetition Credit Agreements related to the preservation of its corporate identity or assets and such failure continues for five (5) Business Days following notice from Postpetition Lender;

(c)   Debtor materially breaches the Postpetition Documents or fails to repay the Postpetition Debt in full in cash on the Maturity Date.

(d)   the Case is either dismissed or converted to a case under chapter 7 of the

Bankruptcy Code;

(e)     an examiner with expanded powers is appointed in the Case;

(f)     the Debtor ceases operation of its business or takes any action for the purposes of effecting such cessation without the prior written consent of Lenders or inclusion of such action in a confirmed plan;

(g)     this Final Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall materially and adversely affect the rights of Lenders hereunder;

(h)     the Debtor's failure to comply with or perform the terms and provisions of this Final Order in strict adherence to the time period set forth herein or using Cash Collateral other than in accordance with the provisions of the Budget and this Final Order;

(i)     any sale or other disposition of Aggregate Collateral is undertaken outside of the ordinary course of business, unless approved by this Court;

(j)     the automatic stay of Bankruptcy Code section 362 is lifted so as to allow a party other than Lenders to proceed against any material asset of the Debtor;

(k)     Debtor, without Lenders' prior consent, files a motion to incur debt secured by a lien with priority equal to or superior to the Postpetition Liens or Replacement Liens or which is given superpriority administrative expense status under Bankruptcy Code § 364(c);

(l)     Debtor files a motion to conduct a Bankruptcy Code § 363 sale of all or part of the Aggregate Collateral on terms unacceptable to Lenders;

(m)     any representation or warranty made by Debtor in any certificate, report or financial statement delivered to any Lender in connection with this Order proves to have been false

or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading);

(n)      the Debtor closes a sale of substantially all of the assets of the Debtor;

(o)      the Debtor proposes a chapter 11 plan that does not contemplate the repayment of the prepetition claim of Prepetition Lender in full in cash on the effective date of such plan; or

(p)      the Debtor files any motion seeking approval of any financing arrangement or lien with priority over the Prepetition Liens.

17.      <u>Remedies following Default</u>.  Upon the occurrence of a Termination Event and the giving of written notice (which may be given via email to counsel for Debtor) by any Lender:

(a)      The Debtor's authorization to use Cash Collateral shall terminate;

(b)      The Debtor shall immediately segregate all Cash Collateral and shall not be permitted to use Cash Collateral unless Lenders shall have given its prior written consent or the Court shall have entered an order, after a hearing upon notice to Lenders, authorizing such use;

(c)      On the third (3rd) business day after the Termination Date, at Lenders' election without further order of the Court: (1) Prepetition Lender shall have automatic and immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to it under the Prepetition Documents and applicable nonbankruptcy law; and (2) at any Lender's election, Debtor shall surrender the Aggregate Collateral to designees of such Lender and otherwise cooperate with Lenders in the exercise of their rights and remedies under the Prepetition Documents, Postpetition Documents, and

applicable nonbankruptcy law, including, without limitation, by filing a motion to retain one or more agents to sell, lease or otherwise dispose of the Aggregate Collateral upon the request and subject to terms and conditions acceptable to Lenders. Notwithstanding the foregoing, during such three (3) business day period following the Termination Date, Debtor may seek an order of this Court determining that any Event of Default alleged to have given rise to the Termination Date did not occur; *provided*, however, that during such three (3) business day period, Lenders shall have no obligation to consent to Cash Collateral use during such period.

18.     <u>No Limitation on Lenders</u>.  Nothing contained herein shall be construed as a waiver of any rights, remedies, claims or objections that Lenders may have under the Prepetition Documents, Postpetition Documents, the Bankruptcy Code, or applicable law, including any Lender's right to object to the entry of the Final Order or any further interim order on any ground or to seek modification of this Final Order and the Cash Collateral used hereunder.

19.     <u>Reporting Obligations</u>.  Without limiting the Debtor's reporting obligations under the Prepetition Documents, the Debtor:

(a)     shall deliver to Lenders, no later than twenty-one (21) calendar days after the end of each month, a copy of the Debtor's monthly operating report for such month as filed with the Court and with the office of the U.S. Trustee (and such reports will be timely filed);

(b)     shall deliver to Lenders, within five (5) calendar days of the Debtors receipt thereof, copies of all audited financial statements or other similar financial statements which reflect the Debtor's assets and liabilities and results of operations; and

(c)     shall deliver to Lenders the Variance Reports contemplated by the Variance Reporting Covenants when required in the definition of Variance Reporting Covenants.

20.     <u>Books and Records</u>.  The Debtor is directed to keep its books and records of original

entry current and updated, so that all business activity is posted to them in the ordinary course of the Debtor's business.

21.     _Good Faith_.   Pursuant to, and to the extent of, the provisions of Bankruptcy Code section 364(e), the validity of the Prepetition Lender 507(b) Claim and the validity and priority of the liens and security interests authorized or granted by this Final Order shall be binding on the Debtor, its estate and their successors and assigns even if this Final Order is reversed or modified on appeal.

22.     _Payment of Professional Fees_.   Notwithstanding any other provision of this Final Order, payment of estate professional fees from Cash Collateral shall be subject to the Bankruptcy fee application process and the Budget.   Retained professionals shall make such applications in accordance with any separate order establishing procedures for monthly and interim compensation and reimbursement of fees for professionals, or as otherwise required by applicable law or rules. Payment of compensation to Debtor's counsel may only be made to the extent ordered by the Court upon ruling on the Debtor's counsels' fee applications.

23.     _Additional Documents_.   The Debtor is hereby authorized to do and perform all acts and to make, execute and deliver all instruments and documents which may be required or necessary for the performance of its obligations hereunder.

24.     _Immediate Effect_.   As permitted by Bankruptcy Rule 6004(h), the Court hereby orders that this Final Order shall become effective immediately.

25.     _Survival After Confirmation, Conversion or Dismissal_.   The provisions of this Final Order and any actions taken pursuant thereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting this Case from chapter 11 to chapter 7 of the Bankruptcy Code; _provided, further_, that the terms and provisions

of this Final Order, as well as the liens and security interests granted hereunder, shall continue in this Case or any successor case and such liens and security interests and the Prepetition Lender 507(b) Claim shall maintain their priority as provided by this Final Order.

26.   <u>No Limitation or Modification of Order</u>.  Nothing in this Final Order shall limit any Lender's right to seek modification of this Final Order.

27.   <u>No Prejudice of Rights Against Third Parties</u>.  Nothing in this Final Order shall in any way prejudice or compromise any rights that any Lender may have against parties other than the Debtor, and the Prepetition Third Party Documents will remain in full force and effect with the same validity as existed immediately prior to the Petition Date.

28.   <u>Effect on Third Parties</u>.  The provisions of this Final Order shall be binding on all third parties *provided* that any other secured party may seek adequate protection for its interests in any assets of the Debtor, if any, which adequate protection shall not contradict or otherwise interfere with the terms of this Final Order.

29.   <u>Binding Effect</u>.  The provisions of this Final Order shall be binding upon and inure to the benefit of Lenders, the Debtor, the Debtor's estate and their respective successors and assigns (including any trustee appointed as a representative of the Debtor's estate or in any successor case).

30.   <u>Controlling Effect</u>.  To the extent that any provision of this Final Order conflicts with any provision of any of the Prepetition Documents or Postpetition Documents or the Interim Financing Order, this Final Order is deemed to control and shall supersede the conflicting provision(s).  Except as modified herein and subject to the other provisions of this Final Order and the Bankruptcy Code, the Prepetition Documents shall remain in full force and effect with respect to the Prepetition Debt and the obligations of Debtor to provide financial information to Lenders

and to maintain its property (but, for the avoidance of doubt, all commitments of Senior Lender to fund any loans or credits to Debtor have terminated). Without limiting the obligations of the Debtor or the rights of Prepetition Lender under the Prepetition Documents or Postpetition Lender under the Postpetition Documents, the Debtor agrees that Lenders and their representatives, investment advisors, professionals, consultants or designees may at any time and with reasonable notice to the Debtor, at the sole cost and expense of the Debtor, have access to (a) any of the premises that the Debtor directly or indirectly owns, leases or otherwise has a right to occupy or use, (b) all assets and properties of Debtor located on any such premises, including, without limitation, all books and records related to accounts or inventory or any other Aggregate Collateral and (c) any employee, officer, director, representative and consultant of the Debtor and any other Person employed or retained by the Debtor except to the extent access to information in such Person's possession would compromise the Debtor's attorney-client privilege.

31.    <u>Further Limitations on the Debtor</u>.  The Debtor will not do any of the following things without prior order of this Court:

(a)    Increase the wages of any insiders of the Debtor above the current rate paid such employees nor substantially enlarge the number of employees from the Debtor's historical number;

(b)    Incur any obligation or liability in excess of amounts provided in the Budget, whether with regarding to services to be provided to the Debtor, materials, inventory, supplies or equipment to be purchased by the Debtor, or otherwise.

(c)    Pay an amounts owing on any claim arising prior to the Petition Date, other than as may be otherwise provided for in an order of the Court.

32.    <u>No Surcharge</u>. In the exercise of its business judgment and in consideration for

Lenders' consent to the use of Cash Collateral and provision of financing in accordance with this Order, Debtor (for itself and any Trustee) agrees that effective upon entry of this Final Order, there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by Lenders. Further, Debtor represents that the Budget contains all expenses that are reasonable and necessary for the operation of its businesses and the preservation of the Aggregate Collateral through the period for which the Budget runs and therefore includes all items potentially chargeable to Lenders under Code § 506(c). Therefore, effective upon entry of this Order, the Debtor (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), any "equities of the case" arguments, objections, or claims, and other rights under the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against the Lenders or the Aggregate Collateral on any basis. In reliance on the foregoing, Lenders have consented to this Final Order.

33.  <u>Non-Estate Property</u>.  For the avoidance of doubt, and notwithstanding any contrary language herein or in the Prepetition Documents or Postpetition Documents, nothing in this Final Order shall include as Aggregate Collateral any personal property owned by General Electric Company (d/b/a GE Aerospace, "<u>GE</u>") or Kawasaki Heavy Industries, Ltd.  For the avoidance of doubt, nothing in this Final Order is a finding regarding the ownership of any disputed assets and all parties' rights are reserved in connection with any such dispute.

**IT IS SO ORDERED.**


Copies to: Default List Plus Creditors' Committee

# EXHIBIT A

## DEFINED TERMS

1.     ***Aggregate Collateral***. Collectively, the Prepetition Collateral and the Postpetition Collateral.

2.     ***Aggregate Debt***. Collectively, the Prepetition Debt and the Postpetition Debt.

3.     ***Allowable 506(b) Amounts***. To the extent allowable under Bankruptcy Code § 506(b), interest at the default rate of interest as set forth in Section 2.5(a) of the Prepetition Domestic Credit Agreement and Section 2.5 of the Prepetition EXIM Credit Agreement, all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), and all costs and expenses at any time incurred by Prepetition Lender in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (b) the representation of Prepetition Lender in the Case, including in defending any Challenge.

4.     ***Bankruptcy Code***. The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended, and any successor statute. Unless otherwise indicated, all statutory section references in this Order are to the Bankruptcy Code.

5.     ***Budget.*** The budget attached to this Order as Exhibit B, as amended, modified or supplemented from time to time, as may be agreed to by Lenders.

6.     ***Budget Performance Covenants***. Debtor will not permit (i) aggregate disbursements, measured on a cumulative basis on a line-item and an aggregate basis, to exceed 110% of the forecasted expenditures set forth in the Budget for any two-week period; (ii) aggregate cash receipts (excluding proceeds of any postpetition financing), measured on a cumulative basis to be less than 85% of the forecasted cash receipts set forth in the Budget for any two-week period; or (iii) aggregate actual sales measured on a cumulative basis to be less than 85% of the forecasted sales set forth in the Budget for any two week period.

7.     ***Case***. The chapter 11 case or any superseding chapter 7 case of the Debtor.

8.     ***Cash Collateral***. All "cash collateral," as that term is defined in Bankruptcy Code § 363(a) that is property of the Debtor and in which Prepetition Lender has an interest, all deposits subject to setoff rights in favor of Prepetition Lender, and all cash arising from the collection or other conversion to cash of the Prepetition Collateral, including, without limitation, from the ordinary course sale of inventory and the collection of accounts receivable and all sales of Aggregate Collateral outside of the ordinary course of business.

9.     ***Challenge***. A claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition Debt, the Prepetition Liens or any other claims or causes of action against Prepetition Lender, which any Committee or another party-in-interest may bring, in accordance with Paragraph 7 of this Order.

10.     ***Challenge Party***. Any Committee, any Trustee, or a party-in-interest with the requisite standing.

11.     ***Committee***. Any official creditors' committee appointed to represent unsecured creditors in the Case pursuant to Bankruptcy Code § 1102.

12.     ***Consultation Parties***. Collectively, Lenders, and any Committee.

13.     ***Fee Notice Parties***. Collectively, counsel for each of Debtor, any Committee and the United States Trustee.

14.     ***Investigation Period***. The period from date of this Order until the date that seventy-five (75) days after the date of this Order; *provided that* the Investigation Period for (i) any Committee will be automatically extended to be sixty (60) days after the date that a Committee is formed and (ii) for any Trustee, to the extent the Investigation Period has not already ended prior to the appointment of such Trustee, will be sixty (60) days after the appointment of such Trustee (it being agreed that, if no Trustee has been appointed within seventy-five (75) days after the date of this Order, the Challenge provisions will be binding upon any such Trustee.

15.     ***Lenders***. Prepetition Lender and Postpetition Lender collectively (and each, a "Lender").

16.     ***Permitted Priority Liens***. Collectively, liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Petition Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Petition Date.

17.     ***Postpetition Agreement***. That certain Postpetition Agreement, by and between Debtor and Postpetition Lender, as amended, modified, or supplemented from time to time consistent with this Final Order.

18.     ***Postpetition Collateral***. All of the real and personal property of Debtor of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (including claims and proceeds under Bankruptcy Code §§ 544, 547, 548, 549, 550 and 553), all leaseholds, all commercial torts, all other "Collateral" (as that term is defined in the Prepetition Credit Agreements), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

19.     ***Postpetition Charges***. Interest at the applicable rate of interest under the Postpetition Agreement and all fees, costs, and expenses provided for in the Postpetition Agreement, including those incurred by Postpetition Lender in connection with the Postpetition Debt (regardless of whether any such fees, costs, interest and other charges are included in the Budget).

20.     ***Postpetition Debt***. All indebtedness or obligations of Debtor to Postpetition Lender incurred on or after the Petition Date pursuant to this Final Order or otherwise, including, without limitation, all Obligations (as defined in the Postpetition Agreement).

21.     ***Postpetition Documents***. The Postpetition Agreement and any "Loan Documents" (as that term is defined in the Postpetition Agreement).

22.     ***Postpetition Liens***. Priority Liens in the Aggregate Collateral, subject only to Permitted Priority Liens, Replacement Liens, and Prepetition Liens.

23.     ***Prepetition Collateral***. All of the "Collateral" (as that term is defined in the Prepetition Credit Agreements existing as of the Petition Date, and all proceeds, rents, issues, profits and products thereof.

24.     ***Prepetition Credit Agreements***. (i) that certain Credit Agreement, dated as of May 4, 2023 (such agreement as amended, restated or otherwise modified, the "Prepetition Domestic Credit Agreement"), by and among Debtor, CTL-Aerospace Nevada, Inc. ("Guarantor") and Prepetition Lender; and (ii) that certain EXIM Guaranteed Credit Agreement, dated as of May 4, 2023 (such agreement as amended, restated or otherwise modified, the "Prepetition EXIM Credit Agreement,"), by and among Borrower, Guarantor and Prepetition Lender.

25.     ***Prepetition Debt***. (a) All indebtedness or obligations under the Prepetition Documents as of the Petition Date, including all "Obligations" (as defined in the Prepetition Credit Agreements), and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Documents, plus (b) all Allowable 506(b) Amounts.

26.     ***Prepetition Documents***. The Prepetition Credit Agreements and the "Loan Documents" (as that term is defined in each Prepetition Credit Agreement).

27.     ***Prepetition Liens***. Prepetition Lender's asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Priority Liens.

28.     ***Prepetition Third Party Documents***. Collectively, Debtor's deposit account control agreements, leases, licenses, landlord agreements, warehouse agreements, bailment agreements, insurance policies, contracts or other similar agreements in which Prepetition Lender has an interest.

29.     ***Priority Liens***. Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Bankruptcy Code, any agreement, or applicable nonbankruptcy law.

30.     ***Replacement Liens***. Priority Liens in the Postpetition Collateral granted to Prepetition Lender pursuant to this Order.

31.     ***Sale Process Covenants***. The covenants set forth on Exhibit C attached hereto.

32.     ***Trustee***. Any trustee appointed or elected in the Case or any chapter 7 trustee appointed in any successor case.

33.    ***Variance Reporting Covenants***. No later than the Tuesday of every week, Debtor will submit to Lenders (1) an updated cash-flow forecast in form and substance acceptable to Lenders (and, upon Lenders' approval of such forecast, which may be withheld in Lenders' sole and absolute discretion, such updated forecast will become the approved Budget); (2) a Borrowing Base Certificate that includes a narrative regarding any material changes from the previous week; (3) a reconciliation of all receipts collected, liabilities incurred, and liabilities paid in the immediately preceding week against the Budget, which reconciliation will include supporting documentation for all such receipts, liabilities, and payments and demonstration of compliance or non-compliance with the Budget Compliance Covenants; and (4) variance reports that include a narrative explaining any material, negative variances from the Budget related to receipts collected, liabilities incurred, and expenses paid and calculations showing compliance with the permitted variances described below (the reporting described in subparts (1) through (4) above, the "Variance Report"). Each submission of a Variance Report will be signed by an authorized officer of the Debtor, and such signature will be deemed a representation and warranty by such officer and the Debtor that the Variance Report is complete, true, and accurate and that any updated cash-flow forecast was prepared in good faith and contains a full and complete itemization by category of all costs, expenses, and fees of the Debtor that (i) the Debtor and such officer reasonably expect to pay or reasonably anticipate becoming obligated to pay during the applicable time period and (ii) are reasonable and necessary for the operation of the Debtor's businesses and the preservation of the Aggregate Collateral through the period for which the forecast runs.

**EXHIBIT B**

**APPROVED BUDGET**

[see attached]

| CTL Aerospace #25-12226 Weekly Cash Flow Budget | Fcst Week 1 9/27/2025 | Fcst Week 2 10/4/2025 | Fcst Week 3 10/11/2025 | Fcst Week 4 10/18/2025 | Fcst 4-Week Total |
|---|---|---|---|---|---|
| **Cash Receipts:** | | | | | |
| Accounts Receivable – Current | $ 712,796 | $ 660,202 | $ 351,909 | $ 395,965 | $ 2,120,872 |
| Accounts Receivable – Past Due | | | | | $ – |
| Forecasted Sales Collections | $ – | $ – | $ 339,912 | $ 509,093 | $ 849,006 |
| Other Receipts | | | | | – |
| **Total Operating Receipts** | $ 712,796 | $ 660,202 | $ 691,822 | $ 905,058 | $ 2,969,878 |
| **Cash Disbursements:** | | | | | |
| Payroll & Payroll Taxes | 430,000 | 250,000 | 430,000 | 250,000 | 1,360,000 |
| Health Insurance Claims & Expenses | 119,000 | 65,280 | 75,000 | 158,000 | 417,280 |
| Materials | 326,029 | 410,685 | 466,453 | 426,531 | 1,629,697 |
| Freight | 10,000 | 10,000 | 10,000 | 10,000 | 40,000 |
| Rent | – | – | 164,000 | – | 164,000 |
| Utilities | – | 120,000 | 8,000 | – | 128,000 |
| Insurance | – | 13,000 | – | – | 13,000 |
| Leases & Subscriptions | 20,552 | – | – | 30,000 | 50,552 |
| Other | | | | | – |
| **Total Operating Disbursements** | $ 905,581 | $ 868,965 | $ 1,153,453 | $ 874,531 | $ 3,802,529 |
| **Operating Cash Flow** | $ (192,785) | $ (208,763) | $ (461,631) | $ 30,527 | $ (832,651) |
| **Non-Operating Cash Disbursements:** | | | | | |
| Revolver Interest & Bank Fees | | | | | – |
| Term Loan Payments (P&I) | | | | | – |
| Other Fees | | | | | – |
| Bank Service Charges | | | | | – |
| Critical Vendor Payments | | 100,000 | | 100,000 | 200,000 |
| Professional Fees | – | | 14,224 | | 14,224 |
| **Total Non-Operating Cash Disbursements** | $ – | $ 100,000 | $ 14,224 | $ 100,000 | $ 214,224 |
| **Net Weekly Cash Flow** | $ (192,785) | $ (308,763) | $ (475,854) | $ (69,473) | $ (1,046,875) |
| **Beginning Cash Balance** | $ 656,896 | $ 464,111 | $ 155,348 | $ (320,506) | $ 656,896 |
| **Ending Cash Balance** | $ 464,111 | $ 155,348 | $ (320,506) | $ (389,979) | $ (389,979) |
| | | | | | |
| **Legal Professional & Administrative Costs Accrual** | | | | | |
| Debtor's Counsel | 35,000 | | | | 35,000 |
| Debtor's Financial Advisor | 65,000 | 75,000 | 55,000 | 55,000 | 250,000 |
| UCC Counsel | | | | | – |
| UCC Advisors | | | | | – |
| U.S. Trustee Fees | | | 14,224 | – | 14,224 |
| Investment Bankers | 35,000 | | | | 35,000 |
| **Total Legal Professional & Administrative Costs [1]** | $ 135,000 | $ 75,000 | $ 69,224 | $ 55,000 | $ 299,224 |
| | | | | | |
| Accrued Professional Fees Beginning Balance | $ – | $ 135,000 | $ 210,000 | $ 265,000 | – |
| Plus: Accrual Based Fees | 135,000 | 75,000 | 69,224 | 55,000 | 334,224 |
| Minus: Fee Payments | – | – | (14,224) | – | (14,224) |
| Accrual Adjustment for Paid Fees | – | – | – | – | – |
| **Closing Professional Accrued Fees Balance** | $ 135,000 | $ 210,000 | $ 265,000 | $ 320,000 | $ 320,000 |

**Notes:**

*(1) Legal and Professional fees are all accrual based and are carried in the budget for presentational purposes.*

# EXHIBIT C

## SALE PROCESS COVENANTS

1. No later than October 9, 2025 (or such later date as agreed to by Lenders in their sole and absolute discretion), Debtor will file (i) a motion (in form and substance acceptable to Lenders) to sell substantially all of its assets pursuant to 11 U.S.C. § 363 and seeking approval of related sale procedures (the "Sale Procedures Motion"), and (ii) a motion to shorten notice on the Sale Procedures Motion, as applicable (the "Motion to Shorten Notice").

2. No later than October 17, 2025 (or such later date as agreed to by Lenders in their sole and absolute discretion), Debtor will obtain an order, in form and substance acceptable to Lenders (the "Sale Procedures Order") granting the Sale Procedures Motion. At all times following entry of the Sale Procedures Order, Debtor will continuously and in good faith pursue a sale of its assets as a going concern that will cause the repayment in full in cash of the Aggregate Debt on the closing date of such sale; *provided that* nothing herein will prohibit Debtor from pursuing a refinancing alternative in accordance with the Sale Procedures Order and *provided further* that the October 17, 2025 milestone will be deemed satisfied if the Court orally approves the Sales Procedures Order no later than October 17, 2025 and the Sale Procedure Order is entered no later than October 20, 2025. The Debtor will timely satisfy all milestones and deadlines set forth in the Sale Procedures Order

3. No later than December 10, 2025 (or such later date as agreed to by Lenders in their sole and absolute discretion), Debtor will hold an auction for substantially all of its assets, pursuant to the terms of the Sale Procedures Order. The Sale Procedures Order shall provide that GE shall (i) be included, among other parties, as a consultation party (individually, a "Sale Consultation Party," and collectively, the "Sale Consultation Parties") during the sale process of substantially all Debtor's assets, and (ii) be consulted, in its role as a Sale Consultation Party, by the Debtor with respect to, *inter alia*, any modifications or termination of the bidding procedures, entry into one or more stalking horse agreements, designating a bid as a qualified bid, comparing submitted bids, conducting and participating in an auction, selecting a baseline bid, adjusting minimum overbids, identifying successful bids and alternate bids, considering disputed cure amount and cure schedule matters, and adjourning or rescheduling a sale hearing; *provided, however*, that if GE submits a bid for some or all of Debtor's assets, GE shall be immediately suspended as a Sale Consultation Party unless and until such bid is not designated as a qualified bid, in which case GE shall immediately be reinstated as a Sale Consultation Party without further order from the Court.

4. No later than December 12, 2025 (or such later date as agreed to by Lenders in their sole and absolute discretion), Debtor will obtain one or more orders approving the sale of assets under the Sale Procedures Motion, in form and substance acceptable to Lenders in their sole and absolute discretion.

5. No later than December 22, 2025 (or such later date as agreed to by Lenders in their sole and absolute discretion), Debtor will consummate one or more sales of substantially all of

its assets and remit cash proceeds at the closing thereof to Prepetition Lender for application to the Aggregate Debt and repay Aggregate Debt in full and on a final basis.

6. The Consultation Parties shall have reasonable access to the Debtor and Debtor's investment banker (and any of Debtor's other retained professionals), including but not limited to regular weekly progress meetings by and among Debtor and the Consultation Parties every Wednesday (or such other time as agreed to by Debtor and the Consultation Parties) to discuss the performance, operations, sale status, financial status and other strategic transaction efforts of Debtor. Such calls shall include representatives from Debtor's investment banker.

7. No later than 12:00 p.m. (noon) Cincinnati time every Tuesday or such other time as reasonably agreed to by the Debtor and the Consultation Parties (but to be provided prior to the weekly progress meetings described above), Debtor will deliver to the Consultation Parties a reasonable written update as to the status of the Debtor's sale and other strategic transaction efforts.

8. Debtor will promptly provide all information and documentation related to its sale and strategic transaction efforts reasonably requested by any Consultation Party to the Consultation Parties.

9. Contemporaneously with the receipt thereof, Debtor will deliver to Lenders and the other Consultation Parties copies of all letters of intent, term sheets, offers to purchase or draft purchase agreements (together with subsequent drafts) with respect to any sale, refinancing, or other strategic transactions; *provided that* if any counterparty to such documents requests that Debtor keep its name confidential, the Debtor may exercise its reasonable business judgment to redact the name of such counterparty to such documents, but only to the extent such documents represent preliminary discussions with such counterparty.