**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

|  |  |
|---|---|
| In re: | Case No. 25-12226 |
| CTL-AEROSPACE, INC., | Chapter 11 |
| Debtor. | Judge Beth A. Buchanan |

**DEBTOR'S MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING
BIDDING AND SALE PROCEDURES WITH RESPECT TO THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) SCHEDULING AN
AUCTION AND SALE HEARING AND APPROVING THE FORM
AND MANNER OF NOTICE THEREOF, (C) APPROVING THE
PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, (D) APPROVING PROCEDURES
FOR SELECTION OF ONE OR MORE STALKING HORSE BIDDER(S)
AND THE PROVISION OF BID PROTECTIONS TO SUCH STALKING
HORSE BIDDER(S), AND (E) GRANTING RELATED RELIEF; AND (II) AN
ORDER APPROVING THE SALE OF SUCH ASSETS AND RELATED RELIEF**

The above-captioned debtor and debtor in possession (collectively, the "**Debtor**"), by and through its proposed counsel, hereby move this Court (the "**Motion**"), pursuant to sections 105, 363, 365 and 503(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 6004-1 for the entry of the following orders:

    (a)    an order (the "**Bidding Procedures Order**"), substantially in the form attached hereto as **Exhibit A**:

        (i)    approving proposed bidding and sale procedures attached as **Annex 1** to the Bidding Procedures Order (the "**Bidding Procedures**") and related Bid Deadline (as defined below) in connection with the sale or sales (collectively, the "**Sale Transaction**") of substantially all assets of the Debtor (individually an "**Asset**" and, collectively, the "**Assets**");

        (ii)    approving the date, and form and manner of notice, of an auction of the Assets (the "**Auction**") and related Sale Hearing (as defined

herein), including the form and manner of notice attached hereto as **Exhibit B** (the "**Auction and Hearing Notice**");

(iii)    establishing procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "**Executory Contracts**") in connection with the Sale Transaction, including notice of proposed cure amounts (the "**Assignment Procedures**"), and approving the form and manner of notice of the proposed assumption and assignment of Executory Contracts in the form attached hereto as **Exhibit C** (the "**Assumption/Assignment Notice**");

(iv)    approving the procedures governing the Debtor's selection of one or more stalking horse bidders (each, a "**Stalking Horse Bidder**"), if any, and the provision of Bid Protections (as defined below) to such Stalking Horse Bidder(s), if necessary;

(v)    approving the Debtor's notice to announce the Successful Bidder (as defined below), in the form and manner attached hereto as **Exhibit E** (the "**Successful Bid Notice**"); and

(vi)    granting certain related relief as described herein;

(b)    an order (the "**Sale Order**"), substantially in the form attached hereto as **Exhibit D**, but subject to modification prior to the Sale Hearing, including modification that may be suggested by Debtor and/or one or more of the Consultation Parties (as defined below):

(i)    authorizing each Sale Transaction free and clear of all Interests (as defined below), except for certain assumed liabilities;

(ii)    authorizing the Debtor's assumption and assignment of certain Executory Contracts (if any) in connection with such Sale Transaction; and

(iii)    granting such other relief as is necessary or advisable related to the foregoing.

In support of this Motion, the Debtor respectfully represents as follows:

## BACKGROUND

### I.    General Background

1.    On September 8, 2025 (the "**Petition Date**"), the Debtor commenced this Case (the "**Chapter 11 Case**") by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

27632813 v3

Pursuant to sections 1107(a), 1108 and 1184 of the Bankruptcy Code, the Debtor is operating its business and managing its affairs as a debtor-in-possession.  No examiner has been appointed in this Chapter 11 Case.  An unsecured creditors' committee has been appointed in this Chapter 11 Case (the "**Committee**").

2.      The facts and circumstances supporting this motion are set forth in the *Declaration of Scott Crislip in Support of Chapter 11 Petition and First Day Motions* [Docket No. 9] (the "**First Day Declaration**").

**II.      The Sale Process and Related Items**

**A.      The Proposed Sale Transaction and Marketing Process**

3.      Prior to the Petition Date, the Debtor took preliminary measures in the exploration and analysis of third-parties' interests in purchasing the Debtor.  The Debtor did not retain an investment banker before the Petition Date to conduct this initial process.

4.      On September 17, 2025, the Debtor filed an application to retain, among others, Capstone Capital Markets LLC ("**Capstone**") as the Debtor's investment banker [Docket No. 51]. With Capstone's assistance, the Debtor developed a sale timeline for the Assets.  Pursuant to this process, Capstone immediately began engaging in significant marketing efforts, including reaching out to potentially interested parties, consisting of both strategic and financial buyers, who could consider the purchase of all or a substantial portion of the Assets.  As part of this process, certain parties contacted have or are anticipated to enter into non-disclosure agreements in exchange for receiving access to an online data room containing substantial due diligence information.

5.      The Debtor has determined, in consultation with its professionals, that implementing the Bidding Procedures and providing a definite deadline for potential bids and an

27632813 v3

Auction is the best method to obtain bids for the Assets that will maximize the value of the Debtor's estate.

### B.    The Need for an Expedited Notice and Sale Process

6.    The Debtor has filed this Motion on an expedited basis to ensure the Debtor is able to complete the sale of the Assets in a timely and efficient manner.   Among other items, the Debtor's consensual use of cash collateral and access to post-Petition Date financing is contingent upon the Debtor meeting certain sale "milestones," which are included in the *Final Order Under 11 U.S.C. §§ 105(a), 361, 362 and 363, Federal Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2: (I) Authorizing Debtor to Obtain Post-Petition Financing; (II) Authorizing Debtor to Use Cash Collateral; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling and Approving the Form and Method of Notice of Final Hearing; and (VI) Granting Related Relief* [Docket No. 72] (the "**Final DIP Order**").

### C.    The Deadlines Contained in the Bidding Procedures Are Reasonable and Will Provide an Adequate Opportunity for Interested Parties to Formulate and Submit Bids

7.    In formulating the procedures and time periods, the Debtor had two principal objectives: (a) providing adequate and appropriate notice to parties in interest and to potential purchasers; and (b) efficiently selling the Assets.   The Debtor believes the Bidding Procedures achieve both objectives under the facts and circumstances of this Chapter 11 Case.   Based on the market's significant interest in the Debtor's Assets since retaining Capstone, the Debtor believes that parties who may have an interest in bidding at the Auction are or will be made aware of the Debtor's interest in pursuing a sale of the Assets.   Furthermore, potential bidders will have access to financial and related information, including financial projections, prepared by the Debtor and its advisors through an extensive data room.   Thus, the timeline in the Bidding Procedures will

27632813 v3

allow any party interested and capable of purchasing the Assets to conduct due diligence and submit a bid.

8.      The key dates the Debtor will utilize in connection with the Sale Transaction are as follows:

| EVENT | DATE |
|:---:|:---:|
| Stalking Horse Bidder(s) Identification Deadline | November 19, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Bid Deadline | December 8, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Auction Date | December 10, 2025, at 9:00 a.m. (prevailing Central Time) |
| Global Objection Deadline | December 12, 2025, at 10:00 a.m. (prevailing Eastern Time) |
| Sale Hearing | December 12, 2025, at 10:00 a.m. (prevailing Eastern Time) (subject to Court availability) |
| Outside Closing Deadline | December 22, 2025, at 11:59 p.m. (prevailing Eastern Time) |

**D.      The Bidding Procedures are Reasonable and Will Allow the Debtor to Identify the Highest and Best Bid for the Assets**

9.      The Debtor, in consultation with its advisors, designed the Bidding Procedures to maximize value for the Debtor's estate.  The Debtor believes the Bidding Procedures will enable the Debtor to review, analyze, and compare all bids received to determine which bid is in the best interests of the Debtor's estate and creditors.  The Bidding Procedures describe, among other things, the procedures for parties to access due diligence, the manner in which bidders and bids become "qualified," the receipt and negotiation of bids received, the conduct of any Auction (if necessary), the selection and approval of any ultimately successful bidder, and the deadlines with respect to the foregoing Bidding Procedures.  The Debtor submits that the Bidding Procedures

27632813 v3

afford the Debtor a sufficient opportunity to pursue a sale process that will maximize the value of its estate.

10.     The Debtor has structured the Bidding Procedures, and the expedited relief this Motion seeks, in a manner that complies with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and this Court's Local Rules.  Further, the Bidding Procedures are designed to allow the Debtor to efficiently consummate a Sale Transaction that maximizes value and provides an opportunity to preserve jobs and other commercial relationships.  These Bidding Procedures provide this framework and will enable the Debtor to review, compare, and determine which bids are in the best interests of its estate and its creditors.  The Debtor respectfully submits that the Bidding Procedures are necessary to, and will assist them in and promote, its efforts to complete a sale of the Assets.

11.     The following is a summary of the major components of the Debtor's proposed Bidding Procedures:[1]

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| **Modification of Bidding Procedures** | **THE DEBTOR MAY AMEND THE BIDDING PROCEDURES OR THE BIDDING PROCESS AT ANY TIME, AND FROM TIME TO TIME, IN ANY MANNER THAT THEY DETERMINE IN GOOD FAITH WILL BEST PROMOTE THE GOALS THEREOF, INCLUDING EXTENDING OR MODIFYING ANY OF THE DATES DESCRIBED THEREIN OR THE INFORMATION AND MATERIAL REQUIRED FROM QUALIFIED BIDDERS; PROVIDED THAT SUCH MODIFICATIONS ARE CONSISTENT WITH THE INTERIM DIP ORDER AND THE FINAL DIP** |

---

[1] The summaries of the material terms of the Bidding Procedures set forth below are qualified in their entirety by the specific terms and conditions of the Bidding Procedures.  To the extent there exists any inconsistency between these summaries and the Bidding Procedures, the Bidding Procedures Order and Bidding Procedures shall govern. Capitalized terms used but not defined herein are either defined later in this table or have the meanings given to them in the Bidding Procedures.

27632813 v3

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| | **ORDER AND ARE PREVIOUSLY APPROVED IN WRITING BY THE CONSULTATION PARTIES (AS DEFINED BELOW).** |
| **Participation Requirements** | The Bidding Procedures detail certain requirements to participate in the bidding process, including, among other things, the execution of a confidentiality agreement. |
| **Due Diligence** | The Debtor has established a confidential electronic data room (the "**Data Room**") containing due diligence materials relating to the Assets. Until the Bid Deadline, in addition to access to the Data Room, the Debtor may provide any potential bidder such due diligence access or additional information that may be reasonably requested, as the Debtor determines to be reasonable and appropriate in the circumstances. A potential bidder's access to additional due diligence will cease if (a) the potential bidder does not become a Qualified Bidder by the Bid Deadline; (b) after consultation with the Consultation Parties, the bidding process is terminated; or (c) Debtor determines, following consultation with the Consultation Parties, that such potential bidder or Qualified Bidder has materially breached any non-disclosure or confidentiality agreement it entered into with Debtor. The "**Consultation Parties**" consist of Wells Fargo Bank, National Association (along with its successors, assigns, or any replacement/refinancing lender, the "**Prepetition Lender**"), the Committee, General Electric Company (d/b/a GE Aerospace ("**GE**")), and Kawasaki Heavy Industries, Ltd. ("**KHI**"); *provided that* if GE or KHI submits a bid for some or all of the Debtor's assets, the applicable bidder shall be immediately suspended as a Consultation Party unless and until such bid is not designated as a Qualified Bid, in which case the applicable bidder shall immediately be reinstated as a Consultation Party without further order from the Court. |
| **Bid Deadline** | December 8, 2025, at 4:00 p.m. (prevailing Eastern Time) (the "**Bid Deadline**"). |
| **Stalking Horse Bidder(s) Designation** | The Debtor may, after consulting the Consultation Parties, enter into one or more stalking horse agreements (each, a "**Stalking Horse Agreement**") at any time prior to November 19, 2025, and seek designation of a Stalking Horse Bidder (the bid thereof, a "**Stalking Horse Bid**") by filing a notice of such designation with the Court as set forth |

27632813 v3

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
|  | in the Bidding Procedures. A Stalking Horse Agreement may provide for payment of break-up fees and/or expense reimbursements (the "**Bid Protections**"). |
|  | The Bidding Procedures provide that, in the event that the Debtor selects one or more parties to serve as a Stalking Horse Bidder, upon such selection, the Debtor shall file with the Court and provide to all parties in interest notice of and an opportunity to object to the designation of such Stalking Horse Bidder and the Bid Protections set forth in the Stalking Horse Agreement. To the extent an objection is received on or before 4:00 p.m. (prevailing Eastern Time) on the date that is five (5) Business Days following the filing such notice, the Court will hold a hearing on the objection no later than December 5, 2025. Absent objection, the Debtor may submit an order to the Court under certification of counsel approving the selection of such Stalking Horse Bidder and the Bid Protections (the "**Stalking Horse Order**"). |
| **Bid Requirements** | To be a "**Qualified Bid**" (and such potential bidder submitting such bid, a "**Qualified Bidder**"), a bid must meet the requirements enumerated in the Bidding Procedures, including, among other things, the following no later than the Bid Deadline, unless otherwise waived by the Debtor in its reasonable business judgment (after the Debtor consults with the Consultation Parties concerning such waiver): (a) identify all Executory Contracts to be potentially assumed and assigned and providing evidence satisfactory to the Debtor of the potential bidder's ability to provide adequate assurance of future performance of such agreements and pay all undisputed cure amounts; (b) contain written evidence of available cash, unconditional commitment for financing, or such other evidence of ability to consummate the transaction contemplated by the potential bidder; (c) provide a mark-up of (i) the form Asset Purchase Agreement to be provided by the Debtor to all potential buyers (the "**APA**"), or (ii) the Stalking Horse Agreement, if applicable, and must include (x) executed transaction documents, signed by an authorized representative of such bidder, and (y) a markup showing the bidder's changes to the form APA or Stalking Horse Agreement, as applicable, and Sale Order; (d) to the extent a Stalking Horse Bidder is selected prior to the Bid Deadline, each Qualified Bid for any Assets subject to the Stalking Horse Agreement (alone |

27632813 v3

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
|  | or combined with bids for other Assets subject to the Stalking Horse Agreement) must exceed the Stalking Horse Bidder's bid by the Minimum Overbid (as defined below), taking into account the Bid Protections (if any); (e) provide evidence of sufficient financial resources to consummate a Sale Transaction; and (f) be irrevocable until consummation of a transaction involving another bidder for the same Assets. If applicable, the Stalking Horse Bid(s) is deemed a Qualified Bid for the Assets and the Stalking Horse Bidder, a Qualified Bidder.  Qualified Bids and Qualified Bidders will be determined in consultation with the Consultation Parties.<br><br>For the avoidance of doubt, the Prepetition Lender will be deemed a Qualified Bidder without the need to submit any of the materials listed and its credit bids will be deemed Qualified Bids. |
| **Bid Deposit** | Each potential bidder is required to deposit with the Debtor a cash deposit equal to the higher of 5% of the total cash consideration (including but not limited to, the amount required to be paid for cure costs under section 365 of the Bankruptcy Code and any other amounts the potential bidder identifies as part of its transaction value) of the purchase price or $1,500,000 (any such deposit, a "**Good Faith Deposit**").<br><br>Prepetition Lender will not be obligated to fund a Good Faith Deposit. |
| **Considerations in Comparing and Valuing Bids** | The Bidding Procedures detail certain bid information to be considered in comparing the value of proposed bids. These considerations, fully detailed in the Bidding Procedures, will aid the Debtor and Consultation Parties in determining whether the terms of a particular bid for certain Assets are materially more burdensome or conditional than the terms of another bid.  These considerations are aimed at uncovering the bid that is highest and/or best based on the Debtor's unique circumstances. |
| **Auction** | If the Debtor receives at least two Qualified Bids (including a Stalking Horse Bid) for any Assets, the Debtor may, in the Debtor's reasonable business judgment, in consultation with the Consultation Parties, conduct an Auction. |

27632813 v3

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| **Time, Place and Conduct of an Auction** | If necessary, the Debtor will conduct the Auction at the offices of Capstone, 311 S Wacker Drive, Suite 2450, Chicago, Illinois 60606, at **9:00 a.m. (prevailing Central Time) on December 10, 2025,** or such other time and location in Chicago, Illinois as the Debtor, after consultation with the Consultation Parties, may determine and specify in writing to each Qualified Bidder and the Consultation Parties.  If only one Qualified Bid (including the Stalking Horse Bid) for the Assets is received, the Auction for the Assets will be cancelled and the Qualified Bid received will be designated the Successful Bid (as defined below) for the Assets. |
| **Baseline Bids** | If the Debtor receives at least two Qualified Bids (including the Stalking Horse Bid) for the Assets or any combination of Assets, and if an Auction is necessary, the Debtor, after consultation with the Consultation Parties, will select what they determine to be the highest and/or best Qualified Bid (the "**Baseline Bid**") for the Assets or any combination of Assets, as applicable, to serve as the starting point at the Auction.  On December 9, 2025, Capstone shall provide copies of the Baseline Bid to all Qualified Bidders and to the Consultation Parties. |
| **Rules of the Auction** | After consultation with the Consultation Parties, the Debtor may at any time adopt rules for the Auction that the Debtor reasonably determines to be appropriate to promote the goals of the bidding process, including one or more adjournments of the Auction.  The rules of the Auction will be announced on the record at the outset of the Auction. |
| **Bidding at an Auction** | At the Auction, participants will be permitted to increase their initial Qualified Bids and improve their terms; *provided*, *however*, any such increased or improved bid must be a Qualified Bid (except that the Bid Deadline will not apply).  Subsequent Bids must be made in minimum increments of $500,000 for substantially all of the Debtor's Assets (the Assets of the Debtor broken in divisions, within the Debtor's reasonable business judgment); *provided, however*, the Debtor, after consultation with the Consultation Parties, may adjust the minimum bid increments or requirements for any round of bidding which shall be announced at the Auction (the "**Minimum Overbid**").   For the purpose of evaluating the value of the consideration provided by additional bids, |

10

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| | the Debtor will consider the Bid Protections, if any, that will be payable to a Stalking Horse Bidder(s) under the Stalking Horse Agreement(s). |
| **Designation of Successful Bid(s) and Alternate Bid(s)** | After determining which Qualified Bids represent the best bids for the Assets in consultation with the Consultation Parties, the Debtor will designate such as the "**Successful Bid(s)**" and the bidder as the "**Successful Bidder(s)**." As described in the Bidding Procedures, the Debtor may also determine, in its reasonable business judgment, after consultation with the Consultation Parties, which Qualified Bid(s) is the next best bid(s) for the Assets (the "**Alternate Bid(s)**"). |
| **Bids** | The Debtor will be deemed to have accepted a Successful Bid only when an APA has been executed and such bid has been approved by entry of the applicable Sale Order. If a Successful Bidder does not close the applicable Sale Transaction contemplated by the applicable Successful Bid by December 19, 2025, at 4:00 p.m. (prevailing Eastern Time), then the Debtor will close with the party that submitted the Alternate Bid, pursuant to the applicable Sale Order, after consulting with the Consultation Parties. If an Alternate Bidder does not close the applicable Sale Transaction contemplated by the applicable Alternate Bid by the date agreed to by the Debtor and such Alternate Bidder, then, after consulting with the Consultation Parties, the Debtor will be authorized to reopen the Auction to designate new Successful Bid(s) and Alternate Bid(s). |
| **Successful Bid Notice** | Following the designation of a Successful Bid(s), the Debtor will file a Successful Bid Notice prior to the Sale Hearing, substantially in the form attached hereto as **Exhibit E**. |
| **Global Objection Deadline** | Parties must file any objections to approval of the Sale Transaction, including: (i) the sale of the Assets free and clear of Interests; (ii) the form of the Sale Order; and/or (iii) the assumption and assignment of any Executory Contract solely based on whether there is adequate assurance of future performance by the Successful Bidder(s) no later than prior to the commencement of the Sale Hearing (the "**Global Objection Deadline**"). |

27632813 v3

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| | At the hearing to approve the Sale Transaction (the "**Sale Hearing**"), the Debtor will seek the entry of the Sale Order approving, among other items, the sale of the Assets to the Successful Bidder(s) pursuant to the terms and conditions set forth in the Successful Bid(s).  For the avoidance of doubt, there may be one or more Sale Orders approving the sale of the Assets depending on whether the Assets are sold in whole or in parts.<br><br>The Sale Hearing may be adjourned or rescheduled by the Debtor in its discretion (after consultation with the Consultation Parties) without notice or with limited and shortened notice to parties. |
| **Return of Good Faith Deposit** | The Good Faith Deposits will be held in escrow by a deposit agent and while held in escrow will not become property of the Debtor's estate unless released from escrow pursuant to further order of the Court or upon a breach by a Successful Bidder(s) of the Successful Bid agreement. The Debtor will retain the Good Faith Deposit of the Successful Bidder(s) until the closing of the Sale Transaction unless otherwise ordered by the Court.  The Good Faith Deposits of the other Qualified Bidders, with the exception of the Good Faith Deposits of any Alternate Bidders, will be returned on the fifth business day following the entry of the Sale Order.  At the closing of the Sale Transaction, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit (including any Good Faith Deposit consisting of a credit bid) against the cash purchase price, with the Good Faith Deposit to be received from escrow.  The Good Faith Deposits of any Alternate Bidders will be returned on the fifth business day following the closing of the Sale Transaction(s), provided that the Alternate Bidders do not close on the Sale Transaction(s). |

## Jurisdiction

12.     The Court has subject matter jurisdiction to consider this matter pursuant to 28

U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

27632813 v3

## Basis for Relief Requested

**A.     The Sale and the Bidding Procedures Are a Proper Exercise of the Debtor's Business Judgment and Will Maximize the Value of the Purchased Assets for the Benefit of the Debtor's Estate and Creditors.**

13.     Entry of the Sale Order approving the final sale of the Assets at the conclusion of the Sale Hearing is authorized and appropriate under the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Section 1107(a) of the Bankruptcy Code grants a debtor-in-possession the powers of a trustee in respect to various matters including sales under section 363(b) of the Bankruptcy Code.

14.     Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction.  *See*, *e.g.*, *In re Eagle Picher Holdings, Inc.*, 2005 WL 4030132 (Bankr. S.D. Ohio 2005); *In re Martin*, 91 F.3d 389, 395 (3rd Cir. 1996); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3rd Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983).

15.     The key consideration is this Court's finding that a good business reason exists for the sale.  *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *see also*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999).

> Whether the proffered business justification is sufficient depends on the case.  As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.  He might, for example, look to

27632813 v3

> such relevant factors as the proportionate value of the assets of the
> estate as a whole, the amount of elapsed time since the filing, the
> likelihood that a plan of reorganization will be proposed and
> confirmed in the near future, the effect of the proposed disposition
> on future plans of reorganization, the proceeds to be obtained from
> the disposition vis-a-vis any appraisals of the property, which of the
> alternatives of use, sale or lease the proposal envisions and, most
> importantly perhaps, whether the asset is increasing or decreasing in
> value. This list is not intended to be exclusive, but merely to provide
> guidance to the bankruptcy judge.

*In re Walter*, 83 B.R. 14, 19-20 (9th Cir. Bankr. 1988) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2nd Cir. 1983)).

16.     Once the debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").

17.     In light of the circumstances that precipitated the commencement of this Chapter 11 Case and in view of the milestones in the Final DIP Order, the Debtor, in its business judgment, believes that pursuing a prompt sale of the Assets, pursuant to section 363(b) of the Bankruptcy Code, will maximize the value of the Assets for the benefit of the Debtor's creditors and bankruptcy estate. Several sound business reasons support the Debtor's position.

18.     Based on the results of its analysis of the Debtor's ongoing and future business prospects, the Debtor's management and advisors have concluded that pursuing a sale as a going concern in accordance with the process set forth in the Bidding Procedures is the best method to maximize recoveries and ensure that the value of the Debtor's Assets is maintained for the benefit

27632813 v3

of creditors and its estate and to permit a realistic assessment of alternative methods of confirming a plan. Maximization of asset value is a sound business purpose, warranting authorization of the Sale Transaction.

19. The Debtor has proposed a fair and open process for achieving the objective of obtaining the highest or best offer for the Assets. The Bidding Procedures provide potential bidders an opportunity to perform due diligence. Competing bidders will have the opportunity to bid at the Auction (if they become Qualified Bidders, as defined in the Bidding Procedures), thus ensuring that any sale of the Assets will be achieved through an arm's-length transaction. Accordingly, the proposed auction procedure will allow the highest and best bidder to purchase the Assets, thereby maximizing the return to the Debtor's estate.

20. The Debtor believes that the Bidding Procedures for the Auction are commercially reasonable and are in the best interest of the Debtor, its estate, and creditors and will maximize the value that may be obtained from the sale of the Assets. Any sale of the Assets will be subject to competing bids, enhancing the Debtor's ability to receive the highest or otherwise best value for the Assets. An auction is sufficient to establish that one has paid "value" for assets of a bankruptcy estate, where the auction sale has itself been conducted in good faith. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986). Consequently, the fairness and reasonableness of the consideration to be received by the Debtor will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether a fair and reasonable price is being paid.

21. In addition, all creditors, parties-in-interest, known parties with interest in the Assets, and advertisements to reach other parties with interest in the Assets will receive adequate notice of the Bidding Procedures and Sale Hearing as set forth herein. Such notice is reasonably

calculated to provide timely and adequate notice to the Debtor's major creditor constituencies, those parties most interested in this Chapter 11 Case, those parties potentially interested in bidding on the Assets, and others whose interests are potentially implicated by a proposed sale. Accordingly, consummating the Sale Transaction as soon as possible is in the best interests of the Debtor and its creditors.

22.     Finally, the timing of the Sale Transaction is critical.  Pursuant to the Final DIP Order, the Debtor will be in default under its postpetition loan agreement and conditions for use of cash collateral in this case if the Debtor fails to comply with the sale milestones outlined in the Final DIP Order.  The Debtor believes that the proposed sale will provide a greater return to the Debtor's estate and its creditors than the liquidation of the Debtor's Assets through a forced sale process.  For each of the foregoing reasons, the Debtor, in its business judgment, believes that a prompt sale of the Assets, pursuant to section 363(b) of the Bankruptcy Code, is in the best interest of the Debtor, its estate, creditors, and other parties in interest.

**B.     The Procedures and Notice Related to the Selection of Stalking Horse Bidders Should Be Approved.**

23.     The Debtor submits that the proposed procedures and notice for the selection of Stalking Horse Bidder(s), the execution of the Stalking Horse Agreement(s), the provision of Bid Protections to Stalking Horse Bidder(s), and Court approval of the foregoing pursuant to the Bidding Procedures Order are fair and reasonable under the circumstances.  Indeed, entry into the Stalking Horse Agreements with Stalking Horse Bidder(s) ensures that the Debtor will obtain the highest and best consideration for the Assets by setting a floor price that can be tested in the marketplace.

27632813 v3

### C.      Approval of Bid Protections for Stalking Horse Bidders is Appropriate.

24.      To induce Stalking Horse Bidders to enter into Stalking Horse Agreements, setting

floor prices for the Assets that may be tested in the marketplace, the Debtor may be required to

provide Bid Protections.  The terms of any Bid Protections shall be subject to Court approval as

set forth in Article 6 of the Bidding Procedures. The Debtor believes, in its business judgment, that

the Stalking Horse Agreements could provide the best value for the Debtor's estate and could

expedite the sale process in a manner consistent with the milestones established by the Final DIP

Order.

25.      The Debtor believes that granting Bid Protections to Stalking Horse Bidder(s) is

fair and reasonable under the circumstances.  Any break-up fee and the expense reimbursement

will be negotiated at arms' length and in good faith, and may be necessary to secure the Stalking

Horse Bidder(s)' participation in the proposed Sale Transaction.  Courts have acknowledged that

the approval of break-up fees and expenses in connection with substantial sales in bankruptcy is

warranted to compensate an unsuccessful acquirer whose initial offer served as the basis and

catalyst for higher or better offers.

26.      Here, any Bid Protections to be paid under the circumstances will satisfy the

foregoing tests because they will be:  (a) actual and necessary costs and expenses of preserving the

Debtor's estate within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code;

(b) commensurate to the real and substantial benefit conferred upon the Debtor's estate by the

Stalking Horse Bidder(s); (c) reasonable and appropriate, in light of the size and nature of the

proposed Sale Transaction and comparable transactions, to the commitments that have been made

and the efforts that have been and will be expended by the Stalking Horse Bidder(s); (d) necessary

to induce the Stalking Horse Bidder(s) to continue to pursue the Sale Transaction and to continue

to be bound by the APA; and (e) subject to all parties in interests' rights to object and be heard

27632813 v3

with respect to approval of such Bid Protections.  Indeed, the Bid Protections (if any) will enable the Debtor to secure an adequate floor price for the Assets, thereby ensuring that competing Bids would be materially higher or otherwise better than the Bids reflected in any Stalking Horse Agreement(s)—a clear benefit to the Debtor's estate.  Moreover, it is unlikely any Stalking Horse Bidder(s) would be willing to agree to act in such capacity without being granted the Bid Protections.  Without the Bid Protections, the Debtor may lose the opportunity to obtain the highest and best offer for the Assets and would certainly lose the downside protection that will be afforded by the existence of Stalking Horse Bidder(s).

27.     Additionally, any Stalking Horse Bidder(s) will have expended, and will continue to expend, considerable time, money, and energy in connection with the Sale Transaction and will engage in extended and lengthy good faith negotiations.  In particular, any Stalking Horse Agreement will be the culmination of a marketing effort and part of a process undertaken by the Debtor and the Debtor's professionals to identify and negotiate a Sale Transaction that they believe to be the highest and best proposal for an acquisition of the Assets.  For all the foregoing reasons, the Debtor believes that granting any Bid Protections requested by the Debtor pursuant to any Stalking Horse Order will maximize the value realized for the benefit of the Debtor's estate, its creditors, and other parties in interest.

28.     Finally, payment of the Bid Protections in the context of a sale to another purchaser that outbids a Stalking Horse Bidder will not diminish the Debtor's estate to the extent they become payable, as the Bidding Procedures require that any competing Bid must exceed a Stalking Horse Bid by an amount in excess of the break-up fee and expense reimbursement.  For the foregoing reasons, the Debtor submits that any Bid Protections will reflect a sound business purpose, be fair and appropriate under the circumstances, and should be approved.

27632813 v3

**D.    This Court Should Approve the Sale Free and Clear of all Liens, Claims, and Encumbrances Pursuant to Section 363(f) of the Bankruptcy Code.**

29.    The Debtor also requests that the Sale Order provide that the sale of the Assets is free and clear of any interest held by any third party in any of the Assets to be sold.  Specifically, it is contemplated that upon the closing, the Stalking Horse Bidder (or such other Successful Bidder(s) as may be selected in accordance with the Bidding Procedures) will take title to and possession of the Assets, free and clear of any pledges, liens, security interests, encumbrances, claims (as such term is defined in section 101(5) of the Bankruptcy Code) charges, options, and interests thereon (collectively, the "**Interests**") to the maximum extent permitted by section 363 of the Bankruptcy Code, except as otherwise provided in the Stalking Horse Agreement or such other Asset Purchase Agreement.

30.    Section 363(f) of the Bankruptcy Code authorizes the sale of property under section 363(b) of the Bankruptcy Code to be free and clear of interests in such property held by an entity if:

a.    Applicable non-bankruptcy law permits a sale of such property free and clear of such interests;

b.    Such entity consents;

c.    Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d.    Such interest is in bona fide dispute; or

e.    Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

31.    The sale of the Assets pursuant to the Bidding Procedures will satisfy section 363(f) of the Bankruptcy Code because any entities holding Interests against the Assets will have received notice of the sale.  All parties in interest will be given sufficient opportunity to object to the relief requested herein and any such entity that does not object to the sale of the Assets should be deemed to have consented.  *See Futu Resource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002)

27632813 v3

("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims, and encumbrances satisfies section 363(f)(2)); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same); *see also In re Enron Corp.*, 2003 WL 21755006, at *2 (Bankr. S.D.N.Y. 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363 (f)(2)).  As such, the sale of the Assets may be free and clear of all Interests except any liabilities expressly assumed by the Stalking Horse Bidder (or other Successful Bidder(s)), thus satisfying section 363(f)(2) of the Bankruptcy Code.

32.     Moreover, a sale of the Assets free and clear may proceed pursuant to section 363(f) of the Bankruptcy Code because creditors with an interest in the Assets can be compelled to accept money satisfaction of their claims pursuant to section 363(f)(5) of the Bankruptcy Code.  *See In re Urban Commons 2 West LLC*, Docket No. 22-11509, *7-8, *11 (Bankr. S.D.N.Y. March 4, 2025) ("For decades after the Bankruptcy Code's enactment, many courts and commentators considered it settled that section 363(f)(5) made free-and-clear sales widely available because foreclosure sales and UCC sales satisfied that subsection" and "the Court reads section 363(f)(5) to encompass not any conceivable hypothetical proceeding that might compel interest holders to accept a money satisfaction, but only proceedings that might realistically be brought in the case before the court if the automatic stay were lifted or did not apply. In most cases, this would include

20

either foreclosure proceedings or UCC sales."); *Scherer v. Fed. Nat'l Mortgage Assoc. (In re Terrace Chalet Apartments, Ltd.)*, 159 B.R. 821, 829 (N.D. Ill. 1993) (holding that pursuant to section 363(f)(5) of the Bankruptcy Code courts may authorize sales free and clear of a secured creditor's lien if such creditor's interest could be crammed down pursuant to section 1129(b)(2) of the Bankruptcy Code); *In re Healthco Int'l, Inc.*, 174 B.R. 174, 176 (Bankr. D. Mass. 1994) (same). Therefore, this Court may authorize the Sale Transaction pursuant to section 363(f)(5) of the Bankruptcy Code.[2]

33.     The Debtor also believes that other provisions of section 363(f) of the Bankruptcy Code may be applicable to and would permit the sale of the Assets. Thus, the sale of the Assets is appropriately free and clear of all Interests pursuant to section 363(f) of the Bankruptcy Code.

**E.     The Successful Bidder(s) Should be Entitled to the Protections of 363(m) of the Bankruptcy Code.**

34.     The Debtor seeks the protections afforded under section 363(m) of the Bankruptcy Code, which provide, in pertinent part:

> (m) The reversal or modification on appeal of an authorization under section (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

35.     The Debtor submits that the sale of the Assets to the Successful Bidder(s) warrants a finding that the Assets were acquired in good faith within the meaning of section 363(m) of the Bankruptcy Code.  The Debtor will continue to aggressively market the Assets.  Any parties who

---

[2]     The Debtor notes that, under the Final DIP Order, this Motion must be in form and substance acceptable to the Lenders under the Final DIP Order but that satisfaction of such requirement is not an endorsement by Lenders of the arguments set forth herein or a waiver of any future objection by Lenders, who have reserved all rights in connection with this Motion and the Global Objection Deadline.

27632813 v3

have expressed any meaningful interest in acquiring the business and Assets of the Debtor will be

given notice of the sale. No subjectivity in evaluating bids will be at issue. The highest and best

bidder will purchase the Assets, subject to the terms of the Bidding Procedures.

36.     Accordingly, the Sale Order will include a provision that the Successful Bidder(s)

for the Assets is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy

Code. The Debtor believes that providing such protection will ensure that the maximum price will

be received by the Debtor for the Assets and closing of the Sale Transaction will occur promptly.

**F.      Assumption and Assignment of the Assumed Contracts Is Warranted Under
        Section 365 of the Bankruptcy Code**

37.     The Debtor also seeks authority to assume and assign Executory Contracts in

accordance with the Assignment Procedures (any such assumed and assigned Executory Contracts,

the "**Assigned Contracts**") as part of a Sale Transaction. No later than October 24, 2025, the

Debtor will file a schedule of cure obligations (the "**Cure Schedule**") for the Executory Contracts

that the Debtor has identified as potential Assigned Contracts. The Cure Schedule will include the

amount, if any, the Debtor believes necessary to cure defaults under such agreements pursuant to

sections 365(b)(1) and 365(f)(2)(A) of the Bankruptcy Code (the "**Cure Costs**"). An Executory

Contract's inclusion on the Cure Schedule means only that a Successful Bidder may include the

contract as an Assigned Contract in an asset purchase agreement. In addition, inclusion of any

document in the Cure Schedule does not constitute, and is not deemed to be, a determination or

admission by the Debtor or any Successful Bidder that such document is, in fact, an executory

contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect

thereto are expressly reserved. The Debtor may amend or supplement the Cure Schedule as

necessary.

27632813 v3

38.      The Debtor will serve a copy of the Cure Schedule, together with the Assumption/Assignment Notice, on each of the non-debtor counterparties to the agreements listed on the Cure Schedule by first class mail on the date that the Cure Schedule is filed with the Bankruptcy Court.  If the Debtor amends the Cure Schedule, the Debtor will serve a copy of the amended Cure Schedule, together with the Assumption/Assignment Notice, on each of the affected non-debtor counterparties to the agreements listed on the amended Cure Schedule by first class mail.  The Debtor proposes that any objections to the Cure Costs set forth on the Cure Schedule, or the assumption and assignment of the Executory Contracts identified therein (aside from objections relating to the adequate assurance of future performance by the Successful Bidders), must be filed on or before November 13, 2025, at 4:00 p.m. (prevailing Eastern Time) (the "**<u>Cure Schedule Objection Deadline</u>**").

39.      If the Debtor receives no timely objections to the Cure Costs, then the Cure Costs set forth in the Cure Schedule will be binding upon the non-debtor counterparties to any Executory Contract ultimately identified as an Assigned Contract for all purposes in this Chapter 11 Case and will constitute a final determination of the total Cure Costs the Successful Bidder must pay in connection with the assumption and assignment of any Assigned Contracts (unless a portion of such costs are paid or satisfied in any manner, in which case the Cure Costs will be reduced).  In addition, all non-debtor counterparties to the potential Assigned Contracts will be forever (a) barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the Assigned Contracts (and the Debtor and the Successful Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule); and (b) barred, estopped, and permanently enjoined from asserting or claiming against the Debtor, any Successful Bidder, or their respective property that any additional amounts are due or other defaults exist, that conditions

to assignment must be satisfied under such Assigned Contract, or that there is any objection or defense to the assumption and assignment of such Assigned Contract;

40.     If a non-debtor counterparty to an Assigned Contract files an objection asserting a cure amount higher than the proposed Cure Costs (any such amount, a "**Disputed Cure Amount**"), the following procedures will govern the resolution of the Disputed Cure Amount: (a) to the extent that the parties (including, if applicable, a Successful Bidder) are able to consensually resolve the Disputed Cure Amount prior to the Sale Hearing, the Debtor shall promptly provide the Consultation Parties with notice and an opportunity to object to such proposed resolution and, if no objection, such resolved Disputed Cure Amount shall be paid upon closing of the Sale Transaction or as otherwise provided in the applicable asset purchase agreement; or (b) to the extent that the parties are unable to consensually resolve the dispute prior to the Sale Hearing or any of the Consultation Parties raises an objection, the Debtor may, after consulting with the Consultation Parties, (i) assume the applicable Assigned Contract prior to the resolution of the Disputed Cure Amount; *provided, however*, that the undisputed portion of the Cure Costs shall be paid upon the closing of the Sale Transaction and the Successful Bidder shall escrow cash in an amount sufficient to indefeasibly pay in full the Disputed Cure Amount asserted by the applicable counterparty to the Assigned Contract (or such lesser amount as may be agreed to by the applicable counterparty to the Assigned Contract), or (ii) adjourn the request to assume the Assigned Contract pending resolution of the Disputed Cure Amount.  For the avoidance of doubt, parties to a Disputed Cure Amount shall be allowed to request a hearing before this Court on such Disputed Cure Amount by filing a request for hearing.  Upon resolution of a Disputed Cure Amount under subsection (b) of this Paragraph, as evidenced by the entry of a final non-appealable order from this Court, such resolved Disputed

27632813 v3

Cure Amount shall be paid by the Successful Bidder on the later of the closing of the Sale

Transaction and 3 (three) business days following entry of such final non-appealable order.

41.     Section 365(a) of the Bankruptcy Code provides as follows:

> Except as provided in section 765 and 766 of this title and in subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a).

42.     Section 365 of the Bankruptcy Code authorizes the assumption or rejection of any

executory contract or unexpired lease of a debtor except for open contracts of commodity brokers

that are covered by Bankruptcy Code sections 765 and 766.

43.     The Bankruptcy Code provides little guidance as to the standards to be applied by

a court in approving an assumption or rejection.  Drawing on pre-Code law, the predominant test

is described as the "business judgment" rule or business judgment test.  *In re Kong*, 162 B.R. 86,

94 (Bankr. E.D.N.Y. 1993*); In re Minges*, 602 F.2d 38 (2nd Cir. 1979); *In re Child World*, 142

B.R. 87, 89 (Bankr. S.D.N.Y. 1992); *In re Stable Mews Assocs.*, 41 B.R. 594 (Bankr. S.D.N.Y.

1984).  The business judgment test is the same test applied to judicial review of corporate decisions

outside bankruptcy. *Johnson v. Fairco Corp.*, 61 B.R. 317 (N.D. Ill. 1986).  This test analyzes the

impact that continued performance under the executory contract or unexpired lease will have on

the estate.  Assumption or rejection of the contract or lease will be approved upon a mere showing

that the action will benefit the estate.  *In re Chestnut Ridge Plaza Assocs., L.P.*, 156 B.R. 477

(Bankr. W.D. Pa. 1993) (test is best interest of the estate); *Bezanson v. Metropolitan Ins. & Annuity

Co.*, 952 F.2d 1 (1st Cir. 1991).

44.     In addition to the business judgment test, section 365 (b)(1) of the Bankruptcy Code

further provides that the debtor may not assume an executory contract or unexpired lease unless,

at the time of assumption, the debtor:  (a) cures defaults; (b) compensates the non-debtor party to

27632813 v3

the lease or contract for any actual pecuniary loss resulting from defaults; and (c) provides adequate assurance of future performance. *See* 11 U.S.C § 365(b)(1).

45.    In the present case, the Debtor may seek to assume the Assigned Contracts and assign the Assigned Contracts to the Successful Bidder(s). Section 365(f) of the Bankruptcy Code addresses assumption and assignment of executory contracts and unexpired leases and provides, in pertinent part:

> (1)    Except as provided in subsections (b) and (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection . . . .

> (2)    The trustee may assign an executory contract or unexpired lease of the debtor only if—

>> (A)    the trustee assumes such contract or lease in accordance with the provisions of this section; and

>> (B)    adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365 (f)(1)-(2).

46.    Section 365(f) of the Bankruptcy Code provides that the assignment of a properly assumed contract or lease is to be permitted by the Court only if the debtor has assumed the contract or lease in compliance with all of the terms of section 365 of the Bankruptcy Code and if the debtor provides the other party to the contract or lease with adequate assurance of future performance by the assignee of the contract or lease. 11 U.S.C. § 365(f)(2). The words "adequate assurance of future performance" must be given a "practical, pragmatic construction" in light "of the proposed assumption." *In re Fleming Cos.*, 499 F.3d 300, 307 (3d Cir. 2007) (quoting *Cinicola v. Scharffenberger*, 248 F.3d 110, 120, n.10 (3d Cir. 2001)); *see also Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (same); *In re Nalco Indus.,*

*Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

47.     As part of this Motion, the Debtor seeks authority to assume and assign the identified Assigned Contracts to the Successful Bidder(s).  Any assumption and assignment of the Assigned Contracts will be subject to any applicable provisions of the Bankruptcy Code.  The proposed terms and conditions set forth herein and in the Bidding Procedures are designed to ensure that the assignees, if any, are financially able and prepared to undertake all of the obligations of the Assumed Contracts.  In addition, the availability of the Sale Hearing gives this Court and other parties in interest an appropriate opportunity to evaluate any assignment issues.

48.     The Debtor asserts that under the circumstances, the Assigned Contracts can be properly assumed in compliance with section 365 of the Bankruptcy Code.  First, the assumption of the Assigned Contracts by the Debtor complies with the requirements of section 365 because assumption clearly satisfies the "business judgment test".  The Debtor's satisfaction of the business judgment test is demonstrated by the benefit to the Debtor's estate, which will accrue as a result of the Debtor's ability to close the Sale Transaction and from the savings realized as a result of: (a) the assumption of the Debtor's obligations under the Assigned Contracts; and (b) the avoidance of a potential rejection damages claims and possible administrative expense claims.

49.     Second, all monetary defaults under the Assigned Contracts will be cured by payment of the Cure Costs at the time of assumption by the Successful Bidder(s).

27632813 v3

50.     Third, it is contemplated that the Successful Bidder(s) will be capable of satisfying the adequate assurance conditions of sections 365(b)(i)(c) and 365(f) of the Bankruptcy Code with respect to the Assigned Contracts.  Adequate assurance of future performance is to be determined on a case-by-case basis to ensure that the other party to the contract or lease obtains the benefit of the bargain for what was contracted.  *Chera v. 991 Blvd. Realty Corp. (In re National Shoes, Inc.)*, 20 B.R. 55, 59 (Bankr. S.D.N.Y. 1982); *see also In re Bygaph*, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986) ("Congress intended that the words 'adequate assurance' be given a practical, pragmatic construction, and is to be determined under the facts of each particular case").  The Debtor submits, and will demonstrate at the Sale Hearing, that there are adequate business justifications for the assumption and assignment of the Assigned Contracts and that all requirements to assumption and assignment, including adequate assurance of future performance by the Successful Bidder(s), have been met.

## G.     The Proposed Notice of the Sale Hearing is Adequate and Appropriate.

51.     Under Bankruptcy Rule 2002(c), notice of the Sale Hearing must include the date, time, and place of the potential Auction and the Sale Hearing, and the deadline for filing any objections to the relief requested in this Motion.

52.     Within two (2) business days after entry of the Bidding Procedures Order, the Debtor will serve the proposed Auction and Hearing Notice by email or overnight mail to (a) the United States Trustee's office, (b) The Debtor's twenty (20) largest unsecured creditors as reflected on the Debtor's petition, (c) Prepetition Lender, (d) the Federal Aviation Administration, and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively the "**Notice Parties**"), and to the extent not included as one of the Notice Parties, any parties known or reasonably believed to have expressed an interest in the Debtor's Assets and all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in any of the

Debtor's Assets.  In addition, as soon as practicable, after entry of the Bidding Procedures Order, the Debtor will publish the Auction and Hearing Notice, with any modification necessary for ease of publication, once in applicable trade or industry publications to provide notice to any other potential interested parties.

53.     As Bankruptcy Rule 2002(c) requires, the Auction and Hearing Notice will include (among other things) the following:  (a) the proposed date, time, and place of the Auction and the Sale Hearing; (b) information about the Assets and the sale process; and (c) the Global Objection Deadline for filing any objections to the relief requested in this Motion.  The methods of notice described herein comply fully with Bankruptcy Rule 2002 and constitute good and adequate notice of the proposed sale of the Assets.

### H.      Waiver of Bankruptcy Rules 6004(h) and 6006(d)

54.     The Debtor requests that, upon entry of a Sale Order, the Court waive the 14-day stay requirements of Bankruptcy Rules 6004(h) and 6006(d).  The waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) will allow any Sale Transaction to close as soon as possible and prevent further delay in the administration of this case.  In addition, because many of the Assets impose holding costs on the Debtor during its period of ownership and control, any delay in closing may diminish the Debtor's estate to the detriment of creditors.  Thus, the Debtor respectfully submits that a waiver of the 14-day stay requirements contained in Bankruptcy Rules 6004(h) and 6006(d) is appropriate under the circumstances.

### I.      Local Bankruptcy Rule 9013.

55.     Local Rule 9013-2(a) provides that briefs and memoranda shall not exceed twenty pages except upon leave of court for good cause shown.  The Debtor respectfully requests leave, retroactive to the filing hereof and pursuant to Local Rule 9013-2(a), to exceed the 20-page limit and to waive the table of contents requirement with respect to this Motion.  Given the issues

presented in the Chapter 11 Case, the nature of the relief requested in the Motion, and the length

of the factual and procedural assertions set forth in the Motion, there is good cause for the Court

to waive the requirements of Local Rule 9013-2(a) in this limited instance.

## RESERVATION OF RIGHTS

56.      Except as otherwise provided in the Bidding Procedures Order, Stalking Horse

Bidder Order, or Sale Order, nothing contained herein is intended or shall be construed as:  (a) an

admission as to the amount of, basis for, or validity of any claim against the Debtor under the

Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other

party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay

any claim; (d) an implication or admission that any particular claim is of a type specified or defined

in this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract,

or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission to the validity, priority,

enforceability, or perfection of any lien on, security interest in, or encumbrance on property of the

Debtor's estate; or (g) a waiver of any claims or causes of action which may exist against any

entity under the Bankruptcy Code or any other applicable law.

## NOTICE

57.      The Debtor has provided notice of this motion to the following parties or their

respective counsel: (a) the U.S. Trustee for the Southern District of Ohio; (b) the Debtor's twenty

(20) largest unsecured creditors as reflected on the Debtor's petition; and (c) any party that has

requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested

herein, the Debtor submits that no other or further notice is required.

## NO PRIOR REQUEST

58.      No prior request for the relief sought herein has been made to this or any other

court.

27632813 v3

**WHEREFORE**, the Debtor respectfully requests that the Court (i) enter the Bidding Procedures Order substantially in the form attached hereto as **<u>Exhibit A</u>**; (ii) after a Sale Hearing, enter the Sale Order approving the sale of the Assets to the Successful Bidder; and (iii) grant such other and further relief to the Debtor as the Court may deem proper.

October 9, 2025

Respectfully submitted,

COOLIDGE WALL CO., L.P.A.

*/s/ Patricia J. Friesinger*
Patricia J. Friesinger (0072807)
Briana C. Breault (0099773)
33 West First Street, Suite 600
Dayton, Ohio 45402
Tel: 937/223-8177
Fax: 937/223-6705
E-Mail:  friesinger@coollaw.com
                breault@coollaw.com

*Proposed Counsel for Debtor and Debtor-In-Possession CTL-Aerospace, Inc.*

27632813 v3

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-12226 |
| | ) | |
| CTL-AEROSPACE, INC., | ) | Chapter 11 |
| | ) | |
| | ) | Judge Beth A. Buchanan |
| Debtor. | ) | |
| | ) | |

**ORDER ESTABLISHING BIDDING PROCEDURES RELATING TO THE SALES OF
ALL OR A PORTION OF THE DEBTOR'S ASSETS [RELATED TO DOCKET NO. ]**

Upon consideration of the *Debtor's Motion for Entry of (I) An Order (A) Approving
Bidding and Sale Procedures with Respect to the Sale of Substantially All of the Debtor's Assets,
(B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice
Thereof, (C) Approving the Procedures for the Assumption and Assignment of Executory Contracts
and Unexpired Leases, (D) Approving Procedures for Selection of One or More Stalking Horse
Bidder(s) and the Provision of Bid Protections to Such Stalking Horse Bidder(s), and (E) Granting
Related Relief; and (II) An Order Approving the Sale of Such Assets and Granting Related Relief*
**(the "Motion**")[1] seeking, pursuant to sections 105, 363, 365, and 503(b) of the Bankruptcy Code
and Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules, and Local Rule 6004-1, an order:

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Motion.

(a) approving proposed bidding and sale procedures attached as **Annex 1** to this Order (the "**Bidding Procedures**") and related dates and deadlines in connection with the sale or sales (collectively, the "**Sale Transaction**") of substantially all of the Debtor's assets (individually an "**Asset**" and**,** collectively**,** the "**Assets**"); (b) approving the date, and form and manner, of notice of an auction of the Assets (the "**Auction**") and related Sale Hearing, including the form and manner of notices attached to the Motion as **Exhibit B** (the "**Auction and Hearing Notice**"); (c) establishing procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "**Executory Contracts**") in connection with the Sale Transaction, including notice of proposed cure amounts (the "**Assignment Procedures**"), and approving the form and manner of notice of the proposed assumed and assigned Executory Contracts (collectively, the "**Assigned Contracts**") in the form attached to the Motion as **Exhibit C** (the "**Assumption/Assignment Notice**"); (d) approving the procedures governing the Debtor's selection of one or more stalking horse bidders (each, a "**Stalking Horse Bidder**"), if any, and the provision allowing for payment of break-up fees and/or expense reimbursements (the "**Bid Protections**") to such Stalking Horse Bidder(s), if necessary; (e) approving the Debtor's notice to announce the Successful Bidder (as defined below), in the form and manner attached to the Motion as **Exhibit E** (the "**Successful Bid Notice**"); and (f) granting certain related relief as described in the Motion; and the Bankruptcy Court having considered statements of counsel, and the evidence presented at the hearing on the Motion; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     This Court has jurisdiction over this matter and over the property of the Debtor and its bankruptcy estate pursuant to 28 U.S.C. §§ 157 and 1334 and may enter a final order on the Motion consistent with Article III of the United States Constitution.   This matter is a core

27632813 v3

proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this district is proper under 28 U.S.C. § § 1408 and 1409.

B.       The Debtor has demonstrated a compelling and sound business justification for the Court to enter this Order and thereby (i) approve of the Bidding Procedures, including the procedures for selecting one or more Stalking Horse Bidder(s) and granting Bid Protections (if any); (ii) set the dates of the Bid Deadline, Auction (if needed), and Sale Hearing; (iii) establish notice procedures and approve the forms of notice; and (iv) approve the procedures related to assumption and assignment of the Assigned Contracts.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the Bidding Procedures hearing, among other things, forms the basis for the findings of fact and conclusions of law set forth herein.

C.       The Bidding Procedures and the Assignment Procedures are fair, reasonable and appropriate under the circumstances. The Bidding Procedures are reasonably designed to maximize the recovery on and value to be achieved and realized for the Assets.  As such, the Bidding Procedures are supported by, and constitute a proper exercise of, the Debtor's business judgment.

D.       Consistent with Local Rule 6004-1(b)(1), the proposed notice of the Auction, the Sale Hearing, the Bidding Procedures (including the procedures for selecting one or more Stalking Horse Bidder(s) and granting Bid Protections (if any)), and the proposed treatment of the Assigned Contracts, as set forth in the Motion and this Order, are appropriate and sufficient and are reasonably calculated to provide all interested parties with timely and proper notice thereof and no other or further notice shall be required in connection with these matters or the proposed Sale Transaction.

27632813 v3

E.      Good and sufficient notice of the relief sought in the Motion and granted herein has been given under the circumstances, and no further notice of such matters is required.  A reasonable opportunity to object, or to be heard, regarding the relief requested in the Motion and granted herein was afforded to all interested persons and entities.

F.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Bidding Procedures hearing or by stipulation filed with the Court are overruled except as otherwise set forth herein.

G.      The Bidding Procedures are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Debtor's estate.

H.      The Auction and Hearing Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of Assets, including the sale of the Assets free and clear of all liens, claims, and encumbrances, the Sale Transaction(s), the Bidding Procedures, the Auction, and the Sale Hearing, and no other or further notice is required.

I.      The Assumption/Assignment Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the Assigned Contracts in connection with the sale of the Assets and the related Cure Costs, and no other or further notice is required.

J.      The relief requested in the Motion and entry of this Order is in the best interests of the Debtor and its estate, creditors, and interest holders and all other parties in interest.

K.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the preceding findings of fact

27632813 v3

constitute conclusions of law, they are adopted as such. To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED.

2.      The Debtor is authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

| **EVENT** | **DATE** |
|:---:|:---:|
| Cure Schedule Filing Deadline | October 24, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Cure Schedule Objection Deadline | November 13, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Stalking Horse Bidder(s) Identification Deadline | November 19, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Last possible deadline to object to Debtor's designation of the Stalking Horse Bidder(s) and the Bid Protections set forth in the Stalking Horse Agreement(s) | 4:00 p.m. (prevailing Eastern Time) on the date five (5) Business Days following the date Debtor files notice of the designation of a Stalking Horse Bid |
| Last day for hearing for objections to the designation of the Stalking Horse Bidder(s) and the Bid Protections set forth in the Stalking Horse Agreement(s) | December 5, 2025 (or such other time based on the Court's availability) |
| Bid Deadline | December 8, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Auction Date (if applicable) | December 10, 2025, at 9:00 a.m. (prevailing Central Time) |
| Global Objection Deadline | December 12, 2025, at 10:00 a.m. (prevailing Eastern Time) |
| Sale Hearing | December 12, 2025, at 10:00 a.m. (prevailing Eastern Time) (subject to Court availability) |
| Outside Closing Deadline | December 22, 2025, at 11:59 p.m. (prevailing Eastern Time) |

3. The failure to timely file an objection in accordance with the deadlines set forth in this Order shall forever bar the assertion of any objection to the Motion, entry of the Stalking Horse Order or Sale Order and/or consummation of any Sale Transaction(s), including the assumption and assignment of Assigned Contracts to the Successful Bidder(s) pursuant to the applicable Stalking Horse Agreement or APA, and shall be deemed to constitute any such party's consent to entry of the applicable order and consummation of the Sale Transaction(s) and all other transactions related thereto.

4. The Debtor reserves the right, and is authorized to, modify the above timeline and the Bidding Procedures in accordance with the Bidding Procedures in accordance with this order and any other order entered by this Court.

5. The Bidding Procedures, attached hereto as **Annex 1** and incorporated herein, are hereby approved in all respects and will govern all bids and bid proceedings relating to the Assets. Any party desiring to submit a bid shall comply with the Bidding Procedures and this Order. The Debtor and its professionals and agents are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures. The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order will not diminish or impair the effectiveness of such provision.

6. The deadline for submitting a Qualified Bid shall be **December 8, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**"). The Bid Deadline may be modified as set forth in the Bidding Procedures. The Debtor shall promptly provide copies of all bids that are reasonably likely to be deemed Qualified Bids to Prepetition Lender, Committee, General Electric Company (d/b/a GE Aerospace ("**GE**")), and Kawasaki Heavy Industries, Ltd. ("**KHI**"); *provided that* if GE or KHI submits a bid for some or all of the Debtor's assets, the applicable bidder shall

- 6 -

27632813 v3

be immediately suspended as a Consultation Party unless and until such bid is not designated as a Qualified Bid, in which case the applicable bidder shall immediately be reinstated as a Consultation Party without further order from the Court (collectively, the "**Consultation Parties**").

7.      For the avoidance of doubt, the Prepetition Lender will be deemed a Qualified Bidder without the need to submit any of the materials required for a Qualified Bid, and its credit bids will be deemed Qualified Bids (and there will be no obligation for Prepetition Lender to provide a Good Faith Deposit).

8.      Any Auction, if necessary as determined by the Debtor in the exercise of the Debtor's reasonable business judgment and in consultation with the Consultation Parties, shall be conducted at the offices of Capstone Capital Markets LLC ("**Capstone**"), 311 S Wacker Drive, Suite 2450, Chicago, Illinois 60606, at **9:00 a.m. (prevailing Central Time) on December 10, 2025,** or such other time and location in Chicago, Illinois as the Debtor, after consultation with the Consultation Parties, may determine and specify in writing to each Qualified Bidder and the Consultation Parties.  The Auction shall be conducted openly and shall be transcribed as described in greater detail in the Bidding Procedures.  The Auction may be rescheduled as set forth in the Bidding Procedures.

9.      At the request of the Debtor, each bidder participating at the Auction (as determined in accordance with this Order and the Bidding Procedures) shall be required to confirm in writing at the Auction that (a) it has not engaged in any conduct of the type described in section 363(n) of the Bankruptcy Code with respect to the bidding process and (b) its bid is a good faith bona fide offer that it intends to consummate if selected as the Successful Bidder.

27632813 v3

10.     The Court will conduct the Sale Hearing on **December 12, 2025, at 10:00 a.m.
(prevailing Eastern Time)** or as soon thereafter as counsel and interested parties may be heard,
at which time the Court shall consider approval of the Sale Transaction to the Successful Bidder(s)
and the entry of the Sale Order(s).  The Debtor, in its discretion, and in consultation with the
Consultation Parties, may adjourn or reschedule the Sale Hearing without notice, including by
(a) an announcement of such adjournment at the Sale Hearing or at an Auction, or (b) the filing of
a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

11.     Within two (2) business days after entry of this Order, the Debtor shall serve the
proposed Auction and Hearing Notice substantially in the form attached to the Motion as
**Exhibit B** (as may be modified by this Order) by email or overnight mail to (a) the United States
Trustee's office, (b) The Debtor's twenty (20) largest unsecured creditors as reflected on the
Debtor's petition, (c) Prepetition Lender, (d) the Federal Aviation Administration, and (e) any
party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively the "**Notice
Parties**"), and to the extent not included as a Notice Party, any parties known or reasonably
believed to have expressed an interest in the Debtor's Assets and all entities known or reasonably
believed to have asserted a lien, encumbrance, claim, or other interest in any of the Debtor's Assets.
In addition, as soon as practicable, after entry of this Order, the Debtor will publish the Auction
and Hearing Notice, with any modification necessary for ease of publication, once in applicable
trade or industry publications to provide notice to any other potential interested parties.

12.     In accordance with the Bidding Procedures, the Debtor may enter into a Stalking
Horse Agreement, subject to higher or otherwise better offers at the Auction, with any Stalking
Horse Bidder that submits a Qualified Bid acceptable to the Debtor, in consultation with the
Consultation Parties, to establish a minimum Qualified Bid at the Auction.

27632813 v3

13.     The Stalking Horse Agreement may provide for payment of break-up fees and/or expense reimbursements (the "**Bid Protections**"), subject to entry of the Stalking Horse Order (as defined below).

14.     In the event that the Debtor selects one or more parties to serve as a Stalking Horse Bidder, upon such selection, the Debtor shall file with the Court and provide to all parties in interest notice of and an opportunity to object to the designation of such Stalking Horse Bidder and the Bid Protections set forth in the Stalking Horse Agreement. Absent objection, which must be filed no later than five (5) Business Days following the filing of the notice of selection of the Stalking Horse Bidder, the Debtor may submit an order to the Court under certification of counsel approving the selection of such Stalking Horse Bidder and the Bid Protections (the "**Stalking Horse Order**"). To the extent necessary, the Debtor's right to seek this Court's approval of one or more Stalking Horse Bidder(s), with notice and a hearing, is hereby preserved.

15.     All objections to approval of the Sale Transaction, including: (i) the sale of the Assets free and clear of all Interests pursuant to section 363(f) of the Bankruptcy Code; and/or (ii) the form of the Sale Order must be filed no later than prior to the commencement of the Sale Hearing (the "**Global Objection Deadline**").  For the avoidance of doubt, the rights of parties to object to the Sale Transaction and form of Sale Order are fully preserved to the Global Objection Deadline and nothing in this Order including, without limitation, any approval of a Stalking Horse Agreement, shall abrogate or otherwise modify those rights.  If the Debtor files an amended Cure Schedule less than three days prior to the Cure Schedule Objection Deadline, the Cure Schedule Objection Deadline shall be extended to the earlier of: (i) three (3) Business Days from the filing of such amended Cure Schedule; and (ii) the Sale hearing **solely with respect to the Cure Costs set forth on the amended Cure Schedule**.

16.     A party that fails to timely file an objection by the Global Objection Deadline shall be (i) forever barred from asserting any objection to entry of the Sale Order or consummation of the applicable sale transaction(s) and (ii) deemed to have consented to entry of the Sale Order and consummation of the Sale Transaction, including, without limitation, the sale free and clear of Interests for purposes of section 363(f) of the Bankruptcy Code.

17.     Following the designation of a Successful Bid, the Debtor shall file a Successful Bid Notice prior to the Sale hearing.

18.     As soon as practicable, but no later than October 24, 2025, the Debtor shall file a schedule of cure obligations (the "**Cure Schedule**") for Executory Contracts that they have identified as potential Assigned Contracts.  The Cure Schedule shall include (i) a summary description containing the name of the contract counterparty of each Executory Contract that the Debtor may assume and assign to a potential buyer; and (b) the amount, if any, the Debtor believes would be necessary to cure defaults under such agreements pursuant to sections 365(b)(1) and 365 (f)(2)(A) of the Bankruptcy Code (the "**Cure Costs**").  Listing an executory contract and unexpired lease on the Cure Schedule does not mean that a Successful Bidder ultimately will identify such agreement as an Assigned Contract in an asset purchase agreement.  In addition, inclusion of any document in the Cure Schedule does not constitute, and is not deemed to be, a determination or admission by the Debtor or any Successful Bidder that such document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code.  The Cure Schedule may be amended or supplemented by the Debtor from time to time.  For the avoidance of doubt, all rights of a counterparty to an Assigned Contract under section 365 of the Bankruptcy Code are fully reserved to the applicable objection deadlines as provided by this Order.

27632813 v3

19.    The Debtor shall serve a copy of the Cure Schedule, together with the Assumption/Assignment Notice in substantially the form attached to the Motion as **Exhibit C** (as modified by this Order), on each of the non-debtor counterparties to the agreements listed on the Cure Schedule by first class mail on the date that the Cure Schedule is filed with the Court.  If the Debtor amends the Cure Schedule to remove or add additional executory contracts and unexpired leases or amend a particular Cure Cost, the Debtor shall serve a copy of the amended Cure Schedule, together with the Assumption/Assignment Notice, on each of the affected non-debtor counterparties to the agreements listed on the amended Cure Schedule by first class mail.

20.    Unless a non-debtor counterparty to an Assigned Contract has timely and properly filed and served an objection to the assumption and assignment of its Assigned Contract or the Cure Costs on or before **November 13, 2025, at 4:00 p.m. (prevailing Eastern Time)**, the Cure Costs set forth in the Cure Schedule shall be binding upon the non-debtor counterparties to the Assigned Contracts for all purposes in this chapter 11 case and shall constitute a final determination of the total Cure Costs required to be paid by the Successful Bidder in connection with the assumption and assignment of the Assigned Contracts (unless a portion of such costs are paid or satisfied in any manner, in which case the Cure Costs shall be reduced).  Absent a timely and properly filed and served objection, all non-debtor counterparties to the Assigned Contracts shall be forever (i) barred from objecting to the Cure Costs and from asserting any and all additional objections or cure or other amounts with respect to the Assigned Contracts, and the Debtor and the Successful Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule; and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtor, any Successful Bidder, or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assigned

Contract, or that there is any objection or defense to the assumption and assignment of such Assigned Contract.

21.     If a non-debtor counterparty to an Assigned Contract files an objection asserting a cure amount higher than the proposed Cure Costs (any such amount, a "**Disputed Cure Amount**"), the following procedures will govern the resolution of the Disputed Cure Amount:  (i) to the extent that the parties (including, if applicable, a Successful Bidder) are able to consensually resolve the Disputed Cure Amount prior to the Sale Hearing, the Debtor shall promptly provide the Consultation Parties with notice and an opportunity to object to such proposed resolution and, if no objection, such resolved Disputed Cure Amount shall be paid upon closing of the Sale Transaction or as otherwise provided in the applicable asset purchase agreement; or (ii) to the extent that the parties are unable to consensually resolve the dispute prior to the Sale Hearing or any of the Consultation Parties raises an objection, the Debtor may, after consulting with the Consultation Parties, (A) assume the applicable Assigned Contract prior to the resolution of the Disputed Cure Amount; *provided, however*, that the undisputed portion of the Cure Costs shall be paid upon the closing of the Sale Transaction or as otherwise provided in the applicable asset purchase agreement and the Successful Bidder(s) shall escrow cash in an amount sufficient to indefeasibly pay in full the Disputed Cure Amount asserted by the applicable counterparty to the Assigned Contract (or such lesser amount as may be agreed to by the applicable counterparty to the Assigned Contract), or (B) adjourn their request to assume the Assigned Contract pending resolution of the Disputed Cure Amount.  For the avoidance of doubt, parties to a Disputed Cure Amount shall be allowed to request a hearing before this Court on such Disputed Cure Amount by filing a request for hearing.  Upon resolution of a Disputed Cure Amount under subsection (ii) of this Paragraph, as evidenced by the entry of a final non-appealable order from this Court, such

27632813 v3

resolved Disputed Cure Amount shall be paid by the Successful Bidder on the later of the closing of the Sale Transaction and 3 (three) business days following entry of such final non-appealable order.

22.     The form of the Auction and Hearing Notice and the Assumption/Assignment Notice, attached to the Motion as **Exhibit B** and **Exhibit C**, respectively, and the manner of service or publication described herein (a) are hereby approved in all respects and (b) are determined to be appropriate and sufficient for all purposes.  The Debtor shall be permitted to make non-substantive revisions to the Auction and Hearing Notice and the Assumption/Assignment Notice, consistent with the Bidding Procedures and this Order.

23.     No other or further notice of the Motion, this Order, the Bidding Procedures, the sale of the Assets, the Auction, the Successful Bidders, the assumption and assignment of Assigned Contracts, or the Sale Hearing shall be required.

24.     Nothing in this Order, the Bidding Procedures, any notices provided pursuant to this Order or otherwise shall or shall be construed to modify, impair, or adversely affect in any way any of the liens, claims, rights, protections, and interests of the Lenders (as defined in the Final DIP Order (as defined below), including their successor and assigns) or GE or the rights of the Debtor to pursue a refinancing alternative as set forth in the *Final Order Under 11 U.S.C. §§ 105(a), 361, 362 and 363, Federal Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2: (I) Authorizing Debtor to Obtain Post-Petition Financing; (II) Authorizing Debtor to Use Cash Collateral; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling and Approving the Form and Method of Notice of Final Hearing; and (VI) Granting Related Relief* [Docket No. 72] (the "**Final DIP Order**").

25.     In the event of any inconsistencies between this Order and the Motion, this Order shall govern in all respects.  In the event of any inconsistencies between this Order and the Bidding Procedures, this Order shall govern in all respects.

26.     All parties (whether or not Qualified Bidders) that participate in the bidding process (including any Auction) shall be deemed to have knowingly and voluntarily (i) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction, and/or the Sale Transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (ii) waived any right to jury trial in connection with any disputes relating to any of the foregoing matters.

27.     This Order shall be immediately effective and enforceable upon its entry, and nothing in Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 (to the extent applicable) shall cause a stay hereof.

28.     The Debtor shall serve this Order by electronic mail or overnight mail to Notice Parties and shall file a certificate of service evidencing compliance with this requirement.

29.     The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

30.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

SO ORDERED.

Copies to: Default List

27632813 v3

## Annex 1 to Bidding Procedures Order

## Bidding Procedures

27632813 v3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-12226 |
| | ) | |
| CTL-AEROSPACE, INC., | ) | Chapter 11 |
| | ) | |
| | ) | Judge Beth A. Buchanan |
| Debtor. | ) | |
| | ) | |

**BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S ASSETS[1]**

On September 8, 2025, the above-captioned debtor and debtor in possession (the "**Debtor**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of Ohio (the "**Bankruptcy Court**"). By motion dated October 9, 2025 (the "**Motion**"), the Debtor requested approval of a process and procedures for, and authority to implement, a sale or sales of substantially all of the Debtor's assets (the "**Assets**").

On October __, 2025, the Bankruptcy Court entered an order (the "**Bidding Procedures Order**") [Docket No. __], which, among other things, set forth the process by which the Debtor is authorized to solicit the highest or otherwise best bid(s) for all or substantially all of the Debtor's Assets, culminating in an auction if competing Qualified Bids (as defined below) are received. These Bidding Procedures are set forth below.

**Any interested bidder should contact, as soon as practical, the
Debtor's financial advisor ("Capstone") as set forth below:**

**Geoffrey Frankel (gfrankel@capstonepartners.com)**

These Bidding Procedures describe, among other items, (a) the Assets offered for sale, (b) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, (c) the conduct of the Auction, if necessary, (d) the selection of Successful Bidder and (e) the Bankruptcy Court approval of the sale(s) of the Assets to the Successful Bidder(s).

1. **Key Dates**

   These Bidding Procedures provide interested parties with the opportunity to complete diligence, to submit competing bids for all or any portion or combination

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Bidding Procedures Order (as defined below).

27632813 v3

of the Assets, and to participate in an auction (the "**Auction**") to be conducted by the Debtor in consultation with the Consultation Parties (as defined below).

The key dates for the sale process are as follows.  Such dates may be extended or otherwise modified by: (a) the Debtor, after consultation with the Consultation Parties, by filing a notice of such extension or modification on the Bankruptcy Court's docket, or (b) an order of the Court:

| <u>EVENT</u> | <u>DATE</u> |
| --- | --- |
| Cure Schedule Filing Deadline | October 24, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Cure Schedule Objection Deadline | November 13, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Stalking Horse Bidder(s) Identification Deadline | November 19, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Last possible deadline to object to Debtor's designation of the Stalking Horse Bidder(s) and the Bid Protections set forth in the Stalking Horse Agreement(s) | 4:00 p.m. (prevailing Eastern Time) on the date five (5) Business Days following  the date Debtor files notice of the designation of a Stalking Horse Bid |
| Last day for hearing for objections to the designation of the Stalking Horse Bidder(s) and the Bid Protections set forth in the Stalking Horse Agreement(s) | December 5, 2025 (or such other time based on the Court's availability) |
| Bid Deadline | December 8, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Auction Date (if applicable) | December 10, 2025, at 9:00 a.m. (prevailing Central Time) |
| Global Objection Deadline | December 12, 2025, at 10:00 a.m. (prevailing Eastern Time) |
| Sale Hearing | December 12, 2025, at 10:00 a.m. (prevailing Eastern Time) (subject to Court availability) |
| Outside Closing Deadline | December 22, 2025, at 11:59 p.m. (prevailing Eastern Time) |

2.     **Asset Purchase Agreement**

The Debtor will draft a form of Asset Purchase Agreement (together with all schedules, exhibits, and ancillary documents and agreements, the "**APA**") for parties interested in acquiring the Assets.  The Debtor intends to provide copies of the form of

27632813 v3

APA to all parties who express interest in submitting a Bid and will also make such form of APA available in the electronic data room established by the Debtor in connection with its sale process.

Pursuant to the form of APA and subject to any exceptions set forth therein, the Successful Bidder shall acquire the Assets free and clear of any and all pledges, liens, security interests, encumbrances, claims, charges, options, and other interests thereon (collectively, the "**Interests**") to the maximum extent permitted by section 363 of the Bankruptcy Code subject to certain other conditions, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Interests applied against the Assets.

3.    **Participation Requirements**

(a)    **Interested Parties**

Each interested person or entity (each an "**Interested Party**") should deliver the following (unless previously delivered) non-binding documents to Capstone:

(i)    an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor;

(ii)    a statement and other factual support demonstrating to the Debtor's reasonable satisfaction that the Interested Party has a bona fide interest in purchasing some or all the Assets, to include a non-binding summary of which Assets the Interested Party has a bona fide interest in purchasing and, indicative, non-binding purchase price for such Assets;

(iii)    sufficient information, as defined by the Debtor, to allow the Debtor to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal, or other authorizations to close the Sale Transaction, including, but not limited to, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtor in their discretion); and

(iv)    any other information that Capstone, on behalf of the Debtor, may reasonably request in order to evaluate the terms and qualifications of a bid or bidder.

If the Debtor determines, after receipt of the items identified above, that an Interested Party has a bona fide interest in some or all of the Assets, no later than two (2) business days after the Debtor makes that determination and has received all of the materials required above, such Interested Party will receive the following items: (i) an electronic copy of the APA (subject to the preparation of such document), and (ii) access information for the Debtor's confidential electronic data room concerning the Assets (the "**Data Room**"). The Debtor reserves the right (in their sole

discretion after consultation with the Consultation Parties) to determine whether an Interested Party has satisfied the above participation requirements.

**FOR THE AVOIDANCE OF DOUBT, FAILURE OF AN INTERESTED PARTY TO SUBMIT THE DOCUMENTS REFERENCED IN THIS PARAGRAPH 3(A) SHALL NOT PRECLUDE THE INTERESTED PARTY FROM SUBMITTING A QUALIFIED BID.**

(b)      **Due Diligence**

Until the Bid Deadline, in addition to access to the Data Room, the Debtor will provide any Interested Party who complies with Paragraph 3(a) such due diligence access or additional information the Interested Party requests and that the Debtor determines to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to Capstone. The Debtor, with the assistance of Capstone, will coordinate all reasonable requests for additional information and due diligence access from an Interested Party.  In the event that any such due diligence material is in written form and has not previously been provided to any other Interested Party, the Debtor will simultaneously provide such materials to each Interested Party and the Stalking Horse Bidder.

Unless otherwise determined by the Debtor, the availability of additional due diligence to an Interested Party will cease if (i) the Interested Party does not become a Qualified Bidder, from and after the Bid Deadline; or (ii) the bidding process is otherwise terminated.

**4.      Qualified Bidder and Qualified Bids**

A "**Qualified Bidder**" is a person or entity who: (a) submits an offer, solicitation, or proposal that satisfies all of the following conditions such that the offer, solicitation, or proposal is deemed a "**Qualified Bid**;" and (b) has an unconditional commitment for financing from a reputable financing institution, documented to the satisfaction of the Debtor, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Debtor.

A Qualified Bidder must submit a Qualified Bid to participate in the sale of the Debtor's Assets, unless the Debtor determines otherwise in the exercise of its business judgment in consultation with the Consultation Parties.  The Debtor shall provide the Consultation Parties with all such Qualified Bids as soon as designated as such by the Debtor.

Notwithstanding anything herein to the contrary, Wells Fargo Bank, N.A. (along with its successors, assigns and any replacement/refinancing lender, the "**Prepetition Lender**") will be deemed a Qualified Bidder without the need to submit any of the materials required for a Qualified Bid, and its credit bids will be deemed Qualified Bids (and there will be no obligation for Prepetition Lender to provide a Good Faith Deposit.

(a)      **No Communication Among Interested Parties**

There shall be no communications regarding the Debtor's sale process between and among any Interested Party submitting a Qualified Bid (including, for the avoidance of doubt, the Stalking Horse Bidder, if any) unless the Debtor has previously authorized such communication in writing.

27632813 v3

Should any Interested Party attempt to communicate directly with another Interested Party, such Interested Party shall provide written notice of the proposed communication(s) to the Debtor's professionals and the Debtor's professionals' shall have the option to attend or be copied on any such communication(s) between the Interested Parties.  The Debtor reserves the right, in its reasonable business judgment, in consultation with the Consultation Parties, to disqualify any Interested Party that has communications between and among themselves without the Debtor's written consent. Such prohibition will not apply to Prepetition Lender to the extent it is not planning on submitting a credit bid.

(b)    **Bid Deadline**

A bidder who desires to be a Qualified Bidder (other than Prepetition Lender) must deliver the Required Bid Documents (as defined below) so as to be received by the Bid Deadline to Capstone (at the address listed above).  The Debtor (in consultation with the Consultation Parties) may extend the Bid Deadline in its sole discretion.  If the Debtor extends the Bid Deadline, the Debtor will promptly notify all bidders who have signed a confidentiality agreement of such extension.

(c)    **Bid Requirements**

All bids must include the following unless otherwise waived by the Debtor in accordance with the Debtor's business judgment, and in consultation with the Consultation Parties (the "**<u>Required Bid Documents</u>**"):

(i)    a letter stating that the bidder's offer is irrevocable until consummation of a transaction involving any other bidder for the Assets identified in such offer (or a subset thereof);

(ii)    a duly authorized and executed APA identifying the Assets to be acquired, including a purchase price allocated for each Asset, and the liabilities and obligations being assumed, including, without limitation, all cure amounts necessary as required by section 365 of the Bankruptcy Code, together with all exhibits and schedules redlined to show those amendments and modifications to the APA and to the proposed Sale Order;

(iii)    written evidence of an unconditional commitment for financing from a reputable financing institution, documented to the satisfaction of the Debtor, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Debtor;

(iv)    any other information the Debtor reasonably deems necessary to clarify the terms and qualifications of the bid;

(v)    the bid must identify the Assets to be purchased and the executory contracts and unexpired leases to be assumed and assigned in connection with such Assets;

(vi)    states that all necessary filings under applicable regulatory, antitrust and other laws or regulations will be made, pursuant to the terms and conditions in the applicable APA or other bid documents, and that payment of the fees associated with such filings will be made by the bidder;

(vii)   is not subject to any contingency, including without limitation, obtaining financing or on the outcome of unperformed due diligence or corporate, stockholder, or internal approval;

(viii)  provides evidence satisfactory to the Debtor, in its sole discretion, of the bidder's financial wherewithal and operational ability to consummate the transaction and satisfy its adequate assurance of future performance requirement with respect to any executory contract or unexpired lease to be assigned to the bidder;

(ix)    is irrevocable until the Debtor has consummated a transaction with the Successful Bidder(s) (as defined below) or the Alternate Bidder(s) (as defined below), as applicable;

(x)     is accompanied by a deposit by wire transfer to an escrow agent selected by the Debtor (the "**Deposit Agent**") equal to the higher of 5% the total cash consideration (including but not limited to, the amount required to be paid for cure costs under section 365 of the Bankruptcy Code and any other amounts the potential bidder identifies as part of its transaction value) of the purchase price or $1,500,000 (any such deposit, a "**Good Faith Deposit**") and includes a completed IRS Form W-8BEN-E or W-9 (as applicable). A Stalking Horse Bidder(s) is not required to submit a Good Faith Deposit;

(xi)    sets forth the representatives who are authorized to appear at the Auction and act on behalf of the contemplated Sale Transaction;

(xii)   expressly states that the bid does not entitle the bidder to any transaction or break-up fee, termination fee, expense reimbursement, substantial contribution claim, or similar type of payment or reimbursement.  A Stalking Horse Bidder(s) is not required to provide this statement;

(xiii)  includes evidence of the bidder's commitment to and ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such bidder's ability to perform in the future under the executory contracts and unexpired leases proposed in its bid to be assumed by the Debtor and assigned to the bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases, as well as the bidder's ability to

6

indefeasibly pay in full all monetary cure amounts as required by section 365 of the Bankruptcy Code and a list of any contracts, leases, or other agreements, if any, included in the proposed bid that the bidder asserts are not subject to section 365 of the Bankruptcy Code.  If requested by notifying counsel for the Debtor via email (friesinger@coollaw.com) and providing contact information to counsel for the Debtor, such evidence shall be provided to the applicable counterparties of such contracts and leases or its legal advisors by December 9, 2025, at 2:00 p.m. (prevailing Eastern Time) via email;

(xiv)   must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtor, after consultation with the Consultation Parties, which time frame shall include a closing by no later than **December 22, 2025, at 11:59 p.m. (prevailing Eastern Time) (the "Outside Closing Date")**;

(xv)    must contain evidence that the bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtor, in consultation with the Consultation Parties) with respect to the submission of its bid and the consummation of the transactions contemplated in such bid;

(xvi)   includes an acknowledgment that the bidder has not engaged in any collusion with respect to the Bidding Procedures and its bid is a good faith bona fide offer that it intends to consummate if selected as the Successful Bidder;

(xvii)  provides that the bidder shall bear its own costs and expenses (including legal fees) in connection with the proposed transaction and that the bidder agrees to waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code;

(xviii) provides that the bidder agrees to (a) abide by and honor the terms of these Bidding Procedures and agrees not to submit a bid or seek to reopen the Auction after conclusion of the Auction, and (b) serve as Alternate Bidder, if its bid is selected as the next highest or next best bid after the Successful Bid with respect to the applicable Assets;

(xix)   provides that the bidder submits to the jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes relating to the Debtor's evaluation of bids, the Auction, the construction and enforcement of these Bidding Procedures, and

7

documents completing the sale of Assets, and the Closing, as applicable;

(xx)   unless previously provided, an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor; and

(xxi)   is received on or before the Bid Deadline.

A bid received from a Qualified Bidder will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above requirements unless the Debtor determines otherwise in the exercise of its business judgment in consultation with the Consultation Parties.

All Qualified Bids or combination of Qualified Bids will be considered, but the Debtor reserves the right to reject any and all bids, including any credit bids, other than the highest or otherwise best bid(s) as determined in consultation with the Consultation Parties, but otherwise in the Debtor's discretion.   The Debtor may, in its discretion (and in consultation with the Consultation Parties), evaluate bids on numerous grounds including, but not limited to, any delay, additional risks (including closing risks).  Bids other than Qualified Bids will not be considered.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, the asset purchase agreement with such Successful Bidder.

It shall not be collusion for an Interested Party to discuss options regarding financing,  the assumption of debt, or the repayment of the obligations owing to Prepetition Lender with Prepetition Lender in connection with a proposed bid for any of the Assets.  Any discussions between an Interested Party and Prepetition Lender shall be disclosed to the Debtor and Consultation Parties.   In such discussions, Prepetition Lender shall act in good faith and in accordance with the standards of a prudent commercial lender under the circumstances with respect to the terms of any such financing or assumption or repayment of debt.

5.      **Credit Bidding**

Prepetition Lender is authorized, subject in all respects to the Bankruptcy Code and other applicable law, to submit a credit bid for the purchase of all of the collateral on which Prepetition Lender holds a valid, perfected, and unavoidable lien up to the amount of the outstanding obligations owing to Prepetition Lender to the extent provided in section 363(k) of the Bankruptcy

27632813 v3

Code or other applicable law, and in accordance with the applicable provisions of the documents governing such debt obligations, all as more fully set forth in the Final DIP Order.

Notwithstanding anything to the contrary set forth in these Bidding Procedures, Prepetition Lender (a) shall be deemed to be a Qualified Bidder, and (b) may participate in the Auction with respect to the Assets.  At any time prior to the Auction or during the Auction, Prepetition Lender may make the determination that it no longer wants to be a Qualified Bidder on all or a subset of Assets by written notice to Debtor's counsel (each a "**Designation**").  Upon such Designation, Prepetition Lender shall cease being a Qualified Bidder with respect to Assets subject to the Designation (the "**Designated Assets**") and shall be deemed a Consultation Party in connection with the sale of the Designated Assets.

### 6. <u>**Stalking Horse Bids**</u>

Subject to the provisions set forth in the Bidding Procedures and the Bidding Procedures Order, and after consultation with the Consultation Parties, the Debtor may, in the exercise of its business judgment, enter into a stalking horse agreement (a "**Stalking Horse Agreement**"), subject to higher or otherwise better offers at the Auction, with any Bidder to establish a minimum Qualified Bid at the Auction (such Qualified Bidder, a "**Stalking Horse Bidder**," and such Bid, a "**Stalking Horse Bid**").  Notwithstanding anything to the contrary herein, subject to approval by the Bankruptcy Court in accordance with the below, a Stalking Horse Agreement may provide for payment of break-up fees and/or expense reimbursements (the "**Bid Protections**").  For the avoidance of doubt, a Stalking Horse Bid may be in the form of a plan of reorganization.

The Debtor may, after consulting the Consultation Parties, enter into one or more Stalking Horse Agreement at any time prior to November 19, 2025, and designate a Stalking Horse Bid by filing a notice of such designation with the Bankruptcy Court to provide to all parties in interest notice of and an opportunity to object to the designation of such Stalking Horse Bidder and the Bid Protections set forth in the Stalking Horse Agreement.  To the extent an objection is received **on or before 4:00 p.m.** (prevailing Eastern Time) on the date five (5) Business Days following the date Debtor files notice of the designation of a Stalking Horse Bid, the Court will hold a hearing on the objection no later than **December 5, 2025**.  Absent objection, the Debtor may submit an order to the Court under certification of counsel approving the selection of such Stalking Horse Bidder and the Bid Protections (the "**Stalking Horse Order**").

Any Stalking Horse Agreement executed by the Debtor and the Sale Transaction(s) contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to a Stalking Horse Agreement executed by the Debtor will be deemed to be a Qualified Bidder.

Other than as provided by order of the Court, no party submitting a Bid shall be entitled to a break-up fee or expense reimbursement except for the Bid Protections for any Stalking Horse

9

Bidder.  Any substantial contribution claims by any Bidder are deemed waived, to the extent based solely on such Bidder's submission of a Bid hereunder.

## 7.    <u>Highest or Otherwise Best Bid</u>

Whenever these Bidding Procedures refer to the highest or otherwise best Qualified Bid, such determination shall take into account any factors the Debtor, in consultation with the Consultation Parties, reasonably deem relevant to value of the Qualified Bid to the estate and may include, but are not limited to, the following:  (a) the amount and nature of the consideration, including any assumed liabilities; (b) the executory contracts and unexpired leases of the Debtor, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with any litigation concerning executory contracts and unexpired leases necessitated by such Qualified Bid; (c) the number, type and nature of any changes to the APA requested by each Qualified Bidder; (d) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtor of such modifications or delay; (e) the likelihood of the Qualified Bidder being able to close the proposed Sale Transaction (including obtaining surety bonding and any required regulatory approvals) and the timing thereof; (f) the net benefit or cost to the Debtor's estate (including, without limitations, any tax implications of the proposed Sale Transaction); and (g) any other factors that the Debtor, after consultation with the Consultation Parties, may deem relevant (collectively, the "**<u>Bid Assessment Criteria</u>**").    Notwithstanding anything to the contrary herein, with respect to any Bid for any Assets of the Debtor, the Bid Assessment Criteria and any other consideration of such Bid shall be evaluated solely with respect to the value thereof, and the effect of such Bid on, the estate of the Debtor.

## 8.    <u>Auction</u>

In the event that the Debtor timely receives more than one Qualified Bid, the Debtor may, in the Debtor's business judgment and in consultation with the Consultation Parties, conduct an Auction of the Assets.  The Auction shall be in accordance with these Bidding Procedures and upon notice to all Qualified Bidders who have submitted Qualified Bids.

Only representatives or agents of the Debtor, each Consultation Party, and any Qualified Bidder that has submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing), will be entitled to attend the Auction, and only Qualified Bidders will be entitled to make any subsequent bids at the Auction *provided, however*, counterparties to Assigned Contracts and its legal advisors may attend the Auction by notifying counsel for the Debtor of their intent to attend the Auction on or before December 9, 2025, at 6:00 p.m. (prevailing Eastern Time) via email (friesinger@coollaw.com).

On December 9, 2025, Capstone shall provide copies of the Qualified Bid or combination of Qualified Bids that the Debtor believes is the highest or otherwise best offer (the "**<u>Baseline Bid</u>**") to all Qualified Bidders that have informed the Debtor of their intent to participate in the Auction and to the Consultation Parties.

The Debtor may, after consultation with the Consultation Parties, employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction,

*provided, however* such rules are (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, any Order of the Bankruptcy Court entered in connection herewith, or the Final DIP Order and (b) disclosed to each Qualified Bidder; and *provided further* that all bids shall be made openly, in the presence of all parties at the Auction. The Auction shall be transcribed to ensure an accurate recording of the bidding at the Auction.

The Debtor, in its sole discretion but in consultation with the Consultation Parties, will determine the order in which the Assets will be auctioned. Bidding at the Auction will begin with the Baseline Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder(s) that (a) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "**Subsequent Bid**") and (b) the Debtor determines that such Subsequent Bid is (i) for the first round, a higher or otherwise better offer than the Baseline Bid and (ii) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below), in each case taking into account other Qualified Bids for other Assets. Subsequent Bids must be made in minimum increments of $500,000; *provided, however*, the Debtor, in its sole discretion but in consultation with the Consultation Parties, may adjust the minimum bid increments or requirements for each round of bidding which shall be announced at the Auction.

After the first round of bidding and between each subsequent round of bidding, the Debtor shall announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (as applicable, the "**Leading Bid**").

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and confirmation of the Leading Bid. For the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Debtor may take into account any Bid Protections (as applicable) that may be payable. For the purpose of evaluating Subsequent Bids, the Debtor may require a Qualified Bidder submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor in its sole discretion) demonstrating such Qualified Bidder's ability to close the proposed transaction. The Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest or otherwise best bid.

### 9.     Selection of Successful Bid

The Debtor reserves the right to (i) determine in its reasonable discretion, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best and (ii) reject at any time prior to entry of a Bankruptcy Court order approving an offer, without liability, any bid or offer that the Debtor in its reasonable discretion deem to be (x) inadequate or insufficient, (y) not a Qualified Bid or not otherwise in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or procedures set forth therein or herein or (z) contrary to the best interests of the Debtor and its estate.

The Debtor, in consultation with the Consultation Parties, may take the following considerations into account when evaluating Qualified Bids: (a) the purchase price and valuation of non-cash consideration; (b) the overall value to be provided to the Debtor under the bid,

including payment of Cure Costs, assumption of liabilities, and the net economic effect upon the Debtor's estate; (c) the ability to obtain any and all necessary applicable regulatory approvals for the proposed Sale Transaction; (d) other contingencies and the ability to close the proposed Sale Transaction on a basis acceptable to the Debtor, and any incremental costs to the Debtor as a result of potential closing delays; (e) whether a bid on all or substantially all of the Assets is more beneficial to the Debtor's estate than individual bids on a subset of Assets, or vice versa; and (f) any other factors that the Debtor, after consultation with the Consultation Parties, may deem relevant.

Prior to the conclusion of the Auction, the Debtor, with the input of the Consultation Parties, will:  (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction; (b) identify the highest or otherwise best offer or collection of offers (the "**Successful Bid(s)**"); (c) determine which Qualified Bid is the Successful Bid(s) and which is the next highest or otherwise best offer or collection of offers (the "**Alternate Bid(s)**") for the Assets; and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the successful bidder(s) (the "**Successful Bidder(s)**"), the amount and other material terms of the Successful Bid(s) and the identity of the party or parties that submitted the Alternate Bid(s) (the "**Alternate Bidder(s)**").  By the Outside Closing Date, the Successful Bidder(s) and the Debtor shall complete and execute all agreements, instruments or other documents necessary to consummate the applicable Sale Transaction or otherwise contemplated by the applicable Successful Bid(s).  Prior to the Sale Hearing, the Debtor shall file a notice in the Bankruptcy Court disclosing the Successful Bidder (the "**Successful Bid Notice**").

The Debtor will sell the Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing.  The presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of the Qualified Bid.  The Debtor will be deemed to have accepted a Qualified Bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

If for any reason, the Successful Bidder(s) fails to consummate the purchase of the Assets, or any part thereof, then the Debtor will close with the party that submitted the Alternate Bid(s), pursuant to the applicable Sale Order, after consulting with the Consultation Parties.  If an Alternate Bidder does not close the applicable Sale Transaction contemplated by the applicable Alternate Bid by the date agreed to by the Debtor and such Alternate Bidder, then, after consulting with the Consultation Parties, the Debtor will be authorized to reopen the Auction to designate new Successful Bid(s) and Alternate Bid(s).  Only a Successful Bidder or Alternate Bidder shall be entitled to purchase the Assets pursuant to these Bidding Procedures.  If such failure to consummate the purchase is the result of a breach by the Successful Bidder and/or the Alternate Bidder, the Debtor reserves the right to seek all available remedies from the applicable defaulting bidder, subject to the terms of the applicable purchase agreement.  Furthermore, if a Successful Bidder and/or Alternate Bidder fails to consummate an approved Sale Transaction because of a breach or failure to perform on the part of such Successful Bidder and/or Alternate Bidder, the Debtor shall be entitled to retain the Good Faith Deposit thereof as part of its damages resulting from such breach or failure to perform.

27632813 v3

### 10. The Sale Hearing

The Sale Hearing will be held on **December 12, 2025, at 10:00 a.m. (prevailing Eastern Time)** in the United States Bankruptcy Court for the Southern District of Ohio in Cincinnati. The Sale Hearing may be adjourned without further notice by an announcement of the adjourned date at the Sale Hearing. At the Sale Hearing, the Debtor will seek approval of the offer or offers constituting the Successful Bid and, at the Debtor's election, the offer constituting the Alternate Bid.

The Debtor's presentation to the Bankruptcy Court of the offer or offers constituting the Successful Bid(s) and Alternate Bid(s) will not constitute the Debtor's acceptance of either of any such bid, which acceptance will only occur upon approval of such bid by the Bankruptcy Court at the Sale Hearing. Following approval of the Sale Transaction to the Successful Bidder(s), if the Successful Bidder(s) fails to consummate the sale because of (a) failure of a condition precedent beyond the control of either the Debtor or the Successful Bidder(s) upon which occurrence the Debtor has filed a notice with the Bankruptcy Court advising of such failure or (b) a breach or failure to perform on the part of such Successful Bidder(s) upon which occurrence the Debtor has filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then the Alternate Bid(s) will be deemed to be the Successful Bid and the Debtor will be authorized, but not directed, to effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court. To the extent applicable, if the Alternate Bidder fails to consummate the sale because of (a) failure of a condition precedent beyond the control of either the Debtor or the Alternate Bidder upon which occurrence the Debtor has filed a notice with the Bankruptcy Court advising of such failure or (b) a breach or failure to perform on the part of such Alternate Bidder upon which occurrence the Debtor has filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then the Debtor will be authorized to reopen the Auction to designate new Successful Bid(s) and Alternate Bid(s).

### 11. Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders will be held in escrow and will not become property of the Debtor's bankruptcy estate unless released from escrow pursuant to further order of the Bankruptcy Court. The Debtor will retain the Good Faith Deposits of the Successful Bidder(s) and the Alternate Bidder(s) until the closing of the Sale Transaction unless otherwise ordered by the Bankruptcy Court. The Good Faith Deposits of the other Qualified Bidders will be returned within five business days of the entry of the Sale Order. At the closing of the Sale Transaction contemplated by the Successful Bid(s), the Successful Bidder(s) will be entitled to a credit for the amount of its Good Faith Deposit and the Good Faith Deposit of the Successful Bidder(s) shall be released from escrow to the Debtor and become property of the estate. The Good Faith Deposit of the Alternate Bidder will be released by the Debtor five business days after the closing of the Sale Transaction.

### 12. As Is, Where Is

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or its estate except as provided in any agreement with respect to the sale or sales approved by the Bankruptcy Court.

27632813 v3

### 13. Free and Clear of Any and All Interests

Except as otherwise provided in a Successful Bidder's purchase agreement, all of the Debtor's rights, title, and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims (as such term is defined in section 101(5) of the Bankruptcy Code) charges, options, and interests thereon (collectively, the "**Interests**") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Interests applied against the Assets. The failure to object to such free and clear sale shall be deemed consent to the sale free and clear of any such Interests.

### 14. Modification of Bidding Procedures

THE DEBTOR MAY, AFTER CONSULTATION WITH THE CONSULTATION PARTIES, AMEND THESE BIDDING PROCEDURES AT ANY TIME, AND FROM TIME TO TIME, IN ANY MANNER THAT THEY DETERMINE IN GOOD FAITH WILL BEST PROMOTE THE GOALS OF THE BIDDING PROCESS, INCLUDING, WITHOUT LIMITATION, EXTENDING OR MODIFYING ANY OF THE DATES DESCRIBED HEREIN OR THE INFORMATION AND MATERIALS REQUIRED FROM QUALIFIED BIDDERS; PROVIDED THAT SUCH MODIFICATIONS ARE CONSISTENT WITH THE FINAL DIP ORDER.

For the avoidance of doubt and notwithstanding anything herein to the contrary, nothing in these Bidding Procedures shall, or shall be construed to, in any way amend, impair, prejudice, alter, or otherwise modify the terms of any Prepetition Agreements or Postpetition Agreements (each as defined in the Final DIP Order).

27632813 v3

**EXHIBIT B**

4851-6599-7497v10

27632813 v3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-12226 |
| | ) | |
| CTL-AEROSPACE, INC., | ) | Chapter 11 |
| | ) | |
| | ) | Judge Beth A. Buchanan |
| Debtor. | ) | |
| | ) | |

**NOTICE OF AUCTION AND SALE
HEARING FOR THE SALE OF THE DEBTOR'S ASSETS**

> **The following is a summary and in the event of any conflict, the terms of the Bidding Procedures Motion and Bidding Procedures Order govern. You should read those documents. Instructions on how to obtain them free of cost are at the end of this Notice.**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

Bankruptcy Filing. On September 8, 2025 (the "**Petition Date**"), the above-captioned debtor and debtor-in-possession (the "**Debtor**") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Ohio (the "**Bankruptcy Court**").

Motion to Approve Sale. On October 9, 2025, the Debtor filed the *Debtor's Motion for Entry of (I) An Order (A) Approving Bidding and Sale Procedures with Respect to the Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving the Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving Procedures for Selection of One or More Stalking Horse Bidder(s) and the Provision of Bid Protections to Such Stalking Horse Bidder(s), and (E) Granting Related Relief; and (II) An Order Approving the Sale of Such Assets and Related Relief* (the "**Bidding Procedures Motion**").[1] On October __, 2025, the Bankruptcy Court entered an order approving the Bidding Procedures Motion (the "**Bidding Procedures Order**"). Pursuant to the Bidding Procedures Order, the Debtor is seeking authority to sell substantially all the assets of the Debtor or a subset thereof, including certain executory contracts and unexpired leases (each an "**Asset**" and, collectively, the "**Assets**"). The Bidding Procedures Order contemplates that any sale of some or all of the Assets will take place via an auction (the "**Auction**") governed by the Bidding Procedures attached to the Bidding Procedures Order as **Annex 1** (the "**Bidding Procedures**"). Pursuant to the Bidding Procedures, interested potential purchasers must fulfill certain requirements to, among other things, (a)

---

[1] Capitalized terms used herein that are otherwise not defined shall have the meaning given to them in the Bidding Procedures Motion.

participate in the bidding process, (b) become "**Qualified Bidders**" and (c) submit "**Qualified Bids**." A bid shall not constitute a Qualified Bid unless it is submitted in accordance with the Bidding Procedures, and a bidder shall not constitute a Qualified Bidder unless it submits a Qualified Bid. The Debtor will determine the winner of the Auction (the "**Successful Bidder**") pursuant to the terms of the Bidding Procedures.

Cure Schedule; Cure Schedule Objection Deadline. As soon as practicable, but no later than October 24, 2025, the Debtor shall file a schedule of cure obligations (the "**Cure Schedule**") for Executory Contracts that they have identified as potential Assigned Contracts. Unless a non-debtor counterparty to an Assigned Contract has timely and properly filed and served an objection to the assumption and assignment of its Assigned Contract or the Cure Costs on or before **November 13, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "**Cure Schedule Objection Deadline**"), the Cure Costs set forth in the Cure Schedule shall be binding upon the non-debtor counterparties to the Assigned Contracts for all purposes in this chapter 11 case and shall constitute a final determination of the total Cure Costs required to be paid by the Successful Bidder in connection with the assumption and assignment of the Assigned Contracts (unless a portion of such costs are paid or satisfied in any manner, in which case the Cure Costs shall be reduced). If the Debtor files an amended Cure Schedule less than three days prior to the Cure Schedule Objection Deadline, the Cure Schedule Objection Deadline shall be extended to the earlier of: (i) three (3) Business Days from the filing of such amended Cure Schedule; and (ii) the Sale hearing solely with respect to the Cure Costs set forth on the amended Cure Schedule.

Free and Clear Sales; Good Faith Purchaser. Pursuant to section 363(f) of the Bankruptcy Code, and except as otherwise provided in the Successful Bidder's asset purchase agreement approved by the Bankruptcy Court, all of the Debtor's right, title, and interest in and to the Assets are proposed to be sold free and clear of any pledges, liens, security interests, encumbrances, claims (as such term is defined in section 101(5) of the Bankruptcy Code) charges, options, and interests thereon (collectively, the "**Interests**"), with any Interests to attach to the proceeds of the sale, if any, as provided in the final Sale Order. In addition, the Sale Order will include proposed findings that the successful bidder is a "good faith purchaser," as that term is defined in section 363(m) of the Bankruptcy Code, and has not violated section 363(n) of the Bankruptcy Code. Additionally, pursuant to the Bidding Procedures Order, prior to the Auction, the Debtor may enter into one or more "stalking horse" asset purchase agreements (the "**Stalking Horse Agreement**") at any time prior to November 19, 2025, and designate a Stalking Horse Bidder (the bid thereof, a "**Stalking Horse Bid**") by filing a notice of such designation with the Court as set forth in the Bidding Procedures. A Stalking Horse Agreement may provide for payment of break-up fees and/or expense reimbursements (the "**Bid Protections**"). To the extent an objection is received by **4:00 p.m. (prevailing Eastern Time) on the date five (5) Business Days** following the date Debtor files notice of the designation of a Stalking Horse Bid, the Court will hold a hearing on the objection no later than **December 5, 2025.** Absent objection, the Debtor may submit an order to the Court under certification of counsel approving the selection of such Stalking Horse Bidder and the Bid Protections (the "**Stalking Horse Order**").

The Auction. If necessary, the Debtor will conduct the Auction at the offices of Capstone, 311 S Wacker Drive, Suite 2450, Chicago, Illinois 60606, at **9:00 a.m. (prevailing Central Time) on December 10, 2025,** or such other time and location in Chicago, Illinois as the Debtor, after consultation with the Consultation Parties, may determine and specify in writing to each Qualified

- 2 -

Bidder and the Consultation Parties.  If only one Qualified Bid (including the Stalking Horse Bid) for the Assets is received, the Auction for the Assets will be cancelled and the Qualified Bid received will be designated the Successful Bid for the Assets.  At the request of the Debtor, each Qualified Bidder participating at the Auction shall be required to confirm in writing, that: (a) it has not engaged in any collusion with respect to the bidding; and (b) its Qualified Bid is a good faith, bona fide offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

<u>Successful Bid Notice</u>. Following the designation of a Successful Bid, the Debtor shall file a notice of the Successful Bid, along with copies of the asset purchase agreement associated with the Successful Bid and Sale Order (a "**Successful Bid Notice**").  No further notice will be provided.

<u>Sale Hearing</u>. A hearing to consider approval of the Sale Transaction (the "**Sale Hearing**") is scheduled to take place on **December 12, 2025, at 10:00 a.m. (prevailing Eastern Time) in the United States Bankruptcy Court for the Southern District of Ohio in Cincinnati**.  The Debtor may, in its discretion, adjourn or reschedule the Sale Hearing after consultation with the Consultation Parties.  No further notice of any such continuance will be required to be provided to any party.

<u>Objections and Deadline</u>. All objections to approval of the Sale Transaction, including the sale of the Assets free and clear of all Interests pursuant to section 363(f) of the Bankruptcy Code and the form of the Sale Order, must be in writing, state the basis of such objection with specificity, comply with the Bankruptcy Rules, and be filed with the Bankruptcy Court and served so as to be received by the Debtor, counsel for the Debtor, and Notice Parties on or before **December 12, 2025, at 10:00 a.m. (prevailing Eastern Time)** (the "**Global Objection Deadline**").

**<u>Failure to File an Objection.  IF AN OBJECTION IS NOT TIMELY FILED AND SERVED IN ACCORDANCE WITH THE OBJECTION PROCEDURES OUTLINED ABOVE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.</u>**

<u>Parties Interested in Bidding</u>.  Parties interested in bidding on the Assets should contact the Debtor's financial advisor, **Capstone Capital Markets LLC by email to: Geoffrey Frankel (gfrankel@capstonepartners.com)**, and provide a bid, including the information as required by the Bidding Procedures, by no later than **December 8, 2025, at 4:00 p.m. (prevailing Eastern time)** (unless such date is otherwise extended in the sole discretion of the Debtor).

<u>Summary of Important Dates</u>. A summary of the pertinent dates and times (all prevailing Eastern Time, unless otherwise noted) addressed herein or by the Bidding Procedures Order is as follows:

> October 24, 2025, at 4:00 p.m.: Cure Schedules due from Debtor
> November 13, 2025, at 4:00 p.m.: general Cure Schedule Objection Deadline
> December 8, 2025, at 4:00 p.m.: Bid Deadline
> December 10, 2025, at 9:00 a.m (Central Time).: Auction

- 3 -

December 12, 2025, at 10:00 a.m.: Global Objection Deadline
December 12, 2025, at 10:00 a.m.: Sale Hearing
December 22, 2025, at 11:59 p.m.: Outside Closing Deadline[2]

Copies. Copies of the Bidding Procedures and Sale Motion, the Bidding Procedures Order, the Bidding Procedures, and the proposed Sale Order may be accessed free of charge by notifying counsel for the Debtor via email (friesinger@coollaw.com).

October __, 2025

Respectfully submitted,

COOLIDGE WALL CO., L.P.A.

/s/ Patricia J. Friesinger
Patricia J. Friesinger (0072807)
Briana C. Breault (0099773)
33 West First Street, Suite 600
Dayton, Ohio 45402
Tel: 937/223-8177
Fax: 937/223-6705
E-Mail:  friesinger@coollaw.com
          breault@coollaw.com

*Proposed Counsel for Debtor and Debtor-In-Possession CTL-Aerospace, Inc.*

---

[2] Add cure amount objection deadline.

4851-6599-7497v10

27632813 v3

**EXHIBIT C**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 25-12226 |
|  | ) |  |
| CTL-AEROSPACE, INC., | ) | Chapter 11 |
|  | ) |  |
|  | ) | Judge Beth A. Buchanan |
| Debtor. | ) |  |
|  | ) |  |

### NOTICE OF (A) POTENTIAL ASSUMPTION AND ASSIGNMENT OF
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (B) CURE COSTS

> **You are receiving this notice because you may be a counterparty to an executory contract or unexpired lease with the above-captioned Debtor.  Please read this notice carefully as your rights may be affected by the transactions described herein.  The following is a summary and in the event of any conflict, the terms of the Bidding Procedures Motion and Bidding Procedures Order govern.  You should read those documents.  Instructions on how to obtain them free of cost are at the end of this Notice.**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On September 8, 2025 (the "**Petition Date**"), the above-captioned debtor and debtor-in-possession (the "**Debtor**") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Ohio (the "**Bankruptcy Court**").

2.      On October 9, 2025, the Debtor filed the *Debtor's Motion for Entry of (I) An Order (A) Approving Bidding and Sale Procedures with Respect to the Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving the Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving Procedures for Selection of One or More Stalking Horse Bidder(s) and the Provision of Bid Protections to Such Stalking Horse Bidder(s), and (E) Granting Related Relief; and (II) An Order Approving the Sale of Such Assets and Granting Related Relief* (the "**Bidding Procedures Motion**").[1]  Pursuant to the Bidding Procedures Motion, the Debtor is seeking to sell substantially all Assets of the Debtor or a subset thereof, including certain executory contracts and unexpired leases.  The Bidding Procedures Motion was approved by the Bankruptcy Court on October __, 2025 [Docket No. __] (the "**Bidding Procedures Order**").  The Bidding Procedures Order contemplates that a sale (or sales) of the Assets or a subset thereof will take place via an auction (the "**Auction**") governed by the Bidding

---

[1] Capitalized terms used herein that are otherwise not defined shall have the meaning given to them in the Bidding Procedures Motion or the Bidding Procedures Order (as defined herein), as applicable.

Procedures attached to the Bidding Procedures Order as **Annex 1** (the "**Bidding Procedures**"). Pursuant to the Bidding Procedures, interested potential purchasers must fulfill certain requirements to, among other things, (a) participate in the bidding process, (b) become "**Qualified Bidders**" and (c) submit "**Qualified Bids**." A bid shall not constitute a Qualified Bid unless it is submitted in accordance with the Bidding Procedures, and a bidder shall not constitute a Qualified Bidder unless it submits a Qualified Bid. The Debtor will determine the winner of the Auction (the "**Successful Bidder**") pursuant to the terms of the Bidding Procedures.

3.       Pursuant to the Bidding Procedures Order, the Debtor may, in accordance with section 365 of the Bankruptcy Code, seek to assume and assign to a Successful Bidder some or all Assigned Contracts listed on the attached **Exhibit 1** hereto (the "**Cure Schedule**"); **provided, however**, that the inclusion of an executory contract or unexpired lease on the attached **Exhibit 1** (*i.e.*, an Assigned Contract) does not mean that (a) a Successful Bidder will ultimately identify such agreement as an executory contract or unexpired lease to be assumed and assigned or (b) such contract or lease is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code. If any Assigned Contracts are assumed and assigned to a Successful Bidder, the Debtor has identified on the attached **Exhibit 1** the Cure Costs that the Debtor believes must be paid by the Successful Bidder to cure all defaults as required by section 365 of the Bankruptcy Code.

4.       Objections to: (i) the Cure Costs set forth on **Exhibit 1** or the assumption and assignment of any Assigned Contract; or (ii) the Sale Transaction must be in writing, state the basis of such objection with specificity including, without limitation, any supporting documentation to support the cure amount and be filed with the Bankruptcy Court and actually received by (a) the United States Trustee's office, (b) the Debtor's twenty (20) largest unsecured creditors as reflected on the Debtor's petition, (c) Wells Fargo Bank, National Association, (d) the Federal Aviation Administration, and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively the "**Notice Parties**") on or before **November 13, 2025, at 4:00 p.m. (prevailing Eastern Time) (the "Cure Schedule Objection Deadline")**. If the Debtor files an amended Cure Schedule, the Cure Schedule Objection Deadline shall be extended to the earlier of: (i) three (3) business days from the filing of an amended Cure Schedule; and (ii) the Sale Hearing **solely with respect to the Cure Costs set forth on the Cure Schedule**.

5.       If no objection is timely and properly filed and served in accordance with the objection procedures in Paragraph 4 of this notice, as provided in more detail by the terms of the Bidding Procedures Order and any final Sale Order, the Cure Costs set forth in **Exhibit 1** shall be controlling, notwithstanding anything to the contrary in any contract or lease or other document, and the non-Debtor party to the contract or lease shall be forever barred from asserting any other claim against the Debtor or the Successful Bidder. **Nothing in the Cure Schedule shall waive any party's right to object on the basis that the purchaser's promise to perform under the contract or lease is sufficient to demonstrate adequate assurance under the contract or lease within the meaning of section 365 of the Bankruptcy Code.** Procedures governing a Disputed Cure Amount are provided by Paragraph 20 of the Bidding Procedures Order and shall be governed in accordance therewith.

27632813 v3

6.      Following the designation of a Successful Bid, the Debtor shall file a notice of the Successful Bid, along with copies of the asset purchase agreement associated with the Successful Bid and Sale Order (a "**Successful Bid Notice**").  No further notice will be provided.

7.      If you agree with the Cure Cost(s) indicated on **Exhibit 1**, and otherwise do not object to the Debtor's assignment of your lease or contract, you need not take any further action.

8.      **The Debtor's decision to assume and assign executory contracts and unexpired leases is subject to Bankruptcy Court approval and consummation of a Sale Transaction. Accordingly, the Debtor shall be deemed to have assumed and assigned each of the executory contracts and unexpired leases only as of the date of, and effective and conditioned upon, the closing of the Sale Transaction.  Absent such closing, the executory contracts and unexpired leases shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code.  The Debtor fully reserves all rights to amend, modify, or supplement Exhibit 1 in accordance with the Bidding Procedures Order.**

9.      <u>Copies</u>. Copies of the Bidding Procedures and Sale Motion, the Bidding Procedures Order, the Bidding Procedures, and the proposed Sale Order may be accessed free of charge by notifying counsel for the Debtor via email (friesinger@coollaw.com).

October 24, 2025                              Respectfully submitted,

                                             COOLIDGE WALL CO., L.P.A.

                                             */s/ Patricia J. Friesinger*
                                             Patricia J. Friesinger (0072807)
                                             Briana C. Breault (0099773)
                                             33 West First Street, Suite 600
                                             Dayton, Ohio 45402
                                             Tel: 937/223-8177
                                             Fax: 937/223-6705
                                             E-Mail:  friesinger@coollaw.com
                                                        breault@coollaw.com

                                             *Proposed Counsel for Debtor and Debtor-In-Possession CTL-Aerospace, Inc.*

- 3 -

**EXHIBIT D**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 25-12226 |
| | ) | |
| CTL-AEROSPACE, INC., | ) | Chapter 11 |
| | ) | |
| | ) | Judge Beth A. Buchanan |
| Debtor. | ) | |
| | ) | |

**ORDER (I) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S
ASSETS FREE AND CLEAR OF ALL NON-ASSUMED LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS; (II) APPROVING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; AND (III) GRANTING RELATED RELIEF [DOC.   ]**

Upon the *Debtor's Motion for Entry of (I) An Order (A) Approving Bidding and Sale Procedures with Respect to the Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving the Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving Procedures for Selection of One or More Stalking Horse Bidder(s) and the Provision of Bid Protections to Such Stalking Horse Bidder(s), and (E) Granting Related Relief; and (II) An Order Approving the Sale of Such Assets and Related Relief* (the "**Sale Motion**")[1] [Docket No. ___] of the above-captioned debtor and debtor-in-possession, pursuant to sections 105(a), 363, 365, and 503(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 6004-1, for, among other things, (i) approval of the sale or sales (collectively, the "**Sale Transaction**") of substantially all assets of the Debtor (the "**Assets**") free and clear of any pledges,

---

[1] Capitalized terms used, but not defined, herein have the meaning ascribed to them in the Sale Motion.

27632763 v2

liens, security interests, encumbrances, claims (as such term is defined in section 101(5) of the Bankruptcy Code), charges, options and interests thereon (collectively, the "**Interests**") to the maximum extent permitted by section 363 of the Bankruptcy Code; (ii) approval of the assumption and assignment of the executory contracts and unexpired leases (collectively, the "**Assigned Contracts**"), and (iii) approval of related relief; and the Court having previously entered its *Order Establishing Bidding Procedures Relating to the Sales of All or a Portion of the Debtor's Assets* [Docket No. __] (the "**Bidding Procedures Order**"); and the Bankruptcy Court having conducted a hearing on the proposed Sale Transaction(s) on December 12, 2025 (the "**Sale Hearing**") and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Sale Motion; and the Bankruptcy Court having reviewed and considered the Sale Motion, and the arguments of counsel made, and the evidence adduced, at the hearing to approve the Bidding Procedures (the "**Bidding Procedures Hearing**") and the Sale Hearing; and upon the record of the Bidding Procedures Hearing and the Sale Hearing, and this chapter 11 case and proceedings, and after due deliberation thereon, and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT**:[2]

A.    **Bankruptcy Petition**.  On September 8, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").  The Debtor continues to operate its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Case.

---

[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  Furthermore, any findings of fact or conclusions of law made by the Court on the record at the close of the Sale Hearing are incorporated herein.

B.     **Jurisdiction and Venue**.  The Bankruptcy Court has jurisdiction over the Sale

Motion and the Sale Transaction pursuant to 28 U.S.C. §§ 157 and 1334, and may enter a final

order on the Sale Motion consistent with Article III of the United States Constitution.  This matter

is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue in this district is proper under 28

U.S.C. §§ 1408 and 1409.

C.     **Statutory Predicates**.  The statutory predicates for the relief requested in the Sale

Motion are sections 105, 363, 365, and 503(b) of the Bankruptcy Code, Bankruptcy Rules 2002,

6004, 6006, and 9014, and Local Rule 6004-1.

D.     **Notice**.  As evidenced by the certificates of service [Docket Nos.   ]    previously

filed with the Court, and based on the representations of counsel at the Sale Hearing, proper,

timely, adequate, and sufficient notice of the Sale Motion, including, without limitation, the Sale

Transaction, the assumption and assignment of the Assigned Contracts, the Auction, the Sale

Hearing, and the Bidding Procedures have been provided in accordance with sections 102(1), 363,

and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9006, and 9007 and

Local Rules 6004-1.  Such notice was good and sufficient and appropriate under the particular

circumstances.  No other or further notice of the Sale Motion, including, without limitation, the

Sale Transaction, the Debtor's assumption and assignment of the Assigned Contracts, the Cure

Costs, the Auction, or the Sale Hearing, is necessary or shall be required.

E.     **Assumption/Assignment Notice**.  An Assumption/Assignment Notice has been

provided to each of the non-Debtor counterparties to the Assigned Contracts identified on the

list(s) the Debtor has filed on the docket, all in accordance with the Bidding Procedures Order.

The service of the Assumption/Assignment Notice was sufficient under the circumstances, and no

further notice need be given in respect of the Debtor's assumption and assignment of the Assigned

Contracts or the establishment of associated Cure Costs.  Non-debtor parties to the Assigned

Contracts have had an adequate opportunity to object to the Debtor's assumption and assignment

of the Assigned Contracts and the associated Cure Costs.

       F.     **Opportunity to Object**.  A reasonable opportunity to object or be heard regarding

the requested relief has been afforded to all interested persons and entities.

       G.     **Business Justification**.  The Debtor has articulated good and sufficient business

reasons evidencing an adequate business justification supporting (i) its entry into the Successful

Bidder's APA and such other APA and consummation of the Sale Transaction(s) for the sale of

the Assets and (ii) the Debtor's assumption and assignment of the Assigned Contracts.  Such

actions are an appropriate exercise of the Debtor's business judgment and in the best interests of

the Debtor, its estate, and its creditors.  Such business reasons underlying the Debtor's sound

exercise of its business judgment include, but are not limited to, the facts that (i) the continued

operation of the Assets, bankruptcy administration, and corresponding costs will continue to

deplete the Debtor's estate, so there is a "need for speed" to consummate the Sale Transaction; (ii)

the Assets have been adequately marketed and the APA among the Debtor and _____ (the

"**Buyer**") (such APA, as amended, supplemented, or otherwise modified, together with any and

all agreements, certificates, instruments, or documents executed and delivered pursuant thereto,

the "**Successful Bidder's APA**") constitutes the highest or otherwise best offer for the Assets; (iii)

the Sale Transaction will present the best opportunity to realize the value of the Assets on a going

concern basis and to avoid decline and devaluation of the related business; (iv) the Bidding

Procedures utilized were designed to yield the highest or otherwise best bids for the Assets; and

(v) the Debtor and the Buyer engaged in good faith, arm's-length negotiations in order to achieve

the Sale Transaction contemplated in the Successful Bidder's APA.  Entry of this Order and all

provisions hereof is a necessary condition precedent to the Buyer consummating the Sale Transaction. To maximize the value of the Assets and preserve the viability of the operations to which the Assets relate, it is essential that the Sale Transaction occur within the time constraints set forth in the Successful Bidder's APA, and no later than December 22, 2025, at 11:59 p.m. (prevailing Eastern Time). Time is of the essence in consummating the Sale Transaction. Accordingly, cause exists to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

H.    **Opportunity to Bid**. The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets. The Debtor and its professionals robustly marketed the Assets and conducted the marketing and sale process as set forth in the Sale Motion and in compliance with the Bidding Procedures and the Bidding Procedures Order. The Auction process included in the Bidding Procedures afforded a full and fair opportunity for any person or entity to make an offer to purchase the Assets. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Assets.

I.    **Auction**. An Auction was conducted in accordance with the Bidding Procedures and after conclusion of the Auction, the Buyer was declared to have made the highest or otherwise best offer with respect to the Assets. The Auction was conducted at arm's length, in compliance with the Bidding Procedures, without collusion, and in good faith. The Auction afforded potential purchasers a full, fair, and reasonable opportunity to make a higher or otherwise better offer for the Assets.

J.      **Highest or Otherwise Best Offer**.  The Debtor determined in a valid and sound

exercise of its business judgment that, and the Bankruptcy Court finds that, the total consideration

provided by the Buyer for the Assets is the highest or otherwise best offer received by the Debtor.

The Buyer is the Successful Bidder for the Assets in accordance with the Bidding Procedures.  On

December ___, 2025, the Debtor filed a notice of Successful Bid [Docket No. __] pursuant to

which they notified parties in interest that the Buyer was the highest and best bidder for the Assets.

K.      **Good Faith Purchaser**.  The Sale Transaction has been negotiated by the Debtor

and the Buyer (and their respective affiliates and representatives) in good faith, at arm's-length,

and without collusion or fraud.  The terms and conditions of the Sale Transaction, including the

total consideration to be realized by the Debtor pursuant to the Successful Bidder's APA are fair

and reasonable, and the Sale Transaction is in the best interest of the Debtor, its creditors, and its

estate.  The Buyer is a "good faith purchaser" entitled to the full benefits and protections of section

363(m) of the Bankruptcy Code and any other applicable bankruptcy or non-bankruptcy Law with

respect to the sale and assignment of the Assets and the Sale Transaction, including in the event

this Order or any portion thereof is reversed or modified on appeal.  Buyer otherwise has proceeded

in good faith in all respects in connection with the proceeding.

L.      The Buyer is not an "insider" of the Debtor as that term is defined by section

101(31) of the Bankruptcy Code, and no common identity of directors or controlling stockholders

exists between the Buyer and the Debtor.  The Successful Bidder's APA was not controlled by an

agreement between potential or actual bidders within the meaning of section 363(n) of the

Bankruptcy Code.  The Debtor and the Buyer have not engaged in any conduct, action, or inaction

that would cause or permit the Successful Bidder's APA or the consummation of the Sale

Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the

Bankruptcy Code or under any other federal, state, local or foreign law, statute, code, ordinance, rule, regulation, order, judgment, writ, stipulation, award, injunction or decree or common law requirement ("**Law**").  The Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.

M.      Cause has been shown as to why this Order should not be stayed pursuant to Bankruptcy Rules 6004(h) and 6006(d).

N.      **Highest or Otherwise Best Offer**.  The Debtor and Buyer are not and will not be entering the Sale Transaction fraudulently or for any improper purpose.  The Sale Transaction enhances the value of the Debtor's estate.  No other person or entity or group of persons or entities has offered to purchase the Assets for an amount that would provide greater economic value to the Debtor than the Buyer.  The Sale Transaction is not being consummated for the purpose of hindering, delaying, or defrauding creditors of the Debtor.  The total consideration provided by the Buyer for the Assets is the highest or otherwise best offer received by the Debtor and constitutes reasonably equivalent value and fair consideration.  Accordingly, the Sale Transaction may not be avoided under section 363(n) or 548 of the Bankruptcy Code; the Uniform Fraudulent Transfer Act; the Uniform Fraudulent Conveyance Act; any other applicable Law.

O.      **Acquired Assets Property of Debtor's Estate**.  The Assets to be transferred and/or assigned, as applicable, to the Buyer pursuant to the Successful Bidder's APA are property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.  The Debtor is the sole and lawful owner of the Assets.  Subject to the entry of this Order, the Debtor: (i) has full power and authority to deliver the Successful Bidder's APA and all other documents contemplated thereby; (ii) has all of the power and authority necessary to perform its obligations and to consummate the transactions contemplated by the

Successful Bidder's APA; and (iii) has taken all corporate action necessary to authorize and

approve the Successful Bidder's APA, the Sale Transaction, the assignment of the Assigned

Contracts, and all other actions required to be performed by the Debtor in order to consummate

the transactions contemplated in the Successful Bidder's APA.  No consents or approvals, other

than those expressly provided for in the Successful Bidder's APA or this Order, are required for

the Debtor to consummate the Sale Transaction.

P.       **Transfer of Assets and Assumed Liabilities**.  The transfer of the Assets and

Assumed Liabilities (as such term is defined in the Successful Bidder's APA) in accordance with

the terms of this Order is integral to the Successful Bidder's APA and is in the best interests of the

Debtor, its estate, and its creditors, and the Debtor has an adequate business justification therefor.

Q.       **Assumption and Assignment in Best Interests**.  The Debtor's assumption and

assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Sale

Transaction and is in the best interests of the Debtor, its estate, its creditors, and all other parties

in interest and represents the Debtor's exercise of sound and reasonable business judgment.  The

Assigned Contracts being assigned to the Buyer are an integral part of the Assets being purchased

by the Buyer, and accordingly, such assumption and assignment of the Assigned Contracts is

reasonable and enhances the value of the Debtor's estate.  Pursuant to section 365(f) of the

Bankruptcy Code, the Assigned Contracts shall be assigned and transferred to, and remain in full

force and effect for the benefit of, the Buyer notwithstanding any provision of the Assigned

Contracts or other restriction prohibiting their assignment or transfer.

R.       **Cure Costs**.  The Cure Costs required to be paid pursuant to section 365(b) of the

Bankruptcy Code, whether agreed or judicially resolved, and as set forth in the Cure Schedule are

deemed to be the entire cure obligation due and owing under the Assigned Contracts under section

365(b) of the Bankruptcy Code.  To the extent that any non-Debtor counterparty to any of the

Assigned Contracts failed to timely file an objection to any of the proposed Cure Costs filed with

the Bankruptcy Court, the cure cost listed in the Cure Schedule shall be deemed to be the entire

cure obligation due and owing under any of the applicable Assigned Contracts.  Each provision of

the Assigned Contracts or applicable non-bankruptcy Law that purports to prohibit, restrict, or

condition or could be construed as prohibiting, restricting, or conditioning assignment of any

Assigned Contracts has been satisfied or is otherwise unenforceable under section 365 of the

Bankruptcy Code.  Upon the assignment to the Buyer and the payment of the relevant Cure Costs

by Buyer, as required by the Successful Bidder's APA, each of the Assigned Contracts shall be

deemed valid and binding and in full force and effect in accordance with its terms, and all defaults

thereunder, if any, shall be deemed cured, subject to the provisions of this Order.

S.      **Adequate Assurance**.  The Debtor has met all of the requirements of section

365(b) of the Bankruptcy Code for each of the Assigned Contracts.  The Debtor has provided

adequate assurance of cure of any default existing prior to December 22, 2025, at 11:59 p.m.

(prevailing Eastern Time) (the "**Closing Date**") under any of the Assigned Contracts, within the

meaning of section 365(b)(1)(A) of the Bankruptcy Code, and provided adequate assurance of

compensation to any party for any actual pecuniary loss to such party resulting from such default

under any of the Assigned Contracts within the meaning of section 365(b)(1)(B) of the Bankruptcy

Code.  The Buyer has provided adequate assurance of its future performance of and under the

Assigned Contracts, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code

(including to the extent, if any, modified by section 365(b)(3) of the Bankruptcy Code).  The non-

Debtor parties to the Assigned Contracts were given notice and the opportunity to object and are

deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Except as

expressly set forth in the Successful Bidder's APA, the transfer of the Assigned Contracts will not

subject Buyer or its assignees or designees, as applicable, to any liability whatsoever prior to the

Closing Date, or by reason of such transfer under any applicable Laws or based, in whole or in

part, on any theory of law or equity.

T.      **Free and Clear**.  The sale and assignment of the Assets to the Buyer will be, as of

the Closing Date, a legal, valid, and effective transfer of such assets, and each such transfer and

assignment shall, upon the Closing Date, vest the Buyer with all right, title, and interest of the

Debtor to the Assets free and clear of all Interests, with any such Interests to attach to the proceeds

to be received by the Debtor in the same priority and subject to the same defenses and avoidability,

if any, as were in existence on the Closing Date.  The Buyer would not enter into the Sale

Transaction if the sale of the Assets were not free and clear of all Interests, or if the Buyer would,

or in the future could, be liable for any such Interests.  A sale of the Assets other than one free and

clear of all Interests would adversely impact the Debtor's estate and would yield substantially less

value for the Debtor's estate, with less certainty than the Sale Transaction.  There is no better

available alternative for the Assets than the sale to the Buyer.

U.      **Satisfaction of 363(f) Standards**.  The Debtor may sell and assign the Assets free

and clear of all Interests, because, with respect to each creditor asserting an Interest, one or more

of the standards set forth in sections 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.

Those holders of Interests who did not object or who withdrew their objections to the Sale

Transaction or any Assumption/Assignment Notice are deemed to have consented to the Sale

Motion and the Sale Transaction under section 363(f)(2) of the Bankruptcy Code.  Those holders

of Interests in the Assets who did object fall within one or more of the other subsections of section

363(f) of the Bankruptcy Code and are adequately protected by having their Interests (if any) attach

to the proceeds of the Sale Transaction ultimately attributable to the Assets in which such holders allege an Interest, in the same order of priority, with the same validity, force, and effect that such holder had prior to the Sale Transaction, and subject to any claims and defenses the Debtor and its estate may possess with respect thereto.  An injunction against creditors and third parties pursuing Interests is necessary to induce the Buyer to close the Sale Transaction; the issuance of such an injunction is therefore necessary to avoid irreparable injury to the Debtor's estate and will benefit all creditors.

V. **No Successor Liability**.  The Buyer, its respective designees, and its respective predecessors, successors, assigns, affiliates, shareholders, members, partners, principals, directors, officers, and employees (or equivalent of any of the foregoing) (collectively, "**Buyer's Related Persons**") shall have no obligations with respect to any liabilities of the Debtor other than the Assumed Liabilities and will not and shall not be deemed or considered, by any theory of law or equity, (i) to be a legal successor in any respect to the Debtor or its estate as a result of the consummation of the Sale Transaction contemplated by the Successful Bidder's APA or any other event occurring in this Chapter 11 Case; (ii) to be the successor of or successor employer (as described under COBRA and applicable regulations thereunder) to the Debtor, and shall instead be, and be deemed to be, a new employer with respect to any and all federal or state unemployment Laws, including any unemployment compensation or tax Laws, or any other similar federal or state Laws; (iii) to have, *de facto* or otherwise, merged or consolidated with or into the Debtor or its estate; (iv) to have a common identity with the Debtor; (e) to have a continuity of enterprise with the Debtor; (v) to be a continuation, or substantial continuation, or hold themselves out as a mere continuation of the Debtor or any enterprise of the Debtor or its estate; or (vi) to be liable for any

27632763 v2

acts or omissions of Debtor in the conduct of the business or arising under or related to the Assets.

There is no continuity of enterprise with the Debtor by any theory of law or equity.

      W.    **Compliance with Bankruptcy Code**.  The consummation of the transactions

contemplated by the Successful Bidder's APA and Sale Transaction is legal, valid, and properly

authorized under all applicable provisions of the Bankruptcy Code, including without limitation

sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code and all of the

applicable requirements of such sections have been or will be complied with in respect of the Sale

Transaction as of the Closing Date.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

      1.    **Relief Granted**.  The relief requested in the Sale Motion is granted as set forth

herein.

      2.    **Objections Overruled**.  All objections and responses to the Sale Motion, this

Order, or the relief granted herein that have not been overruled, withdrawn, waived, settled, or

otherwise resolved and all reservations of rights included therein, are hereby overruled and denied

on their respective merits with prejudice.

      3.    **Notice**.  Notice of the Sale Motion, including without limitation, the transactions

set forth in the Successful Bidder's APA and the assumption and assignment of the Assigned

Contracts, the Auction, the Sale Hearing, and the Sale Transaction, was fair and reasonable under

the circumstances and complied in all respects with sections 102(1), 363, and 365 of the

Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, and 9007, and Local Rule 6004-1.

      4.    **Approval of Successful Bidder's APA**.  Pursuant to sections 105, 363, and 365 of

the Bankruptcy Code, the Successful Bidder's APA, and the Sale Transaction are hereby approved

and authorized in all respects and shall be deemed in full force and effect.  The Debtor is hereby

authorized and empowered to enter into, and to perform its obligations under, the Successful

Bidder's APA and to execute and perform such agreements or documents and to take such other actions as are necessary or desirable to effectuate the terms of the Successful Bidder's APA.

5.      **Good Faith Buyer**.  The Successful Bidder's APA has been entered into by the Debtor and the Buyer in good faith, and the Buyer is a good faith purchaser of the Assets and is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code.  Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer, or assignment under the Successful Bidder's APA or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal prior to the Closing Date) and, notwithstanding any reversal, modification, or vacatur, any sale, transfer, or assignment shall be governed in all respects by the original provisions of this Order or the Successful Bidder's APA, as the case may be.

6.      **Section 363(n) of the Bankruptcy Code**.  The consideration provided by the Buyer for the Assets under the Successful Bidder's APA shall be and hereby is deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable Law, and the Sale Transaction may not be avoided, or costs or damages imposed or awarded under section 363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, or any other similar Laws.

7.      **Authorization of Performance by the Debtor**.  The Debtor is authorized and empowered to take any and all actions necessary or appropriate to fully perform under, consummate, and implement the terms of the Successful Bidder's APA together with any and all

additional instruments and documents that may be reasonably necessary or desirable to implement

and effectuate the terms of the Successful Bidder's APA, this Order, and the Sale Transaction,

including, without limitation, deeds, assignments, operating agreements, and other agreements,

certificates, instruments of transfer, or other documents executed and delivered in connection with

the Successful Bidder's APA, and to take all further actions as may reasonably be requested by

the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the

Buyer and/or its designees, or reducing to possession any or all of the Assets, as may be necessary

or appropriate to the performance of the Debtor's obligations as contemplated by the Successful

Bidder's APA, without any further corporate action or orders of the Bankruptcy Court.

8.      The Buyer and the Debtor shall have no obligation to close the Sale Transaction

except as is contemplated and provided for in the Successful Bidder's APA, the Bidding

Procedures, and this Order.  The Debtor and Buyer shall have no obligation to proceed with the

Closing Date until all conditions precedent to their obligations to proceed have been met, satisfied,

or waived in accordance with the terms of the Successful Bidder's APA.

9.      The Debtor is authorized and empowered to cause to be filed with the secretary of

state of any state or other applicable officials of any applicable government or governmental or

regulatory body thereof, or political subdivision thereof, or any agency, authority, department,

commission, board, bureau, official or instrumentality of such body, or any self-regulated

organization or other non-governmental regulatory authority or quasi-governmental authority (to

the extent that the rules, regulations or orders of such organization or authority have the force of

Law), whether foreign, federal, state, or local, or any agency, instrumentality or authority thereof,

or any court or arbitrator thereof (public or private) of competent jurisdiction ("**Governmental**

**Body**"), any and all certificates, agreements, or amendments necessary or appropriate to effectuate

the transactions contemplated by the Successful Bidder's APA, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable Laws of all applicable Governmental Bodies or as any of the officers of the Debtor may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

10.     **Valid Transfer**. Effective as of the Closing Date, the sale and assignment of all rights, title, and interest in the Assets and the Assigned Contracts by the Debtor to the Buyer shall constitute a legal, valid, and effective transfer of the Assets and the Assigned Contracts, notwithstanding any requirement for approval or consent by any person, and will vest the Buyer with all right, title, and interest of the Debtor in and to the Assets, free and clear of all Interests (other than the Assumed Liabilities defined in the Successful Bidder's APA), pursuant to section 363(f) of the Bankruptcy Code.

11.     **The Debtor Shall Not Retain Liability for Assigned Contracts and Assumed Liabilities**. Effective on the Closing Date and subject to the Successful Bidder's APA, (a) the assumption of the Assigned Contracts and the Assumed Liabilities by the Buyer constitutes a legal, valid, effective, complete and absolute sale, conveyance and transfer from the Debtor to the Buyer of any and all liabilities under the Assigned Contracts that arise on or after the Closing Date, the Cure Costs with respect thereto, and Assumed Liabilities; and (b) the Debtor shall have no liability to Buyer, any Governmental Body, surety or any other person for any liabilities under the Assigned Contracts that arise on or after the Closing Date, the Cure Costs with respect thereto, and such Assumed Liabilities.

12.     Further, it is the parties' express intention that the Sale Transaction be, and be treated for all purposes, as an absolute sale, conveyance and transfer of all liabilities under the Assigned Contracts that arise on or after the Closing Date, the Cure Costs with respect thereto, and Assumed Liabilities.

13.     **Free and Clear**.  Except to the extent specifically provided in the Successful Bidder's APA, upon the Closing Date, the Debtor shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b), and 363(f) of the Bankruptcy Code, to sell the Assets and assign the Assigned Contracts to the Buyer.  The sale and assignment of the Assets (including the assignment of the Assigned Contracts) to the Buyer vests the Buyer with all right, title, and interest of the Debtor to the Assets (including the Assigned Contracts) free and clear of any and all Interests, with all such Interests to attach to the proceeds of the sale with the same priority, validity, force, and effect as they now have in or against the Assets (including the Assigned Contracts).  The Sale Motion shall be deemed to provide sufficient notice as to the sale and assignment of the Assets free and clear of all Interests in accordance with the Bankruptcy Code and the Bankruptcy Rules.  Following the Closing Date, no holder of any Interest on the Assets may interfere with the Buyer's use and enjoyment of the Assets based on or related to such Interest or any actions that the Debtor may take in its Chapter 11 Case.

14.     For the avoidance of doubt, "Interests" include, without limitation:

   a.     Any "interest" as that term is used in section 363(f) of the Bankruptcy Code, lien (statutory or otherwise), mechanics lien, covenant, encroachment, encumbrance, pledge, mortgage, deed of trust, security interest, claim (including "claim" (as defined in section 101(5) of the Bankruptcy Code)), lease, sublease, charge, option, right of first offer or first refusal, right of use or possession, restriction, easement, servitude, restrictive covenant, condition, encroachment or any other similar encumbrance, third party interest, other survey defect, charge, hypothecation, deemed trust, action, or restriction, whether imposed by Law, contract, equity or otherwise;

b.  Any debt, loss, liability, claim (including "claim" (as defined in section 101(5) of the Bankruptcy Code)), commitment, demand, responsibility, suit, judgment, undertaking, damage, expense, fine, penalty, cost, royalty, deficiency or obligation (including those arising out of any action, such as any settlement or compromise thereof or judgment or award therein), of any nature, whether known or unknown, disclosed or undisclosed, express or implied, primary or secondary, direct or indirect, matured or unmatured, determined or indeterminable, disputed or undisputed, secured or unsecured, joint or several, fixed, absolute, contingent, accrued or unaccrued, liquidated or unliquidated, and whether due or to become due, and whether in contract, tort or otherwise, and whether or not required to be accrued on the financial statements of any entity or individual;

c.  Any liabilities of the Debtor other than the Assumed Liabilities listed in the Successful Bidder's APA; and

d.  Any liabilities related to the Excluded Assets.

15.  The provisions of this Order authorizing the sale and assignment of the Assets free and clear of Interests shall be self-executing, and neither the Debtor nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order, but shall have the authority to do so as otherwise provided herein.

16.  On the Closing Date, Debtors shall cause a portion of the cash consideration paid by Buyer to be remitted to Wells Fargo Bank, N.A. (or its successors or assigns or any replacement/refinance lender, the "Prepetition Lender") in an amount sufficient for the "Aggregate Debt" (as defined in the Final DIP Order) to be paid in full in accordance with the terms of the Prepetition Documents and Postpetition Documents (as such terms are defined in the Final DIP Order), and Prepetition Lender is authorized to apply such payment to the Aggregate Debt on a final and indefeasible basis.

17.  None of the Buyer, any Buyer's Related Persons or any of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys,

27632763 v2

employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and

representatives (each of the foregoing in its individual capacity), and anyone charged or chargeable

with any of the foregoing's liability or responsibility, shall have or incur any liability to, or be

subject to any action by the Debtor or its estate, predecessors, successors, or assigns, arising out

of the negotiation, investigation, preparation, execution, and delivery of the Successful Bidder's

APA and the entry into and consummation of the Sale Transaction, except as expressly provided

in the Successful Bidder's APA and this Order.

18.     Except as expressly provided in the Successful Bidder's APA or by this Order, all

persons and entities, including, but not limited to, the Debtor, all debt security holders; equity

security holders; administrative agencies; governmental, tax and regulatory authorities;

governmental units (as defined in section 101(27) of the Bankruptcy Code); secretaries of state;

federal, state, and local officials; contract parties; lenders; vendors; suppliers; employees; former

employees; bidders; lessors, warehousemen, mechanics, materialman, customs brokers, freight

forwarders, carriers, and other parties in possession of any of the Assets at any time; trade creditors;

litigation claimants; and all other persons holding Interests against or in the Debtor or the Debtor's

interests in the Assets (whether known or unknown, secured or unsecured, legal or equitable,

matured or unmatured, contingent or noncontingent, senior or subordinated, liquidated or

unliquidated, asserted or unasserted) whether arising prior to or subsequent to the

commencement of this Chapter 11 Case, whether imposed by agreement, understanding, law,

equity or otherwise, including, without limitation, the non-Debtor party or parties to each of the

Assigned Contracts, arising under or out of, in connection with, or in any way relating to, the

Assets or the transfer of the Assets to the Buyer, shall be and hereby are forever barred, estopped,

and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise

pursuing in any manner any Interests against the Buyer or Buyer's Related Persons or any of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), and anyone charged or chargeable with any of the foregoing's liability or responsibility; the Assets; or the interests of the Debtor in such Assets. Following the Closing Date, no holder of an Interest shall interfere with the Buyer's title to or use and enjoyment of the Assets based on or related to such Interest, except as otherwise provided in the Successful Bidder's APA or this Order. All persons and entities are hereby enjoined from taking action that would interfere with or adversely affect the ability of the Debtor to transfer the Assets in accordance with the terms of the Successful Bidder's APA and this Order, with such actions that are barred hereby including, without limitation: (i) the commencement or continuation of any action or other proceeding, (ii) the enforcement, attachment, collection, or recovery of any judgment, award, decree, or order, (iii) the creation, perfection, or enforcement of any lien, claim, interest, or encumbrance, (iv) the assertion of any right of setoff, subrogation, or recoupment of any kind, (v) the commencement or continuation of any action that does not comply with, or is inconsistent with, the provisions of this Order, any actions contemplated or taken in respect hereof, or the Successful Bidder's APA, and (vi) the revocation, termination, or failure or refusal to renew any license, permit, registration, or governmental authorization or approval to operate any of the Assets or conduct the businesses associated with such Assets.

19.   **Direction to Creditors**. On the Closing Date, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Assets, if any, as such Interests may otherwise exist. If any

person or entity that has filed financing statements, mortgages, mechanics liens, or *lis pendens* or other documents, instruments, notices, or agreements evidencing any Interest against or in the Assets shall not have delivered to the Debtor before the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, releases, or instruments of satisfaction that the person or entity has with respect to the Assets, then with regard to the Assets, (a) the Debtor and/or the Buyer are authorized to execute and file such termination statements, releases, instruments of satisfaction, or other documents on behalf of the person or entity with respect to the Assets; and (b) the Debtor and/or Buyer are authorized to file, register, or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of and shall act to cancel all Interests against the Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal or foreign government agency, department or office.

20.    **Direction to Government Agencies**.  Each and every filing agent; filing officer; title agent; recording agency; governmental department; secretary of state; federal, state and local official; and any other persons or entities that may be required by operation of law or the duties of their office or contract to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Assets, is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Successful Bidder's APA and this Order.  All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Interests against the Assets from their records and to the extent such entities do not do so, such Interests shall be deemed stricken.

21. **Direction to Surrender Possession or Control**. All persons or entities, presently or on or after the Closing Date, in possession or control of some or all of the Assets are directed to surrender possession or control of the Assets to the Buyer on the Closing Date or at such time thereafter as the Buyer may request.

22. **Licenses and Permits**. To the extent provided in the Successful Bidder's APA and available under applicable Law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, right, trademark and any other governmental authorization, permission or approval of the Debtor that are Assets, and all such licenses, permits, registrations, and governmental authorizations, and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date. To the extent any license or permit necessary for the operation of the business is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code, the Buyer shall apply for and obtain any necessary license or permit promptly after the Closing Date, and such licenses or permits of the Debtor shall remain in place for the Buyer's benefit until new licenses and permits are obtained. No governmental unit may force the transfer of or require the Buyer to apply for the transfer of any license, permit, registration, right, trademark, or any other governmental authorization, permission or approval to the Buyer except for those included in the Assets.

23. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of this Chapter 11 Case or the consummation of the transactions contemplated by the Successful Bidder's APA.

24. **No Successor Liability**. The Buyer and Buyer's Related Persons shall have no obligations with respect to any liabilities of the Debtor other than the Assumed Liabilities and are

not and shall not be deemed or considered, by any theory of law or equity, (a) to be a legal successor in any respect to the Debtor or its estate as a result of the consummation of the Sale Transaction contemplated by the Successful Bidder's APA or any other event occurring in this Chapter 11 Case; (b) to be the successor of or successor employer (as described under COBRA and applicable regulations thereunder) to the Debtor; (c) to have, *de facto* or otherwise, merged or consolidated with or into the Debtor or its estate; (d) to have a common identity with the Debtor; (e) to have a continuity of enterprise with the Debtor; (f) to be a continuation, or substantial continuation, or hold themselves out as a mere continuation of the Debtor or any enterprise of the Debtor or its estate; or (g) to be liable for any acts or omissions of Debtor in the conduct of its business or arising under or related to the Assets.  There is no continuity of enterprise with the Debtor by any theory of law or equity.  The Buyer shall not assume, nor be deemed to assume or in any way be responsible for any liability or obligation of the Debtor and/or its estate including, but not limited to, any Interests, any bulk sales Law, successor liability, liability or responsibility for any claim against the Debtor or against an insider of the Debtor, or similar liability except as otherwise expressly provided in the Successful Bidder's APA.  The Sale Motion contains sufficient notice of such limitation in accordance with applicable Law.  Except for the Assumed Liabilities, the transfer of the Assets to the Buyer under the Successful Bidder's APA shall not result in (x) the Buyer, Buyer's Related Persons, or the Assets having any liability or responsibility for any claim against the Debtor or against an insider of the Debtor (including, without limitation, Interests); (y) the Buyer, Buyer's Related Persons, or the Assets having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interests; or (z) the Buyer, Buyer's Related Persons, or the

Assets having any liability or responsibility to the Debtor except as is expressly set forth in the Successful Bidder's APA.

25.      Without limiting the generality of the foregoing, and except as otherwise provided in the Successful Bidder's APA, the parties intend and the Court hereby orders that the Buyer and Buyer's Related Persons shall not be liable for any Interest against any of the Debtor, or any of the Debtor's predecessors or affiliates, and the Buyer and Buyer's Related Persons shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor, or transferee liability, labor Law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising on or prior to the Closing Date, including, but not limited to, liabilities on account of any taxes due in connection with, or in any way relating to, the Assets on or prior to the Closing Date.  The consideration given by Buyer shall constitute valid and valuable consideration for the release of any potential claims of successor liability against Buyer and Buyer's Related Persons, which releases shall be deemed to have been given in favor of Buyer and Buyer's Related Persons by all holders of Interests against the Debtor or the Assets.

26.      **No Bulk Sales; No Brokers**.  No bulk sales Law or any similar Law of any state or other jurisdiction shall apply in any way to the Sale Transaction.  The Buyer is not, and will not become, obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the Sale Transaction based upon any arrangement made by, or on behalf of, the Debtor.

27.    **Assumption and Assignment of Assigned Contracts**.  Under sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale Transaction, the Debtor's assumption and assignment of the Assigned Contracts to the Buyer free and clear of all Interests pursuant to the terms set forth in the Successful Bidder's APA, as modified by the terms of any amendments reached directly by the Buyer with the respective counterparty, is hereby approved, and the requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code (including to the extent, if any, modified by section 365(b)(3) of the Bankruptcy Code) with respect thereto are hereby deemed satisfied.  The Assigned Contracts shall be deemed assumed by the Debtor and assigned to Buyer on the Closing Date pursuant to this Order, and Buyer shall be fully and irrevocably vested in all right, title, and interest of each Assigned Contract.  The Debtor shall cooperate with, and take all actions reasonably requested by, Buyer to effectuate the foregoing, as further provided in the Successful Bidder's APA.

28.    Each counterparty to the Assigned Contracts is hereby forever barred, estopped, and permanently enjoined from raising or asserting against the Debtor or the Buyer, or the property of any of them, any assignment fee, default, breach, claim, pecuniary loss, liability, or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated senior or subordinate) arising under or out of, in connection with, or in any way related to the Assigned Contracts existing as of the Closing Date.

29.    **Adequate Assurance**.  The Buyer has provided adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(l)(C) and 365(f)(2)(B) of the Bankruptcy Code (including to the extent, if any, modified by section 365(b)(3) of the Bankruptcy Code).  All other requirements and conditions under sections 363 and

365 of the Bankruptcy Code for the Debtor's assumption and assignment to the Buyer of the Assigned Contracts have been satisfied.

30.    **Anti-Assignment Provisions Unenforceable**.  No sections or provisions of the Assigned Contracts that purport to (a) prohibit, restrict, or condition the Debtor's assignment of the Assigned Contracts, including, but not limited to, the conditioning of such assignment on the consent of the non-debtor party to such Assigned Contracts; (b) authorize the termination, cancellation, or modification of the Assigned Contracts based on the filing of a bankruptcy case, the financial condition of the Debtor, or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtor; or (d) provide for additional payments, penalties, conditions, renewals, extensions, charges, or other financial accommodations in favor of the non-debtor third party to the Assigned Contracts, or modification of any term or condition upon the assignment of an Assigned Contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code.  The entry of this Order constitutes the consent of the non-Debtor parties to the Assigned Contracts to the Debtor's assumption and assignment of such Assigned Contracts to the Buyer.  All Assigned Contracts shall remain in full force and effect, without existing default(s), subject only to payment of the appropriate Cure Costs, if any, by the Buyers.

31.    **No Fees for Assumption and Assignment**.  There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Buyer, Buyer's Related Persons, or the Debtor as a result of the assumption and assignment of the Assigned Contracts.

32.    **Cure Costs**.  All defaults or other obligations shall be deemed cured by the Buyer's

payment or other satisfaction of the cure amounts, if any, associated with the Assigned Contracts

(the "**Cure Costs**").

33.    **Notice of Assumption and Assignment**.   The Debtor has served all of the

non-Debtor counterparties to the Assigned Contracts, identified on the lists the Debtor have filed

with the Bankruptcy Court, by first class mail, an Assumption/Assignment Notice that included

(a) the title of the Assigned Contract, (b) the name of the counterparty to the Assigned Contract,

(c) any applicable Cure Costs, (d) the deadline by which any such Assigned Contract counterparty

must file an objection ("**Cure Schedule Objection Deadline**") to the proposed assumption and

assignment.  No other or further notice is required.

34.    **Objections to Assumption and Assignment**.   Except as provided herein, all

objections associated with the Cure Schedule and/or Cure Costs have been overruled, withdrawn,

waived, settled, or otherwise resolved at the Sale Hearing.  The pendency of a dispute relating to

a particular Assigned Contract shall not prevent or delay the assumption and assignment of any

other Assigned Contract or the closing of the Sale Transaction.

35.    Any non-Debtor counterparty to the Assigned Contract designated for the Debtor's

assumption and assignment to the Buyer that has not filed an Objection on or before the deadline

as set forth in the relevant Assumption/Assignment Notice is hereby enjoined from taking any

action against the Buyer or the Assets with respect to any claim for cure under such Assigned

Contract and shall be barred from objecting or asserting monetary or non-monetary defaults with

respect to any such Assigned Contract, and such Assigned Contract shall be deemed assumed by

the Debtor and assigned to the Buyer on the Closing Date.  To the extent that any non-Debtor

counterparty to any of the Assigned Contracts failed to timely file an objection to any of the

proposed Cure Costs filed with the Bankruptcy Court, the Cure Cost listed in the Cure Schedule shall be deemed to be the entire cure obligation due and owing under any of the applicable Assigned Contracts. Except for the Cure Costs, there are no defaults existing under the Assigned Contracts, nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

36.    **Direction to Assigned Contracts Counterparties**.    All counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, and shall not charge the Buyer for, any instruments, applications, consents, or other documents that may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale Transaction. Nothing in this Order, the Motion, the Cure Schedule, or any notice or any other document is or shall be deemed an admission by the Debtor that any contract is an executory contract or must be assumed and assigned pursuant to the Successful Bidder's APA or in order to consummate the Sale Transaction.

37.    The failure of the Debtor or Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not constitute a waiver of any such terms or conditions, or of the Debtor's or Buyer's rights to enforce every term and condition of the Assigned Contracts.

38.    **Section 365(k)**.    Pursuant to section 365(k) of the Bankruptcy Code, effective on the Closing Date, the assignment of the Assigned Contracts to the Buyer relieves the Debtor's estate from any liability for any breach of such contract or lease occurring after such assignment.

39.    **Release of Buyer**.    Upon consummation of the Sale Transaction, the Debtor and its estate are deemed to release and forever discharge Buyer and Buyer's Related Persons from any and all claims, causes of action, obligations, liabilities, demands, losses, costs, and expenses of

any kind, character, or nature whatsoever, known or unknown, fixed or contingent, relating to all activities or conduct before or after the Petition Date related to the negotiation of the Successful Bidder's APA, the Sale Transaction, the Auction, or otherwise related in any way to the sale of the Assets or assignment of the Assigned Contracts, except for liabilities and obligations expressly assumed under the Successful Bidder's APA.

40.    **Amendments**.  Subject to the terms of the Successful Bidder's APA, the Successful Bidder's APA and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtor and the Buyer, without further action or order of the Bankruptcy Court; *provided, however*, that any such waiver, modification, amendment, or supplement does not have a material and adverse effect on the Debtor and its estate.  Any material modification, amendment, or supplement to the Successful Bidder's APA that has a material and adverse effect on the Debtor and its estate must be approved by order of the Bankruptcy Court following a motion on notice to all interested parties.

41.    **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Successful Bidder's APA or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtor, and the Buyer that the Successful Bidder's APA and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order.  Likewise, all of the provisions of this Order are non-severable and mutually dependent.

42.    **No Modification by Plan**.  This Order shall not be modified by any chapter 11 plan confirmed in this Chapter 11 Case.

43. **Binding Order**. This Order shall be binding upon and govern the acts of all persons and entities, including without limitation, (i) the Debtor, the Buyer, and Buyer's Related Persons, their respective successors and permitted assigns, including, without limitation, any trustees, examiners, "responsible persons," or other fiduciaries appointed in this Chapter 11 Case for the Debtor's estate or any trustee appointed in a chapter 7 case if this Chapter 11 Case is converted from chapter 11, all creditors of any Debtor (whether known or unknown); (ii) all creditors and interest holders of the Debtor, all non-Debtor parties to any Assigned Contracts, and the Committee and each of their respective successors and permitted assigns; (iii) filing agents, filing officers, title agents, title companies, recording agencies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials, and (iv) all other persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Assets. This Order, the Successful Bidder's APA, and Sale Transaction shall not be subject to rejection or avoidance under any circumstances. This Order shall inure to the benefit of the Debtor, its estate, and its creditors; the Buyer and Buyer's Related Persons; and each of the foregoing's respective successors and assigns. The Successful Bidder's APA shall inure to the benefit of the Debtor, its estate, and its creditors; the Buyer, its designees, successors and assigns; and each of the foregoing's respective successors and assigns.

44. If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Order and the rights granted to the Buyer hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.

27632763 v2

45.    **Relief from the Automatic Stay**.   Relief from the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby provided with respect to the Debtor to the extent necessary, without further order of the Bankruptcy Court, to allow the Buyer to deliver any notice provided for in the Successful Bidder's APA and allow the Buyer to take any and all actions permitted under the Successful Bidder's APA, including, without limitation, terminating the Successful Bidder's APA, in each case in accordance with the terms and conditions thereof and the Bidding Procedures.

46.    **Retention of Jurisdiction**.   The Bankruptcy Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order, including, without limitation, the authority to: (a) interpret, implement, and enforce the terms and provisions of this Order and the Successful Bidder's APA, including the injunctive relief provided in this Order, all amendments to this Order and the Successful Bidder's APA, and any waivers and consents under this Order and the Successful Bidder's APA and each of the agreements executed in connection therewith, in all respects; (b) decide any disputes concerning this Order and the Successful Bidder's APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Successful Bidder's APA and this Order including, but not limited to, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Assets and any Assigned Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning (i) the transfer of the assets free and clear of all Interests and (ii) the absolute conveyance of the Assumed Liabilities and Assigned Contracts; and (c) compel delivery of all Assets to the Buyer.

47.    **Further Assurances**.   From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and

instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale Transaction, including without limitation, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in the Buyer its right, title, and interest in and to the Assets and the Assigned Contracts.

48.      **Governing Terms**.  To the extent this Order is inconsistent with any prior order or pleading in this Chapter 11 Case, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the Successful Bidder's APA, the terms of the Successful Bidder's APA shall govern.

49.      **No Stay of Order**.  Notwithstanding Bankruptcy Rules 6004 and 6006, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  Time is of the essence in closing the Sale Transaction referenced herein, and the Debtor and the Buyer intend to close the Sale Transaction as soon as practicable, but no later than December 22, 2025, at 11:59 p.m. (prevailing Eastern Time).  Any party objecting to this Order must exercise due diligence in filing an appeal, pursuing a stay, and obtaining a stay prior to the Closing Date or risk its appeal being foreclosed as moot.

50.      **Final Order**.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rule 6004(h), the Bankruptcy Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly:  (a) the terms of this Order shall be immediately effective and enforceable upon its entry; (b) the Debtor is not subject to any stay of this Order or in the implementation, enforcement, or realization of the relief granted in this Order; and (c) the Debtor may, in its discretion and without further delay, take any action and perform any act authorized under this Order.

**SO ORDERED.**

Copies to: Default List

4903-2289-2401, v. 1

# Exhibit E

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 25-12226 |
| | ) | |
| CTL-AEROSPACE, INC., | ) | Chapter 11 |
| | ) | |
| | ) | Judge Beth A. Buchanan |
| Debtor. | ) | |
| | ) | |

## NOTICE OF SUCCESSFUL AND ALTERNATE BIDDERS
## WITH RESPECT TO THE AUCTION OF THE DEBTOR'S ASSETS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.       On September 8, 2025 (the "**Petition Date**"), the above-captioned debtor and debtor-in-possession (the "**Debtor**") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Ohio (the "**Bankruptcy Court**").

2.       On October 9, 2025, the Debtor filed the *Debtor's Motion for Entry of (I) An Order (A) Approving Bidding and Sale Procedures with Respect to the Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving the Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving Procedures for Selection of One or More Stalking Horse Bidder(s) and the Provision of Bid Protections to Such Stalking Horse Bidder(s), and (E) Granting Related Relief; and (II) An Order Approving the Sale of Such Assets and Granting Related Relief* (the "**Bidding Procedures Motion**").[1]  Pursuant to the Bidding Procedures Motion, the Debtor is seeking authority to sell substantially all Assets of the Debtor or a subset thereof, including certain executory contracts and unexpired leases.   The Bidding Procedures Motion was approved by the Bankruptcy Court on October __, 2025 [Docket No. __] (the "**Bidding Procedures Order**").   The Bidding Procedures Order contemplates that a sale (or sales) of the Assets or a subset thereof will take place via an auction (the "**Auction**") governed by the Bidding Procedures attached to the Bidding Procedures Order as **Annex 1** (the "**Bidding Procedures**").

3.       On December 10, 2025, pursuant to the Bidding Procedures Order, the Debtor conducted the Auction with respect to the Assets.

---

[1] Capitalized terms used herein that are otherwise not defined shall have the meaning given to them in the Bidding Procedures Motion or the Bidding Procedures Order (as defined herein), as applicable.

4.      At the conclusion of the Auction, the Debtor, in consultation with its professionals and the Consultation Parties, selected the following Successful Bidder(s) and Alternate Bidder(s) with respect to the Assets:

| Asset(s) | Successful Bidder | Alternate Bidder |
|:---:|:---:|:---:|
| [●] | [●] | [●] |

5.      The Debtor entered into an asset purchase agreement (the "**APA**") between the Debtor and __ (the "**Successful Bidder**"), a copy of which is attached hereto as Exhibit 1, pursuant to which the Debtor shall sell substantially all of its Assets to the Successful Bidder.

6.      The Sale Hearing to consider approval of (a) the Sale Transaction and (b) transfer of the Assets to the Successful Bidder, free and clear of all Interests other than the assumed obligations and permitted encumbrances, in accordance with section 363(f) of the Bankruptcy Code will be held before the Honorable Judge Beth A. Buchanan, United States Bankruptcy Judge for the Southern District of Ohio, at the Bankruptcy Court, 221 East Fourth Street, Atrium Two Suite 800, Cincinnati, Ohio 45202 at 10:00 a.m. (prevailing Eastern Time).  The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in this chapter 11 case.

7.      Any objections (a) to the Sale Transaction of the Assets, (b) to the manner in which the Auction was conducted, (c) to the identity of the Successful Bidder, and/or (d) based on the ability of the Successful Bidder to provide adequate assurance of future performance to counterparties to executory contracts and unexpired leases contemplated to be assumed and assigned to the Successful Bidder must be filed with the Court on or before **December 12, 2025, at 10:00 a.m. (prevailing Eastern Time)** (the "**Global Objection Deadline**").

8.      At the Sale Hearing, the Debtor will seek Bankruptcy Court approval of the Successful Bid, and the assumption and assignment of the Assigned Contracts (as defined in the Bidding Procedures Order) to the Successful Bidder.  Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the sale of the Debtor's Assets and there will be no further bidding at the Sale Hearing.  In the event that the Successful Bidder cannot or refuses to consummate the Transaction(s) because of a breach or failure on the part of the Successful Bidder, then the Debtor will close with the party that submitted the Alternate Bid, pursuant to the applicable Sale Order, after consulting with the Consultation Parties.  If an Alternate Bidder does not close the applicable Sale Transaction contemplated by the applicable Alternate Bid by the date agreed to by the Debtor and such Alternate Bidder, then, after consulting with the Consultation Parties, the Debtor will be authorized to reopen the Auction to designate new Successful Bid(s) and Alternate Bid(s).

9.      This notice is subject to the terms and conditions of the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtor encourages parties in interest to review such document in its entirety.  Parties with questions

regarding this notice should contact the Debtor's counsel at the contact information provided below.

10.     Parties interested in receiving more information regarding the contemplated sale and/or copies of any related documents may request such materials by notifying counsel for the Debtor via email (friesinger@coollaw.com).

December __, 2025                    Respectfully submitted,

                                    COOLIDGE WALL CO., L.P.A.

                                    */s/ Patricia J. Friesinger*
                                    Patricia J. Friesinger (0072807)
                                    Briana C. Breault (0099773)
                                    33 West First Street, Suite 600
                                    Dayton, Ohio 45402
                                    Tel: 937/223-8177
                                    Fax: 937/223-6705
                                    E-Mail:  friesinger@coollaw.com
                                                breault@coollaw.com

                                    *Proposed Counsel for Debtor and Debtor-In-Possession CTL-Aerospace, Inc.*

27632813 v3

## Exhibit 1

**APA**

**(*To Come*)**

4902-8754-4177, v. 4

27632813 v3