**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**



Beth A. Buchanan
United States Bankruptcy Judge

Dated: October 22, 2025

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 25-12226 |
| | : | |
| CTL-AEROSPACE, INC. | : | Chapter 11 |
| | : | |
| DEBTOR-IN-POSSESSION. | : | Judge Beth A. Buchanan |
| | : | |

**ORDER UNDER 11 U.S.C. §§ 105(a), 361, 362 AND 363, FEDERAL BANKRUPTCY RULES 2002, 4001 AND 9014, AND LOCAL RULE 4001-2: (I) AMENDING EXISTING FINANCING ORDER [DOC. 72] AND (II) GRANTING RELATED RELIEF [DOC. 105]**

THIS MATTER came before the Court for hearing on October 21, 2025 at 1:00 p.m. (the "Hearing") on the *Emergency Motion of the Debtor, CTL Aerospace, Inc. for: (A) Order Amending Order Authorizing Debtor to Obtain Postpetition Financing and Use Cash Collateral; and (B) Granting Related Relief* (the "Motion"), filed by the debtor and debtor-in-possession on October 17, 2025 [Doc. 105], CTL-Aerospace, Inc. (the "Debtor") in the above-captioned chapter 11 case (the "Case"); the Debtor having filed a voluntary petition under Chapter 11 of Title 11, United States Code, on September 8, 2025 (the "Petition Date"), and having requested

in the Motion entry of an order (the "Amending Order" or this "Order") modifying the *Final Order Under 11 U.S.C. §§ 105(A), 361, 362 and 363, Federal Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2: (I) Authorizing Debtor to Obtain Post-Petition Financing; (II) Authorizing Debtor to Use Cash Collateral; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling and Approving the Form and Method of Notice of Final Hearing; and (VI) Granting Related Relief* entered by this Court on September 30, 2025 [Doc. 72] (the "Existing DIP Order") as set forth herein;[1] the Debtor having provided sufficient and adequate notice of the Motion under the circumstances present; and upon the record of the Case and the record of the Hearing, good and sufficient cause appearing therefor, and it appearing to be in the best interests of the Debtor's estate and creditors;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. **Motion Granted**. The Motion is GRANTED as set forth herein. The findings of fact and conclusions of law set forth in the Existing DIP Order are hereby reaffirmed and remain in full force and effect other than as modified by the terms of this Order.

2. **Authorization to Use Cash Collateral**. The authorization of the Debtor to use Cash Collateral under the Existing DIP Order is amended such that the authorization will automatically terminate at 5:00 p.m. Cincinnati time on October 31, 2025 (as may be extended in writing by Lenders pursuant to the terms of the Existing DIP Order as modified hereby but, for the avoidance of doubt, in their sole and absolute discretion).

3. **Additional Adequate Protection Via Access Rights**. Paragraph 5 the Existing DIP Order is hereby amended by inserting new subsection (g) as follows:

---

[1] Capitalized terms used herein but not otherwise defined have the meanings given to them in the Existing DIP Order.

2

(g) *Onsite Access*. The Debtor will permit Lenders and their professionals and consultants reasonable onsite access to Debtor's operations and management (and in any event, such access will not be less than the onsite access that has been provided to any of Debtor's major customers during any postpetition period) and will promptly provide Lenders, their professionals, and consultants with all information reasonably requested regarding Debtor's operations and financial position; *provided that* the Lenders' access to information with respect to the sale process shall be subject to any applicable limitations set forth in the Sale Procedures Order once entered; *provided further that*, for the avoidance of doubt, the right of Lenders to seek reimbursement of any expenses relating to such onsite access from Debtor will be governed by the Prepetition Documents or Postpetition Documents, as applicable; *provided further that* it will not be a breach of this subsection (g) for Debtor to restrict the access of Lenders, their professionals or their consultants to the extent Debtor reasonably determines that such restriction is necessary (i) in order to comply with applicable Federal Aviation Administration regulations or (ii) to comply with binding agreements with any active customer of Debtor. Debtor represents and warrants that it has disclosed all known regulations and customer-related restrictions to Lenders as of the date hereof. For the avoidance of doubt, the Lenders shall be provided only with summary details as to the sale and financing process with updates provided within the discretion of the Debtor prior to the entry of the Sale Procedures Order and will be required to sign a nondisclosure agreement reasonably acceptable to the Debtor and the Lenders to engage as a Qualified Bidder.

4. <u>Sale Procedures Order Deadline</u>. The deadline to obtain approval of the Sale Procedures Order as set forth on Exhibit C annexed to the Existing DIP Order shall be extended from October 17, 2025 to October 29, 2025. The Debtor and the Lenders agree to negotiate in good faith with respect to the extension of all impacted interim deadlines provided for in the Sale Procedures Motion.

5. <u>Lenders' Consent to Delayed Payment of Allowable 506(b) Amounts and Postpetition Charges</u>. Paragraph 9 of the Existing DIP Order is hereby amended by inserting the following sentence at the end of such paragraph:

> Notwithstanding the foregoing, in consideration of the agreements of Debtor set forth in the Amending Order, Lenders hereby agree that they will not demand

3

payment on any Allowable 506(b) Amounts or Postpetition Charges until the earlier of (i) the occurrence of a Termination Event first occurring after the entry of the Amending Order or (ii) 5:00 p.m. Cincinnati time on October 31, 2025 (*provided that* nothing prevents Lenders from sending the notice contemplated by this Paragraph 9 prior to such time period so long as no demand for payment is made in contravention of this sentence; *provided further that* such date may be extended in writing by the Lenders in their sole and absolute discretion).

6. <u>Prepetition Control Agreements</u>. Paragraph 15 of the Existing DIP Order shall be deleted and of no further force and effect, and replaced with the following:

<u>Prepetition Control Agreements</u>. All "Control Agreements" (as defined in the Prepetition Credit Agreements) in effect as of the Petition Date (the "<u>Prepetition Control Agreements</u>") shall remain in full force and effect, notwithstanding the entry of any subsequent orders amending this Order. The Prepetition Control Agreements shall be permitted to be amended, restated, amended and restated, supplemented, modified, renewed or otherwise replaced in order to effectuate the replacement of the Prepetition Lender with any Person (or such Person's designees) that has acquired the Prepetition Debt following the Petition Date.

7. <u>Additional Termination Events</u>. Paragraph 16 of the Existing DIP Order is hereby amended by (i) amending and restating subsections (c) and (h) in their entirety as set forth below and (ii) adding the additional Termination Event (q) listed below:

(c) Debtor materially breaches any covenant in the Postpetition Documents or Prepetition Documents.

(h) Debtor fails to strictly comply with, or perform the terms and provisions of, this Final Order in strict adherence to the time periods set forth herein or using Cash Collateral other than in accordance with the provisions of the Budget and this Final Order, including, for the avoidance of doubt, failure to timely deliver any Weekly Variance Report or Daily Variance Report in strict conformity with the definitions of each such term;

(q) Debtor makes any disbursement of Cash Collateral that (i) is not accounted for in the Budget and (ii) Lenders have not separately consented to in writing. For the avoidance of doubt, any such disbursement will be a Termination Event even if such disbursement has otherwise been authorized by a separate court order unless such separate court order specifically authorizes the Debtor to make such payment using Cash Collateral notwithstanding any contrary requirements of the Budget or this Final Order.

8. <u>Revised Controlling Effect</u>. Paragraph 30 of the Existing DIP Order shall be deleted and of no further force and effect, and replaced with the following:

<u>Controlling Effect</u>. To the extent that any provision of this Order conflicts with any provision of any of the Prepetition Documents, Postpetition Documents or the Existing DIP Order, this Order is deemed to control and shall supersede the conflicting provision(s). Except as modified in Existing DIP Order and herein and subject to the other provisions of the Existing DIP Order or this Order, this Order and the Bankruptcy Code, the Prepetition Documents shall remain in full force and effect with respect to the Prepetition Debt and the obligations of Debtor to provide financial information to Lenders and to maintain its property (but, for the avoidance of doubt, all commitments of Senior Lender to fund any loans or credits to Debtor have terminated). Without limiting the obligations of the Debtor or the rights of Prepetition Lender under the Prepetition Documents or Postpetition Lender under the Postpetition Documents, the Debtor agrees that Lenders and their representatives, investment advisors, professionals, consultants or designees may at any time and with reasonable notice to the Debtor, at the sole cost and expense of the Debtor (subject to the limitations provided in the Prepetition Documents or Postpetition Documents), have access to (a) any of the premises that the Debtor directly or indirectly owns, leases or otherwise has a right to occupy or use, (b) all assets and properties of Debtor located on any such premises, including, without limitation, all books and records related to accounts or inventory or any other Aggregate Collateral and (c) any employee, officer, director, representative and consultant of the Debtor and any other Person employed or retained by the Debtor except to the extent access to information in such Person's possession would compromise the Debtor's attorney-client privilege or otherwise compromise the Debtor's sale and refinancing processes and subject to any other limitations provided for herein. For the avoidance of doubt, nothing herein affects the rights, protections, liens, and adequate protection granted to Lenders in the Existing DIP Order (including, without limitation the waivers of surcharge rights, the representations made by Debtor regarding the validity of the Prepetition Liens and prepetition claim of Prepetition Lender, and the liens and protections granted to the Postpetition Lender in connection with the Postpetition Debt).

9. <u>Updated Reporting Requirements</u>. Exhibit A of the Existing DIP Order is hereby amended by (i) amending and restating the definitions of Budget Performance Covenants, Variance Reporting Covenants, Allowable 506(b) Amounts and Postpetition Charges as set forth below, and (ii) adding the definitions of Weekly Variance Reporting Requirements and Daily Reporting Requirements in the correct alphabetical order.

*Budget Compliance Covenants*. Debtor will not permit (i) disbursements, measured on an aggregate basis and on a line-item basis, to exceed 110% of the forecasted expenditures set forth in the Budget for any two-week period; (ii) cash

5

receipts (excluding proceeds of any postpetition financing), measured on an aggregate basis and line-item basis, to be less than 85% of the forecasted cash receipts set forth in the Budget for any two-week period; (iii) actual sales, measured on an aggregate basis and on a line-item basis, to be less than 85% of the forecasted sales set forth in the Budget for any two-week period; or (iv) incurred liabilities, measured on an aggregate basis and on a line-item basis, to exceed 110% of the budgeted liabilities set forth in the Budget for any two-week period.

***Variance Reporting Covenants***. Debtor will timely and strictly comply with the requirements of the Weekly Variance Reporting Requirements and the Daily Variance Reporting Requirements.

***Daily Variance Reporting Requirements***. Each Business Day, Debtor will deliver to Lenders a written report (the "Daily Variance Report") showing (i) all disbursements sent, receipts collected, and sales made on the immediately proceeding Business Day; (ii) a reconciliation showing how such disbursements, receipts, and sales conform to the requirements of the approved Budget and the Budget Compliance Covenants; and (iii) showing *pro forma* compliance with the Budget Compliance Covenants by reconciling such disbursements, receipts, and sales against the Budget and the prior week's disbursements, receipts, and sales. Each submission of a Daily Variance Report will be signed by an authorized officer of the Debtor (which may be an electronic signature), and such signature will be deemed a representation and warranty by such officer and the Debtor that the Daily Variance Report is complete, true, and accurate.

***Weekly Variance Reporting Requirements***. On each Tuesday of every week, Debtor will submit to Lenders (1) an updated cash-flow forecast in form and substance acceptable to Lenders, which, for the avoidance of doubt, (i) will be a 13-week cash flow forecast with comparisons against the "Borrowing Base" under the Prepetition Documents and (ii) will contain information regarding timing of forecasted sales and liabilities incurred, including schedule of fees by each Debtor advisor that sets forth (a) fees and expenses accrued and paid to date and forecasted for the remainder of the covered period and (b) total estimated fees for the duration of the Case (and, upon Lenders' approval of such forecast in writing, which may be withheld in Lenders' sole and absolute discretion, such updated forecast will become the approved Budget); (2) a Borrowing Base Certificate that includes a narrative regarding any material changes from the previous week; (3) a reconciliation of all receipts collected, liabilities incurred, disbursements made, and sales made in the immediately preceding week against the Budget (which reconciliation and demonstration of Budget Compliance Covenant variances, for the avoidance of doubt, must be against the then-approved Budget, not a proposed budget), which reconciliation will include supporting documentation for all such

6

receipts, liabilities, disbursements, and sales and demonstration of compliance or non-compliance with the Budget Compliance Covenants; and (4) variance reports that include a narrative explaining any material variances from the then-approved Budget related to receipts collected, liabilities incurred, disbursements made, and sales made and calculations showing compliance with the permitted variances described in the Budget Compliance Covenants (the reporting described in subparts (1) through (4) above, the "Weekly Variance Report"). Each submission of a Weekly Variance Report will be signed by an authorized officer of the Debtor (which may be an electronic signature), and such signature will be deemed a representation and warranty by such officer and the Debtor that the Weekly Variance Report is complete, true, and accurate and that any updated cashflow forecast was prepared in good faith and contains a full and complete itemization by category of all costs, expenses, and fees of the Debtor that (i) the Debtor and such officer reasonably expect to pay or reasonably anticipate becoming obligated to pay during the applicable time period and (ii) are reasonable and necessary for the operation of the Debtor's businesses and the preservation of the Aggregate Collateral through the period for which the forecast runs.

***Allowable 506(b) Amounts.*** To the extent allowable under Bankruptcy Code § 506(b), interest at the default rate of interest as set forth in Section 2.5(a) of the Prepetition Domestic Credit Agreement and Section 2.5 of the Prepetition EXIM Credit Agreement, all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), and all costs and expenses at any time incurred by Prepetition Lender in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (b) the representation of Prepetition Lender in the Case, including in defending any Challenge. For the avoidance of doubt, Allowable 506(b) Amounts shall include the reasonable and documented fees and expenses of (i) Akin Gump Strauss Hauer & Feld, LLP, for fees and expenses incurred beginning on October 20, 2025, as counsel to the Lenders, (ii) one local counsel to the Lenders, (iii) Riveron Consulting, LLC, as financial advisor to the Lenders, and (iv) one industry consultant to the Lenders.

***Postpetition Charges***. Interest at the applicable rate of interest under the Postpetition Agreement and all fees, costs, and expenses provided for in the Postpetition Agreement, including those incurred by Postpetition Lender in connection with the Postpetition Debt (regardless of whether any such fees, costs, interest and other charges are included in the Budget). For the avoidance of doubt, Postpetition Charges shall include the reasonable and documented fees and expenses of (i) Akin Gump Strauss Hauer & Feld, LLP, for fees and expenses

incurred beginning on October 20, 2025, as counsel to the Lenders, (ii) one local counsel to the Lenders, (iii) Riveron Consulting, LLC, as financial advisor to the Lenders, and (iv) one industry consultant to the Lenders.

10. <u>Updated Budget</u>. The Budget attached hereto as Exhibit A is hereby made the approved Budget under the Existing DIP Order, subject to modification as set forth in the Existing DIP Order (as amended by this Order).

11. <u>Updates to Sale Process Covenants</u>. Exhibit C of the Existing DIP Order is hereby amended by removing the Lenders from inclusion as a Consultation Party with respect to Paragraphs 6 and 7 thereof, unless or until Lenders withdraw in writing their interest in being a Qualified Bidder. Exhibit C of the Existing DIP Order is further hereby amended by deleting paragraphs 8 and 9 thereof, which shall be of no further effect.

12. <u>Additional Documents</u>. The Debtor is hereby authorized to do and perform all acts and to make, execute and deliver all instruments and documents which may be required or necessary for the performance of its obligations hereunder.

13. <u>Transferability of Debt</u>. The Lenders shall have an unrestricted right, without the consent of the Debtor or the obligors under the Prepetition Documents, or prior approval of this Court, to assign, transfer, sell, or otherwise convey, in whole or in part, their rights, interests, and obligations under the Prepetition Documents and the Postpetition Documents, including the Aggregate Debt and any related rights and remedies, to any third party and the liens, benefits and protections of the Existing DIP Order and this Order will inure to the benefit of any such assignee. Debtor shall execute any documents reasonably requested by such assignee to document such assignment. For the avoidance of doubt, DKOF VI Trading Subsidiary LP (and any of its affiliates or successors), as successor to the Prepetition Lender, shall be vested with all rights, interests and protections afforded to the Lenders by the Existing DIP Order, as amended by this Order, and shall

retain all of the consent, approval and reporting rights granted by the Existing DIP Order, as amended by this Order, attributable to the Lenders.

14. <u>Immediate Effect</u>.  As permitted by Bankruptcy Rule 6004(h), the Court hereby orders that this Order shall become effective immediately.

15. <u>Survival After Confirmation, Conversion or Dismissal</u>.  The provisions of the Existing DIP Order, as modified by this Order, and any actions taken pursuant thereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting this Case from chapter 11 to chapter 7 of the Bankruptcy Code or dismissal of this Case; *provided, further*, that the terms and provisions of the Existing DIP Order, as amended hereby, as well as the liens and security interests granted thereunder, shall continue in this Case or any successor case or subsequent to dismissal of this Case and such liens and security interests and the Prepetition Lender 507(b) Claim shall maintain their priority as provided by the Existing DIP Order, as modified by this Order. For the avoidance of doubt, the Existing DIP Order, as expressly modified herein, remains in full force and effect, and no party has waived or modified any of its rights under the Existing DIP Order except as expressly set forth herein.

16. <u>No Limitation or Modification of Order</u>.  Nothing in this Order shall limit any Lender's right to seek modification of this Order.

17. <u>No Prejudice of Rights Against Third Parties</u>.  Nothing in this Order shall in any way prejudice or compromise any rights that any Lender may have against parties other than the Debtor, and the Prepetition Third Party Documents will remain in full force and effect with the same validity as existed immediately prior to the Petition Date, unless expressly modified by the Debtor and the Prepetition Lender (including any successor thereto) after the date of this Order.

18. <u>Effect on Third Parties</u>.  The provisions of this Order shall be binding on all third

parties *provided* that any other secured party may seek adequate protection for its interests in any assets of the Debtor, if any, which adequate protection shall not contradict or otherwise interfere with the terms of this Order.

19. <u>Binding Effect</u>.  The provisions of this Order shall be binding upon and inure to the benefit of Lenders, the Debtor, the Debtor's estate and their respective successors and assigns (including any trustee appointed as a representative of the Debtor's estate or in any successor case).

20. <u>Service of the Order</u>. Within three (3) Business Days after the entry of this Order, the Debtor shall serve a copy on (a) the Office of the U.S. Trustee; (b) counsel to the Committee; (c) the creditors holding the 20 largest unsecured claims against the Debtor's estate; and (d) all secured creditors and any counsel thereto.

21. <u>Good Faith</u>.  Pursuant to, and to the extent of, the provisions of Bankruptcy Code section 364(e), the validity of the Prepetition Lender 507(b) Claim and the validity and priority of the liens and security interests authorized or granted by this Order shall be binding on the Debtor, its estate and their successors and assigns even if this Order is reversed or modified on appeal.

**IT IS SO ORDERED.**

Copies to: Default List

**EXHIBIT A**
**BUDGET**

[SEE ATTACHED]

11

| CTL Aerospace, Inc. #25-12226 Weekly Cash Flow Budget | Actual Week 1 9/26/2025 | Actual Week 2 10/3/2025 | Actual Week 3 10/10/2025 | Fcst Week 4 10/17/2025 | Fcst Week 5 10/24/2025 | Fcst Week 6 10/31/2025 | Fcst 3-Week Total |
|---|---:|---:|---:|---:|---:|---:|---:|
| **Cash Receipts:** | | | | | | | |
| Accounts Receivable – Domestic | 720,176 | 846,856 | 432,180 | 148,632 | 650,214 | 725,873 | 1,524,718 |
| Accounts Receivable – EXIM | 4,962 | 1,389 | 232,722 | 43,536 | 92,562 | 27,677 | 163,775 |
| NRE Tooling Collections | - | - | - | - | - | 79,000 | 79,000 |
| MRO Collections | - | - | 18,739 | - | - | - | - |
| ACH Return | 20,754 | - | 34,812 | - | - | - | - |
| ABL Advance | 49,018 | - | - | - | - | - | - |
| **Total Cash Receipts** | 794,909 | 848,245 | 718,454 | 192,167 | 742,776 | 832,550 | 1,767,493 |
| **Cash Disbursements:** | | | | | | | |
| Payroll & Payroll Taxes | 436,313 | 260,045 | 503,821 | 250,000 | 430,000 | 250,000 | 930,000 |
| Health Insurance Claims & Expenses | 257,037 | 24,281 | 81,697 | 33,000 | 56,201 | 75,000 | 164,201 |
| Materials | 309,509 | 196,364 | 41,365 | 35,336 | 725 | 3,012 | 39,073 |
| Customer Funded Materials Reimbursement | | | | | | | - |
| Tooling | - | - | - | - | - | - | - |
| Indirect Materials | - | 12,565 | 4,656 | 30,000 | 30,000 | 30,000 | 90,000 |
| Facilty Services | - | - | - | 12,692 | 12,692 | 12,692 | 38,076 |
| Freight | 20,000 | 953 | - | 11,500 | 11,500 | 11,500 | 34,500 |
| Hazardous Waste | - | - | - | - | 15,000 | - | 15,000 |
| EHS Support | - | - | - | - | - | - | - |
| Rent | - | - | - | 164,000 | - | - | 164,000 |
| Utilities | 894 | 345 | 442 | - | - | 120,000 | 120,000 |
| Utilities Motion Deposit | - | - | - | - | - | 28,000 | 28,000 |
| Business Insurance | - | 13,208 | - | - | 8,000 | - | 8,000 |
| Leases & Subscriptions | - | - | 35,019 | - | - | 20,552 | 20,552 |
| Expense Reimbursements | 1,053 | 46,868 | 213 | - | - | - | - |
| **Total Operating Disbursements** | 1,024,806 | 554,629 | 667,214 | 536,528 | 564,118 | 550,756 | 1,651,402 |
| **Operating Cash Flow** | $ (229,897) | $ 293,615 | $ 51,240 | $ (344,360) | $ 178,658 | $ 281,794 | $ 116,091 |
| **Non-Operating Cash Disbursements:** | | | | | | | |
| Revolver Interest & Bank Fees | - | - | - | | | | - |
| Term Loan Payments (P&I) | - | - | - | | | | - |
| Other Fees | 578 | 7,785 | 4,185 | | | | - |
| Bank Service Charges | - | 111 | - | | | | - |
| Critical Vendor Payments | - | - | - | | | | - |
| Payroll DIP Loan Repayment | - | 200,774 | - | | | | - |
| Revolver Paydown | - | - | - | | | | - |
| **Total Non-Operating Cash Disbursements** | 578 | 208,670 | 4,185 | - | - | - | - |
| **Ch11 Professional Fees Disbursements** | | | | | | | |
| Debtor's Counsel, Coolidge Wall | - | | | | | | - |
| Debtor's Financial Advisor, Capstone Partners | - | | | | | | - |
| Debtor's Investment Banker, Capstone Partners | - | | | | | | - |
| UCC Counsel, TBD | - | | | | | | - |
| UCC Advisors, TBD | - | | | | | | - |
| U.S. Trustee Fees | - | - | - | 19,973 | - | - | 19,973 |
| **Total Ch11 Professional Fees Disbursements** | - | - | - | 19,973 | - | - | 19,973 |
| **Net Weekly Cash Flow** | (230,475) | 84,946 | 47,055 | (364,333) | 178,658 | 281,794 | 96,118 |
| **Beginning Cash Balance** | $ 656,448 | $ 425,973 | $ 510,919 | $ 557,974 | $ 193,640 | $ 372,299 | $ 557,974 |
| **Ending Cash Balance** | $ 425,973 | $ 510,919 | $ 557,974 | $ 193,640 | $ 372,299 | $ 654,092 | $ 654,092 |
| **Ch11 Professional Fees Accrual** | | | | | | | |
| Debtor's Counsel, Coolidge Wall | 35,000 | - | - | - | 35,000 | | 35,000 |
| Debtor's Financial Advisor, Capstone Partners | 65,000 | 75,000 | 55,000 | 55,000 | 55,000 | 50,000 | 160,000 |
| Debtor's Investment Banker, Capstone Partners | 35,000 | - | - | - | 35,000 | | 35,000 |
| UCC Advisors, TBD | - | - | 25,000 | - | 25,000 | - | 25,000 |
| U.S. Trustee Fees | - | - | - | 19,973 | - | - | 19,973 |
| **Total Legal Professional & Administrative Costs** [1,2] | 135,000 | 75,000 | 80,000 | 74,973 | 150,000 | 50,000 | 274,973 |
| | | | | | | | |
| Accrued Professional Fees Beginning Balance | - | 135,000 | 210,000 | 290,000 | 345,000 | 495,000 | 210,000 |
| Plus: Accrual Based Fees | 135,000 | 75,000 | 80,000 | 74,973 | 150,000 | 50,000 | 274,973 |
| Minus: Fee Payments | - | - | - | (19,973) | - | - | (19,973) |
| Accrual Adjustment for Paid Fees | - | - | - | - | - | - | - |
| **Closing Professional Accrued Fees Balance** | $ 135,000 | $ 210,000 | $ 290,000 | $ 345,000 | $ 495,000 | $ 545,000 | $ 465,000 |
| | | | | | | | |
| Operating Cash Needs | 279,493 | (84,946) | (47,055) | 364,333 | (178,658) | (281,794) | (96,118) |
| Ch. 11 Professional Fees | 135,000 | 75,000 | 80,000 | 55,000 | 150,000 | 50,000 | 545,000 |
| KHI Sales Accrual for Weeks 7-14 (60 Day A/R Terms) | | | | | | | - |
| **Total Net Financing Needs** | $ 414,493 | $ (9,946) | $ 32,945 | $ 419,333 | $ (28,658) | $ (231,794) | $ 448,882 |

Notes:
*(1) Legal and Professional fees are all accrual based and are carried in the budget for presentation purposes.*
*(2) Professional Fees Accrual does not include Investment Banker Success Fee.*