UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | : | Case No. 25-12226 |
| | : | |
| CTL-AEROSPACE, INC., | : | Chapter 11 |
| | : | |
| DEBTOR-IN-POSSESSION. | : | Judge Beth A. Buchanan |
| | : | |

**EMERGENCY MOTION OF DEBTOR, CTL-AEROSPACE, INC. FOR INTERIM AND FINAL ORDERS: (A) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING; (B) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL, (C) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTY, (D) MODIFYING THE AUTOMATIC STAY, (E) SCHEDULING A FINAL HEARING, AND (F) GRANTING RELATED RELIEF**

**NOW COMES** CTL-Aerospace, Inc. (the "Debtor"), as debtor and debtor-in-possession in the above-captioned chapter 11 case, hereby moves this Court pursuant to sections 105(a), 364, 503(b) and 507 of title 11 of the United States Code,  11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-3 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Ohio (the "Local Rules"): (i) for an interim order (the "Interim Order") (a) approving and authorizing, on an interim basis, the Debtor to obtain post-petition debtor-in-possession financing (the "DIP Loan") from its existing pre-petition secured lender DKOF VI Trading Subsidiary LP ("DK") or one or more of its affiliates (the "DIP Lender") by entry of an interim order substantially in the form attached hereto as Exhibit 1 (the "Proposed Order"); (b) authorizing the Debtor to borrow from the DIP Lender on the terms outlined in Exhibit A to the attached Proposed Order (the "DIP Term Sheet") and to execute and deliver loan documents that conform with the terms of the DIP Term Sheet, including such other documents agreements, filings and instruments required by DIP Lender in its discretion in connection with such debtor-in-

1

possession financing (collectively, the "Loan Documents"); and (c) approving, on an interim basis, the terms and conditions of the DIP Loan, including, but not limited to, authorizing the Debtor to borrow under the DIP Loan in accordance with the financing needs identified in the Budget (as defined in the Proposed Order and the DIP Term Sheet) a summary of which Budget is attached as Annex A to the DIP Term Sheet, pending a final hearing on this Motion, (ii) to schedule a final hearing (the "Final Hearing") on this Motion in the near term; (iii) to approve the form and manner and notice of the Final Hearing to consider entry of a final order granting the relief sought herein on a permanent basis; (iv) for an order approving, on a final basis after the Final Hearing (the "Final Order"), the terms and conditions of the DIP Loan as outlined in Exhibit A hereto (including the exhibits thereto); and (v) to grant such other and further relief as the Court deems just and proper.

In support of this Motion, the Debtor attaches and incorporates herein the following memorandum.  Also attached hereto as Exhibit 2 is the checklist required by LBR 4001-2/4001-3, which identifies the location in the Proposed Order of the terms required to be identified by such Local Rule(s).

Respectfully submitted,

COOLIDGE WALL CO., L.P.A.

*/s/ Patricia J. Friesinger*

Patricia J. Friesinger (0072807)
33 West First Street, Suite 600
Dayton, Ohio 45402
Tel: 937/223-8177  Fax: 937/223-6705
E-Mail: friesinger@coollaw.com

*Counsel for Debtor and Debtor-In-Possession*
*CTL-Aerospace, Inc.*

## MEMORANDUM IN SUPPORT

## I.      BACKGROUND

1.      On September 8, 2025 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition under chapter 11 of the Bankruptcy Code.

2.      The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157(b)(1) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue of is case is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The Debtor is a company with its location in Butler County, Ohio.

4.      The Debtor is in possession of its property and operating and managing its business as a debtor-in-possession pursuant to section 1184 of the Bankruptcy Code.

## II.      REQUESTED RELIEF

### A.      The Existing Loans
### And Need For Debtor-In-Possession Financing

5.      As identified with greater specificity in the *Declaration of Scott Crislip In Support of Chapter 11 Petition and First Day Motions* filed herein on September 8, 2025 [Doc. 9] (the "First Day Declaration") and the declarations filed in support of this motion, prior to filing the bankruptcy case and until October 20, 2025, the Debtor's primary secured creditor was Wells Fargo Bank, National Association ("Wells Fargo"), which had loans outstanding to the Debtor on the Petition Date of approximately fifteen million dollars in principal.  Wells Fargo sold its position to DK, which is now a secured creditor holding first liens on substantially all of the Debtor's assets.

6.      Prior to the sale of the loan position from Wells Fargo to DK, the Debtor had a small loan approved by this Court from the Prepetition Lender in the *Final Order Under 11 U.S.C. §§ 105(a), 361, 362 and 363, Federal Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2; (I) Authorizing Debtor to Obtain Post-Petition Financing; (II) Authorizing Debtor to Use*

*Cash Collateral; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling and Approving the Form and Method of Notice of Final Hearing; and (V) Granting Related Relief [Doc. 5 and 18]* entered herein on October 1, 2025 [Doc. 72] (the "Original DIP Order" and the post-petition financing approved therein is hereinafter referred to as the "Original DIP Loan"). The Original DIP Order was entered in this case, which provided for the Debtor to have access to draw up to $725,000 through two draws – one per week in the weeks ending September 12, 2025 and September 19, 2025. Wells Fargo agreed to extend the maturity of the Original DIP Loan through October 3, 2025 and it was repaid on that date. While it was anticipated that the Debtor would obtain additional financing from Wells Fargo, the Debtor and Wells Fargo could not reach agreement, but an agreement was reached to modify the Original DIP Order to allow for continued use of cash collateral, which was incorporated into the Debtor's filing of the *Emergency Motion of Debtor CTL-Aerospace, Inc. For: (A) Order Amending Order Authorizing Debtor to Obtain Post-Petition Financing and Use Cash Collateral; and (B) Granting Related Relief [Doc. 72]* on October 17, 2025 [Doc. 105] (the "Motion to Amend Original DIP Order"). The Motion to Amend Original DIP Order was set for hearing on October 22, 2025. While the Motion to Amend Original DIP Order was pending, on October 20, 2025, the Debtor was advised that Wells Fargo had sold its debt position to DK. As such, the Debtor negotiated further revisions to the Original DIP Order, which was submitted and described to the Court on October 22, 2025 and the Court entered the *Order Under 11 U.S.C. §§105(a), 361, 362, and 363, Federal Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2; (I) Amending Existing Financing Order [Doc. 72] and (II) Granting Related Relief [Doc. 105]* [Doc. 120] (the "Amended DIP Order"). The Amended DIP Order included identification of the buyer of Wells Fargo's position as DK. The

Amended DIP Order included a consent to use of cash collateral through October 31, 2025 and set a deadline for entry of an order as to sale procedures.

7.      By virtue of the Original DIP Order and the Amended DIP Order (collectively, the "Existing DIP Orders"), the Debtor has continued operations through use of cash collateral only, with normal business operations significantly curtailed and production volumes reduced due to inability to purchase raw the necessary raw materials. The Debtor has negotiated with the DIP Lender to provide postpetition financing on the terms of the documents attached hereto, which financing will provide the necessary liquidity to improve/increase operations of the Debtor and provide for funding of administrative expenses of the Debtor. The Debtor, with assistance of its financial advisor has arrived upon an agreed budget that is targeted to improve the operations of the Debtor to preserve the going concern value of the business (as more fully described in the declarations in support of this motion). While those negotiations were ongoing, DK has consented to continued use of cash collateral and extended the deadline for entry of an order as to sale procedures until November 12, 2025.

8.      The reasons supporting the Debtor's need to incur the DIP Loan under the terms set forth on Exhibit A are compelling. The DIP Loan will allow for funding of the bankruptcy case through the sale milestones – resolving the issue raised by the unsecured creditors' committee as to the sale procedures motion – and will support improved operations of the Debtor. The DIP Loan is critical for the Debtor to be able to increase its production as required by its customers, which is anticipated to improve the value of the Debtor and its prospects in either a sale or a refinancing process.

### B.      Description of the DIP Financing

9.      As more fully outlined in the DIP Term Sheet, the Debtor is seeking authority to borrow $13.5 million from the DIP Lender on a junior secured basis. The terms of the loan provide

for no cash payments on the loan until the maturity date, which is set to be either December 31, 2025 or February [28], 2026 (in the event the DIP Lender is the winning bidder under the anticipated sale procedures and the sale is accomplished through a chapter 11 plan). There is an upfront fee of 5.0% of the committed amount (or $675,000). The loan will accrue interest at the rate of 15% on the amounts borrowed. And at the time of repayment, there is a MOIC of 1.25x the committed amount, which amount is reduced by the interest accrued. The loan must comply with the terms of the Budget (as defined in the DIP Term Sheet and the Proposed Order), along with other covenants. The loan terms require the Debtor to appoint an independent manager. Further, the Debtor is permitted to use the loan and cash collateral to pay its operating expenses, including for the independent manager, and to pay the expenses of administration (including payment of the DIP Lender's advisors' fees plus a carve out for the advisors of the Debtor and the unsecured creditors' committee) on the terms more fully described in the DIP Term Sheet and the Proposed Order and as otherwise provided for in the Budget.

10.   The Proposed Order and DIP Term Sheet contain the following key provisions:

| Location in Document | Description of Term |
| --- | --- |
| Term Sheet pgs. 2-3; Paragraphs with corresponding labels | Interest Rate: **15%**<br>Default Interest: **17%**<br>Upfront Fee: **5% of DIP Loan Commitment**<br>MOIC: **1.25x of DIP Loan Commitment, reduced by accrued interest** |
| Term Sheet pg. 3; Maturity Date Paragraph | Maturity Date: **December 31, 2025;** ***provided that*** **the maturity date may be extended to February [28], 2026, if the Debtor and the DIP Lender elect to consummate the Credit Bid via a chapter 11 plan** |
| Term Sheet pgs. 10-12 Proposed Order pgs. 34-35 ¶16(a) | Default Provisions: **Events of Default under Term Sheet Termination Events in Proposed Order** |
| Term Sheet pg. 3, "Guarantees and Security" paragraph | Liens: **For DIP Loan, junior lien on substantially all assets (subject to carve out) and first priority lien on equity interests of the Borrower** |

| | |
|---|---|
| Term Sheet pgs. 1-2, DIP Credit Facility paragraph; Term Sheet pgs. 4-6 Conditions Precedent to Advances of DIP Loans paragraphs and Withdrawal from Escrow Account Conditions | Borrowing limits and conditions: **$13.5 Million, subject to conditions precedent, available to fund and to be used pursuant to the Budget** |
| Proposed Order pg. 21 ¶ 5(c)(ii) and (iii) | Liens granted under §364 (c) or (d): **First priority lien on unencumbered property and junior lien on encumbered property** |
| Proposed Order pg. 7-8 ¶ 4 | the providing of adequate protection or priority for a claim that arose before the case commenced—including a lien on property of the estate, or its use, or of credit obtained under §364 to make cash payments on the claim: **previously granted in Original DIP Order, reconfirmed in Proposed order** |
| Proposed Order: pgs. 8-9 ¶ F(6) pgs. 41-42 ¶ 20 pgs. 52-54 ¶ 30 | a determination of the validity, enforceability, priority, or amount of a claim that arose before the case commenced, or of any lien securing the claim: **The determination provided for in the Proposed Order mirrors the provisions already included in prior forms of orders previously entered by this Court that the Proposed Order replaces, with the same challenge period provisions** |
| Proposed Order pgs. 30-31; ¶ 12 | a waiver or modification of Code provisions or applicable rules regarding the automatic stay: **to the extent necessary to grant liens, incur loan, etc.** |
| Term Sheet pg. 8, Milestones Paragraph | a waiver or modification of an entity's right to file a plan, seek to extend the time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under §363(c), or request authorization to obtain credit under §364: **If DIP Lender's credit bid is winning bid, deadlines to file plan and obtain confirmation are set forth in Milestones** |
| Term Sheet pg. 8, Milestones Paragraph | the establishment of deadlines for filing a plan of reorganization, approving a disclosure statement, holding a hearing on confirmation, or entering a confirmation order: **As identified above, Milestone Dates, subject to extension in DIP Lender's sole discretion, but Plan and Disclosure Statement filed by December [31], 2025; confirmation January [31], 2026; effective date February [28], 2026** |
| Proposed Order pgs. 19-21 ¶5(a) ; 5(c)(ii), (iii) | a waiver or modification of applicable nonbankruptcy law regarding perfecting or enforcing a lien on property of the estate: **liens automatically perfected** |
| Proposed Order: pgs. 39-43 ¶20 (a-f) pg. 45 ¶ 23 pg. 8 ¶ 6 | a release, waiver, or limitation on a claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action: **Same challenge period as Original DIP Order; 552(b) Waiver;** |

| pg. 52 ¶ 30 | **Waiver of defenses to Prepetition Secured Obligations by Debtor; Waiver of DIP Lender and Prepetition Secured Party by Debtor** |
|---|---|
| Proposed Order pg. 54 ¶ 31 | a release, waiver, or limitation of any right under §506(c): **Payments free and clear of 506(c)** |
| Proposed Order pgs. 19-20 ¶5(b) | the granting of a lien on a claim or cause of action arising under §544, 545, 547, 548, 549, 553(b), 723(a), or 724(a): **Liens granted on avoidance action proceeds upon entry of Final Order** |

### C.     Approval of the DIP Financing is Warranted Under the Circumstances

11.     The Debtor submits that ample justification exists for the approval of the proposed DIP Loan under § 364 of the Bankruptcy Code.  The Debtor believes that its ability to enter into the DIP Loan is critical to the success of this case.  Without the DIP Loan, the Debtor may be unable to fund the expenses of this bankruptcy case, including to support its contracts with its customers.  While the Debtor has been able to marginally maintain operations postpetition on primarily cash collateral only, the management of operations has been exceedingly difficult and the Debtor fears erosion of confidence by its customers and anticipates future issues with its vendors if it is unable to obtain meaningful financing.

### D.     The Necessary Showings Under § 364

12.     Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit other than in the ordinary course of business and (c) obtaining credit with a specialized priority or with security.  If the Debtor cannot obtain post-petition credit on an unsecured basis or an administrative expense basis under § 503(b), Bankruptcy Code § 364(d) authorizes a court to allow a debtor to obtain post-petition credit secured by a priming lien if the Debtor is unable to otherwise obtain credit and there is adequate protection of the interest of the primed lender.  In this instance, the proposed loan is

on a secured basis, but junior to the existing secured loans.  Further, since DK is now also the

Debtor's prepetition lender, it has consented to the terms of the proposed loan in this instance.

### D.    The Search for the Best DIP Financing Available

13.    As identified in the declarations in support of this motion, the Debtor has engaged

an investment banker, which has been in contact with an exhaustive list of potential lenders.  While

the Debtor has executed dozens of nondisclosure agreements for potential lenders to review the

financing needs of the Debtor, the Debtor has been unable to obtain any commitment from a lender

for DIP Financing, other than from DK, on a junior secured or unsecured basis.

### E.    Application of the Business Judgment Standard

14.    The Debtor, in the exercise of its prudent business judgment and consistent with its

fiduciary duties, has concluded that the terms of the loan, as more fully described in the DIP Term

Sheet and the Proposed Order, attached hereto, are the best option to the Debtor under the

circumstances and necessary for the Debtor's preservation of value for the benefit of the estate.

The Debtor is certain that it would not be able to obtain unsecured credit allowed under § 503(b)(1)

of the Bankruptcy Code as an administrative expense, or credit secured solely by liens and security

interests junior to those of the existing loans.  Rather, the circumstances of this case require the

Debtor to obtain its financing by granting a junior lien and by taking a loan on the terms offered

by its existing lender.  Accordingly, this Court should enter the Proposed Order, authorizing the

Debtor to borrow from the DIP Lender on the terms outlined therein and in the DIP Term Sheet

attached thereto.

### F.    Need for Interim Financing Pending the Final Hearing and Shortened Notice for Final Hearing

15.    Due to the delays in this case of obtaining DIP Financing, caused by the inability

to reach agreement with Wells Fargo and the sale of prepetition debt by Wells Fargo to DK, the

Debtor has operated in this case without meaningful financing for an extensive period of time. The Debtor has been operating with limited cash on hand and the cash needs of the Debtor have continued to become more difficult to manage, especially given the expenses of the administration of the bankruptcy case. As such, waiting for approval for financing on standard notice would allow the value of the Debtor's operations to degrade for an unreasonable amount of time.

16.     The DIP Lender has agreed to fund on the basis of the DIP Term Sheet, due to the exigencies of the financial needs of the Debtor. The DIP Lender has committed to funding substantial amounts to the Debtor, as further identified in the DIP Term Sheet and the Budget attached thereto.

### G.     Notice With Respect To Interim Financing Order

17.     The Debtor believes that the terms and conditions of the DIP Loan represent the only viable option for post-petition financing, and that the DIP Loan is essential to avoid ongoing degradation of value of the Debtor and to facilitate entry of a sale procedures order, to permit the Debtor to meaningfully move forward in this case and, as such, is in the best interest of the estate and its creditors. The Debtor respectfully requests that, pending a Final Hearing on this Motion, the terms and provisions outlined in Exhibit A hereto be implemented and approved on an emergency interim basis.

18.     Accordingly, given the exigencies of the situation and the Debtor's immediate need for the financing sought herein, the notice provided herein is sufficient and appropriate under the circumstances of this case. The Debtor will provide written notice to DK (its only secured creditor), the 20 largest unsecured creditors of the Debtor, the Office of the United States Trustee, the FAA, and the counsel for the unsecured creditors' committee. Based upon the service completed previously in this case, the Debtor believes it has good email addresses for all such parties and will provide urgent service immediately after the filing of this Motion. Further, the

Debtor, through counsel, has discussed and obtained feedback on the subject matter of this Motion and the Proposed Order from DK, the unsecured creditors' committee and has supplied drafts of the attachments hereto to counsel for the U.S. Trustee's Office in advance of the filing of this Motion.

### H.      Notice And Service With Respect To Final Order

19.      The Debtor respectfully requests that the Court set a date for a Final Hearing on shortened notice to be held as soon as practicable (and to be further discussed during the emergency hearing on this motion).  The Debtor will serve a notice of such Final Hearing on this Motion, together with a copy of the Interim Order, upon all creditors and parties in interest, as soon as practicable after entry of the Interim Order, by regular U.S. mail, postage prepaid.  The Debtor asks the Court to find that such notice is sufficient and appropriate under the circumstances.  The Debtor also asks the Court to set a deadline for filing objections to entry of the Final Order.

### I.      Compliance With F.R.B.P. 4001 and L.B.R. 4001-3

20.      The summary of terms required by F.R.B.P. 4001 and L.B.R. 4001-2(a)(2) [made applicable hereto by L.B.R. 4001-3(a)] is set forth in Part II.B, *supra*. and in the Introductory Statement at the beginning of this Motion.

21.      The checklist required by L.B.R. 4001-2(a)(3) [made applicable hereto by L.B.R. 4001-3(a)] is attached hereto as Exhibit 2.

### J.      No Previous Requests

22.      No previous motion or other requests for relief sought in this Motion have been made to this or any other court.

### K.      Final Hearing

23.      If no written objections are filed by a party in interest, the Debtor requests that the

Interim Order be deemed a Final Order for all purposes.  If, however, a Final Hearing is necessary,

the Debtor requests that a Final Hearing on this Motion be scheduled at the earliest date available.

### III.      CONCLUSION

**WHEREFORE**, the Debtor requests that the Court (i) issue the Interim Order substantially

in the form annexed hereto as **Exhibit 1**; (ii) after the Final Hearing, issue the Final Order,

substantially in the form to be filed with the Court; and (iii) grant such other and further relief as

the Court deems just and proper.

Respectfully submitted,

COOLIDGE WALL CO., L.P.A.

*/s/ Patricia J. Friesinger*

_____

Patricia J. Friesinger (0072807)
33 West First Street, Suite 600
Dayton, Ohio 45402
Tel: 937/223-8177  Fax: 937/223-6705
E-Mail: friesinger@coollaw.com

*Counsel for Debtor and Debtor-In-Possession*
*CTL-Aerospace, Inc.*

**<u>Exhibit 1</u>**

**PROPOSED ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 25-12226 |
| | : | |
| CTL-AEROSPACE, INC. | : | Chapter 11 |
| | : | |
| Debtor-In-Possession. | : | Judge Beth A. Buchanan |
| | : | |

**INTERIM ORDER (A) AUTHORIZING THE DEBTOR TO
OBTAIN POSTPETITION FINANCING, (B) AUTHORIZING THE DEBTOR TO
USE CASH COLLATERAL, (C) GRANTING ADEQUATE PROTECTION TO THE
PREPETITION SECURED PARTY, (D) MODIFYING THE AUTOMATIC STAY,
(E) SCHEDULING A FINAL HEARING, AND (F) GRANTING RELATED RELIEF
[ECF NO. ●]**

Upon the emergency motion ("Motion")[1] of CTL-Aerospace, Inc., as debtor in possession

(the "Debtor"), in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to

sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(e), 503, and 507 of title 11 of the

United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6004,

and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion and the DIP Documents, as appropriate.

1

2 and 4001-3 of the Local Rules of the United States Bankruptcy Court for the Southern District

of Ohio (the "Local Rules"), seeking entry of an interim order (this "Interim Order"), among other

things:

    a.    authorizing the Debtor to obtain junior secured postpetition financing (the "DIP Facility") on terms and conditions set forth in the Junior Debtor in Possession Credit Facility Term Sheet (the "DIP Term Sheet"), attached to this Interim Order at Exhibit A, and for a subsidiary of the Debtor, CTL-Aerospace Nevada, Inc. (the "DIP Guarantor" and, together with Debtor, the "DIP Loan Parties") to unconditionally guaranty the Debtor's obligations in connection with such postpetition financing, consisting of a $13,500,000 new money delayed draw term loans (the commitments in respect thereof, the "DIP Loan Commitments" and, the term loans thereunder, the "DIP Loans"), which DIP Loan Commitments shall be available to be drawn in multiple draws and which DIP Loans shall be funded into an escrow account opened in connection with the DIP Facility on terms acceptable to the DIP Lender and the Borrower (the "Escrow Account") on the closing date of the transactions described herein (the "Closing Date"), and each advance of DIP Loans shall be withdrawn and used in each case solely as set forth in the DIP Term Sheet and consistent with the Budget (as defined herein);

    b.    authorizing the Debtor, on an interim basis, to borrow from DKOF VI Trading Subsidiary LP or one or more of its affiliates (the "DIP Lender") an amount up to DIP Loan Commitments upon the entry of this Interim Order and satisfaction of the conditions precedent to such draw under the DIP Documents (as defined herein) (and in accordance with the Budget);

    c.    authorizing the DIP Loan Parties to execute and enter into any DIP Documents, including the DIP Term Sheet among the DIP Loan Parties and the DIP Lender, and a Junior Debtor in Possession Credit Agreement, to the extent requested by the DIP Lender, among the DIP Loan Parties and the DIP Lender (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Credit Agreement" and, together with this Interim Order, the DIP Term Sheet, all notices, guarantees, security agreements, ancillary documents and agreements, the "DIP Documents") on terms and conditions consistent with the DIP Term Sheet and this Interim Order, and to perform all such other and further acts as may be required in connection with the DIP Documents;

    d.    authorizing the Debtor to incur, and the DIP Guarantor to guarantee, all liabilities, obligations and indebtedness due or payable under the applicable DIP Documents (collectively, the "DIP Obligations"), in accordance with this Interim Order and the DIP Documents;

    e.    granting to the DIP Lender automatically perfected security interests in and liens on all of the DIP Collateral (as defined below), with the priorities as set forth herein;

f.  authorizing the Debtor to grant adequate protection to the Prepetition Secured Party (as defined below) on the terms set forth in this Interim Order on account of (i) any Diminution in Value (as defined below) of Prepetition Secured Party's interests in the Prepetition Collateral, including Cash Collateral (as defined below), as a consequence of the Debtor's use, sale, or lease of the Prepetition Collateral, including any Cash Collateral, (ii) the Prepetition Secured Party's agreement to the Carve-Out, (iii) the imposition of the automatic stay, (iv) the Debtor's incurrence of debt under the DIP Documents and (v) any other basis consistent with section 361 of the Bankruptcy Code to the Prepetition Secured Party;

g.  authorizing the Debtor, subject to and pursuant to the terms and conditions of this Interim Order and the DIP Documents, to continue to use Cash Collateral and all Prepetition Collateral (as defined below);

h.  authorizing the Debtor to grant security interests, liens, and superpriority administrative expense claims as provided in this Interim Order, the DIP Term Sheet, and the DIP Documents;

i.  authorizing and directing the Debtor to pay the principal, interest, expenses, fees and other amounts payable under the DIP Documents as such become due and payable;

j.  subject to certain challenge rights of certain parties in interest (subject to the limitations specified herein), approving certain Stipulations (as defined below) by the Debtor with respect to (a) the Prepetition Loan Documents (as defined below), and (b) the claims, liens and security interests arising thereunder and therefrom;

k.  upon entry of an order approving the Motion on a final basis (the "Final Order"), waiving the Debtor's right to assert with respect to the DIP Collateral, the Prepetition Collateral, the Cash Collateral or Adequate Protection Collateral (as defined below) (i) any "equities of the case" exception pursuant to section 552(b) of the Bankruptcy Code, (ii) the Debtor's and its estate's right to surcharge pursuant to section 506(c) of the Bankruptcy Code, and (iii) the equitable doctrine of "marshaling" or any similar doctrine;

l.  vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order;

m.  waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order;

n.  scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing; and

o.  granting related relief.

3

The Court, having considered the Motion, the DIP Documents, the exhibits attached thereto, the Declaration(s) in Support of the Motion and prior Declarations relating to the Debtor's operations (collectively, the "DIP Declarations"), the evidence submitted and arguments proffered or adduced at the interim hearing held before this Court on November [12], 2025 (the "Interim Hearing"), and upon the record of the Chapter 11 Case; and due and proper notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Rules; and it appearing that no other or further notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing established just cause for the relief granted herein; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor, the Debtor's estate, its creditors, and all other parties in interest, represents a sound exercise of the Debtor's business judgment, is necessary for the continued operation of the Debtor's businesses and is necessary to preserve and maximize the value of the Debtor and its estate; and the Debtor having provided notice of the Motion as set forth in the Motion; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.

4

A.     *Disposition.*  The relief requested in the Motion is granted on an interim basis in accordance with the terms of this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Interim Order shall become effective immediately upon its entry.

B.     *Jurisdiction and Venue.*  This Court has jurisdiction over this Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This Court's consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this Chapter 11 Case and the proceeding on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     *Committee Formation.*  On September 26, 2025, the Office of the United States Trustee (the "U.S. Trustee") appointed the official statutory committee of unsecured creditors in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code [ECF No. 64, as amended by ECF No. 68] (the "Committee").

D.     *Notice.*  Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion or the entry of this Interim Order shall be required. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing.

E.     *Corporate Authority.*  Each of the DIP Loan Parties has all requisite power and authority to execute and deliver the DIP Documents to which it is a party and to perform its obligations thereunder.

5

F.    *Debtor's Stipulations.*  Without prejudice to the rights of any other parties in interest, and subject to the limitations thereon contained in paragraph 20 of this Interim Order, the Debtor, on its own behalf and on behalf of its estate, represents, admits, stipulates and agrees as follows (collectively, the admissions, stipulations, and acknowledgments and agreements set forth in this paragraph F, the "Stipulations"):

1)    Prepetition Debt.  Pursuant to (i) that certain Credit Agreement, dated as of May 4, 2023, as amended by Amendment No. 1 to Domestic Credit Agreement and Amendment No. 1 to EXIM Credit Agreement, dated April 30, 2024 (as may be further amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Domestic Credit Agreement"), among the Debtor, as borrower, the DIP Guarantor, as guarantor (together, the "Prepetition Obligors") and Wells Fargo Bank, National Association, as lender ("Wells Fargo"), and (ii) that certain EXIM Credit Agreement, dated as of May 4, 2023, as amended by Amendment No. 1 to Domestic Credit Agreement and Amendment No. 1 to EXIM Credit Agreement, dated April 30, 2024 (as may be further amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition EXIM Credit Agreement"), among the Debtor, as borrower, the DIP Guarantor, as guarantor, and Wells Fargo, as lender (the Prepetition Domestic Credit Agreement and the Prepetition EXIM Credit Agreement together, the "Prepetition Credit Agreements" and, collectively with the related prepetition security agreements, collateral agreements, pledge agreements, control agreements and guarantees, the "Prepetition Credit Documents"), Wells Fargo extended term loans in the aggregate principal amount of $14,972,356.45 to the Prepetition Obligors, comprised of (a) $6,120,265.57 on account of revolving loans under the Prepetition Domestic Credit Agreement; (b) $5,098,339.56 on account of revolving loans under the Prepetition EXIM Credit Agreement; (c) $3,333,333.32 on account of the terms loans under the

6

Prepetition Domestic Credit Agreement; and (d) $420,418.00 on account of the equipment purchase loan under the Prepetition Domestic Credit Agreement (collectively, the "Prepetition Loans").

2)    Prepetition Debt Assignment.  Pursuant to (i) that certain Assignment and Assumption, dated as of the October 20, 2025 (the "Domestic Assignment"), by and between Wells Fargo and DKOF VI Trading Subsidiary LP ("DK"), and (ii) that certain Assignment and Assumption, dated as of the October 20, 2025 (the "EXIM Assignment" and, together with the Domestic Assignment, the "Debt Assignments"), by and between Wells Fargo and DK, Wells Fargo assigned all of its rights and interests in the Prepetition Secured Obligations (as defined below) to DK (DK in its capacity as the successor to the Prepetition Secured Obligations, the "Prepetition Secured Party").  The Debt Assignments were valid and authorized pursuant to the terms of the Prepetition Credit Documents.

3)    Prepetition Secured Obligations. The Prepetition Obligors are indebted and liable, without any objection, defense, counterclaim, recoupment, challenge, or offset of any kind, to the Prepetition Secured Party pursuant to the Prepetition Credit Documents, in the principal amount of not less than $14,972,218.24 plus, in each case, all accrued or thereafter accruing and unpaid interest thereon and any additional amounts, charges, fees, premiums and expenses, charges, indemnities and other obligations incurred in connection therewith as provided in the Prepetition Credit Documents (the "Prepetition Secured Obligations" and the claims arising therefrom, the "Prepetition Secured Claims"), which Prepetition Secured Obligations are legal, valid, and binding obligations of the Prepetition Obligors and no portion of which is subject to avoidance, disallowance, reduction, recharacterization, subordination, or other challenge pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

4)      <u>Prepetition First Priority Liens</u>.      Pursuant to the Prepetition Credit Documents, each of the Prepetition Obligors granted to the Prepetition Secured Party a first priority security interest in and continuing lien on (the "<u>Prepetition Secured Liens</u>") all of the collateral identified in the Prepetition Credit Documents (including substantially all of the assets of the Prepetition Obligors), in all cases whether then owned or existing or thereafter acquired (collectively, the "<u>Prepetition Collateral</u>"), which liens are subject only to certain liens senior to the Prepetition Secured Liens by operation of law or as permitted by the Prepetition Credit Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Loans as of as of September 8, 2025 (the "<u>Petition Date</u>") or were in existence immediately prior to the Petition Date that were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) (such liens, the "<u>Permitted Prior Liens</u>").

5)      <u>No Control</u>.      By virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Secured Obligations or this Interim Order, the Prepetition Secured Party does not control the Debtor or its properties or operations, does not have authority to determine the manner in which the Debtor's operations are conducted or is not a control person or insider of the Debtor.

6)      <u>No Defenses</u>.      No offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Secured Obligations or Prepetition Secured Liens exist and no portion of the Prepetition Secured Liens or Prepetition Secured Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  No claims, objections, challenges, causes of

8

action, or choses in action, including claims and causes of action under sections 502(d), 544, 545, 547, 548, and 550 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code whether pursuant to federal law or applicable state law or applicable state law equivalents or actions for recovery or disgorgement, against the Prepetition Secured Party or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Credit Documents exist, and the Debtor waives, discharges, and releases any right to challenge any of the Prepetition Secured Obligations or any of the Prepetition Secured Liens.

7)      Cash Collateral.  Any and all of the Debtor's cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtor, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral existing as of the Petition Date or from time to time, and the proceeds of the foregoing, is the Prepetition Secured Party's cash collateral within the meaning of Bankruptcy Code section 363(a) (the "Cash Collateral").

8)      Entitlement to Adequate Protection.  The Prepetition Secured Party is entitled, pursuant to sections 361, 362(c)(2), 363(e), 364(c)(3) and 507 of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral, including Cash Collateral, to the extent of any diminution in value of their interest in the Prepetition Collateral occurring from and after the Petition Date, resulting from the sale, lease or use of the Prepetition Collateral (including Cash Collateral), the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Carve-Out, and any other reason for which adequate protection may be granted under the Bankruptcy Code (such diminution, a "Diminution in Value").

G.      *Findings Regarding DIP Facility and Use of Cash Collateral.*

9

1)    <u>Good Cause</u>.  Good and sufficient cause has been shown for the entry of this Interim Order and for the Debtor to obtain postpetition financing pursuant to the terms hereof and the DIP Documents, to use the Cash Collateral and to authorize the provision of adequate protection for the Prepetition Secured Party.

2)    <u>Need for Postpetition Financing and Use of Cash Collateral</u>.  As set forth in the DIP Declarations, the Debtor has an immediate and critical need to obtain the DIP Facility and use Cash Collateral in order to, among other things, (i) permit the orderly continuation and operation of its business, (ii) maintain business relationships with customers, vendors and suppliers, (iii) make payroll, (iv) make capital expenditures, (v) pay the expenses of the Chapter 11 Case, (vi) pay the Adequate Protection Fees and Expenses (as defined below) and (vii) for general corporate purposes, in each case, in accordance with and subject to the terms and conditions of this Interim Order and the DIP Documents, including the Budget.  The Debtor requires immediate access to sufficient working capital and liquidity through the incurrence of loans and other financial accommodations under the DIP Facility and the use of the Prepetition Secured Party's Cash Collateral in order to preserve, maintain and maximize the going concern value of the Debtor and to facilitate an orderly and successful reorganization of the Debtor. Without access to the DIP Facility and the authorized use of Cash Collateral upon the terms set forth herein, the Debtor and its estate will be immediately and irreparably harmed.

3)    <u>No Credit Available on More Favorable Terms</u>.  As set forth in the DIP Declarations, the Debtor, based on current circumstances, is unable to obtain financing or other financial accommodations on more favorable terms from sources other than the DIP Lender.  The Debtor is unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code.  The Debtor is also unable to obtain adequate secured

credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without (a) granting to the DIP Lender the rights, benefits, remedies and protections set forth herein and the DIP Documents, including the DIP Liens in all DIP Collateral and the DIP Superpriority Claims, and (b) granting to the Prepetition Secured Party the rights, benefits, remedies and protections set forth herein and in the DIP Documents, upon the terms set forth herein and therein.

4)    <u>Use of Proceeds of DIP Facility and Cash Collateral</u>.  As a condition to the DIP Lender providing the DIP Facility and the Prepetition Secured Party consenting to the use of Prepetition Collateral (including Cash Collateral), each of the DIP Lender and the Prepetition Secured Party, as applicable, require, and the Debtor has agreed, that all proceeds of the DIP Loans and all Cash Collateral shall be used and/or applied solely for the purposes expressly permitted in, and in a manner consistent with, the Budget (subject to Permitted Variances), this Interim Order and the DIP Documents.

5)    <u>Budget</u>.  The Debtor has prepared and delivered to the DIP Lender the initial itemized cash flow forecast, which has been approved by the DIP Lender (the "<u>Budget</u>"), attached as Annex A to the DIP Term Sheet (attached hereto as Exhibit A), reflecting, on a line item, cumulative and aggregate basis, a thirteen-week (13-week) detailed rolling cash projection.  The Budget is an integral part of this Interim Order, and the DIP Lender and the Prepetition Secured Party are relying, in part, upon the Debtor's agreement to comply with the Budget (subject to Permitted Variances) in determining to consent to the use of Cash Collateral, enter into the DIP Facility, and allow the Debtor's use of proceeds of the DIP Facility in accordance with the terms of this Interim Order and the DIP Documents.

6)    <u>Consent by the Prepetition Secured Party</u>.  The Prepetition Secured Party has consented to the Debtor's use of Prepetition Collateral (including Cash Collateral) and to the

11

Debtor's entry into the DIP Facility, the granting of the DIP Liens, the DIP Superpriority Claims, and the other liens and claims granted hereunder upon the terms set forth in this Interim Order and the DIP Documents. The Prepetition Secured Party shall have no liability for consenting to (or not opposing) the Debtor's entry into the DIP Facility and the use of Cash Collateral and other Prepetition Collateral pursuant to the terms of this Interim Order.

       7)    <u>Good Faith</u>. The terms of the DIP Facility and the DIP Documents, the terms of adequate protection granted to the Prepetition Secured Party hereunder, and the terms upon which the Debtor may continue to use Prepetition Collateral (including Cash Collateral) pursuant to the terms of this Interim Order and the DIP Documents, were negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Lender, the Prepetition Secured Party and their respective representatives, and all of the DIP Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Facility, the DIP Documents and this Interim Order, including, without limitation, all loans, advances, extensions of credit and other financial accommodations made to and guarantees issued by the DIP Loan Parties pursuant to the DIP Documents, shall each be deemed to have been extended by the DIP Lender and each of their respective affiliates, in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by sections 364(e) of the Bankruptcy Code, and each of the claims, liens and security interests, rights, remedies, benefits and protections granted to the DIP Lender and the Prepetition Secured Party (and their successors and assigns) pursuant to this Interim Order and the DIP Documents (including, without limitation, the DIP Liens, the DIP Superpriority Claims, the DIP Obligations, the Adequate Protection Liens, the Adequate Protection Claims and the other Adequate Protection Obligations (as defined below)) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that

this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or

otherwise. The Prepetition Secured Party has acted in good faith, and each of the claims, liens and

security interests, rights, remedies, benefits and protections granted to the Prepetition Secured

Party (and its successors and assigns) pursuant to this Interim Order and the DIP Documents

(including, without limitation, all Adequate Protection Liens, Adequate Protection Claims and

other Adequate Protection Obligations) shall be entitled to the full protection of section 363(m) of

the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated,

reversed, or modified, on appeal or otherwise.

        8)    <u>Proper Exercise of Business Judgment</u>. Based on the Motion, the DIP

Declarations, the record presented to the Court at the Interim Hearing and this Chapter 11 Case,

the terms of the DIP Facility and the DIP Documents, the terms of adequate protection granted to

the Prepetition Secured Party as set forth in this Interim Order, and the terms upon which the

Debtor may continue to use Prepetition Collateral (including Cash Collateral) pursuant to the terms

of this Interim Order and the DIP Documents (i) were negotiated in good faith and at arm's length

among the DIP Loan Parties, the DIP Lender and the Prepetition Secured Party, (ii) are fair,

reasonable, and the best available to the Debtor under the circumstances, (iii) reflect the Debtor's

exercise of prudent business judgment consistent with its fiduciary duties, and (iv) are supported

by reasonably equivalent value and fair consideration.

        9)    <u>Notice</u>. Proper, timely, sufficient and appropriate notice of the Motion and

the hearing on this Interim Order has been provided in accordance with the Bankruptcy Code, the

Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion, the hearing

for the entry of this Interim Order shall be required.

10) <u>Immediate Entry; Relief Essential</u>.  The Debtor has requested, and the Court hereby finds that sufficient cause exists for, the immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules.  Unless the relief set forth in this Interim Order is granted, the Debtor's estate will be immediately and irreparably harmed. Consummation of the DIP Facility and the use of Prepetition Collateral (including Cash Collateral) upon the terms set forth in this Interim Order and the DIP Documents are necessary to preserve and maximize the value of the Debtor, are in the best interests of the Debtor and its estate and are consistent with the Debtor's exercise of its fiduciary duties.

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the DIP Declarations, the evidence adduced at the Interim Hearing and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    *Motion Granted*.  The Motion is hereby granted on an interim basis, and the DIP Facility and the use of Cash Collateral are hereby authorized and approved, in each case, upon the terms and conditions set forth in this Interim Order and the DIP Documents.  Any objections to any of the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights or other statements inconsistent with this Interim Order, are hereby denied and overruled.  This Interim Order shall become effective and enforceable immediately upon its entry.  For the avoidance of doubt, this Interim Order shall supersede all prior financing and cash collateral orders entered in this Chapter 11 Case and such prior orders shall be of no force and effect upon the entry of this Interim Order [ECF Nos. 26, 72 and 120].

2.    *Authorization of DIP Facility and DIP Documents.*

14

(a)     <u>Authorization of DIP Documents</u>.   The DIP Loan Parties are hereby authorized to (i) (x) enter into and perform all of their obligations, (y) execute and deliver all DIP Documents, and (z) pay all fees, costs, expenses, indemnities and other amounts contemplated, under this Interim Order, the DIP Term Sheet and any applicable DIP Document (including, but not limited to, the Upfront Fee and the MOIC Amount (each as defined in the DIP Term Sheet)), and (ii) perform all acts, to make, execute, deliver, enter into and perform under any and all other agreements, instruments, certificates, and other documents (including, without limitation, the execution and/or recordation of any collateral, pledge and security documents, mortgages, deeds of trust, control agreements, financing statements or other documents), and to perform all such other and further acts, that may be necessary, required or desirable for the DIP Loan Parties to perform their obligations under the DIP Facility, the DIP Documents and this Interim Order and to implement the transactions contemplated thereunder and hereunder.

(b)     <u>Authorization to Borrow</u>.   The Debtor is hereby authorized to borrow, and the DIP Guarantor is hereby authorized to guarantee the payment in full in cash of such borrowing with respect to the principal amount of up to $10 million (plus applicable paid-in-kind interest and fees, subject to the terms and conditions (including any conditions precedent to such borrowing) set forth in this Interim Order, the DIP Term Sheet and any applicable DIP Documents.  The Debtor is hereby authorized to use the proceeds of the DIP Facility and all Cash Collateral solely in the manner and for the purposes expressly permitted in the Budget (subject to Permitted Variances), this Interim Order, the DIP Term Sheet and any applicable DIP Documents.

(c)     <u>DIP Interest and Expenses</u>.   The DIP Loan Parties are authorized and directed to pay any and all (i) interest (in kind) payable under the DIP Documents, (ii) fees, payments and prepayment premiums payable pursuant to the DIP Documents (including, but not

limited to, the Upfront Fee and the MOIC Amount), and (iii) other amounts payable in connection

with the DIP Facility, including without limitation, the payment of all reasonable and documented

out of pocket costs, expenses, professional fees, and disbursements of the DIP Lender in

connection with the DIP Facility, including the reasonable and documented fees and expenses of

(a) Akin Gump Strauss Hauer & Feld LLP, for fees and expenses incurred beginning on October

20, 2025, as counsel to the DIP Lender, (b) one local counsel to the DIP Lender, if any, (c) Riveron

Consulting, LLC, as financial advisor to the DIP Lender for fees and expenses incurred beginning

on October 20, 2025, and (d) one industry consultant to the DIP Lender, if any, (collectively, the

"DIP Professional Fees and Expenses"), subject to the procedures set forth in paragraph 10 of this

Interim Order.

(d)     _Modification of DIP Documents_.   The DIP Loan Parties are hereby

authorized to execute, deliver and perform under one or more amendments, waivers, consents, or

other modifications to and under the DIP Documents, in each case, in accordance with the

provisions of the DIP Documents governing amendments thereto, each without further application

to or order of the Court; _provided_, _however_, that any amendment that (a) shortens the maturity of

the extensions of credit thereunder, (b) increases the aggregate commitments thereunder, or

(c) increases the cash rate of interest payable with respect thereto shall require further Court

approval.

3.     _DIP Obligations._

(a)     Upon entry of this Interim Order and execution of the DIP Term Sheet, the

DIP Term Sheet and any applicable DIP Documents shall constitute valid, binding, enforceable,

and non-avoidable obligations of each of the DIP Loan Parties, and shall be fully enforceable

against each of the DIP Loan Parties, the Debtor's estate, and any successors thereto, including,

16

without limitation, any estate representative or trustee appointed in this Chapter 11 Case or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case, or in any other proceedings superseding or relating to any of the foregoing, and/or upon the dismissal of the Chapter 11 Case or any such successor case (the "Successor Case"), in each case, in accordance with the terms of the DIP Documents and this Interim Order.

(b)     Upon entry of this Interim Order and execution of the DIP Term Sheet, the DIP Term Sheet and any applicable DIP Documents, the DIP Loan Parties shall be jointly and severally liable for all DIP Obligations, including, without limitation, all loans, advances, indebtedness, obligations, extensions of credit, financial accommodations, principal, interest, payments, or similar amounts, fees, costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other amounts, whether or not such obligations arose before or after the Petition Date, whenever the same shall become due and payable, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, to the DIP Lender under the DIP Documents or this Interim Order.

(c)     All obligations incurred, payments made, and transfers or grants of liens and security interests set forth in this Interim Order, the DIP Term Sheet and the DIP Documents by the DIP Loan Parties are granted to or for the benefit of the DIP Loan Parties for fair consideration and reasonably equivalent value and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby.  No obligation, payment, transfer, or grant of liens or security interests under this Interim Order, the DIP Term Sheet or the DIP Documents to the DIP Lender shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any challenge, objection, defense or claim, including, without limitation, avoidance

(whether under Chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery or other cause of action of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise (subject, solely in the case of the DIP Professional Fees and Expenses and the Adequate Protection Fees and Expenses (as defined below), only to the procedures set forth for each in paragraph 10 of this Interim Order).

4.      *No Obligation to Extend Credit.* The DIP Lender shall have no obligation to make any loan or advance available under the DIP Documents unless all of the conditions precedent to the making of such loan or advance by the DIP Lender have been satisfied in full (or waived) in accordance with the terms of this Interim Order, the DIP Term Sheet and any applicable DIP Documents.  Notwithstanding anything contained in this Interim Order, the DIP Term Sheet or the DIP Documents to the contrary, in no event shall the aggregate principal amount of the DIP Loans advanced under the DIP Facility pursuant to the DIP Documents at any time exceed the DIP Loan Commitment.  For the avoidance of doubt, the DIP Lender may fund the full amount of the DIP Loan Commitments into the Escrow Account in reliance upon the DIP Term Sheet upon the entry of the Interim Order and, in the event the DIP Facility is not approved on the final basis, all amounts deposited into the Escrow Account shall be returned to the account of the DIP Lender specified in writing immediately on the date on which the Bankruptcy Court fails to approve the Final Order with respect to the DIP Facility.

5.      *DIP Liens and DIP Superpriority Claims.*

18

(a)    As security for the prompt and complete payment and performance of all DIP Obligations when due (whether upon stated maturity, prepayment, acceleration, declaration or otherwise), effective and perfected as of the entry of this Interim Order, and without the necessity of the execution, recordation or filing by any of the DIP Loan Parties or the DIP Lender of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, or any similar document or instrument, or the taking of any other action (including, without limitation, entering into any control agreements or taking any other action to take possession or control of any DIP Collateral), the DIP Lender, for the benefit of itself or any of its assigns, is hereby granted valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "DIP Liens") in all DIP Collateral, in each case, subject and subordinate to the Carve-Out, and subject to the relative priorities set forth herein.  Notwithstanding anything to the contrary herein, the DIP Liens and the DIP Obligations shall be junior in priority and subordinate to, (w) the Carve-Out, (x) the Prepetition Secured Liens and Prepetition Secured Obligations, (y) Permitted Prior Liens, and (z) the Adequate Protection Liens and Adequate Protection Claims.

(b)    The term "DIP Collateral" means all assets and properties of each of the DIP Loan Parties and the Debtor's estate, of any kind or nature whatsoever, wherever located, whether tangible or intangible, real, personal or mixed, whether now owned or consigned by or to, or leased from or to, or hereafter acquired by, or arising in favor of, each of the DIP Loan Parties (including under any trade names, styles or derivations thereof), whether prior to or after the Petition Date, including, without limitation, (i) all Prepetition Collateral (including Cash Collateral), (ii) all money, cash and cash equivalents, deposit accounts, securities accounts, commodities accounts or other accounts, accounts receivable, rights to payment, contracts and

19

contract rights, minerals and mineral rights, instruments, documents and chattel paper, securities (whether or not marketable), goods, furniture, machinery, plants, equipment (including documents of title), vehicles, inventory (wherever located), real property and leasehold interests, fixtures, franchise rights, patents, tradenames, trademarks, copyrights, licenses and other intellectual property, general intangibles, tax or other refunds, or insurance proceeds, other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, limited liability company interests, partnership interests, financial assets, investment property, supporting obligations, letters of credit and letter of credit rights, commercial tort claims and other claims and causes of action, books and records, and all rents, products, offspring, profits, and proceeds of each of the foregoing and all accessions to, substitutions and replacements for each of the foregoing, including any and all proceeds of any insurance (including any business interruption and property insurance), indemnity, warranty or guaranty payable to any Debtor from time to time with respect to any of the foregoing, and (iii) subject to entry of the Final Order, all proceeds of or property recovered (whether by judgment, settlement or otherwise) from all claims and causes of action arising under Chapter 5 of the Bankruptcy Code or any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law ("Avoidance Action Proceeds").

(c)    Subject to the Carve-Out (as defined below), the DIP Collateral shall be subject to the following priorities:

i.    *DIP Superpriority Claims.*  Pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Lender shall be entitled to superpriority claim status (the "DIP Superpriority Claims") with priority over all administrative expense claims and unsecured claims existing as of the Petition Date or arising thereafter under the Bankruptcy Code, but shall be junior and subordinate to and subject to prior payment in full, in cash of (x) the Carve-Out and (z) the Prepetition Secured Claims and Adequate Protection Claims of the Prepetition Secured Party.  Subject in all respects to the foregoing, the DIP

Superpriority Claims may be repaid from any cash of the Debtor and, following entry of the Final Order, Avoidance Action Proceeds;

ii. *First Priority Liens on Unencumbered Property.* Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Lender shall have valid, enforceable, non-avoidable, fully and automatically perfected first priority liens on all of the Debtor's rights in property of the Debtor's estate as of the Petition Date that, as of the Petition Date, were unencumbered (and do not become perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) (including, following entry of the Final Order, Avoidance Action Proceeds) (which liens shall be subject only to the Carve-Out and shall be junior and subordinate to the Adequate Protection Liens); and

iii. *Junior Liens on Encumbered Property.* Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Lender shall have valid, enforceable, non-avoidable, fully and automatically perfected security interests in and liens on all of the Debtor's rights in property of the Debtor's estate as of the Petition Date that, as of the Petition Date, were subject to valid, perfected and non-avoidable liens and unavoidable liens in existence immediately prior to the Petition Date, which security interests and liens shall be junior and subordinate only to (w) the Carve-Out, (x) the Permitted Prior Liens, (y) the Prepetition Secured Liens, and (z) the Adequate Protection Liens.

(d)     Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document or other agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person or entity, in order for the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any interest therein (including any fee or leasehold interest), any proceeds thereof or other DIP Collateral, shall be deemed inconsistent with the provisions of the Bankruptcy Code and shall have no force or effect with respect to the granting of the DIP Liens or Adequate Protection Liens in any such interest therein or other DIP Collateral, or in the proceeds of any assignment and/or sale thereof by the Debtor in favor of the DIP Lender and the Prepetition Secured Party, as applicable, in accordance with the DIP Documents and this Interim Order.

6.  *Use of DIP Collateral and Cash Collateral.*

(a)     The Debtor is hereby authorized to use the proceeds of the DIP Loans and all Cash Collateral solely to the extent expressly permitted under the Budget (subject to Permitted Variances) and subject to the terms and conditions set forth in this Interim Order, the DIP Term Sheet and any applicable DIP Documents.

(b)     Without the prior written consent of the DIP Lender and the Prepetition Secured Party, the DIP Loan Parties shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so), except as may be expressly permitted by this Interim Order, the DIP Term Sheet (including the Budget) and any applicable DIP Documents.  All collection and proceeds of DIP Collateral, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnation, or otherwise, will be deposited and applied as required by this Interim Order, the DIP Term Sheet and any applicable DIP Documents.  The Debtor shall not transfer any cash, assets, properties or other DIP Collateral to any DIP Loan Party or other affiliate of the Debtor that is not a Debtor in this Chapter 11 Case without the prior written consent of the DIP Lender in its sole discretion.

(c)     Except as may be provided in this Interim Order (specifically as to any remaining Carve-Out), the DIP Term Sheet or the DIP Documents, the Debtor is authorized and directed, upon the closing of a sale of any of the DIP Collateral (other than sales in the ordinary course of business), to immediately pay all proceeds of any such sale to the Prepetition Secured Party to satisfy the Prepetition Secured Obligations, Prepetition Secured Claims, Adequate Protection Obligations and Adequate Protection Claims until indefeasibly Paid in Full,[3] as

---

[3] For purposes hereof, the term "Paid in Full" or "Payment in Full" means, with respect to the DIP Obligations or the Prepetition Secured Obligations (as the case may be), the irrevocable and indefeasible payment in full in cash of all DIP Obligations or Prepetition Secured Obligations (as the case may be), other than contingent indemnification and

applicable, and then, thereafter, to the DIP Lender to satisfy the DIP Obligations in accordance with this Interim Order, the DIP Term Sheet and the DIP Documents until Paid in Full, and any order approving the sale of such DIP Collateral shall provide that the sale is conditioned upon the payment of such Prepetition Secured Obligations, Prepetition Secured Claims, Adequate Protection Claims and other Adequate Protection Obligations, as applicable (except to the extent otherwise agreed in writing by the DIP Lender and the Prepetition Secured Party).

7.     *Turnover Provision with respect to Collateral.*  With respect to any Prepetition Collateral and the proceeds thereof, until the Prepetition Secured Obligations are indefeasibly Paid in Full, or the Prepetition Secured Party has otherwise agreed in writing, the DIP Lender may not accept or receive any such Prepetition Collateral and the proceeds thereof, in satisfaction, in whole or in part, of the DIP Obligations, as the case may be, in violation of the respective lien and claim priorities set forth herein.  Any Prepetition Collateral received by the DIP Lender that is not permitted to be accepted or received pursuant to the preceding sentence shall be segregated and deemed to be held in trust for the benefit of the Prepetition Secured Party and/or holders of Permitted Prior Liens and promptly turned over to the Prepetition Secured Party and/or holders of Permitted Prior Liens, as applicable, to be applied in accordance with this Interim Order, the Prepetition Credit Documents or as otherwise required by law, in the same form as received, with any necessary endorsements.  Upon the turnover of such Prepetition Collateral as contemplated by the immediately preceding sentence, the DIP Obligations purported to be satisfied by the payment of such Prepetition Collateral or the proceeds thereof shall be immediately reinstated in full as

---

expense reimbursement obligations for which no claim or demand has been asserted, and all commitments thereunder shall have irrevocably, permanently and finally expired or shall have been terminated, cancelled and discharged.

though such payment had never occurred.  The Debtor shall not be permitted or authorized to repay or refinance the DIP Facility before the Prepetition Secured Obligations are Paid in Full.

8.      *Budget.*  The DIP Loan Parties shall update the Budget on a rolling basis as may be approved between the Debtor and the DIP Lender (each, a "<u>Proposed Budget</u>") and as identified in the DIP Term Sheet.  Upon the DIP Lender's approval of a Proposed Budget in writing as provided for in the DIP Term Sheet, such budget shall become a "<u>Budget</u>" and shall replace the then-operative Budget for all purposes.  Until the approval of a Proposed Budget, the prior approved Budget shall be the operative Budget until such time as a new Proposed Budget is approved, following which such Proposed Budget shall constitute the Budget until a subsequent Proposed Budget is approved.  The Debtor shall operate in accordance with the Budget, and all disbursements shall be consistent with the provisions of the Budget (subject to the Permitted Variance).

9.      *Adequate Protection.*

(a)      Subject only to the Carve-Out and the terms of this Interim Order, pursuant to sections 361, 362, 363(e) and 364 of the Bankruptcy Code, and in consideration of the Stipulations and consents set forth herein, as adequate protection of their interests in the Prepetition Collateral (including Cash Collateral), for any aggregate Diminution in Value resulting from the Carve-Out, the sale, lease or use of the Prepetition Collateral (including Cash Collateral), the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and any other reason for which adequate protection may be granted under the Bankruptcy Code, the Prepetition Secured Party is hereby granted the following (collectively, the "<u>Adequate Protection Obligations</u>"):

(i)      <u>Adequate Protection Liens</u>.  The Prepetition Secured Party is hereby granted, as security for and solely to the extent of any Diminution in Value, additional and replacement valid, binding, enforceable, non-avoidable, effective and automatically perfected liens on, and security interest in (the "<u>Adequate Protection Liens</u>") the Prepetition Collateral (including Cash Collateral) and the DIP Collateral (collectively, the "<u>Adequate Protection Collateral</u>"), without the necessity of the execution, recordation or other filing of any security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents.  The Adequate Protection Liens shall be subject and junior only to the Permitted Prior Liens (if any) and the Carve-Out and shall be senior in all respects to the DIP Liens.

(ii)      <u>Adequate Protection Superpriority Claims</u>.  The Prepetition Secured Party is hereby granted, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, superpriority administrative expense claims (the "<u>Adequate Protection Claims</u>") against the Debtor to the extent of any Diminution in Value, which shall be payable by the Debtor, and shall have recourse to all DIP Collateral. The Adequate Protection Claims shall be (a) subject and subordinate only to the Carve-Out, and (b) senior to any and all other administrative expense claims and all other claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever, including without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code, and any DIP Superpriority Claims.

(iii)      <u>Reasonable Fees, Costs and Expenses</u>.   As further adequate protection, the Debtor is authorized and directed to pay the reasonable and documented

25

postpetition fees and expenses of the Prepetition Secured Party incurred in connection with any and all aspects of the Chapter 11 Case, including the reasonable and documented fees and expenses of (i) Akin Gump Strauss Hauer & Feld LLP, for fees and expenses incurred beginning on October 20, 2025, as counsel to the Prepetition Secured Party, (ii) one local counsel to the Prepetition Secured Party, if any, (iii) Riveron Consulting, LLC, as financial advisor to the Prepetition Secured Party for fees and expenses incurred beginning on October 20, 2025, and (iv) one industry consultant to the Prepetition Secured Party, if any, (collectively, the "Adequate Protection Fees and Expenses"), subject to the procedures set forth in paragraph 10 of this Interim Order.

(iv)     Reporting Requirements.     As further adequate protection, the Prepetition Secured Party shall be entitled to delivery of all reports and notices deliverable to the DIP Lender pursuant to the DIP Term Sheet, the DIP Documents and this Interim Order.

(v)     Onsite Access.     As further adequate protection, the Debtor will permit the Prepetition Secured Party and its professionals and consultants reasonable onsite access to Debtor's operations and management (and in any event, such access will not be less than the onsite access that has been provided to any of Debtor's major customers during any postpetition period) and will promptly provide the Prepetition Secured Party, its professionals, and consultants with all information reasonably requested regarding Debtor's operations and financial position; *provided that* the Prepetition Secured Party's access to information with respect to the sale process shall be subject to any applicable limitations set forth in the Sale Procedures Order once entered; *provided further that*, for the avoidance of doubt, the right of the Prepetition Secured Party to seek reimbursement of any expenses relating to such onsite access from Debtor will be governed by the Prepetition Credit Documents or DIP Documents, as applicable; *provided further* that it will not be a breach of this subsection (v) for Debtor to restrict the access of the Prepetition Secured Party,

26

its professionals or consultants to the extent Debtor reasonably determines that such restriction is

necessary (i) in order to comply with applicable Federal Aviation Administration regulations or

(ii) to comply with binding agreements with any active customer of Debtor. Debtor represents and

warrants that it has disclosed all known regulations and customer-related restrictions to the

Prepetition Secured Party as of the date hereof.  For the avoidance of doubt, the Prepetition Secured

Party shall be provided only with summary details as to the sale and financing process with updates

provided within the discretion of the Debtor prior to the entry of the Sale Procedures Order and

the access or use by the Prepetition Secured Party shall be governed by its nondisclosure agreement

executed between the Prepetition Secured Party and the Debtor.

(b)      Right to Seek Additional Adequate Protection.   This Interim Order is

without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the

Prepetition Secured Party to request additional forms of adequate protection at any time or any

party in interest's right to object thereto.

(c)      Adequate Protection Reservation of Rights of Prepetition Secured Party.

Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition

Secured Party pursuant to this Interim Order shall not be deemed an admission that the interests

of such Prepetition Secured Party are indeed adequately protected, and is without prejudice to the

right of the Prepetition Secured Party to seek additional relief with respect to the use of Prepetition

Collateral (including Cash Collateral), or to seek modification of the grant of adequate protection

provided hereby so as to provide different or additional adequate protection, and without prejudice

to the right of the Debtor or any other party in interest to contest any such modification. Nothing

herein shall be deemed to waive, modify or otherwise impair the respective rights of the Prepetition

Secured Party under the Prepetition Credit Documents or under applicable law, and the Prepetition

27

Secured Party expressly reserves all of its rights and remedies whether now existing or hereafter arising under the Prepetition Credit Documents and applicable law.  Without limiting the foregoing, and subject only to the Carve-Out, nothing contained in this Interim Order shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate the Prepetition Secured Party for any Diminution in Value during the Chapter 11 Case.

10.      *Fees and Expenses; Payments.*

(a)      The payment of all Adequate Protection Fees and Expenses and any DIP Professional Fees and Expenses hereunder shall not be subject to further application to or approval of the Court or subject to the U.S. Trustee's fee guidelines; *provided*, however, that any time such professionals seek payment of fees and expenses from the Debtor, each such professional shall provide summary copies of its invoices to counsel to the Debtor and the Committee and the U.S. Trustee (collectively, the "Review Parties").  Such summary invoices shall not be required to contain time entries, may contain redactions necessary to protect, and the provisions of such information shall not constitute a waiver of, any attorney-client privilege or any benefits of the attorney work product doctrine.  Any objections raised by any Review Party with respect to such invoices must be in writing and state the grounds therefor and must be submitted to the affected professional within seven (7) calendar days after delivery of such invoices to the Review Parties (such seven (7) day calendar period, the "Review Period").  If no objection to the reasonableness of such fees and expenses is made in writing by the Review Parties within the Review Period, then without further order of or application to the Court, such fees and expenses shall be promptly paid by the Debtor.  If an objection to the reasonableness of such fees and expenses in made by any of the Review Parties within the Review Period, then the disputed portion of such fees and expenses

28

shall not be paid until the objection is resolved by the applicable parties in good faith or by order

of the Court, and the undisputed portion shall be promptly paid by the Debtor.  Any hearing to

consider such an objection to the payment of any fees, costs or expenses set forth in a professional

fee invoice hereunder shall be limited to the reasonableness of the fees, costs and expenses that

are the subject of such objection.

(b)      Unless otherwise provided in this Interim Order, following the entry of this

Interim Order, the DIP Loan Parties shall be authorized to pay in full in cash all DIP Professional

Fees and Expenses arising after the Petition Date in accordance with and subject to the procedures

set forth above in paragraph 10 of this Interim Order.

(c)      Notwithstanding anything contained in this Interim Order to the contrary,

any and all payments, fees, costs, expenses and other amounts paid at any time by any of the DIP

Loan Parties to the DIP Lender or the Prepetition Secured Party, as applicable, pursuant to the

requirements of this Interim Order or the DIP Documents, shall be non-refundable and irrevocable,

are hereby approved (and to the extent paid prior to entry of this Interim Order, ratified in full),

and shall not be subject to any challenge, objection, defense, claim or cause of action of any kind

or nature whatsoever, including, without limitation, avoidance (whether under Chapter 5 of the

Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent

Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), reduction,

setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or

otherwise), reclassification, disgorgement, disallowance, impairment, marshaling, surcharge or

recovery or any other cause of action, whether arising under the Bankruptcy Code, applicable non-

bankruptcy law or otherwise, by any person or entity.

11.     *Reservation of Rights.* Except as otherwise expressly provided herein or in the DIP

Documents, the entry of this Interim Order is without prejudice to, and does not constitute a waiver

of, expressly or implicitly: (a) the rights of the DIP Lender or the Prepetition Secured Party to seek

any other or supplemental relief in respect of the DIP Loan Parties, (b) the rights of the DIP Lender

or the Prepetition Secured Party under the DIP Documents or the Prepetition Credit Documents,

the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to

request modification of the automatic stay of section 362 of the Bankruptcy Code, or (c) any other

rights, claims, or privileges (whether legal, equitable or otherwise) of the DIP Lender or the

Prepetition Secured Party.

12.     *Modification of Automatic Stay.*   The automatic stay imposed by section 362(a) of

the Bankruptcy Code is hereby vacated and modified, without application to or further order of

this Court, to permit: (a) the DIP Loan Parties to grant the DIP Liens and the DIP Superpriority

Claims, and to perform such acts as the DIP Lender may request to assure the perfection and

priority of the DIP Liens, (b) the DIP Loan Parties to incur all liabilities and obligations to the DIP

Lender as contemplated under this Interim Order and the DIP Documents, (c) the Debtor to grant

the Adequate Protection Liens and Adequate Protection Claims and to perform such acts as the

Prepetition Secured Party may request to assure the perfection and priority of the Adequate

Protection Claims, (d) the DIP Loan Parties to incur all liabilities and obligations to the Prepetition

Secured Party, including all Adequate Protection Claims and other Adequate Protection

Obligations, as contemplated under this Interim Order and the DIP Documents, (e) the DIP Loan

Parties to pay all amounts required hereunder and under the DIP Documents, (f) the DIP Lender

and the Prepetition Secured Party  to retain and apply payments made in accordance with the terms

of this Interim Order and the DIP Documents, (g) subject in all respects to paragraph 16 of this

Interim Order, the DIP Lender and the Prepetition Secured Party to exercise, upon the occurrence of any Termination Event (as defined below), all rights and remedies provided for in this Interim Order, the DIP Documents, or applicable law, (h) the DIP Loan Parties to perform under this Interim Order and the DIP Documents, and to take any and all other actions that may be necessary, required or desirable for the performance by the DIP Loan Parties under this Interim Order and the DIP Documents and the implementation of the transactions contemplated hereunder and thereunder, and (i) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Interim Order and the DIP Documents.

13.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     This Interim Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted hereunder and under the DIP Documents, including, without limitation, the DIP Liens and the Adequate Protection Liens, without the necessity of the execution, recordation or filing of any pledge, collateral or security agreements, mortgages, deeds of trust, lockbox or control agreements, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any DIP Collateral), to attach, validate, perfect or prioritize such liens and security interests, or to entitle the DIP Lender and the Prepetition Secured Party to the priorities granted herein (other than, to the extent applicable, any such filings required under applicable non-U.S. law to attach, validate, perfect or prioritize such liens).

(b)     Without in any way limiting the automatically effective perfection of the liens and security interests granted under this Interim Order and the DIP Documents, the DIP

Lender and the Prepetition Secured Party, respectively, are hereby authorized, but not required, as they in their sole discretion may determine for any reason, to execute, file and record (and to execute in the name of the DIP Loan Parties, as their true and lawful attorneys, with full power of submission, to the maximum extent permitted under applicable law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession or control over cash or securities, or to amend or modify security documents, or to subordinate existing liens and any other similar action or action in connection therewith or take any other action in order to validate, perfect, preserve and enforce the liens and security interests granted to them hereunder or under the DIP Documents or to otherwise evidence such liens and security interests in all DIP Collateral (each, a "Perfection Action"); *provided*, *however*, that, whether or not the DIP Lender or the Prepetition Secured Party determine, in their sole discretion, to take any Perfection Action with respect to any liens or security interests granted hereunder, such liens and security interests shall nonetheless be deemed valid, perfected, allowed, enforceable, non-avoidable as of the entry of this Interim Order.  The DIP Loan Parties, without any further consent of any party, are authorized and directed to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Lender and/or the Prepetition Secured Party to further validate, perfect, preserve and enforce the DIP Liens and the Adequate Protection Claims.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(c)      A certified copy of this Interim Order may, as the DIP Lender or Prepetition Secured Party, as applicable, may determine in their discretion, be filed with or recorded in filing or recording offices in addition to or in lieu of any financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, and all filing offices are hereby

authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Lender or Prepetition Secured Party to take all actions, as applicable, referenced in this paragraph.

14.    *Maintenance of DIP Collateral.* Until such time as all DIP Obligations are Paid in Full (or as otherwise agreed in writing by the DIP Lender), the DIP Loan Parties shall continue to maintain all property, operational, and other insurance as required and as specified in the DIP Documents. Upon the entry of this Interim Order, the DIP Lender, for the benefit of itself or any of its assigns, shall automatically be deemed to be named as additional insured and lender loss payee under each insurance policy maintained by the DIP Loan Parties (including all property damage and business interruption insurance policies of the DIP Loan Parties, whether expired, currently in place, or to be put in place in the future), and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies in accordance with the terms of this Interim Order and the DIP Documents.

15.    *Reporting.* Without limiting the requirements contained herein or in the DIP Documents, the DIP Loan Parties and their representatives shall (a) provide the DIP Lender with (i) all reports, documents, and information required to be delivered under the DIP Documents (including, but not limited to, variance and budget compliance reports), pleadings or motions to be filed on behalf of the Debtor in this Chapter 11 Case at least three (3) days prior to such filing (or, if not practicable, as soon as reasonably practicable)), and (ii) reasonable access, upon reasonable notice and during regular business hours, to the DIP Loan Parties' books and records, assets and properties, for purposes of monitoring the DIP Loan Parties' businesses and operations and the value of the DIP Collateral and the Prepetition Collateral, and (b) cooperate and consult with, and

33

provide the DIP Lender (and its advisors) with onsite access on the same terms as provided to the

Prepetition Secured Party in accordance with the terms of this Interim Order and other information

reasonably requested by the DIP Lender (and its advisors) concerning the Debtor's businesses,

financial condition, properties, business operations and assets, and the Debtor hereby authorizes

its representatives to cooperate and consult with, and promptly provide to the such parties (in each

case, together with their respective advisors) such information.  All such reporting shall be in form

and with sufficient detail as is reasonably acceptable to the DIP Lender.

16.     *Termination Event; Exercise of Remedies.*

(a)     Termination Event.  The occurrence of any of the following shall constitute

a "Termination Event" under this Interim Order (each a "Termination Event"): (i) the first business

day on which this Interim Order expires by its terms or is terminated, unless the Final Order has

been entered and become effective prior thereto; (ii) the Debtor's failure to comply in any material

respect with the provisions of this Interim Order; (iii) the Debtor's failure to comply with the

Milestones set forth in the DIP Term Sheet; (iv) the conversion of the Chapter 11 Case to a case

under chapter 7 of the Bankruptcy Code; (v) the dismissal of the Chapter 11 Case; and (vi) the

occurrence of any other Event of Default (as defined in the DIP Term Sheet and the DIP

Documents) unless waived in writing by the DIP Lender.

(b)     Remedies Upon a Termination Event.  The Debtor shall immediately

provide notice to counsel to the DIP Lender and the Prepetition Secured Party of the occurrence

of a Termination Event, at which time (i) the Debtor's ability to use Cash Collateral hereunder

shall terminate (provided that during the Remedies Notice Period (as defined below) the Debtor

may use the proceeds of the DIP Facility (to the extent drawn prior to the occurrence of a

Termination Event) and Cash Collateral only to fund (x) operations in accordance with the Budget

and (y) the Carve-Out Reserves (as defined below) and (ii) the DIP Lender shall be entitled to (A) declare all DIP Obligations due and payable without presentment, demand or protest or other notice of any kind, all of which are expressly waived by the DIP Loan Parties and (B) terminate all future commitments under the DIP Facility but without affecting the DIP Liens and DIP Obligations.

(c)     Upon the occurrence and during the continuation of any Termination Event and following the giving of not less than three (3) business days' advance written notice (which may be via email) (the "Remedies Notice Period") by the Prepetition Secured Party or the DIP Lender to the Debtor and its counsel, the U.S. Trustee and counsel to the Committee (the "Remedies Enforcement Notice") the automatic stay provisions of Bankruptcy Code section 362 shall be vacated and modified to the extent necessary to permit the Prepetition Secured Party and/or the DIP Lender to exercise any rights and remedies to satisfy the Prepetition Secured Obligations, the Adequate Protection Obligations and the DIP Obligations (subject to the priorities set forth in this Interim Order).  The only permissible basis for the Debtor, the Committee or any other party in interest to contest, challenge or object to a Remedies Enforcement Notice shall be solely with respect to the validity of the Termination Event(s) giving rise to such Remedies Enforcement Notice.

17.     *Cooperation.*  The DIP Loan Parties shall cooperate with the DIP Lender and/or the Prepetition Secured Party, and the DIP Lender and the Prepetition Secured Party shall cooperate with each other, in their efforts to enforce their respective liens and security interests in the DIP Collateral or the Prepetition Collateral, as applicable, and (other than the right to contest whether a DIP Termination Event has occurred and is continuing) the DIP Loan Parties shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such

35

party from enforcing its rights or remedies in the DIP Collateral or the Prepetition Collateral, as applicable.

18.     *No Waiver by Failure to Seek Relief.*  The rights and remedies of the DIP Lender and the Prepetition Secured Party specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender or the Prepetition Secured Party may have under this Interim Order, the DIP Documents, the Prepetition Credit Documents, applicable law or otherwise.  The failure or delay on the part of any of the DIP Lender or the Prepetition Secured Party to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, the Prepetition Credit Documents or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder or otherwise.  Except as expressly set forth herein, none of the rights or remedies of the DIP Lender or the Prepetition Secured Party under this Interim Order, the DIP Documents and the Prepetition Credit Documents shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the requisite parties under the DIP Documents and the requisite parties under the Prepetition Credit Documents, as applicable.  No consents required hereunder by any of the DIP Lender or the Prepetition Secured Party shall be implied by any inaction or acquiescence by any of the DIP Lender or the Prepetition Secured Party (as applicable).

19.     *Carve-Out.*

(a)     <u>Carve-Out</u>. As used in this Interim Order, the term "<u>Carve-Out</u>" means the sum of (i) all unpaid fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate pursuant to 31 U.S.C. § 3717, (ii) all unpaid reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the

Bankruptcy Code (without regard to the Carve-Out Notice (as defined below)), (iii) to the extent allowed at any time, whether by interim order, final order, or other order, all accrued but unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code and the Committee (the "Estate Professionals") at any time on or before the date of delivery by the DIP Lender or the Prepetition Secured Party, as applicable, of a Carve-Out Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Notice up to the amounts for the Estate Professionals included in the Budget (which amounts may be held in escrow pending court approval) through the date of the Carve-Out Notice (the amounts set forth in the foregoing clauses (i), (ii) and (iii), the "Pre-Carve-Out Notice Amount"); *provided*, that the Pre-Carve-Out Notice Amount shall only include up to $25,000 for the Investigation Expenses (as defined below), and (iv) Allowed Professional Fees of the Estate Professionals incurred after the date of delivery by the DIP Lender or the Prepetition Secured Party, as applicable, of the Carve-Out Notice, to the extent allowed at any time, whether by interim order, final order, or other court order, in an aggregate amount not to exceed $150,000 (the amounts set forth in this clause (iv) being the "Post Carve-Out Notice Cap").  For purposes of this Interim Order, the "Carve-Out Notice" shall mean a written notice (which may be via electronic mail) delivered by the DIP Lender or the Prepetition Secured Party, as applicable, to the Debtor and its counsel, the U.S. Trustee, counsel to the Prepetition Secured Party (as applicable), counsel to the DIP Lender (as applicable) and counsel to the Committee stating that the Post Carve-Out Notice Cap has been invoked.  Such Carve-Out Notice may be delivered following the occurrence and during the continuation of a Termination Event.

(b)      Post-Carve-Out Notice.    On the date on which a Carve-Out Notice is delivered in accordance with this paragraph 19 of this Interim Order, (the "Carve-Out Trigger Date"), the Debtor shall utilize all cash on hand (including the proceeds of the DIP Loans) to fund a reserve in an amount equal to the Carve-Out, which shall be earmarked and held in trust to pay unpaid fees and expenses incurred by the Estate Professionals, to the extent allowed by the Court at any time, prior to any and all other claims in the Chapter 11 Case (the "Carve-Out Reserve"). All funds in the Carve-Out Reserve shall be used first to pay the obligations set forth in clauses (i)–(iv) in the above definition of "Carve-Out" until paid in full, and second, to pay the Prepetition Secured Party, and third, to pay the DIP Lender until paid in full.  Notwithstanding anything to the contrary in this Interim Order or the DIP Documents, the failure of the Carve-Out Reserve to satisfy in full the fees of the Estate Professionals shall not affect the priority of the Carve-Out.

(c)      Payment of Carve-Out on or After the Carve-Out Trigger Date.    Any payment or reimbursement made on or after the occurrence of the Carve-Out Trigger Date in respect of any Allowed Professional Fees incurred after the occurrence of the Carve-Out Trigger Date shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(d)      No Direct Obligation to Pay Allowed Professional Fees.    Neither the DIP Lender nor the Prepetition Secured Party shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with this Chapter 11 Case or any Successor Case under any chapter of the Bankruptcy Code, regardless of whether such fees or expenses have been allowed by the Court.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Secured Party, in any way, to pay compensation to, or to reimburse expenses of, any Estate Professionals or to guarantee that the

38

Debtor has sufficient funds to pay such compensation or reimbursement, except to the extent of

the DIP Lender to loan in accordance with the DIP Term Sheet or the DIP Documents.

20.    *Effect of the Debtor's Stipulations on Third Parties.*

(a)    The Stipulations, admission, agreements and releases contained in this

Interim Order shall be binding upon the Debtor, its estate, and any successor thereto in all

circumstances and for all purposes immediately upon entry of this Interim Order.

(b)    The Stipulations in this Interim Order shall also be binding upon all parties-

in-interest, including, without limitation, the Committee or any non-statutory committees

appointed or formed in this Chapter 11 Case, and any other person or entity seeking to act on

behalf of the Debtor's estate, including any chapter 7 or chapter 11 trustee or examiner appointed

or elected for the Debtor in this Chapter 11 Case or any Successor Case, and each of its successors

and assigns, in all circumstances and for all purposes, unless (i) the Committee or such other party

in interest, having obtained requisite standing, timely and properly commences and serves an

adversary proceeding or contested matter (subject to the limitations contained herein) (each, a

"Challenge Proceeding") by no later than the Challenge Deadline (as defined below), (A) objecting

to or alleging any basis to impair, restrict, deny or otherwise challenge the right of any of the

Prepetition Secured Party to credit bid, in whole or in part, the Prepetition Secured Liens or the

Prepetition Secured Obligations under section 363(k) of the Bankruptcy Code or otherwise,

(B) objecting to or challenging the amount, validity, perfection, enforceability, priority, scope or

extent of the Prepetition Secured Liens, Prepetition Secured Obligations, the Prepetition Collateral

or the Prepetition Credit Documents, or otherwise objecting to or challenging any of the

admissions, stipulations, findings or releases included in the Stipulations, including, without

limitation, asserting or prosecuting any claim or cause of action of any kind or nature whatsoever,

39

including without limitation, any claim or cause of action seeking reduction, setoff, offset, recoupment, avoidance (whether under Chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, with respect to the Prepetition Secured Obligations, the Prepetition Secured Liens, the Prepetition Collateral or the Prepetition Credit Documents, (C) asserting or prosecuting any so-called "lender liability" claims, avoidance actions or any other claim, counter claim, cause of action, objection, contest or defense, of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable law or otherwise, against the Prepetition Secured Party or its Representatives (sub-clauses (A)–(C), collectively, the "Challenges", and each, a "Challenge") and (ii) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any Challenge in such duly filed adversary proceeding.

(c)    If no such Challenge Proceeding is timely and properly filed by the Challenge Deadline, or if the Court does not rule in favor of the plaintiff in any such timely and properly filed Challenge Proceeding, then, without application to or further order of the Court, (i) each of the admissions, stipulations, findings and releases contained in the Stipulations shall be binding on all parties in interest, including, without limitation, the Committee, any statutory or non-statutory committees appointed or formed in this Chapter 11 Case, or any other party in interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for the Debtor in this Chapter 11 Case or any Successor Case), (ii) the

40

Prepetition Secured Obligations shall constitute allowed claims against the Debtor in the Chapter 11 Case and any Successor Case, and the Prepetition Secured Liens shall forever be deemed to be legal, valid, binding, continuing, perfected and enforceable, as of the Petition Date, against the Debtor in this Chapter 11 Case and any Successor Case, (iii) the Prepetition Secured Obligations and the Prepetition Secured Liens shall not be subject to any other or further contest, cause of action, attack, objection, challenge, defense, claim, counterclaim, reduction, setoff, offset, recoupment, avoidance (whether under Chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery or any other Challenge, of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, by any person or entity, and (iv) any and all claims, counter claims, cross claims, causes of action, or other Challenges, of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, against any of the Prepetition Secured Party or any of its Representatives (in their capacities as such) shall be deemed forever waived, released and barred.

(d)      If any such Challenge Proceeding is timely filed by a party with requisite standing prior to the Challenge Deadline, the Stipulations shall nonetheless remain binding and preclusive on the Committee, any non-statutory committees appointed or formed in this Chapter 11 Case, or any other party in interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for Debtor in this Chapter 11 Case or any Successor Case), except to the extent that any of the admissions, stipulations, findings or releases contained in the Stipulations were expressly challenged in such Challenge Proceeding (and solely

41

as to the plaintiff party with requisite standing that timely filed such Challenge Proceeding and not, for the avoidance of doubt, any other party-in-interest); *provided* that, if and to the extent any Challenges to a particular stipulation or admission are withdrawn, denied or overruled, such stipulation also shall be binding on the Debtor's estate and all parties in interest.

(e)     For purposes of this Interim Order, the "Challenge Deadline" means the date that is (i) in the case of the Committee or any other party in interest (other than a chapter 7 or a chapter 11 trustee appointed in this Chapter 11 Case (a "Trustee")), December 14, 2025, and (ii) in the case of a Trustee, the earlier of (a) thirty (30) days after the appointment of such Trustee, or (b) the date upon which the confirmation order is entered (the time period established by clauses (i) and (ii) of this paragraph 20(e), the "Challenge Period).

(f)     Nothing in this Interim Order vests or convers on any person or entity, including the Committee or any statutory or non-statutory committee appointed or formed in this Chapter 11 Case, or any other part in interest standing or authority to pursue any Challenge belonging to the Debtor or its estate, and all rights to object to any request for such standing are expressly reserved.

21.     *Limitations on Use of DIP Collateral, Cash Collateral, Carve-Out or Other Funds.* Notwithstanding anything contained in this Interim Order or any other order of the Court to the contrary, no DIP Collateral, Prepetition Collateral, DIP Facility Loans, Cash Collateral, proceeds of any of the foregoing, or any portion of the Carve-Out may be used (including to pay professional fees) by any of the DIP Loan Parties, the Committee or non-statutory committees appointed or formed in the Chapter 11 Case or any Successor Case, or any other party in interest (including without limitation any Trustee or examiner appointed or elected for the Debtor in the Chapter 11 Case or any Successor Case), directly or indirectly, to:

42

(a) investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare, initiate, commence, support or prosecute (or finance the preparation, initiation, commencement, support or prosecution of) any claim, counterclaim, cross-claim, cause of action, suit, arbitration, application, motion, contested matter, objection, defense, adversary proceeding, litigation or other proceeding of any kind or nature (whether for monetary, injunctive, affirmative relief or otherwise) (i) against any of the DIP Lender or the Prepetition Secured Party or its respective Representatives (each in their capacities as such), (ii) objecting to, challenging, contesting, or raising any defense to, the amount, validity, enforceability, perfection, priority, extent or scope of the claims, liens and security interests granted under this Interim Order, the DIP Documents or the Prepetition Credit Documents, (iii) asserting avoidance (whether under Chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), any so-called "lender liability" claims, or any other any claim or cause of action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharging or recovery, in each case, with respect to the DIP Liens, the DIP Obligations, the DIP Documents, the DIP Collateral, the Adequate Protection Claims, the Prepetition Secured Liens, the Prepetition Secured Obligations, the Prepetition Credit Documents or the Prepetition Collateral, (vi) any claim or cause of action of any kind or nature whatsoever, whether arising under the Bankruptcy Code or applicable non- bankruptcy law, against any of the DIP Lender or the Prepetition Secured Party or their respective Representatives;

(b) object to or seek to impair, modify or interfere with any of the rights, remedies, priorities, privileges, protections or benefits granted to the DIP Lender or the Prepetition Secured Party under this Interim Order, the DIP Documents or the Prepetition Credit Documents (other than to contest whether a DIP Termination Event has occurred); *provided* that, for the avoidance of doubt, this provision shall not apply to an objection filed in the Court to the relief sought at the Final Hearing;

(c) object to or seek to prevent, hinder, interfere with or otherwise delay any of the DIP Lender's or Prepetition Secured Party's assertion, enforcement, exercise of remedies or realization upon any DIP Collateral or Prepetition Collateral (as applicable) in accordance with this Interim Order, the DIP Documents or the Prepetition Credit Documents (as applicable) (other than to contest whether a Termination Event has occurred or to contest any Stay Relief Motion);

(d) seek or request authorization from the Court to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to sections 364(c) or (d) of the Bankruptcy Code or otherwise, unless such financing is sufficient to cause the Payment in Full of all Prepetition Secured Obligations, Adequate Protection Obligations, and DIP Obligations contemporaneously with the consummation of such financing (or as otherwise agreed in writing by the Prepetition Secured Party and the DIP Lender); or

(e) seek or request authorization from the Court to obtain superpriority claims or liens or security interests (other than liens or security interests expressly permitted under this Interim Order or the DIP Documents) in any portion of the DIP Collateral or Prepetition Collateral that are senior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims, the Prepetition Secured Liens or the Prepetition Secured Obligations unless all DIP Obligations, Adequate Protection Obligations, and Prepetition Secured Obligations have been Paid in Full (or as otherwise agreed in writing by the Prepetition Secured Party and the DIP Lender);

*provided*, *however*, that no more than an aggregate amount of $25,000 of the DIP Collateral, DIP Loans, Prepetition Collateral, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve-Out or any other funds may be used by any Committee during the Challenge Period to investigate (but not to prosecute, litigate, commence or support any Challenge, or prepare any complaint or motion in respect of any Challenge, including by way of discovery), the Stipulations (the "Investigation Expenses").

22.    *Limitation on Charging Expenses.*  Upon entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of this Chapter 11 Case or any Successor Case (or any future proceedings that may result therefrom) at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the DIP Lender or the Prepetition Secured Party upon the DIP Collateral or the Prepetition Collateral, as applicable, shall be charged against or recovered from the DIP Collateral as to DIP Lender or from the Prepetition Secured Party as to Prepetition Collateral, whether pursuant to section 506(c) of the Bankruptcy Code or other similar legal or equitable doctrine or otherwise, without the prior written consent of the DIP Lender with respect to the DIP Collateral and the Prepetition Secured Party with respect to the Prepetition Collateral, and no such consent shall be implied, directly or indirectly, from anything contained in this Interim Order (including, without limitation, consent to the Carve-Out or the approval of any budget hereunder) or from any other action, inaction, or acquiescence by any of the DIP Lender or the

Prepetition Party to any charge, lien, assessment or claim against the DIP Lender with respect to the DIP Collateral or the Prepetition Secured Party with respect to the Prepetition Collateral, whether under section 506(c) of the Bankruptcy Code or otherwise.

23.    *No Marshalling; Section 552(b) Waiver.*  Upon entry of the Final Order, the DIP Lender and/or the Prepetition Secured Party shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Adequate Protection Collateral, the Adequate Protection Obligations, the Prepetition Collateral, or the Prepetition Secured Obligations, and all proceeds of the DIP Collateral and/or Prepetition Collateral shall be received and applied in accordance with this Interim Order, the DIP Documents and the Prepetition Credit Documents, as applicable.  Subject only to and effective upon entry of the Final Order, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Party.  Furthermore, subject to entry of the Final Order, the Debtor and its estate shall be deemed to have irrevocably waived and have agreed not to assert any claim or right under sections 552 or 726 of the Bankruptcy Code to avoid the imposition of the liens of the DIP Lender and/or the Prepetition Secured Party on any property acquired by the Debtor or its estate or to seek to surcharge any costs or expenses incurred in connection with the preservation, protection or enhancement of, or realization by, the DIP Lender and/or the Prepetition Secured Party upon the DIP Collateral and/or the Prepetition Collateral.

24.    *Right to Credit Bid.*  The DIP Lender and the Prepetition Secured Party shall have the unqualified right to credit bid for all or any portion of the DIP Collateral or Prepetition Collateral, as applicable, up to the full amount of any DIP Obligations, Prepetition Secured Obligations (subject to any timely filed Challenge) and Adequate Protection Obligations, as

applicable and subject in all respects to the lien and claim priorities set forth herein, in the sale of

the Debtor's assets, whether in a sale under or pursuant to section 363 of the Bankruptcy Code, a

Chapter 11 plan subject to confirmation under section 1129(b)(2)(A) of the Bankruptcy Code, a

sale or disposition by a chapter 7 trustee for the Debtor under section 725 of the Bankruptcy Code,

or otherwise.  The DIP Lender and the Prepetition Secured Party shall have the absolute right to

assign, transfer, sell, or otherwise dispose of their respective rights to credit bid (subject to this

Interim Order) to any acquisition vehicle formed in connection with such bid or other designee.

25.      *Binding Effect; Successors and Assigns.*  Immediately upon entry of this Interim

Order, subject to paragraph 20 of this Interim Order, the DIP Documents and this Interim Order,

including all findings and conclusions of law herein, shall be binding upon all parties-in-interest

in the Chapter 11 Case and any Successor Case, including without limitation, the DIP Lender, the

Prepetition Secured Party, the Committee or any other statutory or non-statutory committee

appointed or formed in this Chapter 11 Case and any Successor Case, and their respective

successors and assigns (including any Trustee or examiner appointed or elected in the Chapter 11

Case or any Successor Case, an examiner appointed pursuant to section 1104 of the Bankruptcy

Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to

the property of the Debtor's estate), and shall inure to the benefit of each of the Debtor, the DIP

Lender, the Prepetition Secured Party and their respective successors and assigns; *provided*,

*however*, that, for the avoidance of doubt, the DIP Lender and the Prepetition Secured Party  shall

have no obligation to make any loan, permit the use of DIP Collateral or Prepetition Collateral

(including Cash Collateral) or extend any financing to any Trustee or similar responsible person

appointed for the estate of the Debtor in the Chapter 11 Case or any Successor Case.

26.   *No Modification of Interim Order.*

(a)     The DIP Loan Parties irrevocably waive the right to seek, and shall not seek or consent to, directly or indirectly: (i) without the prior written consent of the DIP Lender (unless and until the DIP Obligations have been Paid in Full), (A) any modification, stay, vacatur or amendment to this Interim Order, (B) the allowance of any claim against any Debtor in the Chapter 11 Case or any Successor Case equal or senior to the DIP Superpriority Claims (other than the Carve-Out, the Prepetition Secured Claims, and the Adequate Protection Claims), (C) the grant of any lien or security interest on any DIP Collateral with priority equal to or superior to the DIP Liens (other than the Carve-Out, the Prepetition Secured Liens and the Adequate Protection Liens), except as expressly permitted hereunder or under the DIP Documents, or (D) the entry of any order authorizing the use of DIP Collateral that is inconsistent with this Interim Order, or (ii) without the prior written consent of the Prepetition Secured Party, (A) any modification, stay, vacatur or amendment to this Interim Order, (B) the allowance of any claim against the Debtor in the Chapter 11 Case or any Successor Case equal or senior to the Prepetition Secured Claims or the Adequate Protection Claims (other than the Carve-Out), (C) the grant of any lien or security interest on any Prepetition Collateral with priority equal to or superior to the Prepetition Secured Liens or the Adequate Protection Liens or (D) the entry of any order authorizing the use of Prepetition Collateral (including Cash Collateral) that is inconsistent with this Interim Order.

(b)     If the Debtor, any Trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in this Chapter 11 Case or any Successor Case shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d) of the Bankruptcy Code in violation of the DIP Documents or this Interim Order at any time prior to the Payment in Full of (i) all DIP Obligations and the termination of the DIP Lender's obligation to extend credit under

47

the DIP Facility and (ii) all Prepetition Secured Obligations and Adequate Protection Obligations, including subsequent to the confirmation of any plan with respect to the Debtor, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition Secured Party prior to the Payment in Full of the Prepetition Secured Obligations and Adequate Protection Obligations, and thereafter to the DIP Lender, to be applied in accordance with this Interim Order and the DIP Documents.

27.      *Preservation of Rights Granted Under Interim Order.*

(a)      <u>Senior to Other Liens and Claims</u>.  Other than as set forth in this Interim Order, no claim (including any intercompany claim) or lien having a priority superior to or *pari passu* with the Prepetition Secured Liens, the Adequate Protection Liens or the DIP Liens, as applicable, shall be permitted while any of the Prepetition Secured Obligations, Adequate Protection Obligations or DIP Obligations remain outstanding, and, except as otherwise expressly provided in this Interim Order, (i) the Prepetition Secured Claims, the Adequate Protection Claims and the DIP Superpriority Claims shall not be subject or junior to any intercompany or affiliate claims of the Debtor; and (ii) the Prepetition Secured Liens, the Adequate Protection Liens and the DIP Liens shall not be: (A) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code; (B) other than as provided in this Interim Order, the DIP Term Sheet and the DIP Documents, subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (C) subordinated to or made *pari passu* with any liens arising after the Petition Date, including any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit (including any regulatory body), commission,

48

board or court for any liability of the Debtor; or (D) subject or junior to any intercompany or affiliate liens or security interests of the Debtor.

(b)      Dismissal/Conversion.  Notwithstanding any order that may be entered dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code: (A) all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the DIP Lender and the Prepetition Secured Party hereunder and under the DIP Documents (including, without limitation, the DIP Obligations and the Adequate Protection Obligations), shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until Paid in Full, pursuant to the priorities set forth in this Interim Order and the DIP Documents, and all such claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections shall, notwithstanding such dismissal or conversion, remain unaffected and shall remain binding on all parties in interest (and any such order shall, in accordance with sections 105 and 349 of the Bankruptcy Code, so provide), and (B) this Court shall retain jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing all such claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the DIP Lender and the Prepetition Secured Party hereunder and under the DIP Documents.

(c)      Reversal/Modification.  Based on the findings set forth in this Interim Order and the record presented during the Interim Hearing and this Chapter 11 Case, and in accordance with section 364(e) of the Bankruptcy Code, in the event that any or all of the provisions of this Interim Order or the DIP Documents are hereafter reversed, modified, vacated or stayed by a subsequent judgment or order of this Court or any other court, any such reversal, stay, modification or vacatur shall not affect (i) the validity or enforceability of advances previously made hereunder

49

or under the DIP Documents by the DIP Lender to the Debtor, (ii) the validity or enforceability of any obligation, indebtedness or liability incurred under this Interim Order or the DIP Documents (including, without limitation, the DIP Obligations and the Adequate Protection Claims) by the DIP Loan Parties to the DIP Lender and the Prepetition Secured Party, (iii) the validity, enforceability, or perfection of any of the claims, liens, security interests, rights, privileges or benefits granted hereunder or under the DIP Documents to the DIP Lender and the Prepetition Secured Party, or (iv) the payment of any fees, costs, expenses or other amounts to the DIP Lender and the Prepetition Secured Party under this Interim Order and the DIP Documents, in each case, prior to the actual receipt of written notice by the DIP Lender and the Prepetition Secured Party of the effective date of such reversal, stay, modification, or vacatur.   Notwithstanding any such reversal, stay, modification or vacatur, the claims, liens, security interests, rights, privileges, remedies and benefits set forth in this Interim Order shall be governed in all respects by the original provisions of this Interim Order and the DIP Documents.

(d)     Survival.  Except as expressly provided in this Interim Order, until all of the DIP Obligations and the Adequate Protection Claims have been Paid in Full in accordance with the priorities set forth herein (unless the DIP Lender has otherwise agreed in writing in respect of the DIP Obligations and/or the Prepetition Secured Party has otherwise agreed in writing in respect of the Adequate Protection Claims), all claims, liens and security interests, rights, priorities, privileges, remedies, benefits, and protections granted to the DIP Lender and the Prepetition Secured Party under this Interim Order and the DIP Documents shall survive and shall not be modified, impaired, or discharged by: (i) the entry of an order confirming any chapter 11 plan in the Chapter 11 Case (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor hereby waives any discharge as to any remaining DIP Obligations or Adequate Protection Claims),

(ii) the entry of an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or dismissing the Chapter 11 Case, or (iii) the entry of an order approving the sale or disposition of any DIP Collateral (except to the extent expressly permitted in the DIP Documents).

28.  *Master Proof of Claim.*  The DIP Lender and the Prepetition Secured Party shall not be required to file proofs of claim in the Chapter 11 Case or the Successor Case in order to assert claims for payment of the DIP Obligations, the Adequate Protection Claims or the Prepetition Secured Obligations.  The Stipulations, acknowledgments and provisions of this Interim Order, together with the evidence accompanying the Motion and presented at the Interim Hearing, are deemed sufficient and constitute timely filed proofs of claim in respect of such claims arising under the DIP Documents, the Prepetition Secured Documents and this Interim Order against the Debtor.

29.  *Limitations of Liability.*  Nothing in this Interim Order, the DIP Documents or any documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Lender or the Prepetition Secured Party of any liability for any claim arising from, in connection with or related to the prepetition or postpetition activities of the DIP Loan Parties or their respective affiliates (as defined in section 101(2) of the Bankruptcy Code) in the operation of the businesses, the restructuring efforts or the administration of the Chapter 11 Case.

30.  *Release of DIP Lender and Prepetition Secured Party.*  Subject to the rights of parties in interest set forth in paragraph 20 of this Interim Order, effective as of entry of this Interim Order, each of the DIP Loan Parties and the Debtor's estate, on their own behalf and on behalf of their predecessors, successors and assigns, hereby stipulate and agree that they absolutely, unconditionally and irrevocably release and forever discharge and acquit the DIP Lender, the

51

Prepetition Secured Party, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, predecessors and predecessors in interest, each solely in their capacities as such (in each case, in their capacities as such) (collectively, "Representatives") from any and all obligations and liabilities to the DIP Loan Parties (and their successors and assigns) and from any and all claims, counterclaims, cross-claims, demands, defenses, objections, challenges, offsets or setoff, debts, accounts, contracts, liabilities, remedies, suits, controversies, actions, causes of action, losses, damages, indemnities, reimbursement obligations, attorneys' fees, costs, expenses or judgments, of every kind or nature whatsoever, whether matured or unmatured, known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, pending or threatened, arising in law or equity, upon contract or tort, under the Bankruptcy Code, any state or federal common law, statute, rule, regulation or otherwise, including, without limitation, any claim or cause of action seeking (i) any so-called lender liability, (ii) any and all claims arising under the Bankruptcy Code, whether under Chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), or otherwise, (iii) reduction, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, in each case, that may be asserted by any of the DIP Loan Parties, the Debtor's estate, predecessors, successors and assigns, in each case, against the DIP Lender, the Prepetition Secured Party or their respective Representatives for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time prior to the date of this Interim Order, in

52

connection with, arising under or related to this Interim Order, the DIP Facility, the DIP Liens, the

DIP Obligations, the DIP Collateral, the Prepetition Collateral, the Prepetition Secured Liens, the

Prepetition Secured Obligations, Prepetition Credit Documents, the transactions contemplated

thereunder or hereunder, or the negotiation thereof or hereof, including, without limitation, any

claim or cause action with respect to the validity, enforceability, priority, scope, extent or

perfection of the DIP Liens, the DIP Obligations, the DIP Documents, the Prepetition Secured

Liens, the Prepetition Secured Obligations, or the Prepetition Credit Documents; *provided* that the

releases set forth in this section shall not release any claims against the DIP Lender, the Prepetition

Secured Party and their respective Representatives from liabilities that a court of competent

jurisdiction determines results from the bad faith, fraud, gross negligence or willful misconduct of

such releases.   In addition, notwithstanding anything to the contrary set forth herein, upon the

repayment of all DIP Obligations owed to the DIP Lender by the Debtor and termination of the

rights and obligations arising under the DIP Documents (which payment and termination shall be

on terms and conditions acceptable to the DIP Lender), the DIP Lender shall be released from any

and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or

occurring, on or prior to the date of such; *provided*, *however*, subject to the occurrence of the

Closing Date, nothing contained in the foregoing shall release the DIP Lender from its obligations

under the DIP Facility from and after the date hereof.

31.    *Payments Free and Clear.*   Aside from the Carve-Out and any potential timely

Challenge, any and all payments or proceeds required to be remitted to or on behalf of the DIP

Lender or the Prepetition Secured Party pursuant to this Interim Order, the Final Order (if and

when entered) or any subsequent order of this Court shall be irrevocable, and shall be received free

and clear of any claim, charge, assessment or other liability, including without limitation, any

claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code (whether asserted or assessed by, through or on behalf of the DIP Loan Parties), section 552(b) of the Bankruptcy Code or otherwise.

32. *Joint and Several Liability.* The DIP Loan Parties shall be jointly and severally liable for all obligations (including all DIP Obligations and all Adequate Protection Obligations) under this Interim Order and the DIP Documents.

33. *Third Party Beneficiary.* Except as expressly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor, equity holder, or any direct, indirect or incidental beneficiary.

34. *Interim Order Controls.* In the event of any conflict or inconsistency between or among the terms or provisions of this Interim Order and any of the DIP Documents, unless such term or provision in this Interim Order is phrased in terms of "defined in" or "as set forth in" the DIP Term Sheet or DIP Documents, or in the event of any conflict or inconsistency between the terms of this Interim Order and any other order of the Court, the terms and provisions of this Interim Order shall govern and control. Notwithstanding anything contained in any other order entered by this Court to the contrary, any payment made pursuant to, or authorization contained in, any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Interim Order and the DIP Documents, including, without limitation, the Budget.

35. *Effectiveness.* This Interim Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014, any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim

54

Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

36.     *Bankruptcy Rules.*   The requirements of Bankruptcy Rules 4001, 6003, and 6004, and Local Rule 4001-2, in each case to the extent applicable, are satisfied by the contents of the Motion.

37.     *Headings.*   Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.  When used in this Interim Order, the word "including" shall not imply limitation.

38.     *Necessary Action.*   The DIP Loan Parties, the DIP Lender and the Prepetition Secured Party are authorized to take any and all such actions as are necessary, required or appropriate to implement and effectuate the terms of this Interim Order, the DIP Documents and the transactions contemplated hereunder and thereunder.

39.     *Retention of Jurisdiction.*   The Court retains jurisdiction to hear, determine and enforce the terms of any and all matters arising from or related to the DIP Facility, the DIP Documents and this Interim Order, and the Court's jurisdiction shall survive confirmation and consummation of any Chapter 11 plan for the Debtor notwithstanding the terms or provisions of any such Chapter 11 plan or any order confirming any such Chapter 11 plan.

40.     *Final Hearing.*   The Final Hearing shall be held on November [●], 2025, at [●] (prevailing Eastern Time), before the Honorable Beth A. Buchanan, United States Bankruptcy Judge, at the United States Bankruptcy Court, Atrium Two, Suite 814, Courtroom 1, 221 East Fourth Street, Cincinnati, Ohio (the "Final Hearing").  As an alternative to in-person attendance, parties and their attorneys may choose to attend the Final Hearing telephonically.  However, any party/attorney choosing to attend the Final Hearing telephonically will not be permitted to present

55

exhibits or examine or cross-examine witnesses. Parties or their counsel shall contact Judge

Buchanan's Courtroom Deputy, Heather Gilliam, by telephone at (513) 684-2468 or by email at

Heather_Gilliam@ohsb.uscourts.gov at least three (3) business days prior to the Final Hearing for

call-in instructions. If witness testimony will be necessary, the public will be unable to listen

telephonically to that portion of the proceeding.

41.     *Objections*. Any objections to the final relief sought in the Motion shall be filed

with the Court no later than [●], 2025 at 4:00 p.m. (prevailing Eastern Time), provided, however,

that in the event there are no timely filed objections, or all timely filed objections are resolved

prior to the hearing, a final order may be entered without further hearing. Any party in interest

objecting to the relief sought at the Final Hearing shall file and serve written objections, which

objections shall be served upon (i) the Office of the United States Trustee for the Southern District

of Ohio; (ii) the holders of the 20 largest unsecured claims against the Debtor on a consolidated

basis; (iii) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attn:

Brad M. Kahn and Anna Kordas), counsel to the Prepetition Secured Party and DIP Lender; (iv)

Cozen O'Connor, 123 N. Wacker Dr., Suite 1800 Chicago, IL 60606 (Attn: Brian L. Shaw, Ira

Bodenstein and Christina M. Sanfelippo), counsel to the Committee; (v) the Internal Revenue

Service; (vi) the United States Attorney's Office for the Southern District of Ohio; (vii) any other

party entitled to notice pursuant to the Local Rules; and (viii) any other party that has filed a request

for notices with this Court.

42.     The Debtor shall promptly serve copies of this Interim Order (which shall constitute

adequate notice of the Final Hearing, including, without limitation, notice that the Debtor will seek

approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the

Bankruptcy Code) to the parties having been given notice of the Interim Hearing and to any party

that has filed a request for notices with this Court.

**IT IS SO ORDERED.**

**<u>Exhibit A</u>**

**DIP TERM SHEET**

**CTL-AEROSPACE, INC.**
**Junior Debtor in Possession Credit Facility Term Sheet**

This Junior Debtor in Possession Credit Facility Term Sheet (including all schedules, annexes and exhibits hereto, as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, this "**DIP Term Sheet**") describes the principal terms and conditions of the junior secured debtor in possession term loan facility (the "**DIP Facility**") to be provided by the DIP Lender (as defined below) to CTL-Aerospace, Inc., an Ohio corporation ("**CTLA**", the "**Borrower**" or the "**Debtor**"), in connection with a case under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Ohio (the "**Bankruptcy Court**"), case number 25-12226 (the "**Case**"), commenced on September 8, 2025 (the "**Petition Date**").  This DIP Term Sheet, upon the execution hereof and thereof, shall constitute legal, valid and binding obligations of each party hereto, and shall be enforceable against each party hereto and thereto in accordance with their terms, except as such enforceability may be limited by equitable principles or by bankruptcy, insolvency, reorganization, moratorium, or similar laws relating to or limiting creditors' rights generally.

This DIP Term Sheet is not an offer for the purchase, sale or subscription or invitation of any offer to buy, sell or to subscribe for any securities.

Capitalized terms used but not defined herein have the meanings assigned to them in (i) that certain Credit Agreement (the "**Prepetition Domestic Credit Agreement**"), dated as of May 4, 2024, by and among CTLA, as borrower, CTL-Aerospace Nevada, Inc., a Nevada corporation ("**CTLN**"), as guarantor, and DKOF VI Trading Subsidiary LP, as successor-in-interest to Wells Fargo Bank, National Association, as lender (in such capacity, the "**Prepetition Lender**") (as amended by Amendment No. 1 to Prepetition Domestic Credit Agreement and Amendment No. 1 to Prepetition EXIM Credit Agreement (the "**Amendment**"), dated as of April 30, 2024, by and among CTLA, CTLN and the Prepetition Lender) and (ii) that certain EXIM Guaranteed Credit Agreement (the "**Prepetition EXIM Credit Agreement**", and together with the Domestic Credit Agreement and the loans thereunder, the "**Prepetition Credit Agreements**"), dated as of May 4, 2023, by and among CTLA, as borrower, CTLN, as guarantor, and the Prepetition Lender (as amended by the Amendment and Amendment to EXIM Credit Agreement, dated as of August 26, 2024, by and among CTLA, CTLN and the Prepetition Lender).

| | |
|---|---|
| **Borrower:** | CTL-Aerospace, Inc., an Ohio corporation |
| **Guarantor:** | CTL-Aerospace Nevada, Inc., a Nevada corporation (together with the Borrower, the "**DIP Loan Parties**") |
| **DIP Lender:** | DKOF VI Trading Subsidiary LP ("**DK**") |
| **DIP Credit Facility:** | A junior secured debtor in possession term loan facility (the "**DIP Facility**") consisting of $13,500,000 new money delayed draw term loans (the commitments in respect thereof, the "**DIP Loan Commitments**" and, the term loans thereunder, the "**DIP Loans**"), which DIP Loan Commitments shall be available to be drawn in multiple draws. |
| | The DIP Loans shall be funded into an escrow account opened in connection with the DIP Facility on terms acceptable to the DIP Lender and the Borrower (the "**Escrow Account**") on the closing date of the transactions described herein (the "**Closing Date**"), and each advance of DIP Loans shall be withdrawn and used in each case (x) solely in accordance with the conditions set forth in the section entitled "Withdrawal |

from Escrow Account Conditions" below and (y) consistent with the budget as set forth in **Annex A** hereto, subject to revisions on a rolling basis as may be approved between Borrower and the DIP Lender (the "**Budget**").  For the avoidance of doubt, revisions to the budget to permit payment of Allowable 506(b) Amounts (as defined below) are hereby deemed to have been approved between Borrower and the DIP Lender.

**Documentation Principles and DIP Documents:**

"**Documentation Principles**" means that the DIP Facility will be documented in (i) this DIP Term Sheet, (ii) the Financing Order, (iii) to the extent requested by the DIP Lender, upon the execution thereof, a senior debtor-in-possession credit agreement (the "**DIP Credit Agreement**"), and (iv) such other definitive documentation as may be entered into in connection with the DIP Facility, the forms of which shall be reasonably acceptable to the DIP Lender and the Borrower (collectively with the Financing Order, this DIP Term Sheet, the DIP Credit Agreement and the related security, guarantees and ancillary documents, the "**Postpetition Documents**"); provided, that such Postpetition Documents shall be drafted substantially in the form of the Prepetition Credit Agreements, the form of which shall be reasonably acceptable to the DIP Lender, and the related collateral documents, in each case modified to reflect the express terms and conditions set forth in this DIP Term Sheet, cushions and other provisions customary for junior debtor-in-possession financings of this type which are agreed to by the parties thereto.

**Use of Proceeds:**

For working capital and other general corporate purposes and to pay bankruptcy-related fees and expenses, including professional fees, in accordance with the Budget.

**Cash Collateral:**

The DIP Lender shall consent to the use of its "cash collateral" as defined in section 363(a) of the Bankruptcy Code (the "**Cash Collateral**") on the terms and conditions set forth in this DIP Term Sheet and the order approving the DIP Facility, which shall be in the form acceptable to the Debtor and the DIP Lender (the "**Financing Order**").  For the avoidance of the doubt, the Financing Order shall supersede all other financing and cash collateral orders entered in the Case prior to the date hereof.

**Interest Rate:**

Interest will be payable on the unpaid principal amount of all outstanding DIP Loans at a rate per annum equal to 15.00%.

Interest with respect to any DIP Loan shall be payable, at the Debtor's election, in cash or in kind, with any interest paid in kind being automatically added to, and made part of, the outstanding principal amount of DIP Loans, in each case on the last Business Day of each month.  All accrued and unpaid interest shall be paid in cash on the Maturity Date (as defined below).

All interest and fees under this DIP Term Sheet shall be calculated on the basis of a 360-day year for the actual number of days elapsed.  All accrued interest which for any reason has not theretofore been paid shall be paid in full on the date on which the final principal amount of the DIP Loans is repaid unless otherwise provided in a chapter 11 plan or order of the

2

Bankruptcy Court approving the sale (or sales) of all or substantially all of the Debtor's assets, in each case, that is in form and substance reasonably acceptable to the Required DIP Lenders, in their reasonable discretion.

**Default Interest:** Automatically following the occurrence and during the continuance of an Event of Default (as defined below) (after giving effect to any applicable grace periods), all principal, interest and all other amounts in respect of the obligations outstanding under the DIP Facility (the "**DIP Obligations**") shall bear interest at a rate equal to 2.0% per annum in excess of the interest rate set forth under "Interest Rate" above and such default interest shall be payable solely in cash following written demand therefor.

**Upfront Fee:** 5.0% of the DIP Loans (taken as a percentage of the DIP Loan Commitments) shall be payable in kind and not in cash, with such upfront fee amount being automatically added to, and made part of, the outstanding principal amount of DIP Loans on the Closing Date.

**MOIC:** Prepayments or repayments of the DIP Loans shall be accompanied by an additional amount that, when coupled with all previous or concurrent principal and interest payments with respect to the DIP Loans (but excluding, for the avoidance of doubt, any upfront fees, OID, arrangement fees, and other fees paid in connection therewith, including payments relating to expenses of DIP Lender's professionals and advisors), shall result in a minimum amount necessary for the DIP Lender to receive an amount in cash equal to 1.25x of the DIP Loan Commitments (the "**MOIC Amount**").

**Maturity Date:** December 31, 2025; *provided that* the maturity date may be extended to February 28, 2026, if the Debtor and the DIP Lender elect to consummate the Credit Bid (as defined below) through a chapter 11 plan (the "**Plan**").

**Amortization:** None.

**Guarantees and Security:** (i) Superpriority administrative expense claim status, subject to the Carve-Out (as such term is hereafter defined), (ii) junior lien on all assets securing the obligations under the Prepetition Credit Agreements, (iii) junior lien on all assets encumbered by other valid, perfected and non-avoidable liens (if any), (iv) second-priority lien on all unencumbered assets of the obligors under the Prepetition Credit Agreements, and (v) a first-priority lien on equity interests of the Borrower.

**Negative Pledge:** Neither the Borrower nor the Guarantor will create, assume, or suffer to exist any lien (other than a Permitted Lien) on (i) any asset now owned or hereafter acquired by it and (ii) any direct or indirect ownership interest (including any equity interest) in the Borrower and the Guarantor.

**Mandatory Prepayments:** Same as the Prepetition Credit Agreements.

**Voluntary Prepayments:** Borrower shall be permitted, at any time and without penalty, to repay in full any or all of the DIP Loans; *provided, however,* that the DIP Loans

3

cannot be repaid if there are remaining outstanding obligations under the Prepetition Credit Agreements.  In the event that Borrower chooses to repay the DIP Loans in full in accordance with this provision, DIP Lender shall cooperate to the fullest extent possible to facilitate such repayment on an expedited basis.

**Carve-Out:**

The Financing Order shall include carve-out provisions (the "**Carve-Out**"), which shall be used to pay for the Borrower's advisors' fees and fees for advisors of the official committee of unsecured creditors (the "**UCC**") appointed in the Case, on terms that are mutually agreeable.

**Incorporation of Prepetition Credit Agreements:**

Subject to the terms of this DIP Term Sheet (including as qualified by Annex B) and the Financing Order: (a) until the execution of the DIP Credit Agreement (if any), the terms of all of the Loan Documents (as defined in the Prepetition Credit Agreements) (the "**Prepetition Documents**") related to the covenants, and obligations of the Borrower (other than Section 5.1, Section 6.6, Section 6.11, Section 7.1, Section 7.2, Section 7.3 and any covenant or obligation relating to or referencing the Borrowing Base or Borrowing Base Certificate, including any amendments thereof, of the Prepetition Credit Agreements) and (ii) remedies for the "Lender" thereunder are incorporated herein by this reference and are and shall be deemed adopted in full by the Borrower, and all such covenants, obligations, and remedies shall be considered (in addition to governing the relationship between the Borrower and DK as prepetition lender) as agreements among the Borrower and the DIP Lender and incorporated by reference mutatis mutandis (as modified as set forth herein), to govern and constitute the terms of the DIP Loans); and (b) the Borrower hereby agrees to pay all of the DIP Loans in accordance with the terms of the Prepetition Documents (subject to the explicit modifications set forth herein), the Postpetition Documents and the Financing Order. All references to "Obligations" in the Prepetition Documents shall be deemed to reference, and each such reference when incorporated herein will be deemed modified to reference, the DIP Obligations. In the event of any conflict between the provisions of this DIP Term Sheet, the Financing Order, any other order entered in the Case (specifically including, but not limited to, the cash management order entered in the Case on September 30, 2025 (Case Dkt. No. 71)), and the provisions of any of the Prepetition Documents, the provisions of the Financing Order and this DIP Term Sheet shall govern and control. For the avoidance of doubt, any expenses accrued and payable for fees of advisors pursuant to any covenants of the Prepetition Documents shall be governed by the protocols provided for as to the Allowable 506(b) Amounts (as defined below).

**Conditions Precedent to Advances of DIP Loans:**

Any advancement of DIP Loans is subject to the following conditions precedent being satisfied, as determined in the DIP Lender's reasonable determination:

(i)     Borrower has submitted to the DIP Lender, at least one (1) Business Day in advance, the written Notice of Borrowing representing, with appropriate support, that the conditions set

4

forth in this section entitled "Conditions Precedent to Advances of DIP Loans" have been satisfied.

(ii)     The conditions set forth in Section 3.2(a) of the Prepetition Domestic Credit Agreement are satisfied, other than as listed on Annex B, provided that the (i) existence of the Events of Default under the Prepetition Documents that existed as of the Petition Date, even if not listed on Annex B, will not prevent satisfaction of Section 3.2(a)(ii) and (ii) satisfaction of Section 3.2(a)(iv) will not be required.

(iii)    The Financing Order will be in full force and effect and not subject to any challenge or pending appeal.

(iv)     No Event of Default exists, and no event or condition which with notice, or passage of time, or both, would constitute an Event of Default, exists.

(v)      The Borrower has provided the DIP Lender with evidence satisfactory to the DIP Lender in its reasonable discretion that the proceeds of any DIP Loans will be used in accordance with the Budget and Budget Compliance Covenants (as defined below).

**Withdrawal from Escrow Account Conditions:**

The Borrower shall be allowed to make one or more withdrawals from the Escrow Account (each, a "**Loan Withdrawal**") after the Closing Date, subject to the satisfaction (or waiver by the DIP Lender) of each of the following conditions:

a)   The DIP Lender shall have received a loan withdrawal notice in the form to be agreed between the DIP Lender and the Borrower (the "**Loan Withdrawal Notice**") with respect to the DIP Loans by no later than 12:00 Noon (New York time) one Business Day prior for a proposed withdrawal of such Loan Withdrawal on the immediately following Business Day (such date, the "**Proposed Withdrawal Date**"), which shall include a certification that the proceeds of such Loan Withdrawal shall be used pursuant to the Budget.

b)   The representations and warranties of the DIP Loan Parties set forth in this DIP Term Sheet or the DIP Credit Agreement (if any), as applicable, shall be true and correct in all material respects on and as of the Proposed Withdrawal Date as though made on and as of such Proposed Withdrawal Date, except to the extent such representations and warranties expressly relate to an earlier date, in which case they shall be true and correct in all material respects as of such earlier date.

c)   No default or Event of Default shall have occurred and be continuing on such Proposed Withdrawal Date or after giving effect to the Loan Withdrawal requested to be made.

d)   Then applicable Budget shall be in full force and effect on and as

of the Proposed Withdrawal Date, and the withdrawal shall be in accordance with such Budget.

e) The Financing Order shall be in full force and effect and shall not have been reversed, vacated or stayed, and shall not have been amended, supplemented or otherwise modified without the prior written consent of the DIP Lender.

f) The DIP Loan Parties shall have satisfied each of the Milestones (to the extent such Milestone occurs prior to the Proposed Withdrawal Date) on or prior to the Proposed Withdrawal Date (unless waived or extended in accordance with the provisions of this DIP Term Sheet or the DIP Credit Agreement (if any), as applicable).

Upon receipt of the Loan Withdrawal Notice and satisfaction of the conditions set forth in this section "Withdrawal from Escrow Account Conditions", the DIP Lender shall promptly disburse funds by 4:00 p.m. (New York City time) on the business day immediately following such Loan Withdrawal Notice.

Any amounts withdrawn pursuant to a Loan Withdrawal that are not used pursuant to the Budget shall either be (i) netted against any subsequent Loan Withdrawal or (ii) returned to the DIP Lender to be deposited in the Escrow Account.

All amounts deposited in the Escrow Account shall be returned to the account of the DIP Lender specified in writing immediately on the date on which the Bankruptcy Court fails to approve a final order with respect to the DIP Facility.

**Cash Management Requirements:**

After the Petition Date and subject to the terms and conditions of the Financing Order, the Borrower will continue to comply with the cash management and dominion covenants of the Prepetition Credit Agreements as in effect on the Petition Date.

**Reporting Requirements:**

<u>Budget Compliance Covenants</u>.   The Borrower will not permit (i) disbursements, measured on an aggregate basis and on a line-item basis, to exceed 110% of the forecasted expenditures set forth in the Budget for any two-week period (exclusive of self-insured healthcare expenses and the Allowable 506(b) Amounts, as defined below); (ii) cash receipts (excluding proceeds of any postpetition financing), measured on an aggregate basis and line-item basis, to be less than (a) 80% of the forecasted cash receipts set forth in the Budget for any two-week period for the first four (4) weeks after the Closing Date and (b) 85% of the forecasted cash receipts set forth in the Budget for any two-week period for the remainder of the DIP Facility term through the Maturity Date; (iii) actual sales, measured on an aggregate basis and on a line-item basis, to be less than (a) 80% of the forecasted sales set forth in the Budget for any two-week period for the first four (4) weeks after the Closing Date and (b) 85% of the forecasted sales set forth in the Budget for any two-week period for the remainder of the DIP Facility term through the Maturity Date; or (iv) incurred liabilities, measured on an aggregate basis and on a

line-item basis, to exceed 110% of the budgeted liabilities set forth in the Budget for any two-week period. Notwithstanding anything to the contrary in the Budget, the Debtor shall not expend any amounts with respect to the line item "Growth Capex" without the consent of the DIP Lender.

<u>Variance Reporting Covenants</u>.  The Borrower will timely and strictly comply with the requirements of the Weekly Variance Reporting Requirements.

<u>Weekly Variance Reporting Requirements</u>.  On each Tuesday of every week, the Borrower will submit to the DIP Lender (1) an updated cash-flow forecast in form and substance acceptable to the DIP Lender, which, for the avoidance of doubt, (i) will be a 13-week cash flow forecast and (ii) will contain information regarding timing of forecasted sales and liabilities incurred, including schedule of fees by each Debtor advisor that sets forth (a) fees and expenses accrued and paid to date and forecasted for the remainder of the covered period and (b) total estimated fees for the duration of the Case (and, upon DIP Lender's approval of such forecast in writing, which may be withheld in the DIP Lender's sole and absolute discretion, such updated forecast will become the approved Budget); (2) a reconciliation of all receipts collected, liabilities incurred, disbursements made, and sales made in the immediately preceding week against the Budget (which reconciliation and demonstration of Budget Compliance Covenant variances, for the avoidance of doubt, must be against the then-approved Budget, not a proposed budget), which reconciliation will include supporting documentation for all such receipts, liabilities, disbursements, and sales and demonstration of compliance or non-compliance with the Budget Compliance Covenants; and (3) variance reports that include a narrative explaining any material variances from the then-approved Budget related to receipts collected, liabilities incurred, disbursements made, and sales made and calculations showing compliance with the permitted variances described in the Budget Compliance Covenants (the reporting described in subparts (1) through (4) above, the "**Weekly Variance Report**").  Each submission of a Weekly Variance Report will be signed by an authorized officer of the Borrower (which may be an electronic signature), and such signature will be deemed a representation and warranty by such officer and the Borrower that the Weekly Variance Report is complete, true, and accurate and that any updated cashflow forecast was prepared in good faith and contains a full and complete itemization by category of all costs, expenses, and fees of the Borrower that (i) the Borrower and such officer reasonably expect to pay or reasonably anticipate becoming obligated to pay during the applicable time period and (ii) are reasonable and necessary for the operation of the Borrower's businesses and the preservation of the Collateral through the period for which the forecast runs.

**Onsite Access:**      The Financing Order shall include a provision giving the DIP Lender reasonable onsite access to the Debtor's operations and management, during normal business hours, as reflected in paragraph 3 of the amended financing order entered in the Case on October 23, 2025, at Dkt. No. 120.

**Credit Bid:** Subject to the entry of the Financing Order, the DIP Lender shall have the unconditional right to credit bid ("**Credit Bid**") the outstanding DIP Obligations in connection with any non-ordinary course sale of the Debtor's assets pursuant to section 363 of the Bankruptcy Code (the "**363 Sale**"), any plan or otherwise. Any such Credit Bid must comply, in all respects, with applicable provisions of any bidding procedures approved by the Bankruptcy Court in connection with a 363 Sale (the "**Bidding Procedures**").

**Milestones:** The Debtor shall comply with the following milestones, each of which shall be subject to extension or waiver in the DIP Lender's sole discretion:

- The Financing Order shall be entered no later than November 12, 2025.

- The order approving the bidding procedures for the 363 Sale, which shall be in the form reasonably acceptable to the DIP Lender, shall be entered no later than November 12, 2025.

- The Debtor and the DIP Lender shall execute a purchase agreement, in all respects consistent with applicable provisions of the Bidding Procedures, pursuant to which the DIP Lender shall serve as the Stalking Horse Bidder in connection with the 363 Sale no later than November 19, 2025.

- The 363 Sale shall be consummated no later than December 31, 2025.

- If the DIP Lender's Credit Bid is selected as the winning bid and the Debtor and the DIP Lender elect to consummate the Credit Bid via a Plan:

  o the combined Plan and Disclosure Statement shall be filed no later than December 31, 2025;

  o the order confirming the Plan shall be entered no later than January 31, 2026; and

  o the effective date of the Plan shall occur no later than February 28, 2026 (subject to an automatic extension of 30 days to allow for any regulatory approval processes).

**Financial Covenants:** From the period beginning on the Petition Date and until the Maturity Date hereunder, the Borrower will not be required to comply with the financial covenants set forth in Article VII of the Prepetition Domestic Credit Agreement as incorporated hereby.

Minimum Liquidity shall not be less than $1,000,000, tested on the third Business Day of each week, as of the close of business on the last Business Day of the immediately preceding week.

8

"**Liquidity**" means, as of any date, the sum of the aggregate amount of the unrestricted (other than amounts restricted solely in favor of the Prepetition Lender under the Prepetition Credit Agreements or subject to a Permitted Lien) cash and cash equivalents of the Borrower.

**Governance Covenant:** No later than November 17, 2025 (subject to extension in the DIP Lender's sole discretion), the governance of the Debtor shall be modified as follows:

1. An independent manager acceptable to the DIP Lender and reasonably acceptable to the UCC (the "**Independent Manager**"), shall be appointed to the board of managers (or equivalent governing body) (the "**Board**") of the Debtor.

2. A special committee of the Board shall be created, comprised solely of the Independent Manager (each, a "**Special Committee**").

3. Organizational and governance documents of the Debtor shall be amended, executed, passed, approved, or otherwise implemented in a manner acceptable to the DIP Lender and reasonably acceptable to the UCC and consistent with this Agreement to effectuate the following:

   (a) Irrevocably delegate to the Special Committee the exclusive authority:

      i. to explore, pursue, negotiate, approve, and implement strategic transactions, including a sale of all or part of the Company's business, any financing, refinancing, lease, joint venture, or other transaction, or any other restructuring or reorganization (including any decisions on assumption or rejection of contracts and/or negotiation of such contracts); *provided*, *however*, that the Special Committee shall reasonably include the Debtor's management and professional advisors in any such strategic discussions; and

      ii. take any and all other actions necessary, appropriate, or advisable in connection with the foregoing, including engagement of third-party advisors or consultants or appointing a chief restructuring officer acceptable the DIP Lender in its sole discretion or similar position.

   (b) the Independent Manager and the Special Committee shall remain in place, with all delegated authority, until all obligations under the DIP Facility and the Prepetition Credit Agreements have been paid and satisfied in full in cash or as otherwise acceptable to the DIP Lender.

9

4.  The Debtor shall agree to direct its affiliate CTL-Aerospace Nevada, Inc. to follow direction from the Special Committee and not interfere with the Special Committee's actions and functions.

**Events of Default:**   Each of the following shall constitute an "**Event of Default**" (and any event, act, or condition set forth under this heading entitled "Events of Default" that with notice or lapse of time, or both, as set forth below under this heading entitled "Events of Default" would constitute an Event of Default shall constitute a "**Default**"):

(i)    the entry of an interim or final order with respect to the DIP Facility, granting approval of the DIP Term Sheet in form or substance that is not reasonably acceptable to the DIP Lender;

(ii)   except as set forth in clause (xx) below, failure by the Debtor to be in compliance in all material respects with provisions of this DIP Term Sheet (subject to applicable grace periods as set forth herein or in the Financing Order);

(iii)  any request made to the Bankruptcy Court by the Debtor (or the Debtor's failure to contest any request made by a third party) for the reversal, modification, amendment, stay, reconsideration or vacatur of the Financing Order without the DIP Lender's prior consent;

(iv)   any request made to the Bankruptcy Court by the Debtor (or the Debtor's failure to contest any request made by a third party) for entry of a final order of the Bankruptcy Court charging any of the Collateral under section 506(c) of the Bankruptcy Code against the DIP Lender;

(v)    failure of any Milestone to be satisfied by the specified deadline therefor (as then in effect after giving effect to any extensions, waivers or amendments thereto made in accordance with the requirements of this DIP Term Sheet);

(vi)   failure of any representation or warranty to be true and correct in all material respects (or, to the extent qualified by "materiality" or Material Adverse Change, in all respects) when made;

(vii)  the filing of any application by the Debtor (other than the application for financing provided by a third party which seeks authority to pay all of the DIP Obligations in full in cash upon the closing of such financing) for the approval of (or an order is entered by the Bankruptcy Court approving) any claim arising under section 507(b) of the Bankruptcy Code or any other provision of the Bankruptcy Code or any security, mortgage, collateral interest or other lien in the Case which is *pari passu* with or senior to the Liens or DIP Loans granted hereunder, excluding (a) the Carve-Out, (b) liens arising under the Financing Order, pursuant to any other financing agreement

10

made with the prior written consent of the DIP Lender and Permitted Liens, or (c) as provided in the "first day" motions;

(viii)  the Debtor commences any action against the DIP Lender or any of its agents or employees, to subordinate or avoid any Liens granted hereunder or under any Financing Order in favor of the DIP Lender;

(ix)  the entry of an order by the Bankruptcy Court in favor of the creditor's committee, any ad hoc committee or any other party in interest, (a) granting such party standing to pursue any claims against the DIP Lender, (b) sustaining an objection to claims of the DIP Lender or (c) avoiding any liens held by the DIP Lender; *provided, that* the foregoing shall not be deemed to prohibit the investigation or pursuit through litigation or otherwise by any such committee of any such claims or liens in respect of the obligations outstanding under the Prepetition Credit Agreement in accordance with the terms of the Financing Order as against the Prepetition Lender and its successors;

(x)  the Debtor commences any action against the Prepetition Lender or any of its agents or employees, to challenge, subordinate or avoid any claims or obligations arising, or liens granted, under the Prepetition Credit Agreements or under any other Loan Documents (as defined therein) or any other action against the Prepetition Lender, in its capacity as such;

(xi)  (a) the Debtor files any pleading in any court (or fails to contest any pleading filed by a third party in any court) seeking entry of an order to revoke, reverse, stay, vacate, amend, supplement or otherwise modify this DIP Term Sheet or any Financing Order, or the disallowance of any DIP Obligations (aside from objections to the reasonableness of the Allowable 506(b) Amounts), in whole or in part, unless otherwise agreed to by the DIP Lender, or (b) any material provision of this DIP Term Sheet or any Financing Order, or any other order of the Bankruptcy Court approving the Debtor's use of Cash Collateral, shall for any reason cease to be valid and binding;

(xii)  without the prior written consent of the DIP Lender, the filing with the Bankruptcy Court of a motion seeking approval of a sale of all or substantially all assets of the Debtor under section 363 of the Bankruptcy Code that does not provide for payment in full in cash to the DIP Lender of all DIP Obligations *provided, however*, that the motion previously filed for approval of bid procedures (Case Dkt. No. 90) shall not be deemed an Event of Default;

(xiii)  the appointment in the Case of a trustee, receiver, examiner or responsible officer with enlarged powers (beyond those set forth

11

in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code) relating to the operation of the business of the Debtor;

(xiv)  the granting of any motion filed by a creditor or other party in interest seeking relief from the automatic stay in the Case with respect to any portion of the Collateral with an aggregate value in excess of $150,000 other than a motion seeking relief from the automatic stay that seeks only to recover from, or enforce rights or remedies with respect to, proceeds of insurance policies, or to compel rejection and/or for turnover of leased equipment;

(xv)  termination of any Financing Order, other than as a result of the satisfaction in full of the DIP Obligations and the obligations outstanding under the Prepetition Credit Agreements;

(xvi)  without the prior written consent of the DIP Lender, the filing of a motion by the Debtor seeking conversion of the Case into a case pursuant to chapter 7 of the Bankruptcy Code;

(xvii)  the termination of the Debtor's exclusive right to propose a plan of reorganization under chapter 11 of the Bankruptcy Code;

(xviii)  without the prior written consent of the DIP Lender, the filing of a motion by the Debtor seeking a dismissal of the Case;

(xix)  without the prior written consent of the DIP Lender, a request by the Debtor to use Cash Collateral or to obtain financing under section 364 of the Bankruptcy Code (other than the DIP Facility), unless such financing would repay in full in cash all obligations under the DIP Facility in accordance with the Financing Order upon consummation thereof;

(xx)  failure to pay (A) principal in full when due, including without limitation, on the Maturity Date, or (B) interest or other DIP Obligations in full within three (3) Business Days after the same becomes due; or

(xxi)  failure to timely file a formal objection to any motion filed with the Bankruptcy Court by a third party seeking the entry of an order: (i) directing the appointment of a trustee or examiner (with expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); (ii) converting the Case to cases under chapter 7 of the Bankruptcy Code; or (iii) dismissing the Case.

**Costs and Expenses:**  In addition to, and without in any way limiting, the obligations of the Borrower set forth in the Prepetition Documents, the Borrower absolutely and unconditionally agrees to pay to the DIP Lender, on demand by the DIP Lender at any time, whether or not the Borrower requests any DIP Loans: all reasonable, documented, and out-of-pocket fees, costs and expenses incurred by the DIP Lender, and any of their respective directors,

officers, employees or agents (including, without limitation, fees, costs and expenses incurred of any counsel to the DIP Lender (regardless of whether the DIP Lender or any such other Person is a prevailing party), in connection with (a) the preparation, negotiation, execution, delivery or enforcement of this DIP Term Sheet, the Postpetition Documents, and any agreements, documents or instruments contemplated hereby and thereby, and (b) any investigation, litigation or proceeding related to this DIP Term Sheet, the Postpetition Documents or any act, omission, event or circumstance in any manner related to any of the foregoing (the "**Allowable 506(b) Amounts**"). Provided, however, that the Allowable 506(b) Amounts shall be subject to review in accordance with paragraph 10 in the Financing Order.

To induce the DIP Lender to enter into this DIP Term Sheet and consent to the Financing Order and the use of Cash Collateral, the Borrower hereby reaffirms its obligations under each Prepetition Document, including, without limitation, any grant of security interest contained therein, in each case as amended, supplemented, or modified prior to or as of the date hereof. For the avoidance of doubt, nothing herein is intended or will be deemed to have waived, modified, or otherwise altered the terms, conditions, and obligations of the parties to the Prepetition Documents.

For avoidance of doubt, Sections 10.1, 10.2, 10.3, 10.4, and 10.5 of the Prepetition Domestic Credit Agreement are hereby incorporated *mutatis mutandis* into this DIP Term Sheet, *provided, however,* that the Bankruptcy Court shall have jurisdiction over this agreement for so long as the Case is pending.

Neither this DIP Term Sheet nor any other instrument or document referred to herein or therein may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

The Borrower shall, at its expense, at any time or times duly execute and deliver, or shall cause to be duly executed and delivered, such further agreements, instruments and documents, including, without limitation, additional security agreements, collateral assignments, Uniform Commercial Code financing statements or amendments or continuations thereof, landlord's or mortgagee's waivers of liens and consents to the exercise by the DIP Lender of all the rights and remedies hereunder, under any of the Prepetition Documents, Postpetition Documents or applicable law with respect to the Collateral, and do or cause to be done such further acts as may be necessary or proper in the DIP Lender's opinion to evidence, perfect, maintain and enforce the security interests of the DIP Lender (in any capacity), and the priority thereof, in the Collateral and to otherwise effectuate the provisions or purposes of this DIP Term Sheet, any of the Prepetition Documents or Postpetition Documents. Upon the request of the DIP Lender, at any time and from time to time, the Borrower shall, at its cost and expense, do, make, execute, deliver and record, register or file, financing statements, mortgages, deeds of trust, deeds to secure debt, and other instruments, acts, pledges, assignments and transfers (or cause the same to be done) and will deliver to the DIP Lender such instruments evidencing items of Collateral as may be requested by Agent.

The headings used herein are for convenience only and do not constitute matters to be considered in interpreting this DIP Term Sheet.

To the extent of any conflict between any of the terms of the Financing Order and the terms of the Prepetition Documents, as incorporated hereby, the terms of the Financing Order shall be deemed to govern and control.

This DIP Term Sheet may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall together constitute one and the same agreement.  In making proof of this DIP Term Sheet, it shall not be necessary to produce or account for more than one counterpart thereof signed by each of the parties hereto.  Delivery of an executed counterpart of this DIP Term Sheet by facsimile or .pdf shall have the same force and effect as delivery of an original executed counterpart of this DIP Term Sheet.  Any party delivering an executed counterpart of this DIP Term Sheet by facsimile or .pdf also shall deliver an original executed counterpart of this DIP Term Sheet upon request by Agent, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this DIP Term Sheet as to such party or any other party.

This DIP Term Sheet shall become effective upon the occurrence of all of the following:  (a) the execution and delivery of this DIP Term Sheet by the Borrower and the DIP Lender and (b) the receipt by the DIP Lender of an electronically docketed Financing Order, in form and substance acceptable to the DIP Lender.

[Signature pages follow]

IN WITNESS WHEREOF, the undersigned have each executed this DIP Term Sheet on the date below his, hers, or its signature, to be effective as of the date first set forth above.

**BORROWER:**

**CTL-AEROSPACE, INC.**


By: _____
Name:
Title:  Authorized Signatory

**<u>DIP LENDER:</u>**

**DKOF VI TRADING SUBSIDIARY LP**


By: _____
Name:
Title:

## **Annex A**

See attached.

$000's

| CTL Aerospace, Inc.<br>#25-12226<br>Weekly Cash Flow Budget | Fcst<br>Week 1<br>11/7/25 | Fcst<br>Week 2<br>11/14/25 | Fcst<br>Week 3<br>11/21/25 | Fcst<br>Week 4<br>11/28/25 | Fcst<br>Week 5<br>12/5/25 | Fcst<br>Week 6<br>12/12/25 | Fcst<br>Week 7<br>12/19/25 | Fcst<br>Week 8<br>12/26/25 | Fcst<br>Week 9<br>1/2/26 | Fcst<br>Week 10<br>1/9/26 | Fcst<br>Week 11<br>1/16/26 | Fcst<br>Week 12<br>1/23/26 | Fcst<br>Week 13<br>1/30/26 | Fcst<br>13-Week<br>Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Sales** | $ 401 | $ 593 | $ 589 | $ 862 | $ 700 | $ 1,154 | $ 1,103 | $ 1,142 | $ 877 | $ 877 | $ 877 | $ 877 | $ 877 | $ 10,931 |
| **Cash Receipts** | $ 731 | $ 937 | $ 595 | $ 631 | $ 1,011 | $ 938 | $ 871 | $ 956 | $ 1,019 | $ 727 | $ 942 | $ 782 | $ 1,268 | $ 11,409 |
| **Cash Disbursements:** | | | | | | | | | | | | | | |
| Payroll & Payroll Taxes | $ 402 | $ 250 | $ 481 | $ 250 | $ 491 | $ – | $ 751 | $ – | $ 751 | $ – | $ 761 | $ – | $ 756 | $ 4,893 |
| Health Insurance Claims & Expenses | 106 | 75 | 158 | 75 | 75 | 75 | 158 | 75 | 75 | 75 | 158 | 75 | 75 | 1,255 |
| Key Employee Retention Plan | – | – | – | 100 | – | – | – | – | – | – | – | – | 200 | 300 |
| Materials | 172 | 766 | 704 | 388 | 158 | 560 | 554 | 613 | 11 | 256 | 230 | 118 | 66 | 4,596 |
| Growth CapEx | – | 352 | – | 45 | 302 | 200 | – | 240 | 302 | 196 | 151 | – | – | 1,788 |
| Maintenance CapEx | – | – | – | – | 95 | – | – | – | – | – | – | – | – | 95 |
| Tooling | – | 340 | – | – | – | – | – | – | – | – | – | – | 94 | 434 |
| Indirect Materials | 34 | 46 | 45 | 59 | 51 | 74 | 71 | 73 | 60 | 60 | 60 | 60 | 60 | 753 |
| Rent | – | 164 | – | – | – | 164 | – | – | – | 164 | – | – | – | 492 |
| Utilities | 8 | 104 | – | – | – | 128 | – | – | – | 120 | 8 | – | – | 368 |
| D&O Insurance | – | – | 200 | – | – | – | – | – | – | – | – | – | – | 200 |
| Other Disbursements [1] | 1 | 137 | 27 | 58 | 100 | 37 | 44 | 107 | 62 | 29 | 37 | 59 | 62 | 759 |
| **Operating Disbursements** | $ 723 | $ 2,234 | $ 1,615 | $ 975 | $ 1,272 | $ 1,238 | $ 1,578 | $ 1,108 | $ 1,261 | $ 900 | $ 1,405 | $ 312 | $ 1,313 | $ 15,933 |
| **Operating Cash Flow** | $ 8 | $ (1,297) | $ (1,020) | $ (344) | $ (261) | $ (300) | $ (707) | $ (152) | $ (242) | $ (173) | $ (462) | $ 470 | $ (44) | $ (4,524) |
| **Non-Operating Cash Disbursements:** | | | | | | | | | | | | | | |
| Other Fees | 5 | – | – | – | – | – | – | – | – | – | – | – | – | 5 |
| **Total Non-Operating Cash Disbursements** | $ 5 | $ – | $ – | $ – | $ – | $ – | $ – | $ – | $ – | $ – | $ – | $ – | $ – | $ 5 |
| **Ch11 Professional Fees:** | | | | | | | | | | | | | | |
| Debtor's Advisors [2] | $ – | $ 243 | $ – | $ – | $ 323 | $ – | $ – | $ – | $ 1,038 | $ – | $ – | $ – | $ 1,305 | 2,908 |
| Lender's Advisors | – | – | – | – | – | – | – | – | 620 | – | – | – | 1,705 | 2,325 |
| Independent Director | – | – | – | – | – | – | – | – | 25 | – | – | – | 75 | 100 |
| UCC Advisors | – | – | – | – | 25 | – | – | – | 25 | – | – | – | 100 | 150 |
| U.S. Trustee Fees | – | 52 | – | – | – | – | – | – | – | – | – | – | 58 | 110 |
| **Total Ch11 Professional Fees** | $ – | $ 294 | $ – | $ – | $ 348 | $ – | $ – | $ – | $ 1,708 | $ – | $ – | $ – | $ 3,243 | 5,592 |
| **Cash Flow Before DIP Activity** | $ 3 | $ (1,591) | $ (1,020) | $ (344) | $ (608) | $ (300) | $ (707) | $ (152) | $ (1,950) | $ (173) | $ (462) | $ 470 | $ (3,288) | $ (10,121) |
| **DIP Activity** | $ – | $ 1,756 | $ 1,020 | $ 344 | $ 608 | $ 300 | $ 707 | $ 152 | $ 1,950 | $ 173 | $ 462 | $ – | $ 2,817 | $ 10,289 |
| **Net Cash Flow** | $ 3 | $ 165 | $ – | $ – | $ – | $ – | $ – | $ – | $ – | $ – | $ – | $ 470 | $ (470) | $ 168 |
| **Beginning Cash Balance** | $ 832 | $ 835 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,470 | $ 832 |
| **Ending Cash Balance** | $ 835 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,470 | $ 1,000 | $ 1,000 |
| DIP Escrow Beginning Balance | | | $ 11,744 | $ 10,724 | $ 10,380 | $ 9,772 | $ 9,472 | $ 8,765 | $ 8,613 | $ 6,663 | $ 6,491 | $ 6,028 | $ 6,028 | $ – |
| DIP Escrow Funding | – | 13,500 | – | – | – | – | – | – | – | – | – | – | – | 13,500 |
| DIP Funding | | (1,756) | (1,020) | (344) | (608) | (300) | (707) | (152) | (1,950) | (173) | (462) | – | (2,817) | (10,289) |
| **DIP Escrow Ending Balance** | $ – | $ 11,744 | $ 10,724 | $ 10,380 | $ 9,772 | $ 9,472 | $ 8,765 | $ 8,613 | $ 6,663 | $ 6,491 | $ 6,028 | $ 6,028 | $ 3,211 | $ 3,211 |
| DIP Principal Beginning Balance | $ – | $ – | $ 1,756 | $ 2,776 | $ 3,120 | $ 3,728 | $ 4,028 | $ 4,735 | $ 4,887 | $ 6,837 | $ 7,009 | $ 7,472 | $ 7,472 | $ – |
| DIP Draws | | 1,756 | 1,020 | 344 | 608 | 300 | 707 | 152 | 1,950 | 173 | 462 | – | 2,817 | 10,289 |
| **DIP Principal Ending Balance** | $ – | $ 1,756 | $ 2,776 | $ 3,120 | $ 3,728 | $ 4,028 | $ 4,735 | $ 4,887 | $ 6,837 | $ 7,009 | $ 7,472 | $ 7,472 | $ 10,289 | $ 10,289 |

**Notes:**

[1]  Other disbursements includes facility services, freight, utilities motion deposit, business insurance, leases and subscriptions, hazardous waste, EHS support, and datasite expenses.

[2]  The DIP Lender reserves all rights with respect to Capstone's estimated fees, including but not limited to Capstone's entitlement to and the proposed amount of the Financing Transaction Fee

General Note:  the budget attached for filing purposes is a summary and does not include all details that will be included in the form attached to the executed term sheet – including accrued, but unpaid Ch11 Professional Fees.

## Annex B

1.  Litigation had been filed and threatened against the Borrower for claims arising from before the filing of the Case in the Bankruptcy Court, including disputed claims alleged by Dora Ball, a former employee, and any judgment that may have been rendered against the Borrower in favor of any third party would have a Material Adverse Effect on the Borrower if the Case had not been filed in the Bankruptcy Court.

2.  There have been events and circumstances since December 31, 2021, that have had a Material Adverse Effect on the Borrower.

3.  The Borrower is not Solvent.

4.  The Borrower has not timely filed its 2024 Form 1120-S for Borrower and the 2024 Form 1120-IC-DISC for CTL Aerospace Nevada, Inc. due to the Borrower's tax professionals terminating services once the Case was filed.  The Borrower is seeking replacement tax professionals to cure this deficiency.

5.  There may be an investment banking fee payable in connection with this transaction.  Further, the Borrower has hired a financial advisor and investment banker on terms outlined in orders entered in the Case and had hired a prior Chief Restructuring Officer prior to filing the Case at the request of the Prepetition Lender.

6.  The Borrower offers a 401(k) retirement plan that it maintains (but to which it does not contribute) and is self-insured for health insurance for its employees.

7.  CTL-Aerospace Nevada, Inc. is a wholly owned subsidiary of the Borrower.

8.  The director's and officer's insurance coverage lapsed due to a revocation of the renewal offering made by the Borrower's prepetition insurer.  The Borrower is working to reinstate such coverage.

## **Exhibit 2**

**CHECKLIST**

## CASH COLLATERAL / POSTPETITION FINANCING CHECKLIST

The Debtor, through a separately filed motion, agreed order or stipulation, has requested the approval of cash collateral or postpetition financing or both.  Attached to the motion as Exhibit 1 is a true and correct copy of the proposed Interim Order (the "Order") seeking approval of the agreement for use of cash collateral or postpetition financing, and the DIP Term Sheet (the "DIP Term Sheet") is attached to the Order as Exhibit A. The Order and DIP Term Sheet contain the following provisions:

| | Page No. | Line No. If applicable | Description of Provision |
|---|---|---|---|
| | | | (1) Cross-collateralization clauses (i.e., clauses that secure the repayment of prepetition debt with postpetition assets in which the secured lender would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law.) |
| | | | (2) Roll-up clauses (i.e., clauses that provide for the use of property of the estate or the proceeds of a postpetition loan to make cash payments on prepetition debt). |
| ✓ | 8–9, 41–42 52–54 | ¶ F(6) ¶ 20(d) ¶ 30 | (3) Provisions or findings of fact that release, waive, or limit any claim or other cause of action belonging to the estate or the trustee, including but not limited to (4), (5), (6), and (7) below: |
| ✓ | 43 | ¶ 20(f) | (4) the release, waiver, or limitation of claims or other causes of action against any secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the interim order and the creditors' committee, if appointed, at least sixty (60) days from the date of its appointment to investigate such matters; |
| ✓ | 52–54 | ¶ 30 | (5) the release, waiver or limitation of claims or other causes of action against any secured creditor for alleged prepetition torts or breaches of contract; |
| ✓ | 8–9 | ¶ F(6) | (6) the waiver of avoidance actions under the Code; or |
| ✓ | 39–43 | ¶ 20 | (7) any modification of the statute of limitations or other deadline to commence an action. |
| ✓ | 5–9 18–19 20–21 | ¶ F ¶ 5(a) ¶ 5(c) | (8) Provisions or findings of fact that determine the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim. |
| ✓ | 20–21 24 | ¶ 5(c) ¶ 9(a)(i) | (9) Provisions that grant a lien on property of the estate that is not otherwise subject to a lien, grant a junior lien on property of the estate that is subject to a lien, or create a lien senior or equal to any existing lien without the consent of that lienholder. |
| ✓ | 45 | ¶ 22 (subject to entry of final order) | (10) Provisions that release, waive or limit any right under § 506(c) of the Code. |

| | | | |
|---|---|---|---|
| | | | (11) A budget that does not provide for the payment of all accrued and unpaid administrative expense claims. |
| ✓ | 46 | ¶ 23 | (12) Provisions that release, waive or limit any right under §552(b) of the Code. |
| ✓ | 19–21 | ¶ 5(b) (subject to entry of final order) | (13) Provisions that grant a lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 727(a) of the Code. |
| | | | (14) Provisions that provide disparate treatment with regard to professional fee carveouts for the professionals retained by a creditors' committee from that provided for the professionals retained by the debtor. |
| ✓ | 20 | ¶ 5(c)(i) | (15) Provisions that prime administrative expenses of the kind described in § 503(b) or 507(a) of the Code. |
| | | | (16) Provisions that waive or modify any entity's authority or right to file a plan or seek an extension of time in which the debtor has the exclusive right to file a plan or otherwise operate to divest the debtor of any discretion in the administration of the estate or limit access to the court to seek any relief under other applicable provisions of law. |
| ✓ | Ex. A, 6–7 | DIP Term Sheet (Milestones) | (17) Provisions that establish deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order. |
| | | | (18) Provisions providing for the indemnification of any entity. |
| ✓ | 30–31 | ¶ 12 | (19) Provisions waiving or modifying provisions of the Code or applicable Rules relating to the automatic stay. |
| ✓ | 17–18 | ¶ 5(a) | (20) Provisions that waive or modify the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien. |
| ✓ | Ex. A, 8–11 | DIP Term Sheet (Events of Default) | (21) Provisions that waive or modify the debtor's right to move for a court order pursuant to § 363(c)(2)(B) of the Code authorizing the use of cash collateral or § 364 of the Code to obtain credit. |
| | | | (22) Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. |
| | | | (23) Findings of fact on matters extraneous to the approval process. |
| | | | (24) Provisions that bar the debtor from future bankruptcy filings. |