## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION – AT CINCINNATI

| | | |
|---|---|---|
| IN RE: | : | Case No. 25-12226 |
| CTL-Aerospace, Inc., | : | Chapter 11 |
| Debtor/Debtor-In-Possession. | : | Judge Beth A. Buchanan |

**SUPPLEMENT TO: MOTION FOR THE ENTRY OF (I) AN ORDER (A) APPROVING BIDDING AND SALE PROCEDURES WITH RESPECT TO THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) SCHEDULING AN AUCTION AND SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) APPROVING THE PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) APPROVING PROCEDURES FOR SELECTION OF ONE OR MORE STALKING HORSE BIDDER(S) AND THE PROVISION OF BID PROTECTIONS TO SUCH STALKING HORSE BIDDER(S), AND (E) GRANTING RELATED RELIEF; AND (II) AN ORDER APPROVING THE SALE OF SUCH ASSETS AND RELATED RELIEF**
**[DOC. 90]**

      **NOW COMES** CTL-Aerospace, Inc., Debtor and Debtor-In-Possession herein ("Debtor"), by and through the undersigned counsel, and hereby files a supplement to the *Motion For The Entry Of (I) An Order (A) Approving Bidding And Sale Procedures With Respect To The Sale Of Substantially All Of The Debtor's Assets, (B) Scheduling An Auction And Sale Hearing And Approving The Form And Manner Of Notice Thereof, (C) Approving The Procedures For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, (D) Approving Procedures For Selection Of One Or More Stalking Horse Bidder(S) And The Provision Of Bid Protections To Such Stalking Horse Bidder(S), And (E) Granting Related Relief; And (II) An Order Approving The Sale Of Such Assets And Related Relief* filed by the Debtor on October 9, 2025 [Doc. 90]  (the "Sale Procedures Motion") and hereby submits the attached supplement/revision to the Sale Procedures Motion, which is a comparison copy showing proposed revisions to:

1. the draft order entitled *Order Establishing Bidding Procedures Relating to the Sales of All or a Portion of the Debtor's Assets [Related to Docket No. ]* attached to the Sale Procedures Motion as Exhibit A with Annex 1 thereto;
2. the draft *Notice of Auction and Sale Hearing for Sale of the Debtor's Assets* attached to the Sale Procedures Motion as Exhibit B; and
3. the draft *Notice of (A) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (B) Cure Costs* attached to the Sale Procedures Motion as Exhibit C (collectively, the "Revised Drafts").

The Revised Drafts have been altered from the form originally filed with the Sale Procedures Motion to accommodate (1) the change of the Prepetition Lender (as defined in the Sale Procedures Motion), which was Wells Fargo Bank, National Association ("Wells Fargo") at the time of the filing of the Sale Procedures Motion, but is now DKOF VI Trading Subsidiary LP ("DK"), (2) the fact that DK is also providing significant financing to the Debtor in post-petition financing to the Debtor, which the Debtor is seeking to be approved by motion filed contemporaneously herewith,(3) the fact that DK intends to act as the Stalking Horse Purchaser (as defined in the Sale Procedures Motion) in the marketing process, and (4) the passage of time from when the Sale Procedures Motion was filed and the need to adjust some dates/deadlines to accommodate the passage of time and to attempt to resolve concerns raised by the Official Committee of Unsecured Creditors (the "Committee") as to the dates/deadlines proposed with the Sale Procedures Motion.

The Sale Procedures Motion was originally scheduled to be heard by the Court on October 16, 2025 if uncontested and on October 17, 2025, if contested.  The hearing date was continued multiple times while the Debtor attempted to resolve the concerns raised by the Committee filed on October 15, 2025 [Doc. 100] and to allow the Debtor and Wells Fargo and later DK sufficient time to negotiate various matters, including the financing the Debtor is seeking to have approved. The Debtor is also filing contemporaneously herewith an expedited hearing motion to have the Sale Procedures Motion, subject to this supplement, heard by the Court.

Respectfully submitted,

COOLIDGE WALL CO., L.P.A.

*/s/ Patricia J. Friesinger*
Patricia J. Friesinger (0072807)
Briana C. Breault (0099773)
33 West First Street, Suite 600
Dayton, Ohio 45402
Tel: 937/223-8177
Fax: 937/223-6705
E-Mail:  friesinger@coollaw.com
             breault@coollaw.com

*Counsel for Debtor and Debtor-In-Possession CTL-Aerospace, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-12226 |
| | ) | |
| CTL-AEROSPACE, INC., | ) | Chapter 11 |
| | ) | |
| | ) | Judge Beth A. Buchanan |
| Debtor. | ) | |
| | ) | |

**ORDER ESTABLISHING BIDDING PROCEDURES RELATING TO THE SALES OF
ALL OR A PORTION OF THE DEBTOR'S ASSETS [RELATED TO DOCKET NO. ]●]**

Upon consideration of the *Debtor's Motion for Entry of (I) An Order (A) Approving Bidding and Sale Procedures with Respect to the Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving the Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving Procedures for Selection of One or More Stalking Horse Bidder(s) and the Provision of Bid Protections to Such Stalking Horse Bidder(s), and (E) Granting Related Relief; and (II) An Order Approving the Sale of Such Assets and Granting Related Relief* (**the "Motion")**[1] seeking, pursuant to sections 105, 363, 365, and 503(b) of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules, and Local Rule 6004-1, an order:

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Motion.

27632813 v3

(a) approving proposed bidding and sale procedures attached as **Annex 1** to this Order (the "**Bidding Procedures**") and related dates and deadlines in connection with the sale or sales (collectively, the "**Sale Transaction**") of substantially all of the Debtor's assets (individually an "**Asset**" and**,** collectively**,** the "**Assets**"); (b) approving the date, and form and manner, of notice of an auction of the Assets (the **"Auction"**) and related Sale Hearing, including the form and manner of notices attached to the Motion as **Exhibit B** (the "**Auction and Hearing Notice**"); (c) establishing procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the **"Executory Contracts"**) in connection with the Sale Transaction, including notice of proposed cure amounts (the **"Assignment Procedures"**), and approving the form and manner of notice of the proposed assumed and assigned Executory Contracts (collectively, the "**Assigned Contracts**") in the form attached to the Motion as **Exhibit C** (the "**Assumption/Assignment Notice**"); (d) approving the procedures governing the Debtor's selection of one or more stalking horse bidders (each, a "**Stalking Horse Bidder**"), if any, and the provision allowing for payment of break-up fees and/or expense reimbursements (the "**Bid Protections**") to such Stalking Horse Bidder(s), if necessary; (e) approving the Debtor's notice to announce the Successful Bidder (as defined below), in the form and manner attached to the Motion as **Exhibit E** (the "**Successful Bid Notice**"); and (f) granting certain related relief as described in the Motion; and the Bankruptcy Court having considered statements of counsel, and the evidence presented at the hearing on the Motion; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      This Court has jurisdiction over this matter and over the property of the Debtor and its bankruptcy estate pursuant to 28 U.S.C. §§ 157 and 1334 and may enter a final order on the Motion consistent with Article III of the United States Constitution.  This matter is a core

27632813 v3

proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this district is proper under 28 U.S.C. §

§ 1408 and 1409.

B.      The Debtor has demonstrated a compelling and sound business justification for the

Court to enter this Order and thereby (i) approve of the Bidding Procedures, including the

procedures for selecting ~~one or more~~the Stalking Horse Bidder~~(s)~~ and granting Bid Protections (if

any); (ii) set the dates of the Bid Deadline, Auction (if needed), and Sale Hearing; (iii) establish

notice procedures and approve the forms of notice; and (iv) approve the procedures related to

assumption and assignment of the Assigned Contracts.  Such compelling and sound business

justification, which was set forth in the Motion and on the record at the Bidding Procedures

hearing, among other things, forms the basis for the findings of fact and conclusions of law set

forth herein.

C.      The Bidding Procedures and the Assignment Procedures are fair, reasonable and

appropriate under the circumstances. The Bidding Procedures are reasonably designed to

maximize the recovery on and value to be achieved and realized for the Assets.  As such, the

Bidding Procedures are supported by, and constitute a proper exercise of, the Debtor's business

judgment.

D.      Consistent with Local Rule 6004-1(b)(1), the proposed notice of the Auction, the

Sale Hearing, the Bidding Procedures (including the procedures for selecting ~~one or more~~the

Stalking Horse Bidder~~(s)~~ and granting Bid Protections (if any)), and the proposed treatment of the

Assigned Contracts, as set forth in the Motion and this Order, are appropriate and sufficient and

are reasonably calculated to provide all interested parties with timely and proper notice thereof

and no other or further notice shall be required in connection with these matters or the proposed

Sale Transaction.

27632813 v3

E.      Good and sufficient notice of the relief sought in the Motion and granted herein has been given under the circumstances, and no further notice of such matters is required.  A reasonable opportunity to object, or to be heard, regarding the relief requested in the Motion and granted herein was afforded to all interested persons and entities.

F.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Bidding Procedures hearing or by stipulation filed with the Court are overruled except as otherwise set forth herein.

G.      The Bidding Procedures are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Debtor's estate.

H.      The Auction and Hearing Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of Assets, including the sale of the Assets free and clear of all liens, claims, and encumbrances, the Sale Transaction(s), the Bidding Procedures, the Auction, and the Sale Hearing, and no other or further notice is required.

I.      The Assumption/Assignment Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the Assigned Contracts in connection with the sale of the Assets and the related Cure Costs, and no other or further notice is required.

J.      The relief requested in the Motion and entry of this Order is in the best interests of the Debtor and its estate, creditors, and interest holders and all other parties in interest.

K.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the preceding findings of fact

27632813 v3

constitute conclusions of law, they are adopted as such.  To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED.

2.      The Debtor is authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

| **EVENT** | **DATE** |
|---|---|
| Cure Schedule Filing Deadline | ~~October 24~~November 15, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Cure Schedule Objection Deadline | ~~November 13~~December 6, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Stalking Horse Bidder~~(s)~~ Identification Deadline | November 19, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Last possible deadline to object to Debtor's designation of the Stalking Horse Bidder~~(s)~~ and the Bid Protections set forth in the Stalking Horse Agreement~~(s)~~ | 4:00 p.m. (prevailing Eastern Time) on the date five (5) Business Days following the date Debtor files notice of the designation of a Stalking Horse Bid |
| Last day for hearing for objections to the designation of the Stalking Horse Bidder~~(s)~~ and the Bid Protections set forth in the Stalking Horse Agreement~~(s)~~ | December 5, 2025 (or such other time based on the Court's availability) |
| Bid Deadline | December 8, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Auction Date (if applicable) | December 10, 2025, at 9:00 a.m. (prevailing Central Time) |
| Global Objection Deadline | December 12, 2025, at 10:00 a.m. (prevailing Eastern Time) |
| Sale Hearing | December 12, 2025, at 10:00 a.m. (prevailing Eastern Time) (subject to Court availability) |
| Outside Closing Deadline | December 22, 2025, at 11:59 p.m. (prevailing Eastern Time) |

27632813 v3

3.      The failure to timely file an objection in accordance with the deadlines set forth in this Order shall forever bar the assertion of any objection to the Motion, entry of the Stalking Horse Order or Sale Order and/or consummation of any Sale Transaction(s), including the assumption and assignment of Assigned Contracts to the Successful Bidder(s) pursuant to the applicable Stalking Horse Agreement or APA, and shall be deemed to constitute any such party's consent to entry of the applicable order and consummation of the Sale Transaction(s) and all other transactions related thereto.

4.      The Debtor reserves the right, and is authorized to, modify the above timeline and the Bidding Procedures in accordance with the Bidding Procedures in accordance with this order and any other order entered by this Court.

5.      The Bidding Procedures, attached hereto as **Annex 1** and incorporated herein, are hereby approved in all respects and will govern all bids and bid proceedings relating to the Assets. Any party desiring to submit a bid shall comply with the Bidding Procedures and this Order.  The Debtor and its professionals and agents are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order will not diminish or impair the effectiveness of such provision.

6.      The deadline for submitting a Qualified Bid shall be **December 8, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**").  The Bid Deadline may be modified as set forth in the Bidding Procedures.  The Debtor shall promptly provide copies of all bids that are reasonably likely to be deemed Qualified Bids to Prepetition Lender, the DIP Lender, Committee, General Electric Company (d/b/a GE Aerospace ("**GE**")), and Kawasaki Heavy Industries, Ltd. ("**KHI**"); *provided that* (i) as long as the Prepetition Lender and the DIP Lender have expressed

an intention to credit bid and (ii) if GE or KHI submits a bid for some or all of the Debtor's assets, then, in each case the applicable bidder shall be immediately suspended as a Consultation Party unless and until such bid is not designated as a Qualified Bid, in which case the applicable bidder shall immediately be reinstated as a Consultation Party without further order from the Court (Prepetition Lender, DIP Lender, Committee, GE and KHI collectively, the "**Consultation Parties**").

7.      For the avoidance of doubt, the Prepetition Lender and the DIP Lender will be deemed a Qualified ~~Bidder~~Bidders without the need to submit any of the materials required for a Qualified Bid, and ~~its~~their credit bids will be deemed Qualified Bids (and there will be no obligation for Prepetition Lender to provide a Good Faith Deposit~~).~~) until each provides a notice to the Debtor of no longer intending to credit bid.

8.      Any Auction, if necessary as determined by the Debtor in the exercise of the Debtor's reasonable business judgment and in consultation with the Consultation Parties, shall be conducted at the offices of Capstone Capital Markets LLC ("**Capstone**"), 311 S Wacker Drive, Suite 2450, Chicago, Illinois 60606, at **9:00 a.m. (prevailing Central Time) on December 10, 2025,** or such other time and location in Chicago, Illinois as the Debtor, after consultation with the Consultation Parties, may determine and specify in writing to each Qualified Bidder and the Consultation Parties.  The Auction shall be conducted openly and shall be transcribed as described in greater detail in the Bidding Procedures.  The Auction may be rescheduled as set forth in the Bidding Procedures.

9.      At the request of the Debtor, each bidder participating at the Auction (as determined in accordance with this Order and the Bidding Procedures) shall be required to confirm in writing at the Auction that (a) it has not engaged in any conduct of the type described in section 363(n) of

the Bankruptcy Code with respect to the bidding process and (b) its bid is a good faith bona fide offer that it intends to consummate if selected as the Successful Bidder.

10.    The Court will conduct the Sale Hearing on **December 12, 2025, at 10:00 a.m. (prevailing Eastern Time)** or as soon thereafter as counsel and interested parties may be heard, at which time the Court shall consider approval of the Sale Transaction to the Successful Bidder(s) and the entry of the Sale Order(s).  The Debtor, in its discretion, and in consultation with the Consultation Parties, may adjourn or reschedule the Sale Hearing without notice, including by (a) an announcement of such adjournment at the Sale Hearing or at an Auction, or (b) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

11.    Within two (2) business days after entry of this Order, the Debtor shall serve the proposed Auction and Hearing Notice substantially in the form attached to the Motion as **Exhibit B** (as may be modified by this Order) by email or overnight mail to (a) the United States Trustee's office, (b) The Debtor's twenty (20) largest unsecured creditors as reflected on the Debtor's petition, (c) Prepetition Lender, (d) the Federal Aviation Administration, and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively the "**Notice Parties**"), and to the extent not included as a Notice Party, any parties known or reasonably believed to have expressed an interest in the Debtor's Assets and all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in any of the Debtor's Assets. In addition, as soon as practicable, after entry of this Order, the Debtor will publish the Auction and Hearing Notice, with any modification necessary for ease of publication, once in applicable trade or industry publications to provide notice to any other potential interested parties.

12.    In accordance with the Bidding Procedures, the Debtor may enter into a Stalking Horse Agreement, subject to higher or otherwise better offers at the Auction, with any Stalking

27632813.v3

Horse Bidder that submits a Qualified Bid acceptable to the Debtor, in consultation with the Consultation Parties, to establish a minimum Qualified Bid at the Auction.

13.     The Stalking Horse Agreement may provide for payment of break-up fees and/or expense reimbursements (the "**Bid Protections**"), subject to entry of the Stalking Horse Order (as defined below).

14.     In the event that the Debtor selects one or more parties to serve as a Stalking Horse Bidder, upon such selection, the Debtor shall file with the Court and provide to all parties in interest notice of and an opportunity to object to the designation of such Stalking Horse Bidder and the Bid Protections set forth in the Stalking Horse Agreement. Absent objection, which must be filed no later than five (5) Business Days following the filing of the notice of selection of the Stalking Horse Bidder, the Debtor may submit an order to the Court under certification of counsel approving the selection of such Stalking Horse Bidder and the Bid Protections (the "**Stalking Horse Order**"). To the extent necessary, the Debtor's right to seek this Court's approval of ~~one or more~~the Stalking Horse Bidder~~(s),~~. with notice and a hearing, is hereby preserved.

15.     All objections to approval of the Sale Transaction, including: (i) the sale of the Assets free and clear of all Interests pursuant to section 363(f) of the Bankruptcy Code; and/or (ii) the form of the Sale Order must be filed no later than prior to the commencement of the Sale Hearing (the "**Global Objection Deadline**").  For the avoidance of doubt, the rights of parties to object to the Sale Transaction and form of Sale Order are fully preserved to the Global Objection Deadline and nothing in this Order including, without limitation, any approval of a Stalking Horse Agreement, shall abrogate or otherwise modify those rights.  If the Debtor files an amended Cure Schedule less than three days prior to the Cure Schedule Objection Deadline, the Cure Schedule Objection Deadline shall be extended to the earlier of: (i) three (3) Business Days from the filing

27632813 v3

of such amended Cure Schedule; and (ii) the Sale hearing **solely with respect to the Cure Costs set forth on the amended Cure Schedule**.

16.     A party that fails to timely file an objection by the Global Objection Deadline shall be (i) forever barred from asserting any objection to entry of the Sale Order or consummation of the applicable sale transaction(s) and (ii) deemed to have consented to entry of the Sale Order and consummation of the Sale Transaction, including, without limitation, the sale free and clear of Interests for purposes of section 363(f) of the Bankruptcy Code.

17.     Following the designation of a Successful Bid, the Debtor shall file a Successful Bid Notice prior to the Sale hearing.

18.     As soon as practicable, but no later than ~~October 24~~November 15, 2025, the Debtor shall file a schedule of cure obligations (the "**Cure Schedule**") for Executory Contracts that they have identified as potential Assigned Contracts.  The Cure Schedule shall include (i) a summary description containing the name of the contract counterparty of each Executory Contract that the Debtor may assume and assign to a potential buyer; and (b) the amount, if any, the Debtor believes would be necessary to cure defaults under such agreements pursuant to sections 365(b)(1) and 365 (f)(2)(A) of the Bankruptcy Code (the "**Cure Costs**").  Listing an executory contract and unexpired lease on the Cure Schedule does not mean that a Successful Bidder ultimately will identify such agreement as an Assigned Contract in an asset purchase agreement.  In addition, inclusion of any document in the Cure Schedule does not constitute, and is not deemed to be, a determination or admission by the Debtor or any Successful Bidder that such document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code.  The Cure Schedule may be amended or supplemented by the Debtor from time to time.  For the avoidance of doubt, all rights of a

27632813 v3

counterparty to an Assigned Contract under section 365 of the Bankruptcy Code are fully reserved to the applicable objection deadlines as provided by this Order.

19.     The Debtor shall serve a copy of the Cure Schedule, together with the Assumption/Assignment Notice in substantially the form attached to the Motion as **Exhibit C** (as modified by this Order), on each of the non-debtor counterparties to the agreements listed on the Cure Schedule by first class mail on the date that the Cure Schedule is filed with the Court.  If the Debtor amends the Cure Schedule to remove or add additional executory contracts and unexpired leases or amend a particular Cure Cost, the Debtor shall serve a copy of the amended Cure Schedule, together with the Assumption/Assignment Notice, on each of the affected non-debtor counterparties to the agreements listed on the amended Cure Schedule by first class mail.

20.     Unless a non-debtor counterparty to an Assigned Contract has timely and properly filed and served an objection to the assumption and assignment of its Assigned Contract or the Cure Costs on or before ~~November 13~~December 6, **2025, at 4:00 p.m. (prevailing Eastern Time)**, the Cure Costs set forth in the Cure Schedule shall be binding upon the non-debtor counterparties to the Assigned Contracts for all purposes in this chapter 11 case and shall constitute a final determination of the total Cure Costs required to be paid by the Successful Bidder in connection with the assumption and assignment of the Assigned Contracts (unless a portion of such costs are paid or satisfied in any manner, in which case the Cure Costs shall be reduced). Absent a timely and properly filed and served objection, all non-debtor counterparties to the Assigned Contracts shall be forever (i) barred from objecting to the Cure Costs and from asserting any and all additional objections or cure or other amounts with respect to the Assigned Contracts, and the Debtor and the Successful Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule; and (ii) barred, estopped, and permanently enjoined from asserting or

27632813 v3

claiming against the Debtor, any Successful Bidder, or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assigned Contract, or that there is any objection or defense to the assumption and assignment of such Assigned Contract.

21.     If a non-debtor counterparty to an Assigned Contract files an objection asserting a cure amount higher than the proposed Cure Costs (any such amount, a "**Disputed Cure Amount**"), the following procedures will govern the resolution of the Disputed Cure Amount:  (i) to the extent that the parties (including, if applicable, a Successful Bidder) are able to consensually resolve the Disputed Cure Amount prior to the Sale Hearing, the Debtor shall promptly provide the Consultation Parties with notice and an opportunity to object to such proposed resolution and, if no objection, such resolved Disputed Cure Amount shall be paid upon closing of the Sale Transaction or as otherwise provided in the applicable asset purchase agreement; or (ii) to the extent that the parties are unable to consensually resolve the dispute prior to the Sale Hearing or any of the Consultation Parties raises an objection, the Debtor may, after consulting with the Consultation Parties, (A) assume the applicable Assigned Contract prior to the resolution of the Disputed Cure Amount; *provided, however*, that the undisputed portion of the Cure Costs shall be paid upon the closing of the Sale Transaction or as otherwise provided in the applicable asset purchase agreement and the Successful Bidder(s) shall escrow cash in an amount sufficient to indefeasibly pay in full the Disputed Cure Amount asserted by the applicable counterparty to the Assigned Contract (or such lesser amount as may be agreed to by the applicable counterparty to the Assigned Contract), or (B) adjourn their request to assume the Assigned Contract pending resolution of the Disputed Cure Amount.  For the avoidance of doubt, parties to a Disputed Cure Amount shall be allowed to request a hearing before this Court on such Disputed Cure Amount by

27632813.v3

filing a request for hearing.  Upon resolution of a Disputed Cure Amount under subsection (ii) of this Paragraph, as evidenced by the entry of a final non-appealable order from this Court, such resolved Disputed Cure Amount shall be paid by the Successful Bidder on the later of the closing of the Sale Transaction and 3 (three) business days following entry of such final non-appealable order.

22.     The form of the Auction and Hearing Notice and the Assumption/Assignment Notice, attached to the Motion as **Exhibit B** and **Exhibit C**, respectively, and the manner of service or publication described herein (a) are hereby approved in all respects and (b) are determined to be appropriate and sufficient for all purposes.  The Debtor shall be permitted to make non-substantive revisions to the Auction and Hearing Notice and the Assumption/Assignment Notice, consistent with the Bidding Procedures and this Order.

23.     No other or further notice of the Motion, this Order, the Bidding Procedures, the sale of the Assets, the Auction, the Successful Bidders, the assumption and assignment of Assigned Contracts, or the Sale Hearing shall be required.

24.     Nothing in this Order, the Bidding Procedures, any notices provided pursuant to this Order or otherwise shall or shall be construed to modify, impair, or adversely affect in any way any of the liens, claims, rights, protections, and interests of the Lenders (as defined in the Final DIP Order (as defined below), including their successor and assigns) or GE or the rights of the Debtor to pursue a refinancing alternative as set forth in the *Final Order Under 11 U.S.C. §§ 105(a), 361, 362 and 363, Federal Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2: (I) Authorizing Debtor to Obtain Post-Petition Financing; (II) Authorizing Debtor to Use Cash Collateral; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling*

27632813 v3

*and Approving the Form and Method of Notice of Final Hearing; and (VI) Granting Related Relief*
[Docket No. 72] (the "**Final DIP Order**").

25.     In the event of any inconsistencies between this Order and the Motion, this Order shall govern in all respects.  In the event of any inconsistencies between this Order and the Bidding Procedures, this Order shall govern in all respects.

26.     All parties (whether or not Qualified Bidders) that participate in the bidding process (including any Auction) shall be deemed to have knowingly and voluntarily (i) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction, and/or the Sale Transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (ii) waived any right to jury trial in connection with any disputes relating to any of the foregoing matters.

27.     This Order shall be immediately effective and enforceable upon its entry, and nothing in Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 (to the extent applicable) shall cause a stay hereof.

28.     The Debtor shall serve this Order by electronic mail or overnight mail to Notice Parties and shall file a certificate of service evidencing compliance with this requirement.

29.     The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

30.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

SO ORDERED.

Copies to: Default List

27632813 v3

27632813 v3

**<u>Annex 1 to Bidding Procedures Order</u>**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 25-12226 |
| | ) |
| CTL-AEROSPACE, INC., | ) Chapter 11 |
| | ) |
| | ) Judge Beth A. Buchanan |
| Debtor. | ) |
| | ) |

**BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S ASSETS[1]**

On September 8, 2025, the above-captioned debtor and debtor in possession (the "**Debtor**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of Ohio (the "**Bankruptcy Court**").  By motion dated October 9, 2025 (the "**Motion**"), the Debtor requested approval of a process and procedures for, and authority to implement, a sale or sales of substantially all of the Debtor's assets (the "**Assets**").

On ~~October~~November __, 2025, the Bankruptcy Court entered an order (the "**Bidding Procedures Order**") [Docket No. __], which, among other things, set forth the process by which the Debtor is authorized to solicit the highest or otherwise best bid(s) for all or substantially all of the Debtor's Assets, culminating in an auction if competing Qualified Bids (as defined below) are received. These Bidding Procedures are set forth below.

**Any interested bidder should contact, as soon as practical, the**
**Debtor's financial advisor ("Capstone") as set forth below:**

**Geoffrey Frankel (gfrankel@capstonepartners.com)**

These Bidding Procedures describe, among other items, (a) the Assets offered for sale, (b) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, (c) the conduct of the Auction, if necessary, (d) the selection of Successful Bidder and (e) the Bankruptcy Court approval of the sale(s) of the Assets to the Successful Bidder(s).

1.    **Key Dates**

These Bidding Procedures provide interested parties with the opportunity to complete diligence, to submit competing bids for all or any portion or combination

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Bidding Procedures Order (as defined below).

27632813 v3

of the Assets, and to participate in an auction (the "**Auction**") to be conducted by the Debtor in consultation with the Consultation Parties (as defined below).

The key dates for the sale process are as follows.  Such dates may be extended or otherwise modified by: (a) the Debtor, after consultation with the Consultation Parties, by filing a notice of such extension or modification on the Bankruptcy Court's docket, or (b) an order of the Court:

| **EVENT** | **DATE** |
|---|---|
| Cure Schedule Filing Deadline | ~~October 24~~November 15, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Cure Schedule Objection Deadline | ~~November 13~~December 6, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Stalking Horse Bidder~~(s)~~ Identification Deadline | November 19, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Last possible deadline to object to Debtor's designation of the Stalking Horse Bidder~~(s)~~ and the Bid Protections set forth in the Stalking Horse Agreement~~(s)~~ | 4:00 p.m. (prevailing Eastern Time) on the date five (5) Business Days following  the date Debtor files notice of the designation of a Stalking Horse Bid |
| Last day for hearing for objections to the designation of the Stalking Horse Bidder~~(s)~~ and the Bid Protections set forth in the Stalking Horse Agreement~~(s)~~ | December 5, 2025 (or such other time based on the Court's availability) |
| Bid Deadline | December 8, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Auction Date (if applicable) | December 10, 2025, at 9:00 a.m. (prevailing Central Time) |
| Global Objection Deadline | December 12, 2025, at 10:00 a.m. (prevailing Eastern Time) |
| Sale Hearing | December 12, 2025, at 10:00 a.m. (prevailing Eastern Time) (subject to Court availability) |
| Outside Closing Deadline | December 22, 2025, at 11:59 p.m. (prevailing Eastern Time) |

2.      **Asset Purchase Agreement**

The Debtor will draft a form of Asset Purchase Agreement (together with all schedules, exhibits, and ancillary documents and agreements, the "**APA**") for parties interested in acquiring the Assets.  The Debtor intends to provide copies of the form of

27632813 v3

APA to all parties who express interest in submitting a Bid and will also make such form of APA available in the electronic data room established by the Debtor in connection with its sale process.

Pursuant to the form of APA and subject to any exceptions set forth therein, the Successful Bidder shall acquire the Assets free and clear of any and all pledges, liens, security interests, encumbrances, claims, charges, options, and other interests thereon (collectively, the "**Interests**") to the maximum extent permitted by section 363 of the Bankruptcy Code subject to certain other conditions, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Interests applied against the Assets.

3.      **Participation Requirements**

(a)      **Interested Parties**

Each interested person or entity (each an "**Interested Party**") should deliver the following (unless previously delivered) non-binding documents to Capstone:

(i)      an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor;

(ii)      a statement and other factual support demonstrating to the Debtor's reasonable satisfaction that the Interested Party has a bona fide interest in purchasing some or all the Assets, to include a non-binding summary of which Assets the Interested Party has a bona fide interest in purchasing and, indicative, non-binding purchase price for such Assets;

(iii)      sufficient information, as defined by the Debtor, to allow the Debtor to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal, or other authorizations to close the Sale Transaction, including, but not limited to, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtor in their discretion); and

(iv)      any other information that Capstone, on behalf of the Debtor, may reasonably request in order to evaluate the terms and qualifications of a bid or bidder.

If the Debtor determines, after receipt of the items identified above, that an Interested Party has a bona fide interest in some or all of the Assets, no later than two (2) business days after the Debtor makes that determination and has received all of the materials required above, such Interested Party will receive the following items:  (i) an electronic copy of the APA (subject to the preparation of such document), and (ii) access information for the Debtor's confidential electronic data room concerning the Assets (the "**Data Room**"). The Debtor reserves the right (in their sole

27632813 v3

discretion after consultation with the Consultation Parties) to determine whether an Interested Party has satisfied the above participation requirements.

**FOR THE AVOIDANCE OF DOUBT, FAILURE OF AN INTERESTED PARTY TO SUBMIT THE DOCUMENTS REFERENCED IN THIS PARAGRAPH 3(A) SHALL NOT PRECLUDE THE INTERESTED PARTY FROM SUBMITTING A QUALIFIED BID.**

(b)     **Due Diligence**

Until the Bid Deadline, in addition to access to the Data Room, the Debtor will provide any Interested Party who complies with Paragraph 3(a) such due diligence access or additional information the Interested Party requests and that the Debtor determines to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to Capstone. The Debtor, with the assistance of Capstone, will coordinate all reasonable requests for additional information and due diligence access from an Interested Party.  In the event that any such due diligence material is in written form and has not previously been provided to any other Interested Party, the Debtor will simultaneously provide such materials to each Interested Party and the Stalking Horse Bidder.

Unless otherwise determined by the Debtor, the availability of additional due diligence to an Interested Party will cease if (i) the Interested Party does not become a Qualified Bidder, from and after the Bid Deadline; or (ii) the bidding process is otherwise terminated.

**4.     Qualified Bidder and Qualified Bids**

A "**Qualified Bidder**" is a person or entity who: (a) submits an offer, solicitation, or proposal that satisfies all of the following conditions such that the offer, solicitation, or proposal is deemed a "**Qualified Bid**;" and (b) has an unconditional commitment for financing from a reputable financing institution, documented to the satisfaction of the Debtor, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Debtor.

A Qualified Bidder must submit a Qualified Bid to participate in the sale of the Debtor's Assets, unless the Debtor determines otherwise in the exercise of its business judgment in consultation with the Consultation Parties.  The Debtor shall provide the Consultation Parties with all such Qualified Bids as soon as designated as such by the Debtor.

Notwithstanding anything herein to the contrary, DKOF VI Trading Subsidiary LP ("DK"), as successor to Wells Fargo Bank, N.A. (along with its successors, assigns and any replacement/refinancing lender, on account of Debtor's prepetition debt (the "**Prepetition Lender**"), and DK, as post-petition lender to the Debtor (the "**DIP Lender**") will be deemed a Qualified BidderBidders without the need to submit any of the materials required for a Qualified Bid, and itstheir credit bids will be deemed Qualified Bids (and there will be no obligation for neither the Prepetition Lender and the DIP Lender to provide a Good Faith Deposit).

(a)     **No Communication Among Interested Parties**

27632813 v3

There shall be no communications regarding the Debtor's sale process between and among any Interested Party submitting a Qualified Bid (including, for the avoidance of doubt, the Stalking Horse Bidder, if any) unless the Debtor has previously authorized such communication in writing. Should any Interested Party attempt to communicate directly with another Interested Party, such Interested Party shall provide written notice of the proposed communication(s) to the Debtor's professionals and the Debtor's professionals' shall have the option to attend or be copied on any such communication(s) between the Interested Parties.  The Debtor reserves the right, in its reasonable business judgment, in consultation with the Consultation Parties, to disqualify any Interested Party that has communications between and among themselves without the Debtor's written consent. Such prohibition will not apply to Prepetition Lender and/or DIP Lender to the extent it isthey are not planning on submitting a credit bid.

(b)    **Bid Deadline**

A bidder who desires to be a Qualified Bidder (other than Prepetition Lender and DIP Lender) must deliver the Required Bid Documents (as defined below) so as to be received by the Bid Deadline to Capstone (at the address listed above).  The Debtor (in consultation with the Consultation Parties) may extend the Bid Deadline in its sole discretion.  If the Debtor extends the Bid Deadline, the Debtor will promptly notify all bidders who have signed a confidentiality agreement of such extension.

(c)    **Bid Requirements**

All bids must include the following unless otherwise waived by the Debtor in accordance with the Debtor's business judgment, and in consultation with the Consultation Parties (the "**Required Bid Documents**"):

(i)     a letter stating that the bidder's offer is irrevocable until consummation of a transaction involving any other bidder for the Assets identified in such offer (or a subset thereof);

(ii)    a duly authorized and executed APA identifying the Assets to be acquired, including a purchase price allocated for each Asset, and the liabilities and obligations being assumed, including, without limitation, all cure amounts necessary as required by section 365 of the Bankruptcy Code, together with all exhibits and schedules redlined to show those amendments and modifications to the APA and to the proposed Sale Order;

(iii)   written evidence of an unconditional commitment for financing from a reputable financing institution, documented to the satisfaction of the Debtor, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Debtor;

(iv)    any other information the Debtor reasonably deems necessary to clarify the terms and qualifications of the bid;

27632813 v3

(v)     the bid must identify the Assets to be purchased and the executory contracts and unexpired leases to be assumed and assigned in connection with such Assets;

(vi)    states that all necessary filings under applicable regulatory, antitrust and other laws or regulations will be made, pursuant to the terms and conditions in the applicable APA or other bid documents, and that payment of the fees associated with such filings will be made by the bidder;

(vii)   is not subject to any contingency, including without limitation, obtaining financing or on the outcome of unperformed due diligence or corporate, stockholder, or internal approval;

(viii)  provides evidence satisfactory to the Debtor, in its sole discretion, of the bidder's financial wherewithal and operational ability to consummate the transaction and satisfy its adequate assurance of future performance requirement with respect to any executory contract or unexpired lease to be assigned to the bidder;

(ix)    is irrevocable until the Debtor has consummated a transaction with the Successful Bidder(s) (as defined below) or the Alternate Bidder(s) (as defined below), as applicable;

(x)     is accompanied by a deposit by wire transfer to an escrow agent selected by the Debtor (the "**<u>Deposit Agent</u>**") equal to the higher of 5% the total cash consideration (including but not limited to, the amount required to be paid for cure costs under section 365 of the Bankruptcy Code and any other amounts the potential bidder identifies as part of its transaction value) of the purchase price or $1,500,000 (any such deposit, a "**<u>Good Faith Deposit</u>**") and includes a completed IRS Form W-8BEN-E or W-9 (as applicable). A Stalking Horse Bidder~~(s)~~ is not required to submit a Good Faith Deposit;

(xi)    sets forth the representatives who are authorized to appear at the Auction and act on behalf of the contemplated Sale Transaction;

(xii)   expressly states that the bid does not entitle the bidder to any transaction or break-up fee, termination fee, expense reimbursement, substantial contribution claim, or similar type of payment or reimbursement.  A Stalking Horse Bidder~~(s)~~ is not required to provide this statement;

(xiii)  includes evidence of the bidder's commitment to and ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such bidder's ability to perform in the future under the executory contracts and unexpired leases proposed in its bid to be assumed by

the Debtor and assigned to the bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases, as well as the bidder's ability to indefeasibly pay in full all monetary cure amounts as required by section 365 of the Bankruptcy Code and a list of any contracts, leases, or other agreements, if any, included in the proposed bid that the bidder asserts are not subject to section 365 of the Bankruptcy Code.  If requested by notifying counsel for the Debtor via email (friesinger@coollaw.com) and providing contact information to counsel for the Debtor, such evidence shall be provided to the applicable counterparties of such contracts and leases or its legal advisors by December 9, 2025, at 2:00 p.m. (prevailing Eastern Time) via email;

(xiv)   must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtor, after consultation with the Consultation Parties, which time frame shall include a closing by no later than **December 22, 2025, at 11:59 p.m. (prevailing Eastern Time)** (the **"Outside Closing Date"**);

(xv)    must contain evidence that the bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtor, in consultation with the Consultation Parties) with respect to the submission of its bid and the consummation of the transactions contemplated in such bid;

(xvi)   includes an acknowledgment that the bidder has not engaged in any collusion with respect to the Bidding Procedures and its bid is a good faith bona fide offer that it intends to consummate if selected as the Successful Bidder;

(xvii)  provides that the bidder shall bear its own costs and expenses (including legal fees) in connection with the proposed transaction and that the bidder agrees to waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code;

(xviii) provides that the bidder agrees to (a) abide by and honor the terms of these Bidding Procedures and agrees not to submit a bid or seek to reopen the Auction after conclusion of the Auction, and (b) serve as Alternate Bidder, if its bid is selected as the next highest or next best bid after the Successful Bid with respect to the applicable Assets;

27632813 v3

(xix)   provides that the bidder submits to the jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes relating to the Debtor's evaluation of bids, the Auction, the construction and enforcement of these Bidding Procedures, and documents completing the sale of Assets, and the Closing, as applicable;

(xx)   unless previously provided, an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor; and

(xxi)   is received on or before the Bid Deadline.

A bid received from a Qualified Bidder will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above requirements unless the Debtor determines otherwise in the exercise of its business judgment in consultation with the Consultation Parties.

All Qualified Bids or combination of Qualified Bids will be considered, but the Debtor reserves the right to reject any and all bids, including any credit bids, other than the highest or otherwise best bid(s) as determined in consultation with the Consultation Parties, but otherwise in the Debtor's discretion.   The Debtor may, in its discretion (and in consultation with the Consultation Parties), evaluate bids on numerous grounds including, but not limited to, any delay, additional risks (including closing risks).  Bids other than Qualified Bids will not be considered.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, the asset purchase agreement with such Successful Bidder.

It shall not be collusion for an Interested Party to discuss options regarding ~~financing,~~ the assumption of debt, or the repayment of the obligations owing to Prepetition Lender and DIP Lender with Prepetition Lender or DIP Lender in connection with a proposed bid for any of the Assets.  Any discussions between an Interested Party and Prepetition Lender or DIP Lender shall be disclosed to the Debtor and Consultation Parties.  In such discussions, Prepetition Lender and DIP Lender shall act in good faith and in accordance with the standards of a prudent commercial lender under the circumstances with respect to the terms of any such ~~financing or~~ assumption or repayment of debt.

## 5.    **Credit Bidding**

Prepetition Lender is authorized, subject in all respects to the Bankruptcy Code and other applicable law, to submit a credit bid for the purchase of all of the collateral on which Prepetition Lender holds a valid, perfected, and unavoidable lien up to the amount of the outstanding

27632813 v3

obligations owing to Prepetition Lender to the extent provided in section 363(k) of the Bankruptcy Code or other applicable law, and in accordance with the applicable provisions of the documents governing such debt obligations, all as more fully set forth in the Final DIP Order.  Additionally, the DIP Lender is authorized to credit bid in accordance with the financing order approving the post-petition facility provided by the DIP Lender.

Notwithstanding anything to the contrary set forth in these Bidding Procedures, each of the Prepetition Lender and the DIP Lender (a) shall be deemed to be a Qualified Bidder, and (b) may participate in the Auction with respect to the Assets.  For the avoidance of doubt, the Prepetition Lender and the DIP Lender's credit bids may be combined in their discretion.  At any time prior to the Auction or during the Auction, Prepetition Lender or DIP Lender may make the determination that it either no longer wants to be a Qualified Bidder on all or a subset of Assets by written notice to Debtor's counsel (each a "**Designation**").  Upon such Designation, Prepetition Lender shall cease being a Qualified Bidder with respect to Assets subject to the Designation (the "**Designated Assets**") and shall be deemed a Consultation Party in connection with the sale of the Designated Assets.

6.     **Stalking Horse Bids Bid**

Subject to the provisions set forth in the Bidding Procedures and the Bidding Procedures Order, and after consultation with the Consultation Parties, the The Debtor may, in the exercise of its business judgment, enter into a stalking horse agreement (a "**Stalking Horse Agreement**"), subject to higher or otherwise better offers at the Auction, with any Bidder, including the Prepetition Lender and/or the DIP Lender to establish a minimum Qualified Bid at the Auction (such Qualified Bidder, a "**Stalking Horse Bidder**," and such Bid, a "**Stalking Horse Bid**").  Notwithstanding anything to the contrary herein, subject to approval by the Bankruptcy Court in accordance with the below, a Stalking Horse Agreement may provide for payment of break-up fees and/or expense reimbursements (the "**Bid Protections**").  For the avoidance of doubt, a Stalking Horse Bid may be in the form of a plan of reorganization.

The Debtor may, after consulting the Consultation Parties, shall enter into one or more the Stalking Horse Agreement at any time prior to November 19, 2025, and designate a Stalking Horse Bid by filing a notice of such designation with the Bankruptcy Court to provide to all parties in interest notice of and an opportunity to object to the designation of such Stalking Horse Bidder and the Bid Protections set forth in the Stalking Horse Agreement.  To the extent an objection is received **on or before 4:00 p.m.** (prevailing Eastern Time) on the date five (5) Business Days following the date Debtor files notice of the designation of a Stalking Horse Bid, the Court will hold a hearing on the objection no later than **December 5, 2025**.  Absent objection, the Debtor may submit an order to the Court under certification of counsel approving the selection of such Stalking Horse Bidder and the Bid Protections (the "**Stalking Horse Order**").

Any Stalking Horse Agreement executed by the Debtor and the Sale Transaction(s) contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse

27632813 v3

Bidder party to a Stalking Horse Agreement executed by the Debtor will be deemed to be a Qualified Bidder.

Other than as provided by order of the Court, no party submitting a Bid shall be entitled to a break-up fee or expense reimbursement except for the Bid Protections for any Stalking Horse Bidder.  Any substantial contribution claims by any Bidder are deemed waived, to the extent based solely on such Bidder's submission of a Bid hereunder.

## 7.   **Highest or Otherwise Best Bid**

Whenever these Bidding Procedures refer to the highest or otherwise best Qualified Bid, such determination shall take into account any factors the Debtor, in consultation with the Consultation Parties, reasonably deem relevant to value of the Qualified Bid to the estate and may include, but are not limited to, the following:  (a) the amount and nature of the consideration, including any assumed liabilities; (b) the executory contracts and unexpired leases of the Debtor, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with any litigation concerning executory contracts and unexpired leases necessitated by such Qualified Bid; (c) the number, type and nature of any changes to the APA requested by each Qualified Bidder; (d) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtor of such modifications or delay; (e) the likelihood of the Qualified Bidder being able to close the proposed Sale Transaction (including obtaining surety bonding and any required regulatory approvals) and the timing thereof; (f) the net benefit or cost to the Debtor's estate (including, without limitations, any tax implications of the proposed Sale Transaction); and (g) any other factors that the Debtor, after consultation with the Consultation Parties, may deem relevant (collectively, the "**Bid Assessment Criteria**").   Notwithstanding anything to the contrary herein, with respect to any Bid for any Assets of the Debtor, the Bid Assessment Criteria and any other consideration of such Bid shall be evaluated solely with respect to the value thereof, and the effect of such Bid on, the estate of the Debtor.

## 8.   **Auction**

In the event that the Debtor timely receives more than one Qualified Bid, the Debtor may, in the Debtor's business judgment and in consultation with the Consultation Parties, conduct an Auction of the Assets.  The Auction shall be in accordance with these Bidding Procedures and upon notice to all Qualified Bidders who have submitted Qualified Bids.

Only representatives or agents of the Debtor, each Consultation Party, and any Qualified Bidder that has submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing), will be entitled to attend the Auction, and only Qualified Bidders will be entitled to make any subsequent bids at the Auction *provided, however*, counterparties to Assigned Contracts and its legal advisors may attend the Auction by notifying counsel for the Debtor of their intent to attend the Auction on or before December 9, 2025, at 6:00 p.m. (prevailing Eastern Time) via email (friesinger@coollaw.com).

On December 9, 2025, Capstone shall provide copies of the Qualified Bid or combination of Qualified Bids that the Debtor believes is the highest or otherwise best offer (the "**Baseline**

**Bid**") to all Qualified Bidders that have informed the Debtor of their intent to participate in the Auction and to the Consultation Parties.

The Debtor may, after consultation with the Consultation Parties, employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, *provided, however* such rules are (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, any Order of the Bankruptcy Court entered in connection herewith, or the Final DIP Order and (b) disclosed to each Qualified Bidder; and *provided further* that all bids shall be made openly, in the presence of all parties at the Auction. The Auction shall be transcribed to ensure an accurate recording of the bidding at the Auction.

The Debtor, in its sole discretion but in consultation with the Consultation Parties, will determine the order in which the Assets will be auctioned. Bidding at the Auction will begin with the Baseline Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder(s) that (a) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "**Subsequent Bid**") and (b) the Debtor determines that such Subsequent Bid is (i) for the first round, a higher or otherwise better offer than the Baseline Bid and (ii) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below), in each case taking into account other Qualified Bids for other Assets. Subsequent Bids must be made in minimum increments of $500,000; *provided, however*, the Debtor, in its sole discretion but in consultation with the Consultation Parties, may adjust the minimum bid increments or requirements in connection with the Stalking Horse Agreement and/or for each round of bidding which shall be announced at the Auction.

After the first round of bidding and between each subsequent round of bidding, the Debtor shall announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (as applicable, the "**Leading Bid**").

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and confirmation of the Leading Bid. For the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Debtor may take into account any Bid Protections (as applicable) that may be payable. For the purpose of evaluating Subsequent Bids, the Debtor may require a Qualified Bidder submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor in its sole discretion) demonstrating such Qualified Bidder's ability to close the proposed transaction. The Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest or otherwise best bid.

9.     **Selection of Successful Bid**

The Debtor reserves the right to (i) determine in its reasonable discretion, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best and (ii) reject at any time prior to entry of a Bankruptcy Court order approving an offer, without liability, any bid or offer that the Debtor in its reasonable discretion deem to be (x) inadequate or insufficient,

27632813 v3

(y) not a Qualified Bid or not otherwise in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or procedures set forth therein or herein or (z) contrary to the best interests of the Debtor and its estate.

The Debtor, in consultation with the Consultation Parties, may take the following considerations into account when evaluating Qualified Bids: (a) the purchase price and valuation of non-cash consideration; (b) the overall value to be provided to the Debtor under the bid, including payment of Cure Costs, assumption of liabilities, and the net economic effect upon the Debtor's estate; (c) the ability to obtain any and all necessary applicable regulatory approvals for the proposed Sale Transaction; (d) other contingencies and the ability to close the proposed Sale Transaction on a basis acceptable to the Debtor, and any incremental costs to the Debtor as a result of potential closing delays; (e) whether a bid on all or substantially all of the Assets is more beneficial to the Debtor's estate than individual bids on a subset of Assets, or vice versa; and (f) any other factors that the Debtor, after consultation with the Consultation Parties, may deem relevant.

Prior to the conclusion of the Auction, the Debtor, with the input of the Consultation Parties, will: (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction; (b) identify the highest or otherwise best offer or collection of offers (the "**Successful Bid(s)**"); (c) determine which Qualified Bid is the Successful Bid(s) and which is the next highest or otherwise best offer or collection of offers (the "**Alternate Bid(s)**") for the Assets; and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the successful bidder(s) (the "**Successful Bidder(s)**"), the amount and other material terms of the Successful Bid(s) and the identity of the party or parties that submitted the Alternate Bid(s) (the "**Alternate Bidder(s)**"). By the Outside Closing Date, the Successful Bidder(s) and the Debtor shall complete and execute all agreements, instruments or other documents necessary to consummate the applicable Sale Transaction or otherwise contemplated by the applicable Successful Bid(s). Prior to the Sale Hearing, the Debtor shall file a notice in the Bankruptcy Court disclosing the Successful Bidder (the "**Successful Bid Notice**").

The Debtor will sell the Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing. The presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of the Qualified Bid. The Debtor will be deemed to have accepted a Qualified Bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

If for any reason, the Successful Bidder(s) fails to consummate the purchase of the Assets, or any part thereof, then the Debtor will close with the party that submitted the Alternate Bid(s), pursuant to the applicable Sale Order, after consulting with the Consultation Parties. If an Alternate Bidder does not close the applicable Sale Transaction contemplated by the applicable Alternate Bid by the date agreed to by the Debtor and such Alternate Bidder, then, after consulting with the Consultation Parties, the Debtor will be authorized to reopen the Auction to designate new Successful Bid(s) and Alternate Bid(s). Only a Successful Bidder or Alternate Bidder shall be entitled to purchase the Assets pursuant to these Bidding Procedures. If such failure to consummate the purchase is the result of a breach by the Successful Bidder and/or the Alternate

27632813 v3

Bidder, the Debtor reserves the right to seek all available remedies from the applicable defaulting bidder, subject to the terms of the applicable purchase agreement.  Furthermore, if a Successful Bidder and/or Alternate Bidder fails to consummate an approved Sale Transaction because of a breach or failure to perform on the part of such Successful Bidder and/or Alternate Bidder, the Debtor shall be entitled to retain the Good Faith Deposit thereof as part of its damages resulting from such breach or failure to perform.

### 10.    The Sale Hearing

The Sale Hearing will be held on **December 12, 2025, at  10:00 a.m. (prevailing Eastern Time)** in the United States Bankruptcy Court for the Southern District of Ohio in Cincinnati.  The Sale Hearing may be adjourned without further notice by an announcement of the adjourned date at the Sale Hearing.  At the Sale Hearing, the Debtor will seek approval of the offer or offers constituting the Successful Bid and, at the Debtor's election, the offer constituting the Alternate Bid.

The Debtor's presentation to the Bankruptcy Court of the offer or offers constituting the Successful Bid(s) and Alternate Bid(s) will not constitute the Debtor's acceptance of either of any such bid, which acceptance will only occur upon approval of such bid by the Bankruptcy Court at the Sale Hearing.  Following approval of the Sale Transaction to the Successful Bidder(s), if the Successful Bidder(s) fails to consummate the sale because of (a) failure of a condition precedent beyond the control of either the Debtor or the Successful Bidder(s) upon which occurrence the Debtor has filed a notice with the Bankruptcy Court advising of such failure or (b) a breach or failure to perform on the part of such Successful Bidder(s) upon which occurrence the Debtor has filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then the Alternate Bid(s) will be deemed to be the Successful Bid and the Debtor will be authorized, but not directed, to effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court.  To the extent applicable, if the Alternate Bidder fails to consummate the sale because of (a) failure of a condition precedent beyond the control of either the Debtor or the Alternate Bidder upon which occurrence the Debtor has filed a notice with the Bankruptcy Court advising of such failure or (b) a breach or failure to perform on the part of such Alternate Bidder upon which occurrence the Debtor has filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then the Debtor will be authorized to reopen the Auction to designate new Successful Bid(s) and Alternate Bid(s).

### 11.    Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders will be held in escrow and will not become property of the Debtor's bankruptcy estate unless released from escrow pursuant to further order of the Bankruptcy Court.  The Debtor will retain the Good Faith Deposits of the Successful Bidder(s) and the Alternate Bidder(s) until the closing of the Sale Transaction unless otherwise ordered by the Bankruptcy Court.  The Good Faith Deposits of the other Qualified Bidders will be returned within five business days of the entry of the Sale Order.  At the closing of the Sale Transaction contemplated by the Successful Bid(s), the Successful Bidder(s) will be entitled to a credit for the amount of its Good Faith Deposit and the Good Faith Deposit of the Successful Bidder(s) shall be released from escrow to the Debtor and become property of the estate.  The

27632813 v3

Good Faith Deposit of the Alternate Bidder will be released by the Debtor five business days after the closing of the Sale Transaction.

### 12.     As Is, Where Is

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or its estate except as provided in any agreement with respect to the sale or sales approved by the Bankruptcy Court.

### 13.     Free and Clear of Any and All Interests

Except as otherwise provided in a Successful Bidder's purchase agreement, all of the Debtor's rights, title, and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims (as such term is defined in section 101(5) of the Bankruptcy Code) charges, options, and interests thereon (collectively, the "**Interests**") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Interests applied against the Assets. The failure to object to such free and clear sale shall be deemed consent to the sale free and clear of any such Interests.

### 14.     Modification of Bidding Procedures

THE DEBTOR MAY, AFTER CONSULTATION WITH THE CONSULTATION PARTIES, AMEND THESE BIDDING PROCEDURES AT ANY TIME, AND FROM TIME TO TIME, IN ANY MANNER THAT THEY DETERMINE IN GOOD FAITH WILL BEST PROMOTE THE GOALS OF THE BIDDING PROCESS, INCLUDING, WITHOUT LIMITATION, EXTENDING OR MODIFYING ANY OF THE DATES DESCRIBED HEREIN OR THE INFORMATION AND MATERIALS REQUIRED FROM QUALIFIED BIDDERS; PROVIDED THAT SUCH MODIFICATIONS ARE CONSISTENT WITH THE FINAL DIP ORDER.

For the avoidance of doubt and notwithstanding anything herein to the contrary, nothing in these Bidding Procedures shall, or shall be construed to, in any way amend, impair, prejudice, alter, or otherwise modify the terms of any Prepetition Agreements or Postpetition Agreements (each as defined in the Final DIP Order).

27632813 v3

**EXHIBIT B**

4851-6599-7497v10

27632813 v3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-12226 |
| | ) | |
| CTL-AEROSPACE, INC., | ) | Chapter 11 |
| | ) | |
| | ) | Judge Beth A. Buchanan |
| Debtor. | ) | |
| | ) | |

**NOTICE OF AUCTION AND SALE
HEARING FOR THE SALE OF THE DEBTOR'S ASSETS**

> **The following is a summary and in the event of any conflict, the terms of the Bidding Procedures Motion and Bidding Procedures Order govern. You should read those documents. Instructions on how to obtain them free of cost are at the end of this Notice.**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

Bankruptcy Filing. On September 8, 2025 (the "**Petition Date**"), the above-captioned debtor and debtor-in-possession (the "**Debtor**") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Ohio (the "**Bankruptcy Court**").

Motion to Approve Sale. On October 9, 2025, the Debtor filed the *Debtor's Motion for Entry of (I) An Order (A) Approving Bidding and Sale Procedures with Respect to the Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving the Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving Procedures for Selection of One or More Stalking Horse Bidder(s) and the Provision of Bid Protections to Such Stalking Horse Bidder(s), and (E) Granting Related Relief; and (II) An Order Approving the Sale of Such Assets and Related Relief* (the "**Bidding Procedures Motion**").[1] On ~~October~~November __, 2025, the Bankruptcy Court entered an order approving the Bidding Procedures Motion (the "**Bidding Procedures Order**"). Pursuant to the Bidding Procedures Order, the Debtor is seeking authority to sell substantially all the assets of the Debtor or a subset thereof, including certain executory contracts and unexpired leases (each an "**Asset**" and, collectively, the "**Assets**"). The Bidding Procedures Order contemplates that any sale of some or all of the Assets will take place via an auction (the "**Auction**") governed by the Bidding Procedures attached to the Bidding Procedures Order as **Annex 1** (the "**Bidding Procedures**"). Pursuant to the Bidding Procedures, interested potential purchasers must fulfill certain requirements to, among

---

[1] Capitalized terms used herein that are otherwise not defined shall have the meaning given to them in the Bidding Procedures Motion.

other things, (a) participate in the bidding process, (b) become "**Qualified Bidders**" and (c) submit "**Qualified Bids**."  A bid shall not constitute a Qualified Bid unless it is submitted in accordance with the Bidding Procedures, and a bidder shall not constitute a Qualified Bidder unless it submits a Qualified Bid.  The Debtor will determine the winner of the Auction (the "**Successful Bidder**") pursuant to the terms of the Bidding Procedures.

Cure Schedule; Cure Schedule Objection Deadline.  As soon as practicable, but no later than ~~October 24~~November 15, 2025, the Debtor shall file a schedule of cure obligations (the "**Cure Schedule**") for Executory Contracts that they have identified as potential Assigned Contracts. Unless a non-debtor counterparty to an Assigned Contract has timely and properly filed and served an objection to the assumption and assignment of its Assigned Contract or the Cure Costs on or before ~~November 13~~December 6, **2025, at 4:00 p.m. (prevailing Eastern Time)** (the "**Cure Schedule Objection Deadline**")**,** the Cure Costs set forth in the Cure Schedule shall be binding upon the non-debtor counterparties to the Assigned Contracts for all purposes in this chapter 11 case and shall constitute a final determination of the total Cure Costs required to be paid by the Successful Bidder in connection with the assumption and assignment of the Assigned Contracts (unless a portion of such costs are paid or satisfied in any manner, in which case the Cure Costs shall be reduced).  If the Debtor files an amended Cure Schedule less than three days prior to the Cure Schedule Objection Deadline, the Cure Schedule Objection Deadline shall be extended to the earlier of: (i) three (3) Business Days from the filing of such amended Cure Schedule; and (ii) the Sale hearing solely with respect to the Cure Costs set forth on the amended Cure Schedule.

Free and Clear Sales; Good Faith Purchaser.  Pursuant to section 363(f) of the Bankruptcy Code, and except as otherwise provided in the Successful Bidder's asset purchase agreement approved by the Bankruptcy Court, all of the Debtor's right, title, and interest in and to the Assets are proposed to be sold free and clear of any pledges, liens, security interests, encumbrances, claims (as such term is defined in section 101(5) of the Bankruptcy Code) charges, options, and interests thereon (collectively, the "**Interests**"), with any Interests to attach to the proceeds of the sale, if any, as provided in the final Sale Order.  In addition, the Sale Order will include proposed findings that the successful bidder is a "good faith purchaser," as that term is defined in section 363(m) of the Bankruptcy Code, and has not violated section 363(n) of the Bankruptcy Code. Additionally, pursuant to the Bidding Procedures Order, prior to the Auction, the Debtor ~~may~~shall enter into ~~one or more~~a "stalking horse" asset purchase ~~agreements~~agreement (the "**Stalking Horse Agreement**") at any time prior to November 19, 2025, and designate a Stalking Horse Bidder (the bid thereof, a "**Stalking Horse Bid**") by filing a notice of such designation with the Court as set forth in the Bidding Procedures.  A Stalking Horse Agreement may provide for payment of break-up fees and/or expense reimbursements (the "**Bid Protections**"). To the extent an objection is received by **4:00 p.m. (prevailing Eastern Time) on the date five (5) Business Days** following the date Debtor files notice of the designation of a Stalking Horse Bid, the Court will hold a hearing on the objection no later than **December 5, 2025.** Absent objection, the Debtor may submit an order to the Court under certification of counsel approving the selection of such Stalking Horse Bidder and the Bid Protections (the "**Stalking Horse Order**").

The Auction.  If necessary, the Debtor will conduct the Auction at the offices of Capstone, 311 S Wacker Drive, Suite 2450, Chicago, Illinois 60606, at **9:00 a.m. (prevailing Central Time) on December 10, 2025,** or such other time and location in Chicago, Illinois as the Debtor, after consultation with the Consultation Parties, may determine and specify in writing to each Qualified

Bidder and the Consultation Parties.  If only one Qualified Bid (including the Stalking Horse Bid) for the Assets is received, the Auction for the Assets will be cancelled and the Qualified Bid received will be designated the Successful Bid for the Assets.  At the request of the Debtor, each Qualified Bidder participating at the Auction shall be required to confirm in writing, that: (a) it has not engaged in any collusion with respect to the bidding; and (b) its Qualified Bid is a good faith, bona fide offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

Successful Bid Notice. Following the designation of a Successful Bid, the Debtor shall file a notice of the Successful Bid, along with copies of the asset purchase agreement associated with the Successful Bid and Sale Order (a "**Successful Bid Notice**").  No further notice will be provided.

Sale Hearing. A hearing to consider approval of the Sale Transaction (the "**Sale Hearing**") is scheduled to take place on **December 12, 2025, at 10:00 a.m. (prevailing Eastern Time) in the United States Bankruptcy Court for the Southern District of Ohio in Cincinnati**.  The Debtor may, in its discretion, adjourn or reschedule the Sale Hearing after consultation with the Consultation Parties.  No further notice of any such continuance will be required to be provided to any party.

Objections and Deadline. All objections to approval of the Sale Transaction, including the sale of the Assets free and clear of all Interests pursuant to section 363(f) of the Bankruptcy Code and the form of the Sale Order, must be in writing, state the basis of such objection with specificity, comply with the Bankruptcy Rules, and be filed with the Bankruptcy Court and served so as to be received by the Debtor, counsel for the Debtor, and Notice Parties on or before **December 12, 2025, at 10:00 a.m. (prevailing Eastern Time)** (the "**Global Objection Deadline**").

**Failure to File an Objection.  IF AN OBJECTION IS NOT TIMELY FILED AND SERVED IN ACCORDANCE WITH THE OBJECTION PROCEDURES OUTLINED ABOVE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

Parties Interested in Bidding.  Parties interested in bidding on the Assets should contact the Debtor's financial advisor, **Capstone Capital Markets LLC by email to: Geoffrey Frankel (gfrankel@capstonepartners.com)**, and provide a bid, including the information as required by the Bidding Procedures, by no later than **December 8, 2025, at 4:00 p.m. (prevailing Eastern time)** (unless such date is otherwise extended in the sole discretion of the Debtor).

Summary of Important Dates. A summary of the pertinent dates and times (all prevailing Eastern Time, unless otherwise noted) addressed herein or by the Bidding Procedures Order is as follows:

~~October 24~~November 15, 2025, at 4:00 p.m.: Cure Schedules due from Debtor
~~November 13~~December 6, 2025, at 4:00 p.m.: general Cure Schedule Objection Deadline
December 8, 2025, at 4:00 p.m.: Bid Deadline

- 3 -

December 10, 2025, at 9:00 a.m (Central Time).: Auction
December 12, 2025, at 10:00 a.m.: Global Objection Deadline
December 12, 2025, at 10:00 a.m.: Sale Hearing
December 22, 2025, at 11:59 p.m.: Outside Closing Deadline[2]

Copies. Copies of the Bidding Procedures and Sale Motion, the Bidding Procedures Order, the Bidding Procedures, and the proposed Sale Order may be accessed free of charge by notifying counsel for the Debtor via email (friesinger@coollaw.com).

~~October~~November __, 2025

Respectfully submitted,

COOLIDGE WALL CO., L.P.A.

*/s/ Patricia J. Friesinger*
Patricia J. Friesinger (0072807)
Briana C. Breault (0099773)
33 West First Street, Suite 600
Dayton, Ohio 45402
Tel: 937/223-8177
Fax: 937/223-6705
E-Mail:  friesinger@coollaw.com
            breault@coollaw.com

*Proposed Counsel for Debtor and Debtor-In-Possession CTL-Aerospace, Inc.*

---

[2] Add cure amount objection deadline.

4851-6599-7497v10

27632813 v3

**EXHIBIT C**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 25-12226 |
|  | ) |  |
| CTL-AEROSPACE, INC., | ) | Chapter 11 |
|  | ) |  |
|  | ) | Judge Beth A. Buchanan |
| Debtor. | ) |  |
|  | ) |  |

**NOTICE OF (A) POTENTIAL ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (B) CURE COSTS**

> **You are receiving this notice because you may be a counterparty to an executory contract or unexpired lease with the above-captioned Debtor. Please read this notice carefully as your rights may be affected by the transactions described herein. The following is a summary and in the event of any conflict, the terms of the Bidding Procedures Motion and Bidding Procedures Order govern. You should read those documents. Instructions on how to obtain them free of cost are at the end of this Notice.**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On September 8, 2025 (the "**Petition Date**"), the above-captioned debtor and debtor-in-possession (the "**Debtor**") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Ohio (the "**Bankruptcy Court**").

2. On October 9, 2025, the Debtor filed the *Debtor's Motion for Entry of (I) An Order (A) Approving Bidding and Sale Procedures with Respect to the Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving the Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving Procedures for Selection of One or More Stalking Horse Bidder(s) and the Provision of Bid Protections to Such Stalking Horse Bidder(s), and (E) Granting Related Relief; and (II) An Order Approving the Sale of Such Assets and Granting Related Relief* (the "**Bidding Procedures Motion**").[1] Pursuant to the Bidding Procedures Motion, the Debtor is seeking to sell substantially all Assets of the Debtor or a subset thereof, including certain executory contracts and unexpired leases. The Bidding Procedures Motion was approved by the Bankruptcy Court on ~~October~~November __, 2025 [Docket No. __] (the "**Bidding Procedures Order**"). The Bidding Procedures Order contemplates that a sale (or sales) of the Assets or a subset thereof will take place via an auction (the "**Auction**") governed by

---

[1] Capitalized terms used herein that are otherwise not defined shall have the meaning given to them in the Bidding Procedures Motion or the Bidding Procedures Order (as defined herein), as applicable.

the Bidding Procedures attached to the Bidding Procedures Order as **Annex 1** (the "**Bidding Procedures**").  Pursuant to the Bidding Procedures, interested potential purchasers must fulfill certain requirements to, among other things, (a) participate in the bidding process, (b) become "**Qualified Bidders**" and (c) submit "**Qualified Bids**."  A bid shall not constitute a Qualified Bid unless it is submitted in accordance with the Bidding Procedures, and a bidder shall not constitute a Qualified Bidder unless it submits a Qualified Bid.  The Debtor will determine the winner of the Auction (the "**Successful Bidder**") pursuant to the terms of the Bidding Procedures.

3.       Pursuant to the Bidding Procedures Order, the Debtor may, in accordance with section 365 of the Bankruptcy Code, seek to assume and assign to a Successful Bidder some or all Assigned Contracts listed on the attached **Exhibit 1** hereto (the **"Cure Schedule"**); **provided**, **however**, that the inclusion of an executory contract or unexpired lease on the attached **Exhibit 1** (*i.e.*, an Assigned Contract) does not mean that (a) a Successful Bidder will ultimately identify such agreement as an executory contract or unexpired lease to be assumed and assigned or (b) such contract or lease is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code.  If any Assigned Contracts are assumed and assigned to a Successful Bidder, the Debtor has identified on the attached **Exhibit 1** the Cure Costs that the Debtor believes must be paid by the Successful Bidder to cure all defaults as required by section 365 of the Bankruptcy Code.

4.       Objections to: (i) the Cure Costs set forth on **Exhibit 1** or the assumption and assignment of any Assigned Contract; or (ii) the Sale Transaction must be in writing, state the basis of such objection with specificity including, without limitation, any supporting documentation to support the cure amount and be filed with the Bankruptcy Court and actually received by (a) the United States Trustee's office, (b) the Debtor's twenty (20) largest unsecured creditors as reflected on the Debtor's petition, (c) Wells Fargo Bank, National Association, (d) the Federal Aviation Administration, and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively the "**Notice Parties**") on or before ~~November 13~~**December 6, 2025, at 4:00 p.m. (prevailing  Eastern Time)** (the "**Cure Schedule Objection Deadline**").  If the Debtor files an amended Cure Schedule, the Cure Schedule Objection Deadline shall be extended to the earlier of:  (i) three (3) business days from the filing of an amended Cure Schedule; and (ii) the Sale Hearing **solely with respect to the Cure Costs set forth on the Cure Schedule**.

5.       If no objection is timely and properly filed and served in accordance with the objection procedures in Paragraph 4 of this notice, as provided in more detail by the terms of the Bidding Procedures Order and any final Sale Order, the Cure Costs set forth in **Exhibit 1** shall be controlling, notwithstanding anything to the contrary in any contract or lease or other document, and the non-Debtor party to the contract or lease shall be forever barred from asserting any other claim against the Debtor or the Successful Bidder.  **Nothing in the Cure Schedule shall waive any party's right to object on the basis that the purchaser's promise to perform under the contract or lease is sufficient to demonstrate adequate assurance under the contract or lease within the meaning of section 365 of the Bankruptcy Code.**  Procedures governing a Disputed Cure Amount are provided by Paragraph 20 of the Bidding Procedures Order and shall be governed in accordance therewith.

27632813 v3

6.      Following the designation of a Successful Bid, the Debtor shall file a notice of the Successful Bid, along with copies of the asset purchase agreement associated with the Successful Bid and Sale Order (a "**Successful Bid Notice**").  No further notice will be provided.

7.      If you agree with the Cure Cost(s) indicated on **Exhibit 1**, and otherwise do not object to the Debtor's assignment of your lease or contract, you need not take any further action.

8.      **The Debtor's decision to assume and assign executory contracts and unexpired leases is subject to Bankruptcy Court approval and consummation of a Sale Transaction. Accordingly, the Debtor shall be deemed to have assumed and assigned each of the executory contracts and unexpired leases only as of the date of, and effective and conditioned upon, the closing of the Sale Transaction.  Absent such closing, the executory contracts and unexpired leases shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code.  The Debtor fully reserves all rights to amend, modify, or supplement Exhibit 1 in accordance with the Bidding Procedures Order.**

9.      Copies. Copies of the Bidding Procedures and Sale Motion, the Bidding Procedures Order, the Bidding Procedures, and the proposed Sale Order may be accessed free of charge by notifying counsel for the Debtor via email (friesinger@coollaw.com).

~~October 24~~ November 15, 2025                     Respectfully submitted,

                                                    COOLIDGE WALL CO., L.P.A.

                                                    */s/ Patricia J. Friesinger*
                                                    Patricia J. Friesinger (0072807)
                                                    Briana C. Breault (0099773)
                                                    33 West First Street, Suite 600
                                                    Dayton, Ohio 45402
                                                    Tel: 937/223-8177
                                                    Fax: 937/223-6705
                                                    E-Mail:  friesinger@coollaw.com
                                                            breault@coollaw.com

                                                    *Proposed Counsel for Debtor and Debtor-In-Possession CTL-Aerospace, Inc.*

- 3 -

27632813 v3

**Exhibit E**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 25-12226 |
|  | ) |  |
| CTL-AEROSPACE, INC., | ) | Chapter 11 |
|  | ) |  |
|  | ) | Judge Beth A. Buchanan |
| Debtor. | ) |  |
|  | ) |  |

**NOTICE OF SUCCESSFUL AND ALTERNATE BIDDERS
WITH RESPECT TO THE AUCTION OF THE DEBTOR'S ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On September 8, 2025 (the **"Petition Date"**), the above-captioned debtor and debtor-in-possession (the "**Debtor**") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**) in the United States Bankruptcy Court for the Southern District of Ohio (the **"Bankruptcy Court"**).

2.      On October 9, 2025, the Debtor filed the *Debtor's Motion for Entry of (I) An Order (A) Approving Bidding and Sale Procedures with Respect to the Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving the Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving Procedures for Selection of One or More Stalking Horse Bidder(s) and the Provision of Bid Protections to Such Stalking Horse Bidder(s), and (E) Granting Related Relief; and (II) An Order Approving the Sale of Such Assets and Granting Related Relief* (the "**Bidding Procedures Motion**").[1]   Pursuant to the Bidding Procedures Motion, the Debtor is seeking authority to sell substantially all Assets of the Debtor or a subset thereof, including certain executory contracts and unexpired leases.   The Bidding Procedures Motion was approved by the Bankruptcy Court on ~~October~~November __, 2025 [Docket No. __] (the "**Bidding Procedures Order**").   The Bidding Procedures Order contemplates that a sale (or sales) of the Assets or a subset thereof will take place via an auction (the **"Auction"**) governed by the Bidding Procedures attached to the Bidding Procedures Order as **Annex 1** (the "**Bidding Procedures**").

3.      On December 10, 2025, pursuant to the Bidding Procedures Order, the Debtor conducted the Auction with respect to the Assets.

---

[1] Capitalized terms used herein that are otherwise not defined shall have the meaning given to them in the Bidding Procedures Motion or the Bidding Procedures Order (as defined herein), as applicable.

4.      At the conclusion of the Auction, the Debtor, in consultation with its professionals and the Consultation Parties, selected the following Successful Bidder(s) and Alternate Bidder(s) with respect to the Assets:

| Asset(s) | Successful Bidder | Alternate Bidder |
|---|---|---|
| [●] | [●] | [●] |

5.      The Debtor entered into an asset purchase agreement (the "**APA**") between the Debtor and __ (the "**Successful Bidder**"), a copy of which is attached hereto as Exhibit 1, pursuant to which the Debtor shall sell substantially all of its Assets to the Successful Bidder.

6.      The Sale Hearing to consider approval of (a) the Sale Transaction and (b) transfer of the Assets to the Successful Bidder, free and clear of all Interests other than the assumed obligations and permitted encumbrances, in accordance with section 363(f) of the Bankruptcy Code will be held before the Honorable Judge Beth A. Buchanan, United States Bankruptcy Judge for the Southern District of Ohio, at the Bankruptcy Court, 221 East Fourth Street, Atrium Two Suite 800, Cincinnati, Ohio 45202 at 10:00 a.m. (prevailing Eastern Time).  The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in this chapter 11 case.

7.      Any objections (a) to the Sale Transaction of the Assets, (b) to the manner in which the Auction was conducted, (c) to the identity of the Successful Bidder, and/or (d) based on the ability of the Successful Bidder to provide adequate assurance of future performance to counterparties to executory contracts and unexpired leases contemplated to be assumed and assigned to the Successful Bidder must be filed with the Court on or before **December 12, 2025, at 10:00 a.m. (prevailing Eastern Time)** (the "**Global Objection Deadline**").

8.      At the Sale Hearing, the Debtor will seek Bankruptcy Court approval of the Successful Bid, and the assumption and assignment of the Assigned Contracts (as defined in the Bidding Procedures Order) to the Successful Bidder.  Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the sale of the Debtor's Assets and there will be no further bidding at the Sale Hearing.  In the event that the Successful Bidder cannot or refuses to consummate the Transaction(s) because of a breach or failure on the part of the Successful Bidder, then the Debtor will close with the party that submitted the Alternate Bid, pursuant to the applicable Sale Order, after consulting with the Consultation Parties.  If an Alternate Bidder does not close the applicable Sale Transaction contemplated by the applicable Alternate Bid by the date agreed to by the Debtor and such Alternate Bidder, then, after consulting with the Consultation Parties, the Debtor will be authorized to reopen the Auction to designate new Successful Bid(s) and Alternate Bid(s).

9.      This notice is subject to the terms and conditions of the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtor encourages parties in interest to review such document in its entirety.  Parties with questions

27632813 v3

regarding this notice should contact the Debtor's counsel at the contact information provided below.

10.     Parties interested in receiving more information regarding the contemplated sale and/or copies of any related documents may request such materials by notifying counsel for the Debtor via email (friesinger@coollaw.com).

December __, 2025                    Respectfully submitted,

                                    COOLIDGE WALL CO., L.P.A.

                                    */s/ Patricia J. Friesinger*                    −
                                    Patricia J. Friesinger (0072807)
                                    Briana C. Breault (0099773)
                                    33 West First Street, Suite 600
                                    Dayton, Ohio 45402
                                    Tel: 937/223-8177
                                    Fax: 937/223-6705
                                    E-Mail:  friesinger@coollaw.com
                                             breault@coollaw.com

                                    *Proposed Counsel for Debtor and Debtor-In-Possession CTL-Aerospace, Inc.*

- 3 -