**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-12226 |
| | ) | |
| CTL-AEROSPACE, INC., | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtor. | ) | **Hon. Beth Buchanan** |
| | ) | U.S. Chief Bankruptcy Judge |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S NOTICE OF EXTENSION OF DEADLINE FOR STALKING HORSE BIDDER INDENTIFICATION DEADLINE AND FILING OF STAKING HORSE AGREEMENT (Doc. 205) AND MOTION FOR AUTHORITY TO (I) SELL SUBSTANTIALLY ALL OF THE DEBTORS ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO THE BIDDING PROCEDURES ORDER, AS AMENDED; (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO THE BIDDING PROCEDURES ORDER; AND (III) GRANTING RELATED RELIEF (Doc. 207)**

Andrew R. Vara, United States Trustee for Regions 3 and 9, respectfully files this Objection to Debtor's Notice of Extension of Deadline for Stalking Horse Bidder Identification Deadline and Filing of Stalking Horse Agreement (the "Notice" and the "SHA") (Doc. 205) and the Motion For Authority To (I) Sell Substantially All Of The Debtors Assets Free And Clear Of All Liens, Claims, Interests, And Encumbrances Pursuant To The Bidding Procedures Order, As Amended; (II) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Pursuant To The Bidding Procedures Order; And (III) Granting Related Relief (Doc. 207) (the "Sale Motion"). In support of this objection, the United States Trustee (the "UST") states as follows:

1. CTL-Aerospace, Inc. (the "Debtor") filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code on September 8, 2025 (the "Petition Date") (Doc. 1).

### The Notice's Purported Extended SHA Deadline Should Also Extend all Other Deadlines and Dates by At Least Three Days

2. On October 9, 2025, the Debtor filed a motion seeking an order approving bid procedures for a sale of substantially all of the Debtor's assets and selecting stalking horse bidders (Doc. 90).

3. On November 12, 2025, after several continuances of a hearing on the merits requested by the Debtor, the Court entered the Order Establishing Bid Procedures Relating to the Sales of All or a Portion of the Debtor's Assets (the "Order") (Doc. 159) which established various deadlines including a stalking horse bidder identification deadline of November 19, a date for a hearing on objection to such designation, a sale hearing date, etc.

4. The stalking horse bidder identification did not occur on November 19. Instead, the Debtor filed a Notice of Extension of Stalking Horse Bidder Identification, moving such deadline to November 24, 2025 (Doc. 170). That deadline was also ignored.

5. On December 5, 2025, the Debtor filed a Motion to Amend the deadlines established by the prior November 12 order because those deadlines had passed or were unworkable (Doc. 184).

6. The UST filed an objection to this motion (Doc. 194). A hearing was held on December 10, and the parties agreed to certain deadlines, including a new stalking horse designation deadline. These deadlines were memorialized in an Order Amending Dates and Deadlines Relating to the Sales of All or a Portion of the Debtor's Assets (Doc. 195) (the "Amended Scheduling Order").

7. The first deadline was the designation of the stalking horse bidder which was to take place on December 19, 2025 by 4:00 pm prevailing Eastern Time. That deadline passed.

2

8. Instead, on December 22, 2025, the Debtor filed the Notice. This Notice purports to, once again and presumably on the Debtor's own authority, extend the stalking horse designation deadline.

9. The Notice's assertion of a new deadline is confusing at best and leaves third parties unclear as to the effectiveness of the remaining deadlines in the Amended Scheduling Order.

10. On December 23, 2025 Debtor filed its Sale Motion.

### UST's Objection to the SHA and the Sale Motion

11. The Notice and SHA identify DK CTL Aerospace OPCO LLC, a designee of DKOF VI Trading Subsidiary LP - the Debtor's primary pre-petition and post-petition secured lender ("DIP Lender") – as the stalking horse bidder ("DK CTL" or the "Stalking Horse Bidder").

*The Break Up Fee is Unnecessary and Should be Denied*

12. The UST objects to the contemplated "break up fee" referenced in the SHA and the Sale Motion for the Stalking Horse Bidder as as such fees are unnecessary.

13. Bid protections must be sought and analyzed under Bankruptcy Code section 503(b). *See In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) ("[A] bidder must seek a break-up fee under 11 U.S.C. § 503(b)[.]") (citing *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl., Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir. 1999)).

14. Where break up fees have been allowed, the purpose has been to "induc[e] a bid that otherwise would not have been made and without which bidding would have been limited." *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527,

3

537 (3d Cir. 1999).

15. Applied here, the Court should deny approval of a break up fee. The Stalking Horse Bidder is an entity controlled by the Debtor's pre- and postpetition lender, who will be paid in full through the proposed sale. Credit bidding lenders do not need to be incentivized to protect their secured claim. Thus, the Stalking Horse Bidder has an interest in the sale's approval and would have been prepared to make the Stalking Horse Bid even without the break up fee. Further inducement for them to bid was unnecessary rendering the break up fee an unnecessary drain on the estate.

16. Moreover, as an affiliate of the DIP Lender, the Stalking Horse Bidder had advance access to information regarding the Debtor, their business and their financial health. Thus, the burden on the Stalking Horse Bidder to conduct due diligence was substantially less than it would be for other potential bidders, and the break up fee is not necessary to defray the costs of that due diligence.

17. In addition, pursuant to the Final Order (A) Authorizing The Debtor To Obtain Postpetition Financing, (B) Authorizing The Debtor To Use Cash Collateral, (C) Granting Adequate Protection To The Prepetition Secured Party, (D) Modifying The Automatic Stay, (E) Vacating The Final Hearing Set For December 3, 2025, And (F) Granting Related Relief (Doc. 182) the Debtor is required to pay the DIP Professional Fees and Expenses.   Requesting a break up fee for the DIP Lender, which is only allowed as a necessary cost to the estate, seems like double dipping when the DIP Lender is already having its steep fees paid by the estate.

18. Finally, the practical effect of approving the break up fee is that the minimum initial overbid amount is higher than it needs to be to ensure that the break up fee is covered

4

which will likely chill bidding to the detriment of all creditors.

***The UST Objects to the Request for Super Priority Administrative Expense Status for the Break Up fee.***

19. The SHA further defines the break up fee as a "super priority administrative expense … under section 364(c)(1) of the Bankruptcy Code with priority over any and all administrative expenses of any kind…"  SHA pg. 5, Article I, 1.1 Definitions.  The UST objects to this designation.

20. The Bankruptcy Code provides for "superpriority" claim status only in §§ 364(c)(1) and 507(b). Those sections exclusively address (a) parties providing postpetition financing, and (b) secured creditors who have received insufficient "adequate protection" for the postpetition diminution in value of their collateral. The Stalking Horse Bidder is neither.

***To the Extent the Debtor is Requesting a Tax Exemption For This Sale Under 1146(a) it Should be Denied.***

21. Article 8.1 of the SHA makes reference to "section 1146(c) of the Bankruptcy Code." For purposes of this Objection the UST assumes the SHA means to reference 11 U.S.C. § 1146(a).

22. It is not clear to the UST what this provision in the SHA is intended to accomplish. Out of an abundance of caution, the UST simply notes that § 1146(a) only applies to transfers under a confirmed plan.  Section 1146(a) states, "The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer *under a plan confirmed* under section 1129 or 1191 of this title, may not be taxed under any law imposing a stamp tax or similar tax" (emphasis added).

23. No plan has been filed or confirmed in this case, and Section 1146(a) does not

5

otherwise apply to this sale. "[T]he more natural reading of § 1146(a) is that the exemption applies only to postconfirmation transfers. . . ." *Fla. Dep't of Revenue v Piccadilly Cafeterias, Inc.*, 554 U.S. 33 (2008).

## Conclusion

For the preceding reasons, the UST objects to the Notice and SHA and the Sale Motion and requests that the Court grant such other and further relief as it deems just and proper under the circumstances.

Dated: December 29, 2025                    Respectfully Submitted:

Andrew R. Vara
United States Trustee, Regions 3 and 9

by:    */s/ Monica V. Kindt*
Monica V. Kindt, Esq.
Assistant United States Trustee
United States Department of Justice
Office of the United States Trustee
J.W. Peck Federal Building
550 Main Street, Suite 4-812
Cincinnati, Ohio 45202
Voice: (513) 684-6988
Email: monica.kindt@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2025, a copy of the foregoing OBJECTION of the UNITED STATES TRUSTEE was served (i) electronically on the date of filing through the court's ECF System on all ECF participants registered in this case at the email address registered with the court and (ii) on the following by ordinary U.S. Mail addressed to:

Patricial J. Friesinger, Attorney for Debtor CTL-Aerospace, Inc.
friesinger@coollaw.com

And via regular mail to:

CTL-Aerospace, Inc.
5616 Spellmire Drive
Cincinnati, OH 45246
*Debtor-in-Possession*

                                                           /s/ Monica V. Kindt
                                                         Monica V. Kindt